IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DETLEF SOMMERFIELD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  06 C 3132 |
| | ) | |
| CITY OF CHICAGO | ) | |
| SERGEANT KNASIAK #1841 | ) | |
| | ) | Honorable Judge Gottschall |
| | ) | Honorable Magistrate Judge Jeffrey Cole |
| | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT[1]

*Jurisdiction and Venue*

1. This Court has jurisdiction under 42 USC section 2000e et seq. 28 USC §1331 and §1343. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1343(3) and 1343(4) conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under the Declaratory Judgment Statute, 22 U.S.C. § 2201, under 42 U.S.C. § 1983 and §1981, and under Title VII, 42 U.S.C. § 2000e, et seq..  All of the illegal and unlawful acts of discrimination occurred in the Northern District of Illinois. Venue is proper under 28 USC §1391(b) and (c).

2. On 29 November 2004, the Equal Employment Opportunity Commission found that the Chicago Police Department discriminated against the plaintiff based upon his national origin, German, and his religion, Jewish.  Attached.

3. On 8 March 2006, the EEOC issued a right to sue letter.  Attached.

4. The plaintiff commenced this lawsuit within 90 days of receipt of the right to sue letter.

---

[1] The plaintiff incorporates by reference the dismissed claims from the previous complaint to the extent such is needed to preserve his right to appeal.

*Parties*

5.  The plaintiff is a natural person, residing in the Northern District of Illinois.

6.  Upon information and belief, the City of Chicago is a municipality, operating the Chicago Police Department.

7.  Upon information and belief, the defendant, Sergeant Knasiak, is a sergeant with the Chicago Police Department.

8.  Sergeant Knasiak acted under color of state law.

*Common Facts For All Counts*

9.  The plaintiff is a German Jew who emigrated to the United States.  His family was killed in the Holocaust.

10. The plaintiff has worked for the Chicago Police Department since 5 July 1994.

11. In or about January 2000, Sergeant Knasiak was transferred to the plaintiff's area, making the plaintiff subordinate to him.

12. Repeatedly, Sergeant Knasiak referred to the plaintiff's Jewish heritage.  He would ask the plaintiff, why didn't Hitler kill all of you Jews; burn Jew burn; how do you fit 1000 Jews inside of a car--by putting them in the ashtray; you Jews are bloodsucking parasites; don't you two jag offs go pulling over Jews and niggers all night; Germans should be shot in the head for not getting rid of the Jew problem; did your parents crawl from under the fence in the concentration camp; f—k--g Germans can't do anything right; they missed a whole bunch of Jews and now they are living in this fucked up country; Germans are just like niggers, couldn't get rid of them then, can't get rid of them now; f--k--g Jew boy and so forth.

13. Sergeant Knasiak would call the plaintiff a Nazi.  He would show the plaintiff his swastika.

14. Sergeant Knasiak would call the plaintiff a stupid German.

15. When the plaintiff would enter a room, Sergeant Knasiak would raise his right hand and salute the plaintiff as Nazis would salute each other.

16. Repeatedly, the plaintiff informed Sergeant Knasiak that his attacks on the plaintiff's Jewish heritage and German descent were painful.

17. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants would assign the plaintiff to high crime areas without a partner, though officers with lesser seniority and who were not German and/or Jewish were given partners.

18. Treating the plaintiff differently than officers who were not Jewish and/or German, when the defendants did assign a partner to the plaintiff, the defendants would frequently change the plaintiff's partner, though officers who were not German and/or Jewish received steady partners.

19. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants frequently changed the plaintiff's starting times.

20. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants assigned the plaintiff to work hospital duty, though the plaintiff had higher seniority than other officers who were not German and/or Jewish and who were not assigned hospital duty.

21. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants, when assigning the plaintiff to do hospital duty, required the plaintiff to use his own car, instead of a police car.

22. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants assigned different cars day-to-day to the plaintiff, though officers who had

less seniority than the plaintiff and who were not German and/or Jewish were given cars that did not change from day-to-day.

23. Treating the plaintiff differently than officers who were not Jewish and/or German, the defendants suspended the plaintiff for five days for not contacting the dispatcher to obtain an ID from his residence, although the plaintiff's partner, received only a reprimand for the same conduct, and for allegedly yelling at Sergeant Knasiak though it was Sergeant Knasiak who relentlessly yelled at the plaintiff.

24. Treating the plaintiff differently than other officers who were not Jewish and/or German, other officers received the position of canine patrol which was a position that the plaintiff wanted, though the plaintiff was higher on the list to receive the position.

### Count I:   Religious discrimination against the City of Chicago

25. The plaintiff incorporates by reference the common facts relating to all counts.

26. Repeatedly, the plaintiff asked Sergeant Knasiak to stop making references to his Jewish heritage.

27. Repeatedly, Sergeant Knasiak refused.

28. Sergeant Knasiak openly and publicly made discriminatory statements and comments relating to the plaintiff's Jewish religion.

29. Yet, the City of Chicago failed to stop Sergeant Knasiak from making such harmful and discriminatory comments and statements.

30. The plaintiff repeatedly complained to several supervisors about Sergeant Knasiak harassing him and discriminating against him based upon his national origin and Jewish religion, but such supervisors ignored the plaintiff and did nothing.

31. Indeed, Lt. Carson Ernest, one of the plaintiff supervisors, instructed the plaintiff to put on boxing gloves and fight it out with Sergeant Knasiak.

32. In March 2004, the plaintiff filed a written complaint with the internal affairs division regarding the discrimination and hostile work environment against Sergeant Knasiak.

33. However, the defendant, City of Chicago, continued to allow the discrimination and hostile work environment against the plaintiff, during the three years of the investigation by the internal affairs division.

34. The City of Chicago failed to take any immediate and appropriate corrective action to ensure that Plaintiff would not be subject to further discrimination and harassment.

35. The harassment was sufficiently pervasive and severe as to alter the conditions of Plaintiff's employment and to create a hostile, intimidating and/or abusive work environment.

36. The City of Chicago created a hostile, work environment for the plaintiff, adversely affecting his ability to perform his duties.

37. The City of Chicago treated the plaintiff differently because he was a German Jew than it treated those who were not.

38. During the many years that Sergeant Knasiak discriminated and harassed the plaintiff, the plaintiff suffered stress and fear. This fear and stress interfered with his work conditions and ability to perform his work.

39. The City of Chicago acted blindly towards discrimination and harassment.

40. The City of Chicago's supervisors failed to take any action against Sergeant Knasiak. Therefore, the defendant, City of Chicago, authorized, commanded, acquiesced or assented to Sergeant Knasiak harassing the plaintiff.

41. By failing to prohibit Sergeant Knasiak, and thus, encouraging him, the City of Chicago specifically intended to injure the plaintiff.

42. Despite Plaintiff's repeated complaints, the City of Chicago continued to allow Sergeant Knasiak to discriminate and harass the plaintiff.

43. The City of Chicago ratified Sergeant Knasiak's repeated discrimination and harassment of the plaintiff.

44. The City of Chicago violated the plaintiff's Civil Rights Act, 42 USC section 2000e, et seq.

45. The plaintiff has suffered pain, humiliation and embarrassment and will continue to suffer pain, humiliation and embarrassment.

46. The City of Chicago, by failing to prohibit Sergeant Knasiak from repeatedly harassing the plaintiff, acted willfully and wantonly.

Wherefore, the plaintiff prays that this court will enter judgment for the plaintiff and against the defendant for violating his Civil Rights Act, and grant relief including, but not limited to:

a. Granting damages exceeding $100,000 because the plaintiff suffered humiliation, embarrassment, insult and emotional suffering because of the City of Chicago's violations of 42 USC §1983;

b. Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights;

c. Granting a permanent injunction requiring the defendant to institute policies and procedures complying with and conforming to 42 USC §2000e et seq.

d. Ordering the City of Chicago to pay the plaintiff attorney fees and costs for violating 42 USC §1983;

e. A declaration that the defendant violated 42 USC §2000e et seq.;

f. Retaining jurisdiction to ensure that the defendant stops violating the law against the plaintiff;

g. Granting all other relief to make the plaintiff whole because of the City of Chicago's violations.

***Count II:  National origin discrimination: German; against the City of Chicago***

47. The plaintiff incorporates by reference the common facts relating to all counts.

48. Repeatedly, the plaintiff asked Sergeant Knasiak to stop making references to his German heritage.

49. Repeatedly, Sergeant Knasiak refused.

50. Sergeant Knasiak openly and publicly made discriminatory statements and comments relating to the plaintiff's German heritage.

51. He would refer to the plaintiff as a Nazi, stupid German and so forth.

52. Yet, the City of Chicago failed to stop Sergeant Knasiak from making such harmful and discriminatory comments and statements.

53. The plaintiff repeatedly complained to several supervisors about Sergeant Knasiak harassing him and discriminating against him based upon his national origin and Jewish religion, but such supervisors ignored the plaintiff and did nothing.

54. However, the defendant, City of Chicago, continued to allow the discrimination and hostile work environment against the plaintiff, during the three years of the investigation by the internal affairs division.

55. The City of Chicago failed to take any immediate and appropriate corrective action to ensure that Plaintiff would not be subject to further discrimination and harassment.

56. The harassment was sufficiently pervasive and severe as to alter the conditions of Plaintiff's employment and to create a hostile, intimidating and/or abusive work environment.

57. The City of Chicago created a hostile, work environment for the plaintiff, adversely affecting his ability to perform his duties.

58. The City of Chicago treated the plaintiff differently based on his German national origin than those with other types of national origin.

59. During the many years that Sergeant Knasiak discriminated and harassed the plaintiff, the plaintiff suffered stress and fear. This fear and stress interfered with his work conditions and ability to perform his work.

60. The City of Chicago acted blindly towards discrimination and harassment.

61. The City of Chicago's supervisors failed to take any action against Sergeant Knasiak. Therefore, the defendant, City of Chicago, authorized, commanded, acquiesced or assented to Sergeant Knasiak harassing the plaintiff.

62. By failing to prohibit Sergeant Knasiak, and thus, encouraging him, the City of Chicago specifically intended to injure the plaintiff.

63. Despite Plaintiff's repeated complaints, the City of Chicago continued to allow Sergeant Knasiak to discriminate and harass the plaintiff.

64. The City of Chicago ratified Sergeant Knasiak's repeated discrimination and harassment of the plaintiff.

65. The City of Chicago violated the plaintiff's Civil Rights Act, 42 USC section 2000e, et seq.

66. The plaintiff has suffered pain, humiliation and embarrassment and will continue to suffer pain, humiliation and embarrassment.

67. The City of Chicago, by failing to prohibit Sergeant Knasiak from repeatedly harassing the plaintiff, acted willfully and wantonly.

Wherefore, the plaintiff prays that this court will enter judgment for the plaintiff and against the defendant for violating his Civil Rights Act, and grant relief including, but not limited to:

    a.   Granting damages exceeding $100,000 because the plaintiff suffered humiliation, embarrassment, insult and emotional suffering because of the City of Chicago's violations of the federal Civil Rights Act;

    b.   Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights;

    c.   Ordering the City of Chicago to pay the plaintiff attorney fees and costs for violating his Civil Rights Act;

    d.   Granting all other relief to make the plaintiff whole because of the City of Chicago's violations of his Civil Rights Act.

***Count III:  Retaliation against the City of Chicago***

68. The plaintiff incorporates by reference counts I and II.

69. After the plaintiff complained about Sergeant Knasiak's discrimination and harassment of the plaintiff, Sergeant Knasiak retaliated against the plaintiff.

70. The defendant required the plaintiff to work in a police car by himself in a high crime neighborhood.

71. This is true though other officers had a partner in the police car with them in a high crime area.

72. Also, this is true though the plaintiff had seniority over many other officers who were assigned to areas where the crime level was lower.

73. Moreover, when the defendant through its agents would assign the plaintiff to work at a nearby hospital to complete police reports, the defendant through its agents would require the plaintiff to use his own car to travel to the hospital.

74. Whereas, other officers who were not discriminated against were given Chicago Police Department cars to travel to the hospital.

75. The defendant would constantly change the plaintiff's starting times, though other officers who did not complain of discrimination and harassment were given steady starting times.

76. Constantly, the defendant would assign the plaintiff to work alone in the police car at night without a partner, though other officers who did not complain of discrimination and harassment were given steady partners.

77. When the defendant would assign a partner to the plaintiff, the defendant would not assign a steady partner, but would regularly change the plaintiff's partner, though other officers who did not complain of discrimination and harassment were given steady partners.

78. Constantly, the defendant would change the plaintiff's beat, though officers who did not complain of discrimination and harassment were given a far steadier beat.

79. Furthermore, Sergeant Knasiak would inform the plaintiff that he would get the plaintiff.

80. Though the plaintiff was higher on the list awaiting the position of canine patrol, those who were lower on the list received the position instead of the plaintiff.

81. Before complaining about the continual harassment and discrimination by Sergeant Knasiak, the plaintiff did not have a disciplinary record since 1994.

82. After complaining about Sergeant Knasiak's harassment and discrimination, the plaintiff was suspended three times totaling 15 days.

83. The defendant retaliated against the plaintiff by not keeping his charges of discrimination, harassment and retaliation confidential, but allowing them to be the talk of the police station.

84. Regarding a charge regarding a pet store where the plaintiff had purchased a puppy who thereafter was sick regarding emergency care, Sergeant Betty Woods found that the

charge was not sustained.  However, Lt. Timothy Bialek, in retaliation, sustained the charge, though employees have attended to their personal matters during work hours.

85. The defendant retaliated against the plaintiff through Lt. Carson Ernest who in or about the middle of 2007 threatened to get the plaintiff because he had been suspended for three days relating to the plaintiff's charges against Sergeant Knasiak.

86. The City of Chicago allows and tolerates a custom and practice of supervisors, that is, sergeants, lieutenants and others in management, retaliating against subordinates who complain about retaliation and harassment.

87. The defendant's acts of retaliation through its officers had a causal connection with the plaintiff's complaints of harassment.

88. As a direct and proximate result of the defendant's willful, knowing and intentional discrimination and retaliation against the plaintiff, the plaintiff has suffered and will continue to suffer pain and suffering.

89.  The plaintiff is entitled to general and compensatory damages in amounts to be proved at trial.

Wherefore, the prays that the Honorable Court will enter judgment for the plaintiff and against the defendant for violating his Civil Rights Act, and grant relief including, but not limited to:

a.  Granting damages exceeding $100,000 because the plaintiff suffered humiliation, embarrassment, insult and emotional suffering because of the City of Chicago's violations of the federal Civil Rights Act;

b.  Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights;

c.  Ordering the City of Chicago to pay the plaintiff attorney fees and costs for violating his Civil Rights Act;

     d.  Granting all other relief to make the plaintiff whole because of the defendant's violations of his Civil Rights Act

***Count IV: §1983 and §1981 claims against the City of Chicago***

90. The plaintiff incorporates by reference the previous allegations of the complaint.

91. The city of Chicago allegedly trains its new officers on policies and procedures at the police academy.

92. Such training/instruction to some limited extent involves the city's general prohibition against discrimination.

93. After such training/instruction at the academy, police officers receive no further training relating to discrimination, harassment and retaliation, such as, based upon national origin and religion.

94. Police officers promoted to sergeant and higher supposedly receive some type of training/instruction on discrimination and harassment at school relating to their promotion, such as, sergeant school, lieutenant school and so forth.

95. However, such limited and restricted training/instruction has been deficient. Sergeants and/or lieutenants have testified in this case that they do not know if they have been trained on national origin discrimination, national origin harassment, religious discrimination and religious harassment.

96. Other than the aforementioned, limited and restricted training/instruction, the only training/instruction police officers have received is playing a video of a few minutes on sexual harassment at roll call.

97. Training and instructing police officers regularly on policies against national origin discrimination, national origin harassment, religious discrimination and religious harassment are important.

98. The city's failure to train and instruct police officers regularly on policies against national

origin discrimination, national origin harassment, religious discrimination and religious harassment and retaliation demonstrates a reckless disregard and deliberate indifference to these important rights and public policies.

99. The city's failure to train and instruct police officers regularly on these policies against national origin discrimination, national origin harassment, religious discrimination, religious harassment and retaliation demonstrates a custom and practice which was instituted by policy makers.

100.    The city through its police department acted with reckless disregard by failing to regularly train/instruct its officers against national origin discrimination and harassment and religious discrimination and harassment and retaliation.

101.    On several occasions, Sergeant Knasiak would discriminate against, harass and retaliate against the plaintiff in front of other employees, including, officers, sergeants, lieutenants and captains.

102.    When Sergeant Knasiak would so discriminate, harass or retaliate against the plaintiff, sergeants, lieutenants and captains did not reprimand, discipline or prohibit Sergeant Knasiak from such illegal acts.

103.    Acting with reckless disregard and deliberate indifference, the city knew that its failure to regularly train/instruct its officers would increase the probability of national origin discrimination and harassment, religious discrimination and harassment and retaliation.

104.    Indeed, sergeants and/or lieutenants have testified in this case that they did not know whether attacks and insults, such as, burn Jew burn, don't you two jag offs go pulling over Jews and niggers all night, Hitler should have killed all of you Jews and so forth violated or complied with any City policy.

13

105.     Sergeants and/or lieutenants did not know whether such attacks and insults were harassing or created a hostile working environment.

106.     Sergeants and/or lieutenants did not know what a victim was supposed to do if confronted with national origin discrimination, national origin harassment, religious discrimination and religious harassment.

107.     Sergeants and lieutenants ignored the plaintiff's complaints of discrimination and harassment for several years.

108.     A custom and practice exists for sergeants and/or lieutenants to ignore an officer's complaints when the accused involves another Sergeant.

109.     The defendant is deficient about training its officers on matters relating to national origin and religious discrimination and harassment by one employee against another employee.

110.     The defendant is deficient about training its officers to report complaints of national origin and religious discrimination and harassment and retaliation.

111.     The defendant is deficient about training its officers to correct acts of national origin and religious discrimination and harassment and retaliation.

112.     The defendant failed to ensure that its subordinates were not deficiently trained to recognize national origin and religious discrimination and harassment and retaliation. and respond to complaints of national origin and religious discrimination and harassment and retaliation.

113.     Among others, Sergeant Betty Woods, Lt. Carson Ernest, Sergeant Majewski, Sergeant Pickering were the plaintiff's supervisors.

114.     The defendant failed to interview the plaintiff's supervisors, such as, Sergeant Betty Woods, Lt. Carson Ernest, Sergeant Majewski, Sergeant Pickering to whom the

plaintiff complained about discrimination/harassment.

115. At no time after learning about the plaintiff's complaints of discrimination, harassment and retaliation did the defendant inform Sergeant Knasiak that the defendant would have to train him on any policy regarding discrimination, harassment and retaliation because of the plaintiff's complaints of discrimination, harassment and retaliation.

116. At no time after learning about the plaintiff's complaints of discrimination, harassment and retaliation did the defendant inform the supervisors to whom the plaintiff complained about discrimination, harassment and retaliation that the defendant would have to train them on any policy regarding discrimination, harassment and retaliation because of the plaintiff's complaints of discrimination, harassment and retaliation.

117. At no time after learning about the plaintiff's complaints of discrimination, harassment and retaliation did the defendant train the eighth district on any policy regarding discrimination, harassment and retaliation because of the plaintiff's complaints of discrimination, harassment and retaliation.

118. The fact that the plaintiff complained to several supervisors over a course of several years conveys constructive knowledge to the defendant of the national origin and religious discrimination and harassment and retaliation.

119. Other officers complained about Sergeant Knasiak's racial and/or religious attacks, including, but not limited to, officer Berger and officer Abuzanat.

120. The defendant failed to discipline the supervisors to whom the plaintiff complained about discrimination, harassment and retaliation for ignoring the plaintiff's complaints of discrimination, harassment and retaliation.

121. Therefore, the city ratified their actions, that is, by not disciplining and/or training

them, the defendant acquiesced and explicitly acknowledged that some supervisors follow the city's deficient policies and procedures, that is, ignoring complaints of national origin discrimination and harassment and religious discrimination and harassment and retaliation.

122.     Also, because the city fails to discipline supervisors who fail to accept complaints of discrimination/harassment against Sergeants, supervisors were undeterred and ignored the plaintiff's repeated complaints over a course of years.

123.     The defendant's deficient training resulted in the highly predictable injury to the plaintiff.

124.     The city's deficient training was the moving force behind the constitutional violations against the plaintiff which occurred over several years.

125.     As the defendant did not have regular training of Sergeant Knasiak against discriminating against, harassing or retaliating against officers, the defendant had sufficient notice that the failure to train properly and/or regularly would lead to constitutional violations.

126.     It was foreseeable that the failure to train properly would lead to injuries to victims of national origin and religious discrimination and harassment and retaliation.

127.     Also, it was foreseeable that failing to properly train or failing to regularly train would lead to the plaintiff's injury.

128.     The defendant was deliberately indifferent by failing to institute a proper training program regarding the clear and recurrent constitutional rights against discrimination, harassment and retaliation.

129.     Had the city not acted with deliberate indifference, Sergeant Knasiak who was inclined to engage in harassment, discrimination and retaliation, would have been

deterred.

130.     Moreover, the city acted with deliberate indifference by failing to discipline Sergeant Knasiak for engaging in repeated acts of discrimination, harassment and retaliation over a course of years against the plaintiff, officer Abuzanat and/or officer Berger.

131.     Thus, the city ratified Sergeant Knasiak's acts of discrimination, harassment and retaliation against the plaintiff, officer Abuzanat and/or officer Berger and/or acquiesced to such acts.

132.     Also, the city acted with deliberate indifference by not separating Sergeant Knasiak from the plaintiff, officer Abuzanat and officer Berger, though they were on notice that he was discriminating against them.  The defendant's failure to act demonstrates their acquiescence of Sergeant Knasiak's conduct of discrimination, harassment and/or retaliation.

133.     It was foreseeable that Sergeant Knasiak would encounter recurring situations of having subordinates with different national origins and different religious affiliations.

134.     Yet, the defendant with deliberate indifference failed to train Sergeant Knasiak, or any supervisor, of what constitutes national origin discrimination and harassment and religious discrimination and harassment either before or after the plaintiff's complaints of discrimination, harassment and retaliation.

135.     The defendant's failure to respond to the plaintiff's repeated complaints of discrimination/harassment denied him equal protection.

136.     The City of Chicago allows and tolerates a custom and practice of supervisors, that is, sergeants, lieutenants and others in management, retaliating against subordinates who complain about retaliation and harassment.

137.     The defendant's alleged policy on discrimination fails to define or describe national origin discrimination and harassment or religious discrimination and harassment.

138.     The defendant acted with deliberate indifference to a foreseeable risk that by not defining or describing national origin discrimination and religious discrimination, employees would not know what constitutes such, and thus, would engage in discrimination and harassment.

139.     Sergeants testified that there was no training on what a victim should do if harassed/discriminated against regarding national origin and religious discrimination and harassment and retaliation.

140.     Also, the defendant has no policy to enforce any policy of having supervisors report claims of discrimination caused by another Sergeant/lieutenant.

141.     The defendant has no policy to encourage supervisors to report claims of discrimination/harassment caused by another sergeant/lieutenant.

142.     The training at the police academy involved the defendant's policy against discriminating against citizens, but not against employees.

143.     The defendant's only training relating to discrimination and harassment relates to officers being trained at the police academy when they are hired initially and, after January 2000, viewing one video on sexual harassment.

144.     The defendant has no policy to ensure that all employees view the video on sexual harassment, particularly regarding employees who are sick on the day that the video is shown or are on vacation etc.

145.     After a victim complains of national origin discrimination, national origin harassment, religious discrimination, religious harassment and retaliation with the internal affairs division, the internal affairs division supposedly begins an investigation.

146.     Acting with reckless disregard and deliberate indifference, the city fails to have a policy of investigating claims of discrimination, harassment and retaliation promptly and efficiently.

147.     Indeed, acting with reckless disregard and deliberate indifference, the city's investigations relating to discrimination, harassment and retaliation have taken multiple years.

148.     The city's investigation relating to the plaintiff's complaint of harassment, retaliation and discrimination took approximately 3 years before it was completed.

149.     The custom and practice for the city is to take multiple years to complete an investigation based about harassment, retaliation and discrimination.

150.     During the city's investigation, acting with reckless disregard and deliberate indifference, the city does not have a policy or practice of separating the discriminator, harasser and retaliator from the victim.

151.     Therefore, acting with reckless disregard and deliberate indifference, the city creates an environment of allowing the discriminator, harasser and retaliator to continue to discriminate against, harass or retaliate against the victim during the city's long investigation.

152.     Acting with reckless disregard and deliberate indifference, the city of Chicago allows and tolerates a custom and practice of failing to train regularly its employees on its illusory policies against national origin discrimination, national origin harassment, religious discrimination, religious harassment and retaliation.

153.     Acting with deliberate indifference and reckless disregard, the city of Chicago allows and tolerates a custom and practice of taking multiple years to investigate claims by victims of discrimination, harassment and retaliation.

154.     Acting with deliberate indifference and reckless disregard, the city of Chicago does not enforce or implement any policy to ensure the confidentiality of investigations relating to discrimination, harassment and retaliation.  In the instant case, the plaintiff's claims of harassment, discrimination and retaliation were the talk throughout the district where the plaintiff and Sergeant Knasiak were employed.

155.     Acting with reckless disregard and deliberate indifference, the city of Chicago allows and tolerates a practice of allowing the harasser, discriminator and retaliator to continue to work in the same area as the victim, instead of separating them.

156.     The city's acts and practices and failure to institute appropriate policies and procedures have a causal connection with the harassment, discrimination and retaliation against the plaintiff.

157.     As a direct and proximate result of the defendant's willful, knowing and intentional discrimination, harassment and retaliation against the plaintiff, the plaintiff suffered and continues to suffer.

158.     The plaintiff is entitled to general and compensatory damages in amounts to be proved at trial.

Wherefore, the prays that the Honorable Court will enter judgment for the plaintiff and against the defendant for violating his Civil Rights Act, and grant relief including, but not limited to:

  a.  Granting damages exceeding $100,000 because the plaintiff suffered humiliation, embarrassment, insult and emotional suffering because of the City of Chicago's violations;

  b.  Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's rights;

  c.  Ordering the City of Chicago to pay the plaintiff attorney fees and costs for violating his rights;

20

d.  Granting all other relief to make the plaintiff whole because of the defendant's violations of his rights.

### Count V: §1983and §1981 claims against the City of Chicago

159.     The plaintiff incorporates by reference to previous allegations in the complaint.

160.     For years, Sergeant Knasiak in front of other sergeants, lieutenants and so forth would make discriminatory and harassing remarks against the plaintiff based upon his German nationality and Jewish religion.

161.     For years, Sergeant Knasiak in front of other sergeants and lieutenants would discriminate against and harass the plaintiff based on his German national origin and Jewish religion.

162.     For several years, Sergeant Knasiak discriminated against and harassed the plaintiff based on his Jewish religion and German national origin, though he did not discriminate against those who were not German and Jewish.

163.     Sergeant Knasiak's harassment, discrimination and retaliation against the plaintiff were open and public, often at roll call and done under color of state law.

164.     The harassment, discrimination and retaliation that the plaintiff suffered were based upon his German national origin and Jewish religion.

165.     Because Sergeant Knasiak's discrimination and harassment of the plaintiff was open and obvious, often at roll call, in front of other sergeants and lieutenants, the city had a custom and practice of allowing such discrimination and harassment.

166.     Indeed, Sergeant Knasiak felt comfortable discriminating against, harassing and retaliating against the plaintiff for several years, knowing that the city would do little to nothing against him.

167.     In fact, Lt. Carson Earnest, the acting watch commander of the District at the

21

Chicago Police Department where the plaintiff and Sergeant Knasiak were employed, told the plaintiff to put on boxing gloves and fight it out with Sergeant Knasiak relating to the plaintiff's claims of harassment, discrimination and retaliation.

168.    Even after the plaintiff filed a written complaint with the internal affairs division, during a three-year investigation, the city did nothing to prevent Sergeant Knasiak from continuing to harass, discriminate against and retaliate against the plaintiff.

169.    The internal affairs division had claims of discrimination and harassment against Sergeant Knasiak by other officers other than the plaintiff.

170.    Yet, the city of Chicago did nothing to separate Sergeant Knasiak from the victims.

171.    Moreover, the city of Chicago did nothing to promote any type of training/instruction relating to discrimination, harassment and retaliation during or after the investigation, though three people complained of discrimination and harassment against Sergeant Knasiak.

172.    Effectively, the city of Chicago acquiesced, approved and allowed the continual discrimination, harassment and retaliation by a Sergeant against subordinates.

173.    The city's failure to train/instruct against national origin discrimination, national origin harassment, religious discrimination, religious harassment and retaliation demonstrates a reckless disregard and deliberate indifference to the constitutional rights of the plaintiff and other victims of harassment, discrimination and retaliation.

174.    With a moral certainty, the city with reckless disregard and deliberate indifference knew that without appropriate training/instruction, the probability would increase that its supervisors would discriminate, harass and retaliate against their subordinates.

175.    With a moral certainty, the city with reckless disregard and deliberate indifference

knew that without appropriate training/instruction, the probability would increase that supervisors would ignore complaints of harassment, discrimination and retaliation I subordinates, particularly when they are lodged against a fellow supervisor.

176.     But for its reckless disregard and deliberate indifference, the city knew that regular training/instruction of its employees would decrease the probability of a supervisor harassing, discriminating and retaliating against subordinates.

177.     But for its reckless disregard and deliberate indifference, the city knew that regular training/instruction of its employees would decrease the probability that supervisors to whom a victim complained would ignore the complaints of harassment, discrimination and retaliation.

178.     But for its reckless disregard and deliberate indifference, the city knew that its failure to conduct a prompt and timely investigation would allow the harasser, discriminator and retaliator to continue to discriminate, harass and retaliate against the victim.

179.     But for its reckless disregard and deliberate indifference, the city knew that its failure to separate the harasser, retaliator and discriminator from the victim during the investigation would allow the harasser, retaliator and discriminator to continue to harass, retaliate and discriminate against the victim.

180.     By failing to take appropriate actions, and failing to institute appropriate policies, the city, acting with reckless disregard and deliberate indifference, knew that its omissions and commissions would result in constitutional violations.

181.     The city's acts and practices, and failure to institute appropriate policies and procedures, have a causal connection with the harassment, discrimination and retaliation that the plaintiff suffered.

182.     As a direct and proximate result of the defendant's willful, knowing an intentional

discrimination, harassment and retaliation against the plaintiff, the plaintiff suffered and

continues to suffer.

183.     The plaintiff is entitled to general and compensatory damages in amounts to be

proved at trial.

Wherefore, the prays that the Honorable Court will enter judgment for the plaintiff and

against the defendant for violating his Civil Rights Act, and grant relief including, but not

limited to:

   a.  Granting damages exceeding $100,000 because the plaintiff suffered humiliation,
       embarrassment, insult and emotional suffering because of the City of Chicago's
       violations;

   b.  Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors,
       employees, and those acting in consort with Defendant, from continuing to violate
       Plaintiff's rights;

   c.  Ordering the City of Chicago to pay the plaintiff attorney fees and costs for
       violating his rights;

   d.  Granting all other relief to make the plaintiff whole because of the defendant's
       violations of his rights.

Respectfully submitted,

Joseph A. Longo

**LONGO AND ASSOCIATES, LTD.**
Joseph A. Longo, Esq.
2100 West Haven
Mount Prospect, IL  60056
847/640-9490
Attorney Number 53635

## CERTIFICATE OF SERVICE

I, Joseph A. Longo, an attorney, certify that I served this amended complaint by electronic filing on 10 May 2008 at 9 a.m..  Under penalties as provided by law pursuant to 735 ILCS, Sec 5/1-109, I certify that the statements set forth in this Certificate of Service are true and correct.


_____

Joseph A. Longo