```
                    UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF ILLINOIS (Chicago)


DETLEF SOMMERFIELD,            )
                              )
              Plaintiff,       )
                              )      Docket No. 06-CV-3132
         v.                    )
                              )
CITY OF CHICAGO,               )      Chicago, Illinois
                              )      July 17, 2008
              Defendant.       )



       HEARING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER
                          BEFORE THE
           HONORABLE MAGISTRATE JUDGE JEFFREY COLE


APPEARANCES:

For Plaintiff:           JOSEPH A. LONGO
                         Attorney at Law
                         2100 West Haven
                         Mt. Prospect, IL  60056


For Defendant:           JAY MICHAEL KERTEZ
                         CITY OF CHICAGO, LAW DEPARTMENT
                         30 North LaSalle Street
                         Suite 1020
                         Chicago, IL  60602


       PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:          Riki Schatell
                         6033 North Sheridan Road, 28-K
                         Chicago, Illinois  60660
                         773/728-7281


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

```
 1          THE CLERK:  06-C-3132, Sommerfield vs. the City of
 2   Chicago.
 3          MR. LONGO:  Your Honor, good morning, Joe Longo for
 4   the plaintiff.
 5          THE COURT:  Good morning, Mr. Longo.
 6          MR. KERTEZ:  Good morning, your Honor, Jay Kertez on
 7   behalf of the City of Chicago.
 8          THE COURT:  Good morning.  Okay, how do you want to
 9   deal with this?  We have a motion for a protective order and
10   what do you want to do?  You want to talk about it today?  You
11   want to -- I mean I -- Well, go ahead.  Let me hear what you
12   have to say.
13          MR. LONGO:  Well, the only thing I can say, your
14   Honor, is last time we had discussed the requests to admit you
15   had requested that we narrow them and reduce them.  We had
16   698 --
17          THE COURT:  Well, according to this you tried to do
18   that and they -- You collectively tried to do it and it didn't
19   work.
20          MR. LONGO:  There were 698.  I got them down to 177
21   so we --
22          THE COURT:  234, according to them, the subparts.
23          MR. LONGO:  Okay.
24          THE COURT:  It doesn't matter.  I agree with you,
25   it's not a difference.
```

```
 1            MR. LONGO:  I spent a lot of time reducing hundreds

 2    of them.

 3            THE COURT:  Here's my reaction to this.  A goodly

 4    number of these I don't think are appropriate.  A lot of them

 5    are appropriate.  A lot.  Many of them are, it seemed to me,

 6    perfectly appropriate.  I mean you're unwilling to answer any.

 7            I do understand the consternation but, for example,

 8    I'm looking -- randomly, Number 46, Lt. Carson Earnest and

 9    Sergeants Maciejewski, Pickering, Knasiak and Woods, at least

10    from -- The at least part is the problem, but from March 1st,

11    2004 were the plaintiff's supervisors.  Why can't you answer

12    that interrogatory?  I mean it's reasonable.

13            MR. KERTEZ:  Well, for a number of reasons, Judge.

14    First of all, this is way too numerous to get --

15            THE COURT:  No, sir, it's not.

16            MR. KERTEZ:  Well, I mean ((inaudible) - multiple

17    voices.)

18            THE COURT:  There's no set number, and I found a

19    case, and I agree with you, I would never have done this.  And

20    maybe what I should have done is just stricken all of them and

21    just denied Mr. Longo's -- or granted your motion, but I, you

22    know, I have a real strong belief that cases should be decided

23    on the merits and that Mr. Longo should have a chance to re-do

24    it.  Maybe that wasn't the right call but that's what I did.

25            I found a case the other night with 1441 requests to
```

1  admit and it was sustained.  Now most don't do that.  I've got

2  a case right here I could give you folks where there were 400

3  requests and in a case in New York, and it said first:

4       "Defendant's application to compel further responses from

5       plaintiff to many of the defendant's more than 400

6       requests to admit is denied.  Plaintiff indeed might have

7       moved to strike the requests, not only as unduly

8       burdensome but also . . ."

9  Well, the rest of it I won't go into because that is a

10  different part to this.

11          So I think that just to say that there's 177 --

12          MR. KERTEZ:  Well --

13          THE COURT:  -- or 234 is not the answer.

14          MR. KERTEZ:  Your Honor, let me address this one in

15  particular since you've brought it up.

16          THE COURT:  Yes.

17          MR. KERTEZ:  And I think --

18          THE COURT:  But that seems so obvious to me.

19          MR. KERTEZ:  Okay, Judge, here's the problem with

20  this.  This has really multiple subparts, too.  We're talking

21  about Carson, Earnest, Maciejewski, Pickering, Knasiac --

22  (inaudible, multiple voices) --

23          THE COURT:  Well, the fact that -- Let me -- The fact

24  that there's subparts doesn't have the talismanic significance,

25  I think, that you think that it has.

1    MR. KERTEZ:  Some (inaudible).  It's not that,
2  there's another reason.  This --
3    THE COURT:  Okay.
4    MR. KERTEZ:  -- says from March 1st, 2000 to when?
5  Till the present?  Well, in fact, Sergeant Knasiac is no longer
6  there, so he's not a supervisor at this point, he's retired.
7  In order to answer this would require us to parse out various
8  portions of it which case law indicates we're not supposed to
9  do.  These should be constructed so that we can admit or deny
10  without having to say, well, --
11    THE COURT:  And I understand.  I do.
12    MR. KERTEZ:  -- you have this -- And that's the
13  problem with that one.
14    THE COURT:  Let me --
15    MR. KERTEZ:  But we also, Judge --
16    THE COURT:  Shhhhh, shhhhsh.
17    MR. KERTEZ:  May I make one more statement?
18    THE COURT:  Sure.  Well, you've already won me over.
19    MR. KERTEZ:  Okay.
20    THE COURT:  The next one says the defendant does not
21  know how many times the plaintiff had to work alone without a
22  partner and then it gives dates.  Now the question is, the way
23  this is phrased, is if there's no dispute that at least during
24  one period of time or another during these years he worked
25  alone, that's one thing.  If there is a dispute that he didn't

1    work alone ever during these years -- I mean (inaudible) he

2    thinks that the defendant does not know how many times the

3    plaintiff had to work alone without a partner in 2002.  Could

4    you answer that?

5              MR. KERTEZ:  Can I tell you what's wrong with that,

6    Judge?  (Inaudible) defendant does not know.  Who is the

7    defendant?  How am I going to --

8              THE COURT:  The defendant is the City of Chicago.

9              MR. KERTEZ:  Well, he never asked to figure this out.

10    This is a difficult thing to parse through and say how many

11   times did he work alone?  What do you mean by work alone?  Not

12   have a partner?

13             THE COURT:  Sure.  It says did not work alone without

14   a partner.  That's what it means.

15             MR. KERTEZ:  Well now here, Judge, sometimes the

16   police officer might be in a car with a partner.  Then the

17   partner --

18             THE COURT:  Well, that's not alone.

19             MR. KERTEZ:  Right.  That's not alone.  But then the

20   partner, even while he's working, he may have gone off and been

21   alone for part of that time.  What does that mean?  I don't

22   know.  I don't -- Does it mean for the whole night?  Does it

23   mean for -- He was doing this assignment?

24             THE COURT:  Now, I'm not going to do it like this.

25   If that's the way you want to do this --

```
 1          MR. KERTEZ:  (Inaudible) --

 2          THE COURT:  -- then you've found an unreceptive

 3  audience.  The case is about a guy who claims that they sent

 4  him out day after -- And I don't know what the truth is -- that

 5  they sent him out day after day alone, from the beginning of

 6  the shift to the end of the shift.  He's not talking about it

 7  and that's --

 8          MR. KERTEZ:  But that's not what this says.

 9          THE COURT:  Well, that's what it says to me.

10          MR. KERTEZ:  Okay.

11          THE COURT:  And if you think that I'm going to let

12  you go through 234 requests and convince me that there isn't

13  one, not one here that you can answer, then we're going to go

14  through them one by one.

15          MR. KERTEZ:  Well, your Honor, that I think is --

16          THE COURT:  You want to do that?  Let's do it right

17  now.

18          MR. KERTEZ:  Okay.

19          THE COURT:  And if, at the end, you have to answer a

20  sufficient number of these, I'm going to think of imposing

21  costs because I don't think it's appropriate.  I think there's

22  a number of these, you're absolutely right, you shouldn't have

23  to answer and I'm not going to make you.  But to say there's

24  not a single request that the City can't answer is nonsense.

25          MR. KERTEZ:  Well, your Honor, the last time we were
```

1    together you said that it was not the Court's job or our job to

2    go through hundreds of these things and try to figure out which

3    ones we can and cannot answer.

4         THE COURT:  No, sir, that's simply not true.  You

5    can't take a document, a request to admit, that is not

6    sufficiently numerous as to be inappropriate, as this is not,

7    and then say well, you know, there's a lot of these I can't

8    answer.  Therefore, I'll answer none.

9         The appropriate response is to answer the ones you

10   can and either object or file a motion for protective order,

11   but you can't say there's 67 that I just can't answer and

12   therefore I'm not going to look at the balance.

13        MR. KERTEZ:  Your Honor, there's more than 67 that

14   (inaudible) be answered.

15        THE COURT:  Then you can't -- Okay, you want to do it

16   that way?  Then we'll do it that way.  You can't say there are

17   234.  There are a number of them that I can't answer and

18   therefore I'll answer none.  You can't do that.  If none can be

19   answered, so be it.  But that's impossible.  I mean I thought

20   what Mr. Longo did the last time was inappropriate and I said

21   so.  And I gave him another chance.  Now I'm not sure that he

22   did a terribly much better job, but as I read these, and I read

23   them repeatedly over the last couple of days, there's some that

24   you could answer.

25        If you want to take the position that you have no

1   idea what they mean, then you're going to have to convince me.

2    Now the very first one, I don't know why he drafted it this

3   way.  I have a problem with the way it's drafted but in a sense

4   Sergeant Knasiak would stay at work.  How many (inaudible) can

5   be put in the car, a thousand in the ashtray.  Is it your

6   position that he never said that ever?

7            MR. KERTEZ:  It's my position that he asked him at

8   deposition and the case law says if --

9            THE COURT:  You didn't answer my question.  Try to

10  answer my questions.

11           MR. KERTEZ:  Yes.

12           THE COURT:  Not your questions.  Is it your position

13  that Knasiak never said that?

14           MR. KERTEZ:  There is a question of fact on that and

15  remember --

16           THE COURT:  You don't want to answer my question?

17           MR. KERTEZ:  Well --

18           THE COURT:  Then I'm going to order you to start

19  answering -- If you don't want to answer my questions, I'll

20  just start ordering you to answer this.

21           MR. KERTEZ:  No, your Honor --

22           THE COURT:  You pick how you want to do this.

23           MR. KERTEZ:  Your Honor, --

24           THE COURT:  But I'm not going to do it the way you

25  want to do it.

1          MR. KERTEZ:  That --

2          THE COURT:  That was just a stonewall.

3          MR. KERTEZ:  No, your Honor, let me just explain.

4    Sergeant Knasiak denies that he said this.

5          THE COURT:  That's all I said.

6          MR. KERTEZ:  All right, so --

7          THE COURT:  That's all I asked you:  Is it your

8    position -- If you were on trial today and this was the opening

9    statement and it was a bench trial, would you say, after I

10   heard Mr. Longo, would you say to me Judge, the evidence is

11   going to show that Sergeant Knasiak didn't say that?  Or are

12   you going to say well, Judge, he did say that but you know

13   what?  He's just a kidder.

14         MR. KERTEZ:  The answer would be, Judge, that there

15   would be certain people who will say he said it, certain people

16   who say he didn't say it.  Requests to admit --

17         THE COURT:  You're -- Well, but the question is

18   what's your position as the defendant?  Of course there's going

19   to be people who will say he did.  Otherwise Mr. Longo wouldn't

20   have a case.  If he has one person to say it and it's the

21   plaintiff, that's enough to win.

22         MR. KERTEZ:  Well, (inaudible) at trial.  The purpose

23   of a request to admit is to get people to admit what is not in

24   dispute.  I mean --

25         THE COURT:  I understand that.  My question to you is

1   simply is it your position as the representative of the City of

2   Chicago that this didn't happen?  You're free to go to the jury

3   and say well, some people said it didn't and some people said

4   it did.  The jury is going to make the decision.  What's your

5   position?

6           MR. KERTEZ:  Our position is that he didn't say that.

7           THE COURT:  That's all I asked you.  That's all I

8   asked you.

9           MR. KERTEZ:  He testified that he didn't say it.

10          THE COURT:  Here's the problem.  If you have a

11  dispute, Mr. Longo, and if you know there's a dispute, Knasiak

12  says one thing, Sommerfield says another, Smith says another,

13  Lefty, Curly, Moe and (inaudible), they're not quite sure, and

14  you know, Rock says something.  That's not the basis for a

15  request to admit.

16          You know, one of the cases that is cited is an

17  opinion by Judge Moran.  And his stuff is really quite

18  extraordinary all the time.  Let me find it.  What he says

19  is. . .                                          (Pause.)

20          I can't find it.  Hold on.

21          MR. LONGO:  While you're looking for it, your Honor,

22  could I say that that's why we asked these requests to admit to

23  determine the City's position.  Are they admitting this or

24  denying this, so we know what we need to prove at trial.

25          THE COURT:  No, no, look.  Here's what he says.  I

1   can't find it.                                          (Pause.)

2          The last dispute relates to a request to admit and

3   I'm now reading from Dracuyli (phonetic) vs. Swedish Covenant

4   Hospital, which is in Tab 5 of the City's presentation.

5          MR. LONGO:  I'm sorry, it's what?

6          THE COURT:  It's in Tab 5.

7          MR. LONGO:  Okay, thank you.

8          THE COURT:  It says -- The case that they've sent me

9   about it -- One motion seeks leave to ask the hospital, ASA and

10  Dr. Loba, for dates on which various hospital bodies or Dr.

11  Loba reviewed, if they reviewed various patient records.

12         "These are matters which were subject to inquiry during

13          deposition.  Recollections were vague.  There was nothing

14          to suggest that the institutional defendants came up with

15          more precise answers than the persons upon whom they must

16          rely for information or that Dr. Loba can clarify by

17          interrogatory answer.  We see no reason to compel those

18          defendants to go through that exercise."

19         And I think that's absolutely right.  If these are

20  matters that are disputed, you know what the dispute is.  The

21  purpose of requests to admit is simply to get you to have

22  simple answers so in this case, since discovery is over as it

23  relates to the kinds of things we're talking now, there can be

24  a simple yes or no.  Not a complicated explanation, not for

25  discovery purposes, so that you don't have to put on anybody to

1  say that Knasiak said these things.

2  　　　　Anyway, this isn't an area that you don't understand

3  is in dispute.  This is at the heart of the dispute of the

4  case.  Otherwise this case would have been settled and we

5  wouldn't be sitting here today.

6  　　　　Well, Mr. Longo, I'm not going to argue about these

7  things.  This is the most basic stuff in the entire world.  The

8  cases that the City cites, and frankly there's infinitely more

9  than this, and better than what they've cited, but the cases

10 they cite say what they say they say, they really do.  Let me

11 just give you a couple of more.

12 　　　　And I'm reading now from T. Rowe Price Small Cap Fund

13 vs. The Oppenheimer Company, 174 Frd. 38 at page 42, the

14 Southern District of New York 1997:

15 　　"Rule 36 is not a discovery device.  The purpose of the

16 　　Rule is to reduce the costs of litigation by eliminating

17 　　the necessity of proving facts that are not in substantial

18 　　dispute to narrow the scope of dispute issues and to

19 　　facilitate the presentation of cases to the trier of fact.

20 　　"Because requests for admission are used to coerce

21 　　admissions of fact about which there is no real dispute,

22 　　they can be particularly helpful in expediting and

23 　　streamlining litigation.  Likewise, requests for

24 　　admissions can save litigants' valuable time and

25 　　substantial money which otherwise would have to be spent

1      unnecessarily either to prove certain facts at trial or to

2      establish certain facts that complex or costly discovery

3      procedures such as interrogatories, depositions and

4      request for production of documents when such facts are

5      not contested."

6          There isn't any doubt on earth that this kind of

7   stuff that you've got in the first, let me count them, the

8   first eight interrogatories are hotly-disputed.  They're at the

9   core of the case.  Without these things there would be no -- No

10  complaint would have been filed and if they were admitted you

11  would have been on to proving damages.

12          MR. LONGO:  Can I ask you a question, your Honor?

13  They had an internal investigation and they found that there

14  was discrimination and harassment.

15          THE COURT:  That's -- They may have found that.  The

16  City is disputing it.  And I'm not -- I can't review every

17  single thing you've done in this case, Mr. Longo, and I'm not

18  going to do that.  I want you to have what you're entitled to

19  have, but you're not going to have what you're not entitled to

20  have, and so Requests Number 1 through 8, the City's motion is

21  sustained.  These are the disputed things to ask the City.  To

22  admit them is inappropriate.  They've denied them repeatedly in

23  depositions and throughout the course of the litigation.

24          These requests do not fulfill the appropriate and

25  statutory purposes of a request to admit under Rule 36.

1          Number 9.  It says:

2      "Absent plaintiff's complaint about discrimination and

3      harassment, the police department did not provide any

4      training for officers, sergeants, lieutenants on national

5      origin," --

6  -- and on and on and on and on.  Let me ask you this:  Is it

7  the City's position that there were -- Does the City concede

8  that this fellow complained about discrimination and

9  harassment?  Or is it your position --

10          MR. KERTEZ:  That's the point.  He did, yes.

11          THE COURT:  Okay.  I think this is too cumbersome and

12  too complicated.  This is not the kind of simplistic request,

13  Number 9 is not, that is contemplated, and so the motion is

14  stayed as denied.

15          MR. LONGO:  Well, your Honor, doesn't the (inaudible)

16  in Number 9 just ask if they had any training?

17          THE COURT:  No, it says after they complained, it

18  then says the police department did not provide any training

19  for officers, for sergeants, for lieutenants, on national

20  origin, harassment, religious and (inaudible).  And then you've

21  got this long parenthetical that's four lines long they have to

22  go through to try to even figure out who this is relating to.

23  The motion is granted as to Number 9.

24          You know, let me go through the ones that I think

25  have some arguable merit and let me hear from the City, and the

1    rest I don't think do for the various reasons that are set

2    forth in the City's motion and for the reasons that I've

3    already said and I'll read some more cases.  Let me do that now

4    so this will be at the beginning of this and not at the end

5    because this will come up later on as well.

6              In a case called AL-JUNBI (phonetic) vs.

7    Rockefeller, --

8              MR. LONGO:  I was going to cite that to your Honor.

9    Okay.

10             THE COURT:  91 Frd. 590 at 594.  I think it's the

11   Southern District of New York, 1981.  The District Court goes

12   on to say:

13       "It is well established that possession of information by

14       the requesting party is irrelevant to the propriety of

15       requests to admit, the purpose of which is not to discover

16       information but to narrow the issues at trial, citing

17       Morse Better Practice."

18             As I have noted, the Court in Delanski (phonetic)

19   held the defendant there was bound to notice and admit matters

20   in the prior sworn testimony of its employee, absent some

21   persuasive showing that undue burdensomeness or other valid

22   grounds for objection and considering the utility of expediting

23   this litigation I see no reason why the executor should not be

24   required to admit matters that Mr. Rockefeller admitted in

25   sworn testimony, and I put this in because this is going to

1  factor into some of these later where you're apparently asking

2  them to concede things that were said during the course of the

3  testimony.

4         So then, in J.P. Morgan-Chase Bank vs. Liberty

5  Mutual, 2002 Westlaw, 31159139, which is in the Southern

6  District of New York 2002, which I started to read to you

7  earlier, the District Court said:

8      "The defendants' application to compel responses from

9      plaintiff to many of defendants' more than 400 requests to

10     admit is denied.  Plaintiff indeed might have moved to

11     strike the requests not only as unduly burdensome" --

12  And this is the part that I left out before:

13  -- "but as disguised and improper interrogatories and requests

14     for documents for virtually every request" --

15  And then he goes on to explain what he's saying.

16        He then goes on to quote "Moore's Federal Practice,"

17  and says:

18     "Because Rule 36 was not designed to elicit information,

19     to obtain discovery of the existence of facts, to obtain

20     production of documents, requests for admissions should

21     not be used as a method of discovery  for those purposes."

22        Then, of course, there are the various cases that are

23  cited in the City's brief that deal with legal conclusions and

24  how that's inappropriate for purposes of legal conclusions.

25        Another case that articulates the general principles

1　but does it in a way that I think is worthwhile to talk about,

2　is a case called Spartan Corporation vs. The United States,

3　which is a Federal Court of Claims decision and it's reported

4　at 77 Fed.Claims 10, but it has a Westlaw cite which let me get

5　for you.  Well, maybe that is the cite.

6　　　　"The requirement that each matter be separately set forth

7　　　　in a request for admissions was added to Rule 36 during a

8　　　　1970 amendment.  It was already well established as a

9　　　　requirement by prior case law.  Federal courts have long

10　　　　required that requests for admission be simple, direct,

11　　　　and concise so that they can be admitted or denied with

12　　　　little or no explanation or qualification," --

13　Citing many cases.

14　　　　　　Another series of cases that that court cites:

15　　　　"Accordingly, incorporation by reference of another

16　　　　document in a request for admission has generally been

17　　　　held improper,"

18　Citing various cases.

19　　　　"This court agrees with defendant that plaintiff's request

20　　　　for admissions are much too complicated to answer with a

21　　　　simple admit or deny."

22　　　　"Federal courts have found the requests for admission to

23　　　　be unduly burdensome when they are excessive in number and

24　　　　I don't think that they are here."

25　　　　　　They certainly were before -- Those are my words, not

1  the court's words -- where they are excessive in number,

2  complicated and or ambiguous.

3                                                    (Pause.)

4      He goes -- This court also goes on to say:

5      "As acknowledged by the plaintiff, the purpose of requests

6      for admission is to establish facts about which there was

7      no real dispute in order to expedite litigation and save

8      the time and money that would otherwise be spent on

9      unnecessary discovery to prove facts at trial."

10                                                   (Pause.)

11     Those are the sort of general propositions that we're

12  operating under here, Mr. Longo.  And that's the way that I

13  wanted to deal with this, so let's go on.

14     Let me ask what's wrong with Number 12, of the City,

15  what's wrong with that question?

16                                                   (Pause.)

17              (No audible response.)

18     THE COURT:  Nobody from the defendant ever discussed

19  with the plaintiff about separating Sergeant Knasiak from the

20  plaintiff after the plaintiff complained about the plaintiff

21  had complained about harassment and discrimination.  So that's

22  a simple question.  Did anybody, did any representative of the

23  City of Chicago ever discuss -- Now the question is, is that a

24  disputed fact?  Do your folks say they did talk to him about it

25  and he denies it?  If so, I'm not going to make you answer

1   this.

2   　　　　MR. KERTEZ:  Yes.  Yes, that really -- (inaudible,

3   multiple voices) --

4   　　　　THE COURT:  Well then, I'm going to order you to

5   answer Number 12.  That's a simple yes or no question.

6   　　　　MR. KERTEZ:  Okay, your Honor, may I just have one

7   arbitrary (inaudible)?  When you say nobody from the defendant,

8   we have thousands of police officers.

9   　　　　THE COURT:  That means you, sir, cannot answer a

10  single request to admit ever because you've got too many

11  people, and you're right, no corporate entity and no

12  governmental entity ever has to answer --

13  　　　　MR. KERTEZ:  Well --

14  　　　　THE COURT:  -- a request to admit.

15  　　　　MR. KERTEZ:  But your Honor, what if he had said

16  Lieutenant Carson Earnest never discussed with the plaintiff?

17  　　　　THE COURT:  (Inaudible), what would you say to them?

18  　　　　MR. KERTEZ:  Well, then I (inaudible) did you say I

19  did?  We deny it.  That would be simple and correct.  Nothing

20  from the defendant -- There are tons of people that are with

21  the Chicago Police Department, if we are giving -- (inaudible,

22  multiple voices).

23  　　　　THE COURT:  This case has been going on for two

24  years.

25  　　　　MR. KERTEZ:  If you had given me --

1          THE COURT:  Then answer it any way you deem

2    appropriate.  I'm ordering you to answer Number 12.

3          MR. KERTEZ:  All right.

4          THE COURT:  Officer Edward Burger complained that

5    Sergeant Knasiak discriminated and harassed him based on his

6    German name.  Now you tell me on what conceivable basis you

7    can't answer that?  That doesn't mean you agree with it.  It

8    means you either admit or deny.  It either happened or it

9    didn't.

10         MR. KERTEZ:  This is something that at the deposition

11   of Edward Burger.  We just talked about time to get admissions

12   from people that occurred at depositions.  Edward Burger was

13   deposed.

14         THE COURT:  Did Edward Burger complain that Sergeant

15   Knasiak discriminated and harassed him, yes or no?

16         MR. KERTEZ:  I could really dispute that.

17         THE COURT:  You know what?  I'm going to tell you

18   right now, what you're doing could not be more evasive.  You

19   could say Mr. Longo is not playing the game fair with this.

20         MR. KERTEZ:  Well --

21         THE COURT:  But what you're doing is absolutely

22   unconscionable.

23         MR. KERTEZ:  But --

24         THE COURT:  When you say you dispute it, look, there

25   is a deposition.  What did he say?

1    MR. KERTEZ:  But your Honor, are we to go --

2  (inaudible, multiple voices) all depositions that were --

3  (inaudible, multiple voices).

4    THE COURT:  I'll tell you what.  If you don't want to

5  answer my questions I'm going to order you to answer every

6  single one of these.

7    MR. KERTEZ:  (Inaudible, multiple voices) --

8    THE COURT:  You make the draw right now.

9    MR. KERTEZ:  I'm trying to answer --

10    THE COURT:  I'm not going to sit here and fight with

11  you.

12    MR. KERTEZ:  No, I don't want to.

13    THE COURT:  What you're doing is absolutely

14  unconscionable.

15    MR. KERTEZ:  Well, ask the question, your Honor, and

16  I'll answer it.

17    THE COURT:  You were at the deposition.

18    MR. KERTEZ:  I was not at that deposition.

19    THE COURT:  So that means then that you can't do this

20  exercise because you don't know the answer because you're not

21  the lawyer who was involved in the deposition?

22    MR. KERTEZ:  Well, I was not at this deposition.

23    THE COURT:  The City isn't going to play this game.

24  This case is going to go forward.  I mean Sommerfield is a big

25  liar, or he's telling the truth.  Or Sommerfield is telling the

1   truth and they didn't avail themselves of certain policies that

2   -- But somebody is going to resolve this case, and it isn't

3   going to be done with the City doing what it's doing.

4           I haven't let Mr. Longo do things that you haven't

5   liked.

6           MR. KERTEZ:  But your Honor --

7           THE COURT:  And I'm not going to let you do things

8   that are wrong.

9           MR. KERTEZ:  The whole point to that, Ed Burger was

10  deposed and he can get that information --

11          THE COURT:  Is it your position -- I just read you a

12  case from the Southern District of New York in which a judge in

13  the Southern District -- This is purely a discretionary matter

14  with me.  In which the judge said I see no reason why there

15  can't be a request to admit as to what Mr. Rockefeller said in

16  his deposition.  Want me to re-read it to you?  I will.  The

17  purpose of reading it to you before so that you would have a

18  background to all these things.  Let me read it to you again.

19          "Absent some persuasive showing of undue burdensomeness or

20          other valid grounds for objection, and considering the

21          utility of expediting this litigation, I see no reason why

22          the executor should not be required to admit matters that

23          Mr. Rockefeller has revealed in sworn testimony."

24          The case is AL-JUNBI vs. Rockefeller, 91 Frd.590 at

25  594, New York 1981.  So I'll ask you one more time --

1           MR. KERTEZ:  Well, but what's --

2           THE COURT:  Did Mr. Burger complain that Sergeant

3    Knasiak discriminated and harassed him based on his German

4    ancestry and Jewish origin?  Your position is he said one thing

5    or another at the deposition.

6           MR. KERTEZ:  No.

7           THE COURT:  So what?

8           MR. KERTEZ:  Your Honor, if I can point out something

9    else that's wrong with this particular formulation --

10          THE COURT:  You are ordered to answer Number 13.

11          MR. KERTEZ:  All right --

12          THE COURT:  Number 14 is Officer Abuzanat complained

13   that Sergeant Knasiak discriminated and harassed him by

14   referring to his Muslim religion and his Arabic nationality.

15   You are ordered to answer 14.

16          MR. KERTEZ:  Your Honor, if I could have a moment

17   just on 13 and 14 quickly, it says complained.  Complained to

18   whom?  Don't you think this is ambiguous?

19          THE COURT:  If I thought it was ambiguous, sir, I

20   wouldn't tell you to answer it.

21          MR. KERTEZ:  All right.

22          THE COURT:  If you don't understand the word

23   complain, then you ought to go and have a refresher course in

24   the English language.  You don't know what complain means.  Are

25   you serious?

1    MR. KERTEZ:  Well --

2    THE COURT:  You can stand here as an officer of this

3  court in this building and say to me that in the context of

4  this case, after two years, you don't know what the word

5  complained means in the context in which it's used?  Then the

6  City ought to get themselves a new lawyer, pardon me for saying

7  so.

8    Number 15, no policy exists to insure the employees

9  of the Chicago Police Department view streaming videos.  I

10  think that's vague.  I have no idea what that means.  Streaming

11  videos on what?  15 you need not answer.

12    MR. LONGO:  Streaming videos is a -- (inaudible,

13  multiple voices) --

14    THE COURT:  No, we're not doing this, Mr. Longo.  You

15  had your chance.  In the face of what you had before with, I

16  don't (inaudible) 800 or 700 or whatever, I don't think anybody

17  in the building, or few people in this building would have

18  given you another chance.  But you're not going to get a third

19  shot at it.  The thing is the way it is.  I mean that objection

20  is almost as bad as a lawyer standing here and telling me he

21  doesn't know what complaining about racial discrimination or

22  ethnic discrimination means.

23    Since 2000, (inaudible) streaming video, the Chicago

24  Police Department has had employees watch relating to

25  discrimination and harassment involved sexual harassment, which

1    is a few minutes, and then he's apparently got the title Bates-

2    stamped 1607, and does not discuss national origin

3    discrimination or religious discrimination or harassment.

4    What's wrong with that?

5            MR. KERTEZ:  Well, first of all, your Honor, it is

6    confusing.  Second of all --

7            THE COURT:  It's not confusing to me.  To say it's

8    confusing isn't the answer.

9            MR. KERTEZ:  Okay, well --

10           THE COURT:  How is it confusing?  How are you

11   confused?

12           MR. KERTEZ:  I don't -- (Inaudible) well, let me just

13   go to the point that I think is most important here.

14           THE COURT:  Listen to me.  For you to say it makes no

15   sense isn't the answer.

16           MR. KERTEZ:  Okay, the answer, Judge, is that Judge

17   Gottschall has said that he will not take any further discovery

18   on policy.

19           THE COURT:  Then why don't we talk --

20           MR. KERTEZ:  That's what this is.

21           THE COURT:  Then why don't we talk about things that

22   are meaningful, not whatever comes to your fancy?

23           MR. KERTEZ:  I'm sorry, your Honor, I should have

24   brought the most important --

25           THE COURT:  That's right, not things that have no

1  (inaudible) merit.

2          MR. KERTEZ:  I apologize for that but really, this

3  goes to policy.  She has said (inaudible) policy.  She told him

4  that he may not take any further.

5          THE COURT:  That is what I found most objectionable

6  from your side of the case, Mr. Longo, is that there are scores

7  and scores and scores of these that I view as a kind of -- And

8  I don't mean this in a critical sense.  I'm not talking about

9  your motivation, but this is the thing that I thought fell

10  within the J.P. Morgan-Chase Bank, Liberty Mutual Insurance

11  case that I cited to you folks before, where the District Court

12  said in the Southern District plaintiff will -- Here, hold on a

13  second.  It's George Racoff in the Southern District, and what

14  he said was:

15          "Plaintiff might have moved to strike the request not only

16          as unduly burdensome but also as disguised in improper

17          interrogatories and requests for documents for virtually.

18          . ."

19  And so on.  And what I saw in these is essentially a method for

20  you to obtain information about areas that you've assured me

21  you needed no further information about.

22          MR. LONGO:  Your Honor, this is something they

23  produced in discovery.  It's just like saying that they

24  produced a letter and I'd ask them admit or deny that Johnson

25  had signed this letter they produced in discovery.  I have a

1    copy of it.  I cited it by Bates stamp.  And I just wanted

2    admission or denial of -- It should be undisputed.  It's -- The

3    streaming video says what it says.

4         THE COURT:  But that's not what you're asking.  If

5    you're asking for the genuineness of that document which you

6    wouldn't need because anything produced in discovery, at least

7    that comes from a party, is by definition the fact that it's

8    produced and there's all sorts of cases on this, is

9    authenticated.  You don't need them to tell you that it's

10   genuine.  You want something different than an admission of

11   genuineness.  You now want to go beyond that and you now want

12   to get into the very area that you told me and you told Judge

13   Gottschall you needed no further information or discovery

14   about.  Now you didn't say I don't need it because I can get

15   everything I need through requests to admit.  That's not the

16   appropriate purpose of a request to admit.  And the City is at

17   a huge disadvantage now, and they've got to go through an

18   extraordinary degree of effort that they wouldn't have had to

19   go through or would have to go through had those things been in

20   a timely way.  That's what I found most objectionable about the

21   bulk of these things.

22        MR. LONGO:  But your Honor, can I ask you though?

23        THE COURT:  Not the -- (inaudible, multiple voices).

24   Yes?

25        MR. LONGO:  Can I ask you though, I mean the video

1    says what it says.

2              THE COURT:  But then you don't --

3              MR. LONGO:  It's not distinguished.

4              THE COURT:  That's right.  Then you don't need

5    anything more than the video.  You've just said it, Mr. Longo.

6              MR. LONGO:  I'd like to find out from them if they

7    admit it or deny it so I know what the provision --

8              THE COURT:  Admit or deny what?  That the video says

9    what it says?

10             MR. LONGO:  Yes.

11             THE COURT:  You don't need to -- That's like saying

12   my blue suit is blue.  It's tautologous.  If that's your

13   purpose then the City need not answer Number 16 since it's

14   unnecessary given your formulation of things.  You need not.

15   Do we understand each other?

16             MR. KERTEZ:  Yes.

17             THE COURT:  Number 17 I think is the same problem.

18   All of these that refer to this policy or practice, I think,

19   all suffer from the same thing.  16 and 17, I think, you need

20   not answer for the reasons that I've said.

21             Now 18, I don't understand why you can't answer that.

22    The Chicago Police Department did not train or instruct

23   Knasiak regarding policies of discrimination or harassment

24   after the plaintiff complained about discrimination or

25   harassment.  You concede to me that there were complaints at

1    some point in time.  So the point in time, whenever that was,

2    the question is did they do anything with Knasiak about

3    training or about discrimination?  I mean I think that's a fact

4    that's sufficiently bound up into the thing that's in the

5    complaint without trenching on this disguised use of requests

6    to admit that I think you can admit this.  I'm ordering you to

7    answer Number 18.

8          Number 19 I do think is vague, and especially the and

9    so forth at the end, which you also have in Number 11, the and

10    so forth, and I think those things make it impossible to answer

11    and they're vague, and you need not answer Number 19.

12          And what I say you need not answer, what I mean,

13    counsel, is that the City's motion is sustained as to the

14    things I said and you need not answer.

15          20, 21, I believe are -- suffer from your

16    representation that you don't need any more discovery and I

17    think what this is attempting to do, I believe (inaudible), is

18    get into the areas you assured me and Judge Gottschall you

19    didn't need to get into.  So you need not answer 20 and 21.

20          Now what's wrong with 22?  That seems to be simple.

21          MR. KERTEZ:  Well, your Honor, that goes to the

22    training again.  We're talking about training and --

23          THE COURT:  Well, not everything goes to training is

24    necessarily out of bounds.  I mean every time he uses the word

25    -- How -- Is training part of your original complaint --

1          MR. KERTEZ:  No.

2          THE COURT:  -- Mr. Longo?  (Inaudible) before you

3    added the (inaudible) counts?

4          MR. LONGO:  I don't want to make a representation

5    unless I'm absolutely certain, but I --

6          MR. KERTEZ:  No, it's not.  That's why he added --

7          THE COURT:  All right, so what -- The original

8    complaint, tell me again what it actually is.

9          MR. KERTEZ:  The original complaint complained about

10   discrimination and harassment in terms of religion, in terms of

11   national origin.

12         THE COURT:  And it's a hostile work environment?

13         MR. KERTEZ:  Yes.

14         MR. LONGO:  And that's not --

15         MR. KERTEZ:  And in terms of retaliation.  That was

16   it.  It was Title 7 and it had nothing to do with Section 1983,

17   failure to train, failure to investigate, failure to do

18   anything.

19         THE COURT:  Right.

20         MR. KERTEZ:  This is all bound up into that --

21         THE COURT:  And I understand.  You needn't --

22         MR. LONGO:  I believe it did indicate, though, that

23   the City did nothing to stop Sergeant Knasiak though he had

24   complained -- (inaudible, multiple voices).

25         THE COURT:  Well, but I think that's different.  You

1   can prove that in whatever way you want to prove it.  I mean

2   Knasiak gets on the stand I think it's fair game to say to him

3   even after the complaints nobody ever instructed you not to do

4   anything.  I mean you can do that through cross-examination.

5   And that's going to be an integral part of your examination

6   whether you've got this request to admit or not.

7         I mean the case isn't going to go to the jury, Mr.

8   Longo, and you know this, where you get up and you need some

9   answers to requests to admit and answers to interrogatories and

10   you sit down.  Your whole case is about crushing Sergeant

11   Knasiak and making him look like a liar and a discriminator.

12         MR. LONGO:  Well, I'm sure the defendant is going to

13   file a motion for summary judgment.  They've already indicated

14   that they are, so answers to requests to admit would assist me.

15         THE COURT:  I understand that, but I can't -- It's

16   not the function of a request to admit to do what you're doing

17   and that's to beef up something that you assured me and assured

18   Judge Gottschall you needed no further discovery about.  So I

19   understand what you're saying.

20         MR. LONGO:  But can I ask you a question though?

21         THE COURT:  Yes.

22         MR. LONGO:  Even if you don't need further discovery

23   on an issue, I mean you can still, I would think, be able to

24   ask a request to admit regarding it.

25         THE COURT:  I know, but then you've defeated the

1  whole purpose of the representation you made.  You said to me

2  and said to her look, I don't need discovery.  I can do this

3  through requests to admit.  I would have thought -- I would

4  have for sure come to the same conclusion.  I don't know what

5  Judge Gottschall would have done on your appeal though.  I mean

6  I think that's a fair question, Mr. Longo, because she sure

7  thought that you were done.  Not that you weren't done and that

8  you had a kind -- and when I say disguised, that's not the

9  right word.  That you had an additional vehicle to get the very

10  information that you assured her you didn't need.

11       Now maybe she would have said well, you know what?

12  My view of requests to admit, that would be okay.  And then

13  that's fine.  Nobody would be griping about this.  The City

14  wouldn't be happy but they wouldn't be as exercised as I think

15  they rightly are.  And so --

16       MR. LONGO:  If it makes any difference to your

17  Honor --

18       THE COURT:  Yes.

19       MR. LONGO:  -- we filed a motion.  There seems to be

20  a misunderstanding in the transcript as it relates to

21  investigations.  I specifically indicate that we do need more

22  discovery and we filed a motion before Judge Gottschall because

23  there seems to be a misunderstanding about it.

24       THE COURT:  I'm not waiting.  I'm going ahead.

25       MR. LONGO:  Sure, I understand.

1          THE COURT:  If Judge Gottschall allows you to do

2    something, then you'll do whatever you think is appropriate but

3    the way the thing stands now and the way I understood you, and

4    I guess maybe I have the advantage that Judge Gottschall

5    doesn't have.  It's kind of like a jury or a judge, you know,

6    making a decision on a Batson (phonetic) claim or any other

7    claim on credibility, I had the benefit of I don't know how

8    many hours we were at it that day.

9          MR. LONGO:  How many hours what that day?

10         THE COURT:  We were at it that day.  You know, our

11   sessions tend to be long.  You even drove away poor -- Where's

12   your colleague in the case?

13         MR. LONGO:  Unfortunately she's doing other matters

14   today, your Honor, or she'd be here.

15         THE COURT:  See, she couldn't -- She knew this was

16   going to go on and on and she didn't have the -- She probably

17   was tired, Mr. (inaudible), you drove her out of the case.  So,

18   but I had the benefit of, you know, that interchange with you

19   and so to the extent that that, you know, that physical

20   intimacy does anything I think I had the benefit of

21   understanding what you were saying in a way that Judge

22   Gottschall didn't because she isn't here.  But I leave that all

23   to her.  I'm going on the basis of what I thought we all agreed

24   to.  All right, so I haven't finished this.  So 22 and 23 you

25   need not answer.

1          This 24 is really the same thing except you just

2     don't use the word policy.  Well, but wait.  It seems to me the

3     retaliation comes after the complaints, right?

4                         (No audible response.)

5          THE COURT:  Right?

6          MR. LONGO:  Yes.

7          THE COURT:  No, I think you can answer 24.  The City

8     can make sure to answer 24.  I think this is sufficiently

9     removed yet sufficiently integral to your case, to your

10    retaliation case, that the City ought to be able to do that.

11         25, I think 25 is duplicative, frankly, of 24, and

12    you need not answer 25.

13         26 is absolutely a legal conclusion.

14         27 is also a legal conclusion so you need not answer

15    26 or 27.

16         MR. LONGO:  Isn't that part of their affirmative

17    defense?

18         THE COURT:  Well, their affirmative defense has

19    nothing to do with a request to admit which seeks a legal

20    conclusion.  I mean maybe -- They're going to have to prove

21    their affirmative defense, but you can't ask them to admit or

22    deny the ultimate legal issue in the case.  So 26 and 27 you

23    need not answer.

24         28 you need not answer.

25         29 you need not answer.  And again, these are all the

1    policy questions that deal with what I think is an

2    inappropriate use of Rule 36 in this context.

3            31 you need not answer.

4            32 you need not answer.

5            33, the same.  You need not answer.

6            34 you need not answer.

7            35 you need not answer for the reasons I've said plus

8    I don't understand this.  I think this is -- Unintelligible is

9    one way to put it.  Vague is a kindlier way to put it.  I mean

10   a more legal way to put it.

11           36 is you need not answer.  These are all policy

12   questions that go, I think, to the next complaint.

13           37, I think 37 is a policy question but it's also

14   vague.

15           38, 39, 40, and 41 -- sorry, 40, you need not answer.

16    These are all, I think, the inappropriate use of requests to

17   admit to get into the things that are part of Sommerfield, what

18   I think the City called Sommerfield 2.

19           41, though, what's wrong with 41?  On several

20   occasions the plaintiff was required to use his own car to

21   perform hospital duty.  What's wrong with that?

22           MR. KERTEZ:  Okay.  First, your Honor, I think it's

23   vague and ambiguous to say several occasions.  If you had

24   indicated when then we could check that out.  This makes it

25   very hard for us to know, on several occasions.  I mean he's

1   been with the City for a long time.  For us to go through all

2   those records to try to figure that out I think is difficult.

3   If he had told us here, here and there he was required to use

4   his own car --

5           THE COURT:  Okay, well, let me just ask you a simpler

6   question.

7           MR. KERTEZ:  -- then we can do that.

8           THE COURT:  During the course of any deposition, did

9   anybody on the City's side concede that he was required to use

10  his own car to perform hospital duty?

11          MR. KERTEZ:  No.

12          THE COURT:  Okay.  So I think that this isn't going

13  to be then something -- This sounds like it's a disputed item

14  so you don't have to answer 41.

15          MR. LONGO:  But nor do they deny it.

16          THE COURT:  Well, but that --

17          MR. LONGO:  That's why we --

18          THE COURT:  What they have to do now, in order to do

19  this, I do think this is burdensome.  They would have to go

20  back through every record and every person he ever worked with

21  to figure this out.

22          MR. KERTEZ:  Right.

23          THE COURT:  Had you said, for example, on X date, I'd

24  order the City to answer because I think it's not a burdensome

25  thing to go back and check the records.  On several occasions,

1    when?  How?  The guy -- Is he still working for the City or no?

2              MR. LONGO:  Yes.  Are you talking about the

3    plaintiff?

4              THE COURT:  Yes.

5              MR. LONGO:  Yes.

6              MR. KERTEZ:  Yes.

7              THE COURT:  So I think this is -- 41 is --

8              MR. LONGO:  Knasiak the City is --

9              THE COURT:  -- is gone.

10             MR. LONGO:  -- going to retire.

11             THE COURT:  I know.  Knasiak is gone.

12             MR. LONGO:  That was last year.

13             THE COURT:  I understand.  But we're talking about

14   the plaintiff.  I think that 41 is burdensome and vague.

15             On many occasions the plaintiff was required to work

16   alone.  I think that's the same kind of a thing.  42 you need

17   not answer.  It's vague and would be burdensome.

18             43, for the same reason you need not answer.

19             MR. LONGO:  But your Honor, I mean isn't that --

20             THE COURT:  Well, do we know -- Was there testimony

21   from Sergeant Sommerfield at the deposition where any of the

22   City folks said yes, he did complain to me?

23             MR. KERTEZ:  No.

24             MR. LONGO:  Yes, one of them did, and then the other

25   said he didn't remember.

1        THE COURT:  Well, then you fall into the category I

2    gave you of Judge Moran's opinion, where he said there's no

3    point in going through the useless exercise of having to deny

4    it.  I'm not going to -- Mr. Longo, I don't think it's fair --

5    and I don't mean it in a pejorative sense -- I think it's

6    unfair in the sense that Judge Moran spoke about it, and that

7    is to say in fact people who say one thing, there's no point in

8    making them go through what he calls the useless of exercise of

9    having to repeat what they said at the depositions.  It's one

10   thing to say, I mean you've got a 500-page deposition and you

11   want somebody to admit one statement in there, I think that's

12   okay.  But now they've got cases, the City's got cases that say

13   you shouldn't have to do that.

14        But this is hugely discretionary.  But that isn't

15   what you've got here so I'm going to sustain the City's

16   objection to Number --

17        MR. LONGO:  43?

18        THE COURT:  -- 43 and I don't know what 44 means.

19   What do you mean by that?

20        MR. LONGO:  Well, I want to know if there's any

21   records that exist (inaudible) that was had to do hospital

22   duty.

23        THE COURT:  This is the same problem.  They have to

24   go back through -- I think 44 is unduly burdensome and the City

25   need not --

1          MR. LONGO:  But your Honor, wouldn't that be pretty

2  -- not simple but wouldn't that be pretty -- it's either they

3  have records or they don't?

4          MR. KERTEZ:  No.

5          THE COURT:  I know, but you already know if you had

6  the records if you reviewed the records to see whether or not

7  -- what it reflects.  Do you see what I'm saying?  In fact, the

8  guy who -- It's not just -- There were seven days during the

9  course of Mr. (inaudible)'s employment when he was out of work.

10  Well, I suppose you could say it isn't too hard to review time

11  cards for many years but you've still got to look through every

12  time card.  So I do think 44 would be burdensome.

13          And I think 45, you get back to the same thing.

14  Look, you're going to put on your proof.  The City, I assume,

15  if it's been faithful to its obligations in discovery, isn't

16  going to put on any evidence.  He's going to say I had to work

17  hospital duty not less than 27 times.  The City is going to be

18  silent.  Zero.  So it doesn't really -- It's not going to

19  streamline anything.

20          Now if they come up with records that they hadn't

21  produced in discovery, Judge Gottschall is not going to let

22  them use them.  You're going to get up and object and she's

23  going to say these things weren't produced in discovery and

24  she's not going to let them in.

25          44, -- What's wrong with 46?  That I really don't

1   understand.  It seemed the simplest thing of all.  Did we do

2   that?

3          MR. KERTEZ:  Your Honor, we've already dealt with

4   that actually.

5          THE COURT:  Tell me again because I just --

6          MR. KERTEZ:  Okay, first of all we're talking about a

7   whole bunch of different potential supervisors here with

8   different lengths of service --

9          THE COURT:  It doesn't matter.

10         MR. KERTEZ:  -- with the City of Chicago.

11         THE COURT:  What's the difference?

12         MR. KERTEZ:  In particular, we have somebody here who

13   is no longer an employee of the City, Knasiak, so --

14         THE COURT:  That's not a basis --

15         MR. KERTEZ:  -- March 1 --

16         THE COURT:  That's not a basis for not answering.

17   That's your answer.

18         MR. KERTEZ:  Your Honor, we've already addressed that

19   and already decided the Court --

20         THE COURT:  I know but I've refined myself.

21         MR. KERTEZ:  Oh, all right.

22         THE COURT:  I've re-thought this.

23         MR. KERTEZ:  Okay, fine.

24         THE COURT:  Wisdom comes slowly.

25         MR. KERTEZ:  But okay, but in any event, your Honor,

1    I still say that it's way too complicated.  This does not --

2              THE COURT:  No, you can answer --

3              MR. KERTEZ:  -- allow for --

4              THE COURT:  You can answer 46.  Either these people

5    were the supervisors or they weren't.  If you want to put in

6    periods of time they were -- Your answer could be at something

7    during March 1 or from March 1, 2004 to -- you can add whatever

8    you want, these people were his supervisors.  You can put in

9    when Knasiak left, almost as an admission that they supervised

10   him at some point in time.  That's simplicity itself.

11             47.  47 I thought we did.  You don't have to answer

12   that.

13             48, 49, 50, 51 and 52, I take it, are from Lt.

14   Earnest's deposition?

15             MR. KERTEZ:  Correct.  That's all correct, yes.

16             THE COURT:  Okay, but if he said that we're then back

17   to my -- It's a coin (inaudible).  Why not just answer it?  Why

18   does he have -- Here's the problem.  What Mr. Longo is going to

19   have to do you're going to have to do with him is pick up a

20   deposition and start going through it and having the judge make

21   a determination of what's in and what's out.  It's so much

22   easier to do this.  If this is what the person said, then why

23   not say yes?

24             MR. KERTEZ:  Your Honor, again my point would be he

25   has this.  If he wants to argue some (inaudible) of how it came

1    out at the deposition, do that.  But he has that testimony.  To

2    have us go through the deposition and look, because he didn't

3    tell us what page, so we'll have to look through the entire

4    deposition to find this, is very, very burdensome, I think, on

5    us, when he gives us this kind of stuff to look through.

6            MR. LONGO:  All requests to admit require the other

7    party to look at documents, et cetera.

8            MR. KERTEZ:  No.

9            THE COURT:  Well, but it does, because it's not

10   (inaudible) something and the Rule specifically says it's not a

11   fair answer to say well, I don't have the information and I've

12   got to go get it.  That's true.  But the question then is how

13   burdensome is it to do it, and if you've got this -- Your

14   representation to me is from 48 to 52, these are statements

15   taken from depositions of Lt. Earnest, right?

16           MR. KERTEZ:  Yes, correct.

17           THE COURT:  Mr. Longo?

18           MR. LONGO:  Yes.

19           THE COURT:  Okay.  So the question now is since

20   you've got it, ought I to make the City say yes, this is what

21   they said and the point being why should I make them do that

22   and put them to that task if it's really not necessary?

23   Because their point is we don't know where he said this.

24   You've got to have -- We don't know if this is an actual quote.

25    We've got to go back and look.  This is information uniquely

1  within your control because you've read the depositions.  We

2  don't know if this is a quote, a summary.  We don't know if

3  things were said later.  I mean I --

4          MR. LONGO:  I think it's streamlined seeing as your

5  Honor pointed out --

6          THE COURT:  I agree, it does.

7          MR. LONGO:  -- in the (inaudible) case.

8          THE COURT:  I think it does, and it's a discretionary

9  call as to whether I should make them answer it or not.  You

10  know, the point is -- Earnest apparently has amnesia when he

11  testifies.  He says no.  It's not his job and it's not within

12  the scope of anything he has to say.

13          Here's what I'm going to do.  I'm going to order the

14  City to answer 48 through 52 contingent upon Mr. Longo, you

15  giving them the page numbers of the deposition, (inaudible),

16  the page numbers of the depositions.  Because you've obviously

17  done this exercise once.  You know where the stuff is.  You

18  know what you're looking for.  If you could point that out to

19  the City then there's no burden on them at all and I do think

20  it's appropriate, given the case that I cited to you as the

21  District Court of the Southern District said, I see no reason

22  in the world why they should not have to say yes.

23          MR. LONGO:  Actually, your Honor, I do not know where

24  it is but if your Honor is ordering me to do it I will do it.

25  I don't know where it is in the deposition transcript.  I would

1   have to read the whole thing and point to it.

2           MR. KERTEZ:  And so do we.

3           THE COURT:  Well, I think though that before you ask

4   this you, you know, I'm going to have you, just for these four,

5   48 to 52, the City is ordered to answer upon your providing the

6   City with the appropriate page numbers or page number where

7   this information is taken.

8           MR. KERTEZ:  Your Honor, can we do that for 13 and

9   14?  It's the same concept.  If you look at it, it's asking us

10  to go through a deposition.

11          THE COURT:  13 and 14, did you say?

12          MR. KERTEZ:  Right.  If you look at 13 and 14 you'll

13  see that those are also statements that supposedly came from

14  depositions, depositions of, if I may, Edward Burger and

15  Abdullah Abuzanat.

16          MR. LONGO:  Your Honor, they have documents,

17  complaints, (inaudible) complaints, files.

18          MR. KERTEZ:  No, that's --

19          MR. LONGO:  They have files.

20          THE COURT:  No, I think that's absolutely right.

21  Okay.

22          53 -- What time is this up?

23          THE CLERK:  (Inaudible), Judge, 9:30.

24          THE COURT:  Are they ready?

25          THE CLERK:  The (inaudible) looks like (inaudible).

1      THE COURT:  Yes, he's here.  We're going to have to

2  stop for a few minutes.  When you folks are ready, tell me and

3  we'll stop and we'll do your thing.  So just let me know.  Ms.

4  Cavero, whenever you're ready.

5      What was our last one?

6      MR. LONGO:  53, your Honor, we were on 53.

7      MR. KERTEZ:  Which is really the same thing with Lt.

8  Earnest.  It's right from the deposition.

9      MR. LONGO:  Isn't that a -- That's yours.  Well,

10  anyway. . .

11      THE COURT:  Well no, look.  There's no litmus test

12  for this stuff.  I think you got this from somewhere and I just

13  think as to these few -- As to the others as like 13 and 14, as

14  you say, they've got documents.  They know what the case is

15  about.

16      Number 55.  What could possibly be wrong with 55?

17      MR. KERTEZ:  Okay, your Honor, we've already gone

18  through -- 53 and 54 are the same as 48, is that correct?  To

19  52.

20                                                  (Pause.)

21      MR. KERTEZ:  Am I correct, your Honor?

22      THE COURT:  I'm just looking.

23      MR. KERTEZ:  Just want to make sure.

24                                                  (Pause.)

25      THE COURT:  Well, let's just do that as a grouping.

1    48 through 54, the City must answer upon Mr. Longo's providing

2    them with the appropriate page numbers from the depositions.

3            55, I can't understand how the City could possibly

4    not have answered 55.

5            MR. KERTEZ:  Oh, all right, your Honor, can I explain

6    that?

7            THE COURT:  Give me something real.

8            MR. KERTEZ:  I will.

9            THE COURT:  Not something that just comes to your

10   mind.

11           MR. KERTEZ:  No, your Honor, I'll give you something

12   real.  Knasiak was suspended but what happened is he retired

13   before he served his suspension so --

14           THE COURT:  Answer -- You know what?

15           MR. KERTEZ:  So the answer to --

16           THE COURT:  Then you truly don't understand anything

17   about requests to admit, with all deference.  Then your answer

18   is we deny it.  You don't get to determine the truth of it, and

19   then refuse to answer.  This is the simplest question in the

20   entire thing.

21           MR. KERTEZ:  Well --

22           THE COURT:  It gets either a yes or a no.

23           MR. KERTEZ:  Your Honor, how, if I may, how do you

24   answer that yes, he received a suspension but no, he didn't

25   serve it because he retired?

```
 1              THE COURT:  How about just the way you said it?  All
 2    right?
 3              MR. KERTEZ:  Yes.
 4              THE COURT:  Anything else frankly is an evasion by
 5    the City.
 6              MR. KERTEZ:  We're not trying to give that -- I'm
 7    telling you, we're not.
 8              THE COURT:  Well, what conclusion could I come to
 9    when I read this and I thought to myself if this doesn't
10    satisfy -- Let me ask you a question.  What would you think
11    would be an appropriate request to admit?  If he had said Sgt.
12    Sommerfield filed this complaint on April whatever, 2006, you'd
13    come in and tell me he's got that information, I don't need to
14    answer.  And you don't understand the slightest bit about what
15    a request to admit is.
16              MR. KERTEZ:  Well, yes.  All right.  But your Honor,
17    if I may just briefly, if he had said Sergeant Knasiak received
18    a suspension, then the answer would be yes, he did.  If he
19    asked Sergeant Knasiak --
20              THE COURT:  He didn't ask anything about whether he
21    served a suspension.  It said was he suspended?  Now you want
22    to find -- You want to nitpick that and get into --
23              MR. KERTEZ:  All right, okay.
24              THE COURT:  -- what the Supreme Court once called a
25    bog of logomachy, do it, but do it on your own time.
```

1    MR. KERTEZ:  Well, your Honor, we'll answer it.

2                                              (Pause.)

3    THE COURT:  56.  That was even more straightforward.

4  Now what's wrong with 56?  It's either yes or no.

5    MR. KERTEZ:  Your Honor, the investigation includes

6  making a determination as to what penalties should be assessed.

7    THE COURT:  Oh, jeez, you answer 56.

8    MR. KERTEZ:  Okay.  All right.

9    THE COURT:  57 you don't have to answer because it is

10  a legal conclusion.  What's a hostile working environment is

11  absolutely a question of law and it's a mixed question of law

12  and fact but you don't have to answer that.

13    58, I mean really this is a frivolous exercise

14  because no matter what I do here you're going to tell me there

15  is nothing in here that could possibly be answered.  Would you

16  have answered if he asked you whether or not the complaint was

17  filed in April 2006?  You would have said (inaudible).

18    MR. KERTEZ:  Sure.

19    THE COURT:  Sure.

20    (Loud voices in the background obliterating some

21    discussion between the Court and the attorneys.)

22    THE COURT:  I agree, sure, (inaudible).

23    MR. KERTEZ:  No, no, I would, your Honor, 100 percent

24  if he would have asked that question (inaudible).

25    THE COURT:  You do the City no service by taking

1  positions like this.  And the City does it all the time.  I

2  can't tell you the disservice they do.

3        58.  While the plaintiff was in the Eighth District

4  at least three of the plaintiff's supervisors, including

5  sergeants, lieutenants, did not know whether there was a policy

6  or procedure of what is done when sending -- Oh, you don't have

7  to answer that.

8                                            (Pause.)

9        59, (inaudible), I think that's vague.  I mean I know

10 what you're getting at in all these, Mr. Longo, but that's not

11 how they're phrased and I don't think the City should have to

12 take the chance (inaudible) reviewed the rules and regulations.

13  Does that mean all the rules and regulations?  Do you mean

14 specific ones?  I don't know what that means.  And you don't

15 have -- The City doesn't have to answer 59.

16        Now Maciejewski has no knowledge -- I take it this

17 must be from a deposition.

18        MR. LONGO:  It is.

19        THE COURT:  Okay.

20        MR. LONGO:  (Inaudible) ask him.

21        THE COURT:  Okay.  Then you can ask him.  60 you'll

22 answer.

23        When you say has no knowledge, do you mean now today?

24        MR. KERTEZ:  Well, yes.

25        THE COURT:  This is present tense.  You don't mean

1    today, do you?

2              MR. KERTEZ:  But that's what it says.

3              THE COURT:  (Inaudible).  60 you can answer.

4              MR. LONGO:  Okay.  Your Honor, the same is true --

5              THE COURT:  Hold on.  61 is a legal conclusion.  You

6    need not answer.

7              62 you can and should answer.  You must answer, not

8    you should.

9              MR. KERTEZ:  Well, your Honor, for about four years?

10    A (inaudible) partner.

11             THE COURT:  Answer yes or no, or I don't know, you

12    can't find out.  You're going to answer it.

13             MR. KERTEZ:  All right.  Your Honor, --

14             THE COURT:  63 -- And if you don't like the rulings,

15   go take an appeal to Judge Gottschall and you explain to Judge

16   Gottschall just why you don't want to answer a question that

17   anybody on earth can answer.  They could not be -- Well, there

18   could be more straightforward questions but this is pretty

19   straightforward.  You don't want to do any work.

20             MR. KERTEZ:  Oh, no, I --

21             THE COURT:  You want to do no work at all.  And yet

22   the Rules specifically provide, Rule 36 specifically

23   provides --

24                                                    (Pause.)

25             "A party" -- Sometimes it is helpful to read the

1   words.

2       "A party who considers that a matter which has been

3       requested presents a (inaudible) issue at trial may not on

4       that ground alone object to the request.  The party may,

5       subject to the provisions of a Rule 37(c) deny the matter

6       and set forth the reasons why the party cannot admit or

7       deny it."

8           There is also a provision that says --

9                                                   (Pause.)

10          "A (inaudible) party may not give lack of information

11          or knowledge as a reason for failure to admit or deny

12          unless the party states that the party has made

13          reasonable inquiry and that the information known or

14          readily obtainable by the party is insufficient to

15          enable the party to admit or deny."

16          Those are the provisions of the rule that govern, not

17  what you are saying.

18                                                  (Pause.)

19          64 you should answer.

20          MR. KERTEZ:  We're on 63, are we not?

21          THE COURT:  You can answer 63.

22          You can answer 64.

23          And 65 you need not answer.  I think that gets back

24  into policy and procedures.

25                                                  (Pause.)

1          And then all the rest of these I think, I guess, are

2    taken from his deposition?

3          MR. KERTEZ:  That's correct.

4          MR. LONGO:  And (inaudible) can also ask him . . .

5          THE COURT:  What was the last one we left off with?

6          MR. KERTEZ:  65.  65 is the last one we did.

7          MR. LONGO:  And your Honor had indicated -- Well,

8    yes.  65.  66, your Honor is on 66.

9          THE COURT:  Sixty -- What was the last one did you

10   say?

11         MR. LONGO:  65 was (inaudible).

12         THE COURT:  66 to 70 you could answer.

13         MR. KERTEZ:  And your Honor, may we have (inaudible)

14   to the deposition (inaudible)?

15         THE COURT:  No.  No.

16                                                   (Pause.)

17         THE COURT:  Are you folks ready?

18         MALE VOICE:  Yes.

19         THE COURT:  Because I don't want to keep you waiting.

20    I was waiting for you to tell me you're ready.  All right,

21   let's go.  We're going to (inaudible) for a couple of minutes

22   and then we'll pick this up again.

23      (Interval while the Court heard an unrelated matter.)

24         THE CLERK:  06-C-3132, Sommerfield vs. The City of

25   Chicago, second call.

1      THE COURT:  Let's have everybody announce themselves

2 so the record is clear.

3      MR. LONGO:  Good morning again, your Honor, Joe Longo

4 for the plaintiff.

5      MR. KERTEZ:  Good morning, your Honor, Jay Kertez on

6 behalf of the defendant, City of Chicago.

7      THE COURT:  And spell your last name?

8      MR. KERTEZ:  K-e-r-t-e-z.

9      THE COURT:  Okay.  I am sorry, Mr. Kertez.

10      MR. KERTEZ:  Okay.

11      THE COURT:  Where did we leave off?

12      MR. LONGO:  I believe the number is 71.

13      THE COURT:  These are all from depositions

14 supposedly, right?

15      MR. LONGO:  Some (inaudible), yes.

16      THE COURT:  Well, what about all the rest?  What

17 about all the Sergeant Pickerings?  I mean I (inaudible) as to

18 all the way 199- -- I'm sorry, through 1994.  Aren't these all

19 from depositions?

20      MR. LONGO:  Well, I mean (inaudible) not.

21      THE COURT:  Oh, and I couldn't understand what -- I

22 (inaudible) what was wrong with 73, Mr. Kertez.  What could

23 possibly be wrong with that?

24                                        (Pause.)

25      MR. KERTEZ:  Your Honor, (inaudible) --

1    THE COURT: This doesn't require that you tax

2 yourself or to find some obscure and unsensible (inaudible).

3    MR. KERTEZ: (Inaudible) already this morning.

4    THE COURT: Based upon your brief, take the cases in

5 your brief. Forget what I said. Now I (inaudible) you folks

6 come in here in good faith. I understand your consternation

7 with Mr. Longo's earlier presentation. But that's water under

8 the bridge. And I understand your consternation with the

9 number of the things in here and, as you see, I agree with you.

10    MR. KERTEZ: Very well.

11    THE COURT: But I don't understand the idea, instead

12 of just walking in and saying you know what? That was a

13 mistake. We overlooked it. You're right, we'll answer it.

14    MR. KERTEZ: Yes.

15    THE COURT: You want to find some justification.

16    MR. KERTEZ: No.

17    THE COURT: I think you do yourself a disservice.

18    MR. KERTEZ: Well, your Honor, I'm (inaudible).

19    THE COURT: (Inaudible) advice and maybe it's not

20 worth the disputes it comes from.

21    MR. KERTEZ: Well, in any event, I understand what

22 you're saying. It's 73.

23    THE COURT: 73 will be answered.

24    MR. KERTEZ: Okay. How about 71? Your Honor --

25    THE COURT: 74 you need not answer. I -- Huh?

1          MR. KERTEZ:  Okay, how about 71 and 72?  We haven't

2    dealt with those, so if we could -- I just want to make sure I

3    know.

4          MR. LONGO:  I thought that was part of the previous

5    (inaudible) your Honor ordered them to answer.

6          THE COURT:  Let's just come back to 71 and 72.  I

7    want to move on while I have the --

8          MR. KERTEZ:  73 we'll answer.

9          THE COURT:  73 you'll answer?

10         MR. KERTEZ:  Yes.

11         THE COURT:  74 seems to me to be this stuff that

12   deals with pattern and practice.

13         MR. KERTEZ:  Yes.

14         THE COURT:  Under the (inaudible) complaints.  You

15   don't have to answer 74.

16         You don't have to answer -- 75 I think is vague.  I

17   don't know what specific training means.

18         MR. LONGO:  It was --

19         THE COURT:  No, I'm going to ask you to explain it as

20   you have no definitions in here and I think 75 is vague and you

21   need not answer.  And again, it isn't -- The reality is there

22   isn't -- I don't think there's a dispute about this.  The City

23   knows what it did and you know what you claim it didn't do.  So

24   -- And again, I also think 75 is part of Sommerfield 2 and this

25   is a way to do through requests to admit what you assured Judge

1    Gottschall and me you wouldn't do.

2           MR. LONGO:  Doesn't it also relate to their

3    affirmative defense?

4           THE COURT:  Well, tell me, does it?  The affirmative

5    defense in the original complaint or in the second complaint?

6           MR. LONGO:  They haven't --

7           THE COURT:  Answered the second complaint.

8           MR. LONGO:  Yes.

9           THE COURT:  Well, what's the first -- Tell me --

10          MR. LONGO:  Well, they're saying as an affirmative

11   defense they were using (inaudible).

12          THE COURT:  Oh, that's right.  That's right.  Let me

13   go back here.  Okay.  And that there were policies in place --

14          MR. LONGO:  Right.

15          MR. KERTEZ:  Well, there was policy that would allow

16   someone to make complaints about sexual harassment, or racial

17   or (inaudible) harassment.

18          THE COURT:  Right.  That's right.  Not whether people

19   were trained.

20          MR. KERTEZ:  Right.  That's correct.

21          MR. LONGO:  That's part of their -- I think that's

22   part of the affirmative defenses that we train our employees --

23          THE COURT:  Now the affirmative defense, we went

24   through this a bunch of times.  And I don't know what Ms. Werth

25   did, or Mr. Kertez did in reference to -- I mean I know I

1  ordered them if they had more than what it seemed to be and

2  what they seemed to be saying was to tell you, and I don't

3  know, did they give you any more information?

4          MR. LONGO:  No.

5          THE COURT:  Okay.  So that it is the classic defense,

6  and that is we had these policies in place or procedures for

7  complaint and he didn't avail himself of it, right?

8          MR. LONGO:  Um-hum.

9          MR. KERTEZ:  Yes.  That's the defense.

10          THE COURT:  Okay.  So let me read this.  Hold on a

11  second.  Yes, I agree with Mr. Kertez that this is different.

12  So where did we leave off?

13          MR. KERTEZ:  75 was the one we --

14          THE COURT:  76.  And all of these -- This is all from

15  the testimony, right?  From depositions?  That's where I think

16  we were from 75 through --

17          MR. KERTEZ:  (Inaudible).

18          THE COURT:  Yes.  Well, I'm talking now about

19  Pickering.

20          MR. KERTEZ:  Yes.

21          THE COURT:  All right, but 75 through 94 are all from

22  somebody's deposition.

23          MR. KERTEZ:  Yes.  Now, your Honor, we already dealt

24  with 75 and you said we didn't have to answer that because that

25  deals with the training and what-not, and so does 76, because

```
 1    what he's trying to get at there is that Pickering wasn't
 2    trained on the policy.
 3              THE COURT:  I agree.  So 76 you need not answer.
 4    Okay, and the others. . .
 5              What we have here now is something a little different
 6    than what the District Court was concerned with in the
 7    Rockefeller case, I think.  There it looked like -- Let me take
 8    a look at this again.
 9              Right.  There they were only talking about
10    Rockefeller's testimony, one person.  There was nothing
11    particularly difficult about going back and looking at
12    Rockefeller's testimony to see what he said.  But you've now
13    got, Mr. Longo, an awful lot of people here.  And now what the
14    City has to do is they've got to go back and they've got to
15    find where he said this, and (inaudible) a lot to do.
16              MR. LONGO:  They could call and ask (inaudible).
17              THE COURT:  No, they can't.  This is all -- You've
18    said to me this is all from deposition testimony.  And she
19    could say whatever she says, they're still bound now to go back
20    and reread the entirety of the testimony for two reasons.  One,
21    they've got to find what apparently is either put in
22    (inaudible) or paraphrased.
23              But in addition, under the doctrine of completeness
24    under Rule 106, maybe 406, --
25              MR. KERTEZ:  It is, your Honor.
```

1          THE COURT:  Yes.  You've got to -- They've got to go

2     and read the entire transcript to see if there's anything that

3     in fairness, if it qualifies, it's (inaudible) he either can't

4     admit it or can't deny it or they -- In other words, the answer

5     has to be qualified.  They have to read the whole thing to see

6     whether their answer needs to prove something on Page 70 where

7     your excerpt comes from Page 30.  And I think that's a real

8     burden and I don't think they should have to do that.  That --

9     And I also think that that's something that can be handled

10    effectively at the pretrial conference.  Rule 36 specifically

11    envisions that.  So I -- The City does not have to answer 77

12    through -- And I want to go back and revisit a couple of these

13    things.  77 through 94.

14          MR. LONGO:  90, there is no do testimony from Robert

15    Contino (phonetic).

16          THE COURT:  Oh, there is none?

17          MR. LONGO:  No.

18          THE COURT:  Then it's 93.  The City does not have to

19    (inaudible) that.  You guys are keeping track of this, aren't

20    you?  So --

21          MR. KERTEZ:  Yes.

22          THE COURT:  -- if the order is wrong you'll have it.

23          All right, 77 through 93 need not be answered.  I

24    think it would be burdensome for the City to have to do it in

25    that it would require them to read the entirety of the

1  transcripts of what was said as well as just going ahead and

2  talking to these witnesses.  And the burden isn't in talking to

3  them; the burden is in rereading the transcript.

4          Now wait about Contino?

5          MR. KERTEZ:  Well, your Honor, 94 poses a lot of

6  different problems.  First of all, when asking Contino to say

7  their other supervisors and most officers, however, many of

8  those are all supervisors.

9          THE COURT:  Yes, I agree, yes, I think this is vague.

10  It becomes difficult.  Most officers.  I don't know what that

11  means.  Does that mean 51 percent?  Does it mean 86 percent?

12  You don't have to answer Number 94.

13          Number 95?

14          MR. LONGO:  Your Honor, just on 94 there's a document

15  that Robert Contino signed in which these are his words.

16          THE COURT:  Well then, why didn't you simply say he

17  signed a document that says such-and-such, and then they'd have

18  to say yes, it's true.  That's not the way you phrased this.

19          MR. LONGO:  It's one of his statements.

20          THE COURT:  I know, but I can't do this by then going

21  back and referring to evidence that supports this or doesn't

22  support it.  I can't do it.  It then doesn't admit an easy yes

23  or no answer.  It's not how a court rules on these things.

24  Nobody would be sitting here going through 173 of these things

25  with you but me.

1    So if I looked at this internally I wouldn't even

2  know what you just told me, and I do it on the basis of the

3  vagueness of it.  I think this does not admit a simple yes or

4  no answer given its phrasing.

5    Number 95 --

6    MR. KERTEZ:  Your Honor, Number 95 is from the

7  deposition and we are revisiting our -- (inaudible, multiple

8  voices).

9    THE COURT:  Okay, 95 you need not answer.  That's

10  (inaudible) again.

11    All right, it is a hypothetical and I don't think

12  that's appropriate.  96, then, you need not answer.

13    Number 97 calls for a legal conclusion.  It again

14  relates to hostile work environment and you need not answer 97.

15    98 and 99 and 100 are all hypotheticals that begin

16  with the word if he did something that also deal with hostile

17  work environment, so for those two reasons the City need not

18  answer 98 through 100.

19    MR. LONGO:  Your Honor, could I just say that the

20  only case they cite was a case in which the court says it

21  involved a question of whether the person at age 5, whether he

22  could buy this particular candy.  There's --

23    THE COURT:  I'm not looking at the cases they cite.

24  I'm looking at some of the cases that I --

25    MR. LONGO:  I think it was Storck.

1      THE COURT:  -- gave you this morning that I read as

2   background which talked specifically about hypotheticals and

3   (inaudible).

4      MR. LONGO:  My concern was if I were to say Sergeant

5   Knasiak said to a Jewish officer burn, Jew, burn, then the City

6   would have said well, that's contested.

7      THE COURT:  Well, look, but I read you the Rule.

8      MR. LONGO:  Sure.

9      THE COURT:  And the Rule says the fact that it's

10   contested isn't a basis, in itself, for refusing to answer.

11      MR. LONGO:  I'm sorry, I didn't say that correctly.

12   Thank you for saying that.  What I meant was if I were to say

13   that Lieutenant Carson Earnest has no opinion of Sergeant

14   Knasiak saying burn, Jew, burn, of whether that's violative of

15   City policy.  If I would have phrased it that way the City

16   would have come back and said well, that assumes facts not in

17   evidence.  In fact, they had told me that.

18      THE COURT:  Well, but that's why I asked you at the

19   beginning if some of this stuff is essentially conceded.  Look,

20   every one of these you can dream up something that's wrong with

21   it.  You've heard Mr. Kertez do it.  Some of them he's right.

22   A lot of them he's -- it's ridiculous, I think.  You know.  I

23   mean anybody would think they're ridiculous.  Others, as we've

24   gone along I realize the merit of what he's saying and others

25   I've seen the, you know, I've changed my mind and thought he

1   was wrong.

2           All I'm saying to you is I have to deal with what you

3   have.  And that isn't what you said.  You started out with a

4   statement that begins with an if and I don't think that's

5   appropriate for a -- Look, your position is this is what he

6   said.  Then you at least have certain times and places that he

7   said it.  And the answer is -- The question would be do you

8   admit that he said it?  Now, some of the cases I read to you

9   this morning, some of the City's cases certainly do seem to

10  stand for the proposition that where something is hotly

11  disputed it's not appropriate to ask somebody to admit or deny

12  it.

13          MR. LONGO:  Your --

14          THE COURT:  Wait a minute, let me finish.

15          MR. LONGO:  Sure.

16          THE COURT:  But the Rule specifically says that isn't

17  an inappropriate question and it isn't a basis to refuse to

18  admit.  You just get to deny and so the exercise is an exercise

19  in futility on your part and a waste of time for them, but it

20  isn't -- You can't refuse to answer.  I think that if this has

21  really been hotly contested all along, why make the City go

22  through this exercise?  And that's what Judge Moran was saying.

23   And that's -- This is all discretionary.

24          MR. LONGO:  I think the difference is this.  Here's

25  we're looking at Lieutenant Carson Earnest, who is the

1  Lieutenant.

2       THE COURT:  I don't know any of these folks, and as I

3  say, normally what would happen is I may say to you, Mr. Longo,

4  and this is what I originally thought of doing and I realized

5  this isn't fair to you and there's no point to it and creates a

6  needless burden for me.  I was going to say to you I want a

7  response, but I also want you to go through these one by one

8  and explain how, in detail, this is appropriate given the

9  generalized -- And then I thought why would I make you do that?

10   And then force myself to read it when I know kind of what I

11  want to do.  I did want to hear from you.  We'll just do it.

12  We'll spend however many hours we need to do it and that's why

13  I think it's the way to do it.

14       But had I done it a different way, he'd never have

15  the chance to talk to me about the extrinsic facts that now

16  bear upon how I'd look at this.  And so don't tell me what the

17  evidence is.  It doesn't help me to look at this.  This either

18  is -- This either fulfills the purpose of streamlining this

19  case for trial or it doesn't.  And if it doesn't, I'm not going

20  to make the City answer.

21       On other things that are so simple that they ought to

22  answer, and you know, somebody else might come up the other way

23  and so be it.  I'm trying to do the best I can do.

24       All right, where did we leave off?

25       MR. KERTEZ:  101 would be the next one, Judge.

1          THE COURT:  That was what?

2          MR. KERTEZ:  101?

3          THE COURT:  Okay.  So 100 you need not answer.  98 to

4    100 all suffer from the same vice.  They are -- or at least

5    two.  They are all hypotheticals and two of three, 98 and 100,

6    also involve a legal question, that is, what's a hostile work

7    environment?

8          101.  What's wrong with 101?

9          MR. KERTEZ:  Okay.  101 says when Officer Sommerfield

10   complained repeatedly, I'm wondering exactly at what point did

11   that occur?  If he just said on such and such date, he began an

12   investigation that would make sense.  But how am I --

13         THE COURT:  Well, didn't he begin to investigate in

14   May 2004?

15         MR. KERTEZ:  I believe that's correct.

16         THE COURT:  You can answer 101 and you can qualify it

17   any way you want.

18         MR. KERTEZ:  Okay.

19         THE COURT:  You can say I don't know what repeatedly

20   means.

21         MR. KERTEZ:  Okay.

22         THE COURT:  I don't know what this.

23         MR. KERTEZ:  Yes.  Okay, all right.

24         THE COURT:  I don't know what that.

25         MR. KERTEZ:  Okay.

1    THE COURT:  We admit that he began an investigation

2  in 2004.

3    MR. KERTEZ:  And again, this comes from a

4  definition --

5    THE COURT:  Well, I know, but this one's easy.

6    MR. KERTEZ:  Okay.  All right.

7    THE COURT:  These are facts you people know.  Officer

8  Taliaferro is not -- So all the Taliaferros are from deposi-

9  tions.

10    MR. KERTEZ:  Correct.  That is correct.  That goes

11  through 106.

12    THE COURT:  Right.  Well, 106 also deals with a

13  pattern and practice.

14    MR. KERTEZ:  Correct.

15    THE COURT:  You need not answer 106 on that basis,

16  and then 102 through 105 . . .  What's wrong with 105?

17                                              (Pause.)

18    MR. KERTEZ:  Again, this comes from the deposition.

19  (Inaudible, multiple voices) --

20    THE COURT:  That's (inaudible) the answer?  There's

21  also more than this.  He began investigation and the question

22  is (inaudible) he testified to, the question is is this a fact?

23   Is it true?  Not the source.  You can answer 105.

24    MR. KERTEZ:  Okay.  So 102 and 101?

25    THE COURT:  Well, I'm working backwards.

1          MR. KERTEZ:  Oh, okay.

2          THE COURT:  I'm going back now to 104.

3          MR. KERTEZ:  All right.  So hold on.  Hold on, your

4  Honor, I've got to make some notes.

5          THE COURT:  Okay.

6          MR. KERTEZ:  Because we didn't -- Just give me a

7  second, please.  Thank you.

8          THE COURT:  I'm going to issue a minute order and

9  she's going to list these.  I'm not going to go through the

10  reasons.  The reasons are in this extended transcript.

11          MR. KERTEZ:  Great, great.  All right then, 106 don't

12  answer, correct?

13          THE COURT:  Right.

14          MR. KERTEZ:  Okay.  105 --

15          THE COURT:  105 you have to answer.

16          MR. KERTEZ:  Okay.  All right.  104.

17          THE COURT:  104?

18          MR. KERTEZ:  (Inaudible) is.  The documents.

19          THE COURT:  Well, hold on, hold on, folks.

20          You can answer 104.  And you can qualify any way you

21  want, but answer it.  The (inaudible) of it is they complained

22  and did he -- You know, and that those complaints spanned the

23  period of time from X to Y.  That's a good-faith answer.

24  You're looking for a way to evade giving any response, and I'm

25  not going to let you do that.

1    Number 103.  103 you can answer.

2    Okay, 102 --

3    MR. KERTEZ:  Again 102, your Honor, if I might?  This

4    goes back to that deposition thing that we talked about.

5    THE COURT:  You can answer 102.

6    MR. KERTEZ:  Okay.

7    THE COURT:  Now 103.  102 . . .  Well, 102 you need

8    not answer because I'm not sure whether the assumption is even

9    right.  And I think it's vague.  I don't understand the

10   phrasing.  All right, so that takes us to 110.

11   MR. LONGO:  I think it takes us to 107, your Honor?

12   THE COURT:  107?

13   MR. LONGO:  If you work backwards from 106.

14   THE COURT:  All right.  That's -- You can answer 107.

15   Thank you.  That's either so or it's not so.

16   MR. KERTEZ:  Okay.

17   THE COURT:  Okay.  110.

18   MR. KERTEZ:  108.

19   MR. LONGO:  108, 109?

20   THE COURT:  Oh, I'm sorry, you can answer 108 also.

21                                              (Pause.)

22   And 109 also.  Answer 109.

23   MR. KERTEZ:  Hold on, Judge.

24   THE COURT:  And 110.

25   MR. KERTEZ:  Hold on.

1        THE COURT: Mr. Kertez, what do you say about 110?

2        MR. KERTEZ: I say that we have a whole bunch of

3 management, captain, sergeant, lieutenant. This one is going

4 to take looking at everybody in order to answer that and I

5 think it's unfair. I think it's burdensome.

6        THE COURT: You don't have to answer 110.

7        MR. KERTEZ: Okay.

8        THE COURT: And what's wrong with 111?

9        MR. KERTEZ: Well, it's supervisors in the Eighth

10 District, who? I mean there are a whole bunch of people who

11 would be considered supervisors and they're asking about

12 (inaudible) about other people who he doesn't have personal

13 knowledge about and he doesn't who it is that he's talking

14 about, which people.

15        MR. LONGO: One of the previous requests to admit it

16 said the supervisors are the sergeants and the lieutenant.

17        THE COURT: No, no, what that means is -- So the

18 thing is that no supervising officer is defined --

19        MR. LONGO: Yes.

20        THE COURT: -- in the (inaudible) had knowledge.

21        MR. LONGO: Yes. Because he continued supervisors.

22        THE COURT: Officer Taliaferro has knowledge that in

23 March of 2004 the supervisors knew the plaintiff had charges of

24 discrimination and harassment.

25        MR. KERTEZ: This is really confusing, Judge, in

1    addition to that.  I mean this is --

2              THE COURT:  Well, if you read it once or twice,

3    twice, I mean, it's not.  What he's saying is that all the

4    supervisors, all the lieutenants, captains and sergeants,

5    right?

6              MR. KERTEZ:  Well, but it doesn't say --

7              THE COURT:  Well, you know who the supervisors are.

8    I mean you've already said that in an earlier --

9              MR. KERTEZ:  Request to admit.

10             THE COURT:  Right.

11             MR. KERTEZ:  But there are other supervisors as well.

12    That's not the universe.  There are commanders.  There are

13   civilians who are also supervisors, so it's not just -- Yes,

14   police officers are supervised by sergeants, lieutenants and

15   captains, but they are also --

16             THE COURT:  Well, let's limit it just to the

17   categories that we discussed because that makes it easier also.

18    The sergeants, the captains and the lieutenants in the Eighth

19   District knew the plaintiff had charges of discrimination and

20   harassment against Knasiak because the plaintiff had complained

21   to the supervisors about Knasiak -- Okay.

22             The problem with this is that encompasses everybody.

23             MR. LONGO:  There's only like four or five people.

24             THE COURT:  Well, there's watch commanders and

25   there's -- That's not true.  The way the thing works, you've

1  got, well, shifts.

2          MR. LONGO:  The watch commanders are the same as the

3  lieutenants.  And -- (inaudible, multiple voices).

4          THE COURT:  Well, no, the watch commander --

5  (LOUDSPEAKER ANNOUNCEMENT:  May I have your attention please?

6      A fire has been reported in another area of the building.

7        You are in a safe area.  Please stay in your work area

8        and await further instructions.)

9          THE COURT:  These (inaudible) -- -- (inaudible,

10  multiple voices) -- You're arguing the merits of the question

11  as a factual matter.  That's what this is about.

12          MR. LONGO:  I believe also it's only fair to

13  (inaudible) saying the investigation reported, if I remember

14  correctly.

15          MR. KERTEZ:  Well, so we're talking about now is

16  speculation and he . . .

17          THE COURT:  Well, the supervisors, that would mean

18  all . . .  Well, I've got it.  You can answer 111 with this

19  qualification.

20              (The Court and the Clerk conferred.)

21          MR. LONGO:  Well, can we be in the receiving line?

22          THE COURT:  No.  Okay.  You an answer 111.  Here's

23  how you can answer it.  You can answer it with any kind of

24  qualification you want, that anybody knew, and you can say, you

25  know, Captain Smith knew.  And we don't know whether anybody

1   else knew.  But this is a question, I think, that can be

2   answered without a lot of effort.

3           MR. KERTEZ:  Okay.

4           THE COURT:  What's wrong with 112?

5           You can answer 112.

6           MR. KERTEZ:  I agree.

7           THE COURT:  113?  What's wrong with that?

8           MR. KERTEZ:  Again that just comes from a deposition.

9           THE COURT:  You can answer 113.  You know, these

10  things you -- These aren't tangential obscure things.

11          114 you can answer as well.

12          MR. KERTEZ:  No, Judge, I -- You said that time

13  sometimes breeds wisdom?

14          THE COURT:  Um-hum.

15          MR. KERTEZ:  I believe that I have also now received

16  some wisdom having (inaudible) during the time that we've been

17  talking.  What he's trying to get at here regarding Officer

18  Burger and what-not, remember his claim isn't about Officer

19  Burger, it's about Officer Sommerfield.  This is policy,

20  practice and custom.  He's trying to get evidence --

21          THE COURT:  No, sir, it's not.

22          MR. KERTEZ:  He's trying --

23          THE COURT:  It's not.  It is absolutely not.

24          MR. KERTEZ:  Well --

25          THE COURT:  It is absolutely not.  If you've got two

1    people complaining about discrimination, he's got this really

2    interesting idea that -- I mean I just went through this with

3    you folks in a case that cost the City a couple of million

4    dollars that could have cost the City $3,000 and they haven't,

5    they're not going to appeal, and it all stands, and you know,

6    if somebody discriminates against the person, the City has the

7    view that no other acts of discrimination are admissible.  It's

8    wrong.

9            And so if there's sort of simultaneous or

10   coincidental complaints from two people, that may or may not be

11   evidence admissible for trial.  That's for Judge Gottschall,

12   but Rule 404(b) has utility in these sorts of cases and the

13   Seventh Circuit and every court in the United States, as an

14   evidentiary matter has said that other kinds of discriminatory

15   or similar discriminatory behavior is admissible in order to

16   prove up one's case.

17           So this is perfectly legitimate stuff.  It has

18   relevance apart from what you're saying, and the fact that it

19   may be inadmissible for one purpose or have utility for one

20   purpose but not for another doesn't negate the utility for the

21   proper purpose.

22           MR. KERTEZ:  All right.

23           THE COURT:  So you can answer, which number are we

24   on?

25           MR. LONGO:  That was 114, your Honor.

1        THE COURT:  115?

2        MR. LONGO:  Oh, 115, yes.

3        THE COURT:  You can answer 115 as well.

4        116 is vague.  I don't know what continuous periods

5   of time mean.  You don't have to answer 116.

6        Okay, 117.

7                                              (Pause.)

8        MR. LONGO:  Well, Judge, what's 117?  What's wrong

9   with that?

10        THE COURT:  It has nothing to do with this case.

11        MR. LONGO:  Oh, no, no, no, no, no.

12        THE COURT:  You're not arguing relevancy.  I mean

13   relevancy is really for Judge Gottschall.

14        MR. KERTEZ:  Well, but your Honor, this goes beyond

15   relevancy.

16        THE COURT:  Well --

17        MR. KERTEZ:  Because this case is about whether

18   Knasiak discriminated against him, harassed him.

19        THE COURT:  I agree.

20        MR. KERTEZ:  Or retaliated.

21        THE COURT:  I agree.

22        MR. KERTEZ:  This is talking about --

23        THE COURT:  Right, but your objection is relevance.

24        MR. KERTEZ:  No, my objection is this is harassing

25   about Sergeant Knasiak.

1          THE COURT:  That it's harassing.

2          MR. KERTEZ:  Yes.

3          THE COURT:  Excuse me, sir.  Mr. Kertez, it's

4   harassing to ask you as a lawyer to fill out a request to admit

5   that says yea or nay?

6          MR. KERTEZ:  That says yea or nay about, okay, well,

7   Knasiak --

8          THE COURT:  It's not harassing.

9          MR. KERTEZ:  This is about whether he's an alcoholic,

10  supposedly.

11         THE COURT:  In his --

12         MR. KERTEZ:  This doesn't have any bearing.

13         THE COURT:  No.  Then it's a (inaudible).  Then you

14  just said it.  I mean you just won't concede the obvious.  You

15  tell me it has no bearing.  That is simply another word for

16  relevancy.  And you may be right.  This may have no relevancy

17  at all.  But I'm not going to -- This is -- As far as I'm

18  concerned this is a simple request to admit and you can answer

19  it, and you can argue with Judge Gottschall that this isn't a

20  request to -- That your admission or your denial shouldn't be

21  received into evidence.  But I'm not going to -- Look, I am

22  not, in the context of a 234 requests to admit making

23  determinations about relevancy.

24         MR. KERTEZ:  All right, your Honor.

25         THE COURT:  Because I don't know how it fits in.

1      MR. KERTEZ:  Then let me get to the next argument.

2  I'll -- You explained that to me.  I understand what you're

3  saying, but now let me explain, with other sergeants,

4  lieutenants and captains, who?  Again, any -- We're going to

5  have to go in and we're going to have to talk to I don't know

6  how many to find out who may have seen --

7      THE COURT:  No, sir.  All you need is one, and you

8  can say one or two or yes, we admit it but we don't know how

9  many or when and we can't find out.  Is this an allegation that

10 ever surfaced before?

11     MR. KERTEZ:  No.

12     THE COURT:  This never came up anywhere in the course

13 of discovery?

14     MR. KERTEZ:  No.

15     MR. LONGO:  Yes.

16     THE COURT:  Tell me when.  Because then you're

17 talking about things that are not appropriate because this is

18 really becomes a discovery device.

19     MR. LONGO:  Officer --

20     THE COURT:  And that's an objection that I think is

21 fair.

22     MR. LONGO:  Officer Galassi testified that he

23 witnesses Knasiak drinking on the job on more than one occasion

24 with other captains, sergeants, lieutenants all drinking all

25 together during work, at work.

1          THE COURT:  You know, Mr. Longo, that you'll never

2    get that in.

3          MR. LONGO:  Well --

4          THE COURT:  Never in a million years.  So look.  The

5    question then is and you know I -- In all the cases that you

6    cite and the various cases that I read, although I didn't look

7    for this, well, wait a minute.  Maybe it really does.  Hold on.

8     I think there might be one answer.  The answer may be this:

9          "A party may serve upon any other party a written request

10          for the admission for purposes of the pending action only

11          of the truth of any matters within the scope of Rule

12          26(b)(1)."

13          Rule 26(b)(1) has, of course, a built-in relevancy

14    requirement.

15          MR. LONGO:  Well, your Honor, I --

16          THE COURT:  Shhhsh.  Let me just think this through

17    myself.  Hold on.

18          "Parties may obtain discovery regarding any matter not

19          privileged that is relevant to the claim or defense of

20          (inaudible)."

21          You are absolutely right, Mr. Kertez, you don't have

22    to answer --

23          MR. LONGO:  Your Honor, could I say something

24    (inaudible)?

25          THE COURT:  Sure.

1        MR. LONGO:  Relevancy, as your Honor knows, is

2   broadly construed and if they are allowing him --

3        THE COURT:  Right, right, right.  You are right.  But

4   the question is could this lead to -- Is this something that

5   you could have, for example, -- Forget that you could have

6   asked at a deposition, but could you have asked an inter-

7   rogatory?  How can this lead to the -- How can this lead to

8   information?  How could this information now be admissible at

9   trial?  Because it's not going to lead to anything.  It is what

10  it is.

11       MR. LONGO:  I think, your Honor --

12       THE COURT:  Tell me how it might be admissible at

13  trial.

14       MR. LONGO:  I think it might be admissible in the

15  sense that it shows that the City really --

16       THE COURT:  (Inaudible, multiple voices) -- that's

17  (inaudible) propensity evidence.

18       MR. LONGO:  Yes, that's --

19       THE COURT:  No, no, no, no, no.

20       MR. LONGO:  In the sense that they allow Knasiak to

21  do whatever he wants.  He can be drunk on the job.

22       THE COURT:  Oh, no, but that would require that

23  higher-ups --

24       MR. LONGO:  He can discriminate.

25       THE COURT:  No, not drunk.  Drinking and drunk are

1   different.  But no, then what you've got -- Now you're into

2   your Monell argument and worse than that, you're into the very

3   thing that Rule 404(b) of the Federal Rules of Evidence

4   prohibits, and that is character evidence to show that because

5   somebody effectively is a bad guy it is more likely than not

6   that on this occasion he did what he shouldn't have done.  And

7   the Rule could not be more specific in terms of its prohibitory

8   qualities.

9           MR. LONGO:  I don't know if he's a bad guy, but just

10  the City not caring, not taking any steps --

11          THE COURT:  Let me -- No, no, no, no, no.

12          MR. LONGO:  -- to reprimand or -- (inaudible,

13  multiple voices).

14          THE COURT:  And that's exactly right.  It shows the

15  City is a bad guy.  It's propensity by the City.  Here's what

16  Rule 404(b) says:

17      "Other crimes, wrongs or acts.  Evidence of other crimes,

18       wrongs or acts is not admissible to prove the character of

19       the person nor to show action and conformity therewith."

20          And so what you want to say is since they didn't stop

21  him from drinking, therefore they had a policy of (inaudible)

22  for a policy that people could discriminate as they choose.

23  And what's wrong with that is that is the very evidence -- that

24  is the very inference 404(b) prohibits and it gets you back

25  into your Sommerfield 2 complaint, which I'm not allowing you

1   to do.  So for those reasons 117 need not be answered.

2           118.  The defendant had knowledge that Knasiak said

3   to the plaintiff:  Burn, Jew, burn.  Other sergeants

4   (inaudible) you don't need to answer because they say, and I

5   know that the Rule says this isn't a basis not to make them

6   answer but I think Judge Moran's solution, as almost always, is

7   the right one, and that is there's no point in making them deny

8   that which they've denied from the beginning of the case.  You

9   don't have to answer 118.

10          MR. LONGO:  I don't know that they've ever denied

11  that.

12          MR. KERTEZ:  Here?

13          MR. LONGO:  Or maybe they --

14          THE COURT:  Well, Knasiak denied, didn't he?

15          MR. KERTEZ:  Sure.

16          THE COURT:  At least he did.

17          MR. KERTEZ:  Yes.

18          THE COURT:  And then he's got -- Then you've got

19  people who say it happened but he said it didn't and that's why

20  I asked Mr. Kertez from the beginning -- He didn't want to

21  answer; he finally did -- and I guess he realized it was to his

22  benefit -- But it was the City's position that it didn't

23  happen.  They're not going to admit this guy did this.

24          MR. KERTEZ:  (Inaudible) --

25          THE COURT:  I don't think.

1        MR. KERTEZ:  -- Sergeant Knasiak --

2        THE COURT:  Mr. Kertez, you (inaudible) at trial?

3        MR. KERTEZ:  At this point, no.

4        THE COURT:  Now something may happen down the

5    road --

6        MR. KERTEZ:  Yes.

7        THE COURT:  But you know, we had a case with the City

8    the other day and they were intent on going to trial and I

9    thought they were absolutely right.  And the day -- The morning

10   the trial was to begin, they kept putting it off so the City

11   could take depositions of witnesses, the City's position was

12   not only did the guy not do what he was charged with, but he

13   wasn't even there at the scene of the arrest.

14       The plaintiff had five felony convictions, about 12

15   million arrests, but five admissible felony convictions, and he

16   claimed he had two witnesses.  I kept putting the trial off and

17   the City went out and interviewed the two witnesses the morning

18   of the trial.  The plaintiff's lawyer came in and said I'm

19   dismissing the case with prejudice.

20       But her position, the City's position was the guy

21   didn't do it.  Her position was he did do it.  Why would I have

22   each side -- allow each side to have requests to the other that

23   asked for admissions or denials of the core thing in dispute?

24   It's pointless.

25       MR. LONGO:  But even though the City found in their

1    investigation that Knasiak did make these statements?  So it's

2    not disputed and not (inaudible).

3              THE COURT:  It is disputed.  They're going to dispute

4    it.  Now your position is going to be, assuming you get the

5    results from the investigation into evidence, that that's the

6    end of -- (Loud sirens outside drowned out a few phrases.)  And

7    the City knows Knasiak's a liar.  But for purposes of it --

8    Then why didn't you simply say we want -- Look, any sort of

9    requests to admit on such-and-such a date, an investigation was

10   conducted and concluded that Knasiak did whatever, and you

11   quote the language of the report.  And the next one would be

12   that conclusion was sustained by a vote of the panel of whoever

13   on such-and-such a date.

14             Then the City couldn't say no.  I mean they can find

15   ways to try not to answer, but they have to say yes, that's

16   what happened.  That's not what you asked for, though.

17             119.

18             THE CLERK:  Our elevators are still not working.  Can

19   (inaudible)?  Thank you.

20             THE COURT:  All right, well --

21             THE CLERK:  We're in the safe area.

22             THE COURT:  Well, who knows?

23             THE CLERK:  But I can wait for the elevator like you

24   need it and that will -- (inaudible, multiple voices) --

25             THE COURT:  It sounds like the fire trucks are here.

1           THE CLERK:  Yeah.

2           THE COURT:  You know, why don't you go out and you

3    should see the Fire Marshal and see if our power has left this

4    floor.

5           THE CLERK:  (Inaudible) working for (inaudible).

6           THE COURT:  Okay, so that you won't get too nervous,

7    normally when there's a problem or there's been a problem they

8    do tell you to --

9           THE CLERK:  There's nobody here.  I think people are

10   stuck in the elevators below (inaudible).

11          THE COURT:  Oh, my God.  Gosh.

12          THE CLERK:  (Inaudible - multiple voices) down 18

13   flights but --

14          THE COURT:  No, no.

15          THE CLERK:  -- (inaudible) bad thing to get

16   (inaudible) but then I got (inaudible).

17          THE COURT:  No, don't do that.  All right.

18          MR. LONGO:  I did that one time.  I walked down from

19   Judge Shadur's courtroom all the way downstairs.  (Inaudible,

20   multiple voices).

21          THE COURT:  Well, that's okay.  Down is okay.  It's

22   going up that is stressful.

23          MR. LONGO:  No, I walked upstairs to Judge Shadur.  I

24   didn't want to be late for a hearing while the elevators

25   weren't working.

1          THE COURT:  All right, 118, is that (inaudible)?

2          MR. KERTEZ:  119.

3          MR. LONGO:  119.

4          THE COURT:  119.

5          MR. KERTEZ:  The same thing as 118.

6          MR. LONGO:  Well, this is asking if he has -- if they

7 have knowledge.  I mean --

8          MR. KERTEZ:  Same thing as 118.

9          MR. LONGO:  -- their own investigative reports.

10          MR. KERTEZ:  We're going to dispute that.

11                                  (Pause.)

12          THE COURT:  No, I think you should answer 119.  And

13 you can qualify these things, Mr. Kertez, in any way you think

14 is appropriate but you know, I think you should answer it.

15                                  (Pause.)

16          Now look, I guess one of the ways you could do this,

17 if your position is that this didn't happen, you deny the

18 request on the grounds that the assumptive fact isn't true.

19 But I think you can (inaudible) the Rule that I read to you,

20 you should answer.

21          And I think the same is true of 120.  If, in fact,

22 your position -- If you deny that this happened then you can

23 say that.

24                                  (Pause.)

25          MR. LONGO:  But, your Honor, if they could answer

1    that way they could deny their own investigative report in

2    which they concluded --

3              THE COURT:  You know what?

4              MR. LONGO:  -- there was discrimination.

5              THE COURT:  They're going to do -- No, wait.  They're

6    going to do whatever they think is appropriate to do.

7              MR. LONGO:  Okay.

8              THE COURT:  And they're -- You'll deal with that as

9    you see fit.  I'm only looking at, you know. . .

10             MR. KERTEZ:  121 is duplicative of 120.

11             THE COURT:  Yes, so 121 you need not answer.  It's

12   duplicative.

13             Number 122 you need not answer because I think that

14   gets into Sommerfield 2, which is a shorthand for what we've

15   talked about.

16             123 is the same; you need not answer.

17                                                    (Pause.)

18             THE COURT:  What about, Mr. Kertez, what about this

19   one?

20             MR. KERTEZ:  What, 124?

21             THE COURT:  Yes, is this the policy problem?

22             MR. KERTEZ:  Policy, yes.

23             THE COURT:  All right, I don't think you need to

24   answer 124.  It's a Sommerfield 2 problem.  And you know what I

25   mean by Sommerfield 2?

1          MR. KERTEZ:  Um-hum.

2          THE COURT:  It's a way to use -- It is an instance in

3     requests for admission are being utilized to get information

4     that you assured me and Judge Gottschall you did not need in

5     order to file your amended complaint.  And then I want to just

6     make the point that Judge Racoff made in the J.P. Morgan-Chase

7     Bank vs. Liberty Mutual Insurance Company about what he called

8     disguised and improper discovery requests.  Okay.

9          MR. LONGO:  (Inaudible)?

10         MR. KERTEZ:  125.

11         THE COURT:  What's wrong with 125?

12         MR. KERTEZ:  Well, it's not only (inaudible) Sergeant

13    (inaudible), if the Sergeant happens to be an alleged harasser,

14    then it would have to be somebody else.  This requires a very

15    lengthy explanation that I don't think is appropriate for

16    requests to admit.

17         THE COURT:  Well, it wouldn't be the Sergeant unless

18    he was the harasser or there was a superior officer?

19         MR. LONGO:  Whether there was a superior officer or

20    the sergeant wasn't there --

21         THE COURT:  No, you can answer 125.  That's not much

22    of a stretch.  Yes, so 125 answer.

23         126?

24         MR. KERTEZ:  (Inaudible) Judge.

25                                              (Pause.)

1    MR. KERTEZ:  Here it talks about what the immediate

2  supervisor, I mean here's a (inaudible), actually his

3  (inaudible) in 126, the problem that I have with 125.

4    THE COURT:  I don't see what the problem is.

5  (Inaudible) supervisors on a particular day would have been

6  another -- any other sergeant or lieutenant.  Isn't that true?

7    MR. KERTEZ:  There could be situations when there

8  might not even be (inaudible) those, either.  There might be

9  somebody else, maybe a captain.

10    THE COURT:  Well, you can say that.

11    MR. KERTEZ:  Okay.

12    THE COURT:  The answer is yes if they were present

13  and no if they weren't present.

14    MR. KERTEZ:  Right.  That's fine.  Okay.

15    THE COURT:  Then answer 126.

16    MR. KERTEZ:  Okay.

17    THE COURT:  127 you need not answer as a Sommerfield

18  2 situation.

19    MR. KERTEZ:  128 goes back to our policy

20  situation --

21    THE COURT:  Well, is 0003, --

22    MR. KERTEZ:  -- and training.

23    THE COURT:  -- does this relate -- This doesn't

24  relate to the affirmative defense, --

25    MR. KERTEZ:  No.

1          THE COURT:  -- so you don't have to answer 128
2  either.
3          MR. LONGO:  Well, isn't this (inaudible) affirmative
4  defense?  That's what they were asserting all along.
5          THE COURT:  No, they're not.  This is -- This is --
6  Well, wait a minute.  Is General Order 0003, does that deal
7  with -- Well, but wouldn't that have been part of the original
8  case?  Just the general order on discrimination?
9          MR. KERTEZ:  Well, well, what they're trying to say
10  is they don't get their own copy is --
11          THE COURT:  Well, no, not -- And you haven't answered
12  my question.  This seems to me, now that I think about it, this
13  general order would have been in the case from the beginning.
14  You produced this in discovery?
15          MR. KERTEZ:  Yes.
16          THE COURT:  Okay.  You can answer 128.
17               (LOUD PROLONGED CLANGING NOISE.)
18  (LOUDSPEAKER ANNOUNCEMENT:  Attention.  Your attention please.
19      The building emergency condition has been cleared.  You
20     may return to your (inaudible, multiple voices.)
21          THE COURT:  Thank God.
22      (LOUDSPEAKER ANNOUNCEMENT REPEATED.)
23          THE COURT:  129, I cannot for the life of me, Mr.
24  Kertez, see what's wrong with that.
25          MR. KERTEZ:  I understand, Judge.

1    THE COURT:  And 129 you can answer.

2  (LOUDSPEAKER ANNOUNCEMENT REPEATED A THIRD TIME.)

3    THE COURT:  What's wrong with 130?

4    (LOUD PROLONGED CLANGING NOISE.)

5  (LOUDSPEAKER ANNOUNCEMENT REPEATED A FOURTH TIME.)

6  (LOUDSPEAKER ANNOUNCEMENT REPEATED A FIFTH TIME.)

7    THE COURT:  Mr. Kertez, what's wrong with 130?

8  You can answer 130.

9    MR. KERTEZ:  That's fine.

10    THE COURT:  Well, I don't understand the purpose of

11  131.  I mean how do they know what the motivation was?

12    MR. LONGO:  Right.  I, yes, those were the documents

13  he completed.

14    THE COURT:  What difference does it make why he

15  retired?  Why would you want this?  This still shows that he

16  retired for perfectly legitimate reasons.

17    MR. LONGO:  I'm sorry, for purposes --

18    THE COURT:  No, I mean I don't understand the

19  purpose.  You don't have to answer 131.  You (inaudible) when

20  he retired.

21    The defendant never disciplined Knasiak for any

22  charge of discrimination. That's all right, you can answer 132.

23    MR. KERTEZ:  Training.

24    THE COURT:  Yes, this is training.  You don't have to

25  answer 133.

1          134.

2          MR. LONGO:  So nothing regarding Knasiak related to

3     training?  Wouldn't that be relevant as part of the original

4     complaint?

5          MR. KERTEZ:  No.  But it's not relevant as far as

6     failure to train.  That's a claim.

7          THE COURT:  Well, no, it isn't -- His question is the

8     right question.  Is it relevant to -- He's absolutely right.

9     Is it relevant to the original complaint?

10          MR. KERTEZ:  Well, it wouldn't be because whether he

11     harassed him or not doesn't matter whether they trained him.

12     Training is of no moment if he harassed him.

13          THE COURT:  I think that's probably right.  I think

14     that's right.  You don't have to answer 133.

15          And I think 134 is the same thing.  You don't have to

16     answer 134.

17          And again, all of these are from deposition

18     transcripts and so you have all this information and I decline

19     to make them go back and reread all of -- the entirety of the

20     transcripts to do this.

21          135 --

22          MR. KERTEZ:  This is from the deposition transcript

23     too, Judge.

24          MR. LONGO:  But the cases, your Honor, the case law

25     does indicate that wherever you find the information, if it

 1 | streamlines things --

 2 | MR. KERTEZ: That's right, but that's a much --

 3 | THE COURT: No, I do, I started out and that's why I

 4 | read you the things I read you. There isn't any question that

 5 | I have the discretion to make them do it. There are also a

 6 | number of cases where the City -- that the City has pointed me

 7 | to that says I have the discretion to leave you to your own

 8 | devices and to come up with those portions of the transcript

 9 | that support what the request would otherwise be.

10 | Now in this case there's a lot of depositions and I

11 | don't think that it's necessary to make the City go back and

12 | reread everything in order to answer these requests, and yes,

13 | maybe it would streamline it a little bit but I don't think so.

14 |  And I also think that at a pretrial conference all of these

15 | things can be fleshed out. I'm trying to do as much as I can

16 | here but I don't think that -- And I am sure there's some

17 | inconsistency in the way that I'm doing this. And if I went

18 | back and started again and looked at and matched each one, but

19 | I'm trying not to be inconsistent.

20 | I don't think they have to answer 135 for the reasons

21 | we discussed earlier.

22 | I don't see what's wrong with 136. I mean there may

23 | be all sorts of reasons why you didn't but the question is did

24 | you or did you not?

25 | MR. KERTEZ: Um-hum.

1          THE COURT:  So 136 the City should answer.

2          MR. KERTEZ:  I would argue, Judge, that that's part

3    of the failure to investigate, but . . .

4          THE COURT:  Well, --

5          MR. LONGO:  It's part of the original complaint.

6          THE COURT:  Well, I know, but I think the fact that

7    they didn't tell him, I just -- I think you should answer 136

8    and you can argue about the . . .

9          Is this from a deposition or not?

10          MR. KERTEZ:  Yep.  Yes, it is.

11          THE COURT:  Well then, this was in the case before he

12    amended his complaint.

13          MR. KERTEZ:  (Inaudible) yes.  Yes.

14          THE COURT:  Okay, 136 you should answer.

15          MR. KERTEZ:  Okay.

16          MR. LONGO:  You mean 137?

17          MR. KERTEZ:  No, no, 136?

18          THE COURT:  No, 136.

19          MR. KERTEZ:  137 is from the deposition.

20          THE COURT:  Right.

21          137 is from a deposition?

22          MR. KERTEZ:  Yes.

23          THE COURT:  You don't need to answer that then.

24          MR. KERTEZ:  All right.

25          THE COURT:  138, is that from a deposition of Lt.

1    Clark?

2            MR. KERTEZ:  Yes, yes.  And it also deals with

3    policy.

4            THE COURT:  All right, for both those reasons then

5    you don't have to answer 138.

6            139, is that --

7            MR. KERTEZ:  Policy.  Practice.  Custom.

8            THE COURT:  But these also were in the case from the

9    beginning.

10           MR. LONGO:  Yes.

11           THE COURT:  I mean these were things that were

12   produced.

13           MR. LONGO:  That's true.

14           THE COURT:  So you can answer 139.  If it's not what

15   it says you'll say no, that's not what it says.

16           MR. KERTEZ:  Okay.  All right.

17           THE COURT:  140.

18           MR. KERTEZ:  Again we're talking about a lot of

19   (inaudible), a lot of side (inaudible).

20           THE COURT:  Yes, I think do not encourage, I don't

21   know what that means.  I think 140 is vague.  So you need not

22   answer 140.

23           141 you might -- Yes, you need not answer 141.  It's

24   a Sommerfield 2 situation.

25           142 the same.

1          143 the same.  So that's -- (inaudible) 141 through

2    146 all deal with training and policy and practice.

3          MR. KERTEZ:  Um-hum.

4          THE COURT:  147.

5          MR. LONGO:  Judge, one --

6          THE COURT:  Is the same.  It deals with policy and

7    practice.

8          MR. LONGO:  But your Honor, even with -- I mean these

9    were documents that were produced --

10         THE COURT:  The General Order 00-03 was produced.

11   You want to go now farther and talk about things that policy

12   and practice and training that relates to the order and I think

13   that's different.  You know, I don't think that as to many of

14   these -- Oh, thanks -- Mr. Longo, I don't have the kinds of

15   problems that Mr. Kertez has with the text of them.  The

16   problem I have with them is that you made a representation to

17   me and it was so emphatic, and to Judge Gottschall, that you

18   didn't need information related to these things, and you didn't

19   need discovery.  There was going to be no further discovery.

20         And discovery, I'm not using discovery in some

21   technical -- I shouldn't say that.  Some of the cases make a

22   distinction in Rule 36 as to whether it's a discovery device or

23   not a discovery device.  I think that's just wrong.  It is a

24   vehicle for gathering information.  It doesn't matter what you

25   call it.  You're using this as a vehicle to gather information.

1    It doesn't matter what you call it.

2          I know the City has got cases so as to just textually

3    or literally read that this isn't a discovery, but it is a

4    discovery device.  Many, many cases say it's not.  But it's all

5    within the same grouping as discovery and there's this

6    interrelationship.  You're using this as a mechanism to gather

7    information that you told Judge Gottschall you didn't need to

8    do, and that's why I'm ruling the way that I'm ruling.

9          MR. LONGO:  Your Honor, could I (inaudible) merely

10   what I mentioned earlier.  There was a misunderstanding.  I

11   have part of the transcript that indicates that I specifically

12   indicated that we do need discovery as far as it relates to

13   investigation.

14         THE COURT:  Not to me.  Not to me you didn't.

15         MR. LONGO:  Could I read that part of the transcript

16   to your Honor?

17         THE COURT:  No.  I was here, Mr. Longo.  You told me

18   you didn't need discovery.

19         MR. LONGO:  As it relates to training.  And then as

20   it relates to (inaudible) investigations, we had a discussion

21   on that and I specifically indicated that we do need discovery

22   then.

23         THE COURT:  Well, it doesn't matter to me because I

24   denied -- You couldn't have indicated it to me.  I denied the

25   request.  It's Judge Gottschall that apparently you say was

1   under some misapprehension.  I wasn't.  I didn't let you do it

2   precisely because of the reason -- There wasn't a reason on

3   earth I thought that this couldn't have been in the case from

4   the beginning and this was going to dilate the proceedings

5   endlessly.  That was my call.  She said no.  She's the boss.

6   Okay?  So you're going to have to tell her that you -- that I

7   didn't get it.  Well, I got it.  I didn't let you do it.

8   You're going to have to persuade her that -- You explain to her

9   that you needed more, that you needed more than she thought you

10  needed.  But I -- As this thing is now I'm not going to let you

11  do this.

12          MR. KERTEZ:  We're on 148, Judge.

13          MR. LONGO:  We were on 147.

14          MR. KERTEZ:  We just finished that.

15          THE COURT:  Yes, we're on 148.  And 148 you need not

16  answer.  For the reasons we've talked about.

17          149 is the same.  It's policy and procedure.

18          150 is really argumentative.  It doesn't seek facts.

19   You don't have to answer 150.

20          151 you need not answer because it's policy and

21  practice.

22          And then 152 through 159 deals with statistics

23  relating to the length of investigations of discrimination,

24  harassment or retaliation, and I'm not bothered by the

25  subparts, because you could have put them in separate requests.

1   Where's this information come form?

2          MR. LONGO:  Lt. Susan Clark, the Rule 30.(b)(6)

3   witness said that she had approved investigations that took at

4   least a year or two, and she said that she could produce the

5   statistics, because she was in charge of statistics as well.

6          THE COURT:  And did she?

7          MR. LONGO:  No.

8          THE COURT:  Where did you get the statistics from?

9   These are very, very precise statistics.

10          MR. LONGO:  Yes, and that's why I'm asking to admit

11   or deny which category applies.

12          MR. KERTEZ:  Well, you know, your Honor, this goes to

13   the investigation again.  He's looking at failure to

14   investigate.  It takes too long.  They drag their feet so

15   there's really no good investigation.  That's what this all

16   goes to.

17          THE COURT:  Yes, I think it does, Mr. Longo.  Look.

18   So 152 through 159 as a grouping all relate to the length of

19   investigations by time periods, right?

20          MR. LONGO:  Yes.

21          THE COURT:  The City need not answer that because I

22   think that this runs afoul of the representations that Judge

23   Gottschall thought you made and if it turns out that she wants

24   to let you do this, then I guess we're going to have to revisit

25   this, Mr. Kertez.

1          MR. KERTEZ:  Um-hum.

2          THE COURT:  All right, 160 is -- 160 through 170 you

3    need not answer.  These are all policy and practice questions,

4    right, Mr. Kertez?

5          MR. KERTEZ:  Yes, Judge.

6          THE COURT:  Okay.  171 --

7          MR. LONGO:  Well, what's wrong with asking, for

8    example, I mean that's part of the original complaint.  For

9    example, on 164 --

10         THE COURT:  Policy, practice and procedure to monitor

11   the victim's work environment after the investigation is

12   sustained against the harasser, retaliator or discriminator.

13   That's got nothing to do with -- Well, tell me what that has to

14   do with your complaint as drafted.  Now forget the -- Your

15   complaint as originally drafted.

16         MR. LONGO:  I'm sorry, complaint what?

17         THE COURT:  I think these things are out of bounds

18   because I think that you are using requests to admit to gather

19   the information that I believed you represented to the District

20   Court you didn't need in order to allow her to let you amend

21   the complaint.  And so I didn't -- I think that's an improper

22   use of requests to admit.

23         Now let's take your initial complaint as drafted.

24   Let's say you never made an amendment, okay?  So we just have

25   the plain old discrimination case, not the case against the

1   City.  Or the claim against -- the other claim against the

2   City, right?  How would all this stuff -- Would this stuff then

3   be relevant?  If it is relevant, then I'm making a mistake.

4            MR. LONGO:  Well, I think under affirmative defense,

5   for example, 161, if they're saying they have policies and

6   procedures and that's why they should escape liability, because

7   don't forget they can escape liability by pleading their

8   affirmative defense despite what Knasiak did --

9            THE COURT:  Right.

10           MR. LONGO:  -- being deplorable.

11           THE COURT:  And that's their defense.  And the

12  procedures or policies or mechanisms in place to allow people

13  who are victimized to do something about it.

14           MR. LONGO:  Exactly.  So for example, 161 asks them

15  to admit or deny whether they post any signs of these alleged

16  policies or procedures.  They can admit or deny that.

17           Or let's take another one.

18           THE COURT:  Well, wait a minute, hold on.  What about

19  that, Mr. Kertez?  What about that?  That seems right.  If you

20  say there's a policy in place but let's say nobody gets it,

21  it's never posted, okay?  Then maybe that's a policy and maybe

22  it isn't, but the jury would certainly be entitled to know

23  that.  It wouldn't be enough, would it, to say -- This is a

24  rhetorical question --

25           MR. KERTEZ:  Um-hum.

1          THE COURT:  -- because I know you're going to say no

2   no matter what I say.

3          MR. KERTEZ:  Okay.  Judge, I know I'm going to be

4   with you on this one.

5          THE COURT:  But you have a secret policy that only

6   the Mayor of the City of Chicago and Jody Weis know about.  And

7   it's an exclusive policy.  But they don't tell anybody.  Then

8   by definition you lose on your affirmative defense, so it's not

9   a policy, it's illusory.

10          MR. KERTEZ:  But if it's in a general order, which is

11  where it is.

12          THE COURT:  Well, then that's not the answer.  Then

13  the answer is -- The question is really not relevance.  Are

14  these questions relevant?  Are these questions relevant to the

15  case as originally drafted?  And your affirmative defense.

16          MR. KERTEZ:  I don't believe they are.  I don't see

17  how they are.

18          THE COURT:  You know, let's -- (inaudible) the

19  defendant has no policy, practice or procedure to monitor the

20  victim's work environment after the investigation is sustained

21  against the harasser.  That doesn't seem to me, Mr. Longo, to

22  be a policy that allows people to come and complain.  It's

23  rather a remedial feature that doesn't exist, that doesn't

24  exist and maybe ought to exist to be sure it doesn't happen

25  again.

1          MR. LONGO:  And that remedial feature is part of the

2    affirmative defense.

3          MR. KERTEZ:  No.

4          THE COURT:  No, it's not.  I don't believe that it

5    is.

6          MR. KERTEZ:  No.

7          MR. LONGO:  Well -- that they take prompt remedial

8    action when there is discrimination.

9          THE COURT:  Well, is that true?

10          MR. LONGO:  That's part of their (inaudible).

11          MR. KERTEZ:  No.

12          THE COURT:  Mr. Kertez?

13          MR. KERTEZ:  No.  It's not.  This is something that's

14    after the fact.

15          THE COURT:  Well, no, no, let's go back.  Is that

16    part of the Supreme Court's decision in that case?  In the two

17    cases, in the other cases?  Your brief doesn't address this and

18    I haven't thought it through this way.

19          Do you see what I'm saying?  Maybe what we need to do

20    is to rethink, not rethink, we need to revisit the whole

21    concept of what the affirmative defense is in light of these.

22          Let me do this.  I don't want to drag this out any

23    more than I have but I do think it is -- Obviously this is

24    important.  I don't want to let Mr. Longo do something he's not

25    entitled to do.  I think that's really unfair.  Lawyers ought

1    to be bound by what they say.

2          On the other hand, if there is independent relevance

3    to this and it really goes to your affirmative defense, he's

4    entitled to this.

5          Just hypothetically let's say that the Faragher-

6    Ellerth defense consists of two parts.  The first part is

7    having stuff (inaudible) out there in meaningful ways so people

8    can exercise their right to complain, and two, having a follow-

9    up mechanism.  If that were the defense, then all this stuff

10   would be relevant.

11         MR. KERTEZ:  But that's not really the defense.  The

12   Faragher-Ellerth defense, as I understand it, your Honor, we

13   have --

14         THE COURT:  No, no, let me finish.  You've got to

15   listen.  If that were the defense -- Forget the name applied to

16   it, call it the Smith-Jones defense, composed of the two parts

17   I've just named, then all of this would be relevant to

18   affirmative defense although not -- And I don't know what you'd

19   do then in terms of his -- Well, it would be relevant as

20   affirmative defense -- to the affirmative defense, even if he

21   had never pled Count 2, right?

22         MR. KERTEZ:  If that were the case.

23         THE COURT:  If that were the case.  So now let's go

24   back to the real world.  What if, for purposes of our

25   discussion, if there's some component of the Faragher-Ellerth

1  defense, that would embrace the kinds of things he's talking

2  about.

3          MR. KERTEZ:  I don't believe --

4          THE COURT:  Not the investigation part.

5          MR. KERTEZ:  Right.

6          THE COURT:  I understand that.

7          MR. KERTEZ:  Yes.

8          THE COURT:  But the what you do after the complaints

9  and you have to -- There's the complaint mechanism and there's

10  the investigative mechanism, right?

11          MR. KERTEZ:  Um-hum.

12          THE COURT:  And I take it there's a mechanism to do

13  something to punish people or to stop it.

14          MR. KERTEZ:  Um-hum.  If (inaudible) anything, the

15  Faragher defense, it is that you have a mechanism for someone

16  to complain about discrimination but they haven't -- or

17  harassment -- but they have not taken advantage of it.

18          THE COURT:  Right.

19          MR. KERTEZ:  They have not used it.  That's the

20  defense.  If they have it, they used it, didn't use it.  That

21  is the Ellerth-Faragher defense, simply stated.  And I don't

22  think that this --

23          THE COURT:  That's -- I think that's right.  I mean

24  the fact that . . .

25                                              (Pause.)

1          Your position is that he never complained?

2          MR. KERTEZ:  Right.  That for a long time this was

3    happening and he never went and made a complaint.

4          THE COURT:  But at some point, Mr. Kertez, I thought

5    you said he did complain.

6          MR. KERTEZ:  At some point he did.  At some point,

7    yes, he did.  But our argument would be that there was a period

8    of time when he could have --

9          THE COURT:  Okay.

10         MR. KERTEZ:  -- but did not.

11         THE COURT:  Okay.  But what if he does it and he's

12   just late and then they still don't do anything?  And there's

13   more discrimination and more retaliation?  What's the

14   difference?  Isn't that still a violation?

15         MR. KERTEZ:  Well, if that --

16         THE COURT:  And the affirmative defense doesn't work

17   then.  It works up to the point he doesn't complain, I agree.

18         MR. KERTEZ:  Correct.  That's correct.  It works up

19   -- (inaudible) what you're saying.  It works up to the point he

20   doesn't complain.

21         THE COURT:  Mr. Longo is going to either say he did

22   complain and then it's a factual dispute, and then from a point

23   in time forward everybody agrees he did complain and then that

24   nobody did anything, I guess.

25         MR. KERTEZ:  Okay, and the argument would be that had

1    he complained at X date, then everything that happened that

2    we're here with wouldn't have happened.  But he doesn't do it.

3     He doesn't give us that opportunity, and that's what Ellerth-

4    Faragher says.

5              THE COURT:  And by the time he does complain, is it

6    your position then that nothing thereafter happens?

7              MR. KERTEZ:  No.  Oh, no.  There are things that

8    happen.

9              THE COURT:  There are things that happen?

10             MR. KERTEZ:  Yes.  Right.  There is an investigation.

11    There is no further incidents after -- And they're --

12             THE COURT:  After he complains there's no further

13    incidents.

14             MR. KERTEZ:  Right.  They don't work together in the

15    same shift, on the same shift together from I think about a

16    month.

17             THE COURT:  See, okay, so when he does complain

18    you're saying he has no further involvement with Knasiak?

19             MR. KERTEZ:  Right.  And not in a working

20    environment.  I mean they may pass each other.

21             THE COURT:  And then whatever they do in the bars --

22             MR. KERTEZ:  Right.

23             THE COURT:  -- that's his problem.

24             MR. KERTEZ:  That's right.

25             MR. LONGO:  That's another whole issue.

1      MR. KERTEZ:  No, it isn't.

2      THE COURT:  No.  I understand.

3      MR. KERTEZ:  But that's -- that's (inaudible).

4      THE COURT:  But that's their defense.

5      MR. KERTEZ:  Yes.  Anyway, so this really doesn't go

6  to it at all in my view, in terms of let's say Sommerfield 1.

7      THE COURT:  Yes.

8      MR. KERTEZ:  It should -- This goes to the

9  Sommerfield 2 issue clearly.

10                                                    (Pause.)

11      THE COURT:  Let me go through the rest of these and

12  let's block out the ones that we know.

13      160 through 170, we've said, are all policy, right?

14      MR. KERTEZ:  Correct.

15      THE COURT:  All right.  You don't have to answer

16  those.  And then, but Mr. Longo, we'll come back to all of

17  them.  Block out the policy ones so we'll talk about this a

18  little bit more.

19      Now 171, everything the defendant does to prevent

20  religious discrimination and harassment is contained in General

21  Order 00-03 and 93-3.  That goes to training.

22      MR. KERTEZ:  Yes.

23      THE COURT:  Yes, I think it does.  So 170 you need

24  not answer.  171 you need not answer.

25      MR. LONGO:  171.  Doesn't it go also to the

1   affirmative defense to the original complaint?

2          THE COURT:  No, I don't think that it does.  To

3   prevent it, prevention -- Is the General Order 00-03 and 93-3

4   are the things, if my memory serves me, that you rely on for

5   the Faragher-Ellerth defense, right, Mr. Kertez?

6          MR. KERTEZ:  Yes.  Well, yes, right.  It is the

7   machinery that's set up --

8          THE COURT:  The machinery.

9          MR. KERTEZ:  -- to allow you to complain.

10         THE COURT:  Right.  And that creates and articulates

11  the mechanism in the complaint structure.

12         MR. KERTEZ:  I believe it does, yes.

13         THE COURT:  Right.  Okay.

14         Well, yes, I think this goes to investigation and

15  training.  I do.  So you don't have to answer 171.

16         172 is policy, practice and procedure as it

17  specifically says here and deals with post-investigation

18  monitoring.  That's clearly not Faragher-Ellerth.

19         MR. KERTEZ:  No.

20         THE COURT:  172 you need not answer.

21         173, defendant has no policy for the investigator to

22  inform victims of retaliation or harassment and discrimination

23  or any preventative or corrective opportunities available by

24  the defendant.  What is -- I don't even know what that means.

25         MR. LONGO:  (Inaudible) that specifically indicates

1   that, whether the defendant provided preventative or corrective

2   opportunities, so that's language pretty much taken from the

3   case --

4           MR. KERTEZ:  No.

5           MR. LONGO:  -- and that's to affirmative defense.

6           MR. KERTEZ:  Your Honor, I don't understand what the

7   thing says.

8           THE COURT:  No, I had trouble with this.  The

9   defendant has no policy for the investigator -- Oh, for the

10  investigator to (inaudible).  I mean here, in other words, I

11  understand what this is.  In other words the City doesn't have

12  a policy whereby an investigator can tell the victim how to

13  prevent or correct, I guess, further discriminations.  Well,

14  that's purely -- No, wait a minute.  Let me think about this.

15          MR. KERTEZ:  You know, your Honor, that's

16  investigation because we're talking about after the person

17  already complained and you have somebody investigating it.

18  This is saying that the investigator doesn't do his job.  The

19  policy that the investigator doesn't inform the supposed

20  victims of certain things, this is not about whether there's an

21  opportunity to make complaints.  This is once --

22          THE COURT:  Well, corrective is something different.

23   But it says the defendant has no policy whereby victims are

24  informed -- (inaudible) changing the words -- for the

25  investigator, that is to say post-complaint --

1          MR. LONGO:  Um-hum, yes.

2          THE COURT:  -- I think Mr. Kertez is right.  This

3    deals with post-complaint situations and there is -- there

4    either is a policy in place at this point or there isn't.

5          You don't have to answer 173.

6          Lieutenant Susan Clark has never been trained on

7    religious discrimination and harassment training.  Tell me

8    about Susan Clark; who is she?

9          MR. KERTEZ:  She is a part of I.A.D.

10         MR. LONGO:  She's a 30.(b)(6).

11         MR. KERTEZ:  Right, she's a 30.(b)(6) witness, yes.

12         MR. LONGO:  She's a commander.

13                                                    (Pause.)

14         THE COURT:  Yes, this deals specifically and

15    explicitly with training.

16         MR. LONGO:  But don't they indicate in their

17    affirmative defense that they have policies to train, et

18    cetera?

19         THE COURT:  No, what they did, and what you objected

20    to, maybe presciently although I didn't think so at the time,

21    is they were going to rely on (inaudible) and then they cite

22    pages to it, and I went back and looked at that and I mean I

23    wrote something up about this, and I thought, and I quoted what

24    I thought they were trying to do, and I said if there's

25    anything beyond this, they must tell you.

1          MR. LONGO:  Okay.

2          THE COURT:  And they didn't tell you, as you've now

3  told me so.  It's strictly that there are mechanisms,

4  articulated mechanisms in place that allow people to complain

5  if they are . . .

6          Now the question though is, and I'll want to revisit

7  this with you in a minute, let me go through the rest of these

8  and then we'll talk about this.

9          175.  After a victim complains about discrimination,

10  harassment or retaliation, defendant has no policy, practice or

11  procedure or time frames when to interview, and so on.  Well,

12  this is all post- -- This is . . .

13          You don't have to answer 175.

14          176 is the same, it's policy or practice, and this is

15  post-complaint.

16          177 is policy or practice or procedure post-

17  complaint.

18          178, which is happily, thankfully, the last one, is

19  policy, practice or procedure to complete investigations within

20  a certain time frame.

21          So you don't have to answer 172 through 178.

22          MR. KERTEZ:  Now, your Honor, if we might (inaudible)

23  revisit some of the deposition ones, I believe, that we talked

24  about earlier.

25          MR. LONGO:  No, I thought you had (inaudible).

```
 1          THE COURT:  No, no, let's -- Which ones are you
 2   talking about?
 3          MR. KERTEZ:  About some of the earlier deposition --
 4          THE COURT:  No, no, which ones?  (Inaudible) --
 5          MR. KERTEZ:  Anything in particular?
 6          THE COURT:  Yes.
 7          MR. KERTEZ:  Okay, let me go through them.
 8          71, Karen told me, and 72.
 9          THE COURT:  Okay.  Sergeant Maciejewski does not know
10   if he ever received any materials or policies relating to
11   harassment and discrimination.
12          MR. KERTEZ:  Which one are we on, Judge?
13          MR. LONGO:  71 and 72.
14          MR. KERTEZ:  Okay, wait, let me get that, please.
15   Yes.  All right.
16          THE COURT:  Mr. Longo, I'm a little perplexed.  I
17   don't understand why wouldn't you have -- I know you wanted to
18   do this and color the stuff in a variety of ways, but what
19   would have been wrong with just saying the City of Chicago
20   admits -- I mean the City of Chicago has no policy or mechanism
21   or procedure for the filing of religious or harassment
22   complaints beyond that contained in whatever the two orders
23   are.  And then to say those two orders are not distributed,
24   (inaudible) that those orders are not distributed to every
25   police officer?
```

1        MR. LONGO:  I believe I had something like that.

2        THE COURT:  Well --

3        MR. LONGO:  At least I think so.

4        THE COURT:  What happens is it gets all -- There is

5   one in here about --

6        MR. LONGO:  I don't think your Honor allowed the --

7        MR. KERTEZ:  Your Honor, 71 --

8        MR. LONGO:  -- (inaudible, multiple voices).

9        MR. KERTEZ:  -- and 72 are again the training issue.

10   That's what this goes to.  71 clearly goes to whether he was

11   trained or not, you know, if he didn't receive any materials.

12        MR. LONGO:  Well, I think it's important because --

13        THE COURT:  Well, no, but wait a second, wait, wait,

14   wait.  Policies relating to harassment and discrimination would

15   also deal with the Faragher-Ellerth defense because that would

16   be something that would also relate to how you go about

17   complaining.  That is a policy that relates to harassment and

18   discrimination.

19        MR. KERTEZ:  But that's not what he asks.  That's not

20   what he's saying here.

21        THE COURT:  Well, sure it does.

22        MR. KERTEZ:  (Inaudible) 71 and 72 is he is trying to

23   ask questions, have us admit things about a policy concerning

24   Sergeant Maciejewski, not in general, not the City, but

25   Sergeant Maciejewski not knowing, so this means Sergeant

1  Maciejewski didn't get trained on this stuff.

2        MR. LONGO:  (Inaudible, multiple voices) -- giving

3  the policies and procedures -- (inaudible, multiple voices) --

4        MR. KERTEZ:  This is --

5        MR. LONGO:  -- they wouldn't give him.

6        MR. KERTEZ:  This is outside of Ellerth-Faragher.

7  Ellerth-Faragher is whether somebody knows that there is

8  something out there for them to complain, whether they did or

9  not.  This is saying that Sergeant Maciejewski was never

10  trained, doesn't know.

11        MR. LONGO:  If Sergeant Maciejewski didn't get the

12  policies and procedures and if somebody, an officer, one of his

13  subordinates complains to him and says this Sergeant is saying

14  Hitler should have killed me, Maciejewski is not going to

15  know --

16        THE COURT:  Well, forget -- No, no, you're looking at

17  downwards.  I'm looking at upwards.  Maciejewski wants to

18  complain.  He's the victim.

19        MR. KERTEZ:  Well, but that's not what --

20        MR. LONGO:  And he would not know what to do.

21        THE COURT:  He wouldn't know what to do.

22        MR. KERTEZ:  But that's not what this says.

23        THE COURT:  Yes, it does.  It does in a broad sense.

24        MR. KERTEZ:  But it --

25        THE COURT:  He doesn't know if he ever received any

1    materials or policies relating to harassment.  So if he's

2    victimized -- And this is a problem that I wanted to revisit

3    with you and I don't know if we can solve it exactly today, and

4    that is the Faragher-Ellerth defense and whether one or more of

5    these things would relate to the affirmative defense.

6           MR. KERTEZ:  But it's not saying what -- If that

7    would agree with (inaudible), Sergeant Maciejewski does not

8    know how a person could complain about discrimination or

9    harassment if it occurred to them.  That would be what you're

10   talking about and I agree.  What this says is Sergeant

11   Maciejewski does not know if he received any material and

12   policies relating to harassment and discrimination (inaudible).

13          THE COURT:  But that -- Look, the fact that you want

14   to draw one inference and Mr. Longo wants to draw another which

15   may be valid or may not be totally valid but may be limited,

16   doesn't mean you shouldn't have to answer.

17          MR. KERTEZ:  Well --

18          THE COURT:  I don't say (inaudible) this one, but I'm

19   looking at this now in the context of our discussion about

20   whether one or more of these requests to admit is appropriate

21   because of the affirmative defense.  That's all I'm saying.

22          MR. KERTEZ:  Okay, and your Honor, we also talked

23   about when a request to admit is confusing, ambiguous, not

24   worded in such a way that really submits to answer, and --

25          THE COURT:  No, no, no.  This is absolutely not --

```
1           MR. KERTEZ:  He could have -- We could have done
2    it --
3           THE COURT:  -- vague or ambiguous at all.  It is as
4    clear as can be.  The question is what do you draw from that?
5    You want to say it doesn't mean anything because it didn't mean
6    he didn't know how to do it, and that's what you would say he
7    needs to know, and Mr. Longo could say well, wait a minute, you
8    know, he didn't get it.  He's a guy that was entitled to know
9    about how he deals with victimization or --
10          MR. KERTEZ:  I know but --
11          THE COURT:  Wait, wait just a minute.
12          MR. KERTEZ:  Okay.
13          THE COURT:  Isn't it meaningful if a supervisor,
14   because sergeants are supervisors --
15          MR. KERTEZ:  Um-hum.
16          THE COURT:  -- and (inaudible) the immediate
17   supervisors.  If a sergeant doesn't know that there is a
18   policy, a mechanism for complaints, is that not significant in
19   terms of the complaint as it originally was drafted?
20          MR. KERTEZ:  Well, 71 really says that he doesn't
21   know if he received any materials.  Well, first of all, how
22   does that really help anybody because he says I don't know.  He
23   might have.  I just don't recall.  And it's whether he received
24   material or not.  Not that he doesn't know how to do it but he
25   doesn't remember receiving any material, so it seems to me that
```

1  that has an additional problem because of that.

2  　　　　MR. LONGO:  If he doesn't know if he got these

3  policies on discrimination and harassment, he doesn't know what

4  the mechanisms are if somebody were to complain to him --

5  　　　　MR. KERTEZ:  Well --

6  　　　　MR. LONGO:  -- or if he has a complaint.

7  　　　　MR. KERTEZ:  I would disagree with that.  The fact

8  that he doesn't remember receiving them would --

9  　　　　THE COURT:  Well, let's go to the next one.  He

10  doesn't know if the police department has any policy or

11  procedure relating to national origin discrimination or

12  harassment or religious discrimination or harassment.  Now that

13  -- 71 -- The ruling on 71 can stand.

14  　　　　72 is a much more --

15  　　　　MR. KERTEZ:  So 71 no answer, correct?

16  　　　　THE COURT:  Right.

17  　　　　MR. KERTEZ:  Okay.

18  　　　　THE COURT:  And the point is he -- But he didn't even

19  know -- I mean he may well know that there is a procedure, Mr.

20  Longo.  You see, we're arguing now things that we shouldn't be

21  arguing in the context of this motion.

22  　　　　But let's do 72.

23  　　　　If this is from a deposition in any event, Mr. Longo,

24  then you've got it and you don't need the answer.

25  　　　　But 72 is a little different.  He doesn't even know

1    if there's any policy or procedure relating to national origin

2    discrimination or harassment or religious discrimination or

3    harassment.

4              MR. KERTEZ:  No, your Honor, it --

5              THE COURT:  Now how could that not be significant to

6    the complaint?

7              MR. KERTEZ:  This is -- But under our current

8    thought, if this is a part of a deposition, which it is, it

9    would require us to riffle through the deposition to read the

10   whole thing to find out what he says.

11             THE COURT:  Well, let's forget that just for the

12   moment.

13             MR. KERTEZ:  All right.

14             THE COURT:  Is there anything else wrong with that?

15   With the question itself other than you might have to do a

16   little work?

17             MR. KERTEZ:  Your Honor, I believe that goes to their

18   (inaudible).

19             THE COURT:  Or Mr. Longo gives you the information,

20   depending on which way I decide I want to do it --

21             MR. KERTEZ:  Well --

22             THE COURT:  -- (inaudible).

23             MR. KERTEZ:  Okay, well, your Honor, I still think

24   this goes to training.  It (inaudible) training (inaudible).

25             THE COURT:  Well, maybe so, but that isn't the

1  answer.  It may go to training but it also goes to -- And it

2  isn't disqualified because it also goes to Count 2, and that

3  doesn't make any sense.  In other words, had he never filed

4  Count 2 and it's relevant to Count 1, it's relevant.

5          MR. KERTEZ:  I understand.

6          THE COURT:  The fact that he files Count 2 and it's

7  now relevant to Count 2 and to Count 1 doesn't make it

8  irrelevant to Count 1.

9          MR. KERTEZ:  Yes.

10          THE COURT:  So as I look at 72 again, I think you

11  should answer 72.  I think 72 is a significant question.  And I

12  don't think it's a terrible ordeal for this particular one for

13  you to go back and try to figure this out.  So answer 72.  I

14  think it's important and I think it's clearly relevant to the

15  claim as originally drafted.

16          Now my question is, to myself and I guess to you

17  folks, --

18          MR. KERTEZ:  Can he tell us what the page number is?

19   Would that be fair on that one?  Again that would be helpful

20  if he could --

21          THE COURT:  Well, why don't you go ahead and give him

22  whatever page --

23          MR. LONGO:  Your Honor, I would have to read the

24  whole transcript.

25          MR. KERTEZ:  Well, so do we.

1    MR. LONGO:  But that's how -- And you can call him

2 and you can ask him or we can all be on the phone together with

3 him, but that's --

4    THE COURT:  No, we can't all be on the phone with

5 him.  They're not going to let you.

6    MR. LONGO:  I don't have that avenue; they do.

7    THE COURT:  No, but you want to do this from the dep-

8 osition.

9    MR. LONGO:  I just want that they admit it or deny

10 it.  They're saying the answer is in the deposition?  If

11 they're saying it's in the document, the answer --

12    THE COURT:  Well look, I would assume that by this

13 time Maciejewski knows that there's -- you know, that the City

14 of Chicago has a policy against harassment on a variety of

15 terms, including ethnicity and country of origin.

16    MR. KERTEZ:  Sure.  And in fact this is in present

17 tense.  This isn't back in the day.  This is today.

18    THE COURT:  Well, that's what I asked you earlier.  I

19 brought that to your attention and I said this says right today

20 and you both said yes.

21    MR. KERTEZ:  Yes.

22    THE COURT:  And that didn't cause you a problem

23 before, Mr. Kertez.

24    MR. KERTEZ:  But again --

25    THE COURT:  It strikes me that as --

```
1              MR. KERTEZ:  Wisdom again is sometimes --
2              THE COURT:  Slow in coming.
3              MR. KERTEZ:  -- slow in coming and this time it was.
4              THE COURT:  Well then, it seems to me your answer is
5    he does know that there's a policy.  And you deny --
6              MR. KERTEZ:  Right, because --
7              THE COURT:  The question -- The problem is should it
8    be answered, and I'm telling you to answer 72 and I'm going to
9    make the City figure this out.  I'm not going to have Mr. Longo
10   do it.  You do it.
11             MR. KERTEZ:  Okay.
12             THE COURT:  Go back and look, or talk to him.
13             MR. KERTEZ:  Well, all we have to do is, if he
14   currently knows, present tense, say yes, that he knows.  And if
15   it's -- if he doesn't know, present tense, --
16             THE COURT:  I think that's right.  These questions
17   are phrased in the present tense.
18             MR. KERTEZ:  Again, let me just say for the record it
19   does no good in this case because it doesn't say what he knew
20   or didn't know back when it was relevant, but --
21             THE COURT:  But that has nothing to do with the
22   answer, whether you should answer a request to admit.
23             MR. KERTEZ:  Well, we'll answer it, your Honor, I see
24   exactly what you're saying on that.
25             THE COURT:  Okay.  All right.  I guess what I'm going
```

1   to leave to you folks, now I'm going to try and be as clear as

2   I can be on this.  You have a couple of options, Mr. Longo,

3   because I take this case, as you know, it's now 11:15.  We've

4   been at this since about quarter to nine this morning, right,

5   Mr. Longo?

6           MR. LONGO:  Something like that, yes.

7           THE COURT:  So it's two and a half hours or

8   thereabouts that we've been going over this.

9           MR. LONGO:  I want to mention for the record that I

10  tried to -- We had an agreement, we being the defendant and

11  myself, I think it was Wednesday of last week, to go over each

12  one of these and we set up Friday to do that and I was prepared

13  to do that at 3:00 and when the defendants called they said

14  they were not going to go through each one of these.  And I

15  said but we had an agreement to do that.

16          THE COURT:  Who told you that, Ms. Werth?

17          MR. KERTEZ:  No, I did.

18          MR. LONGO:  Ms. Werth and Jay Kertez.  And I said

19  that we had an agreement and you are unilaterally just changing

20  it.

21          MR. KERTEZ:  Well, I said I was prepared to do that

22  to see what your concerns are.  You said no, we're at an

23  impasse.  We're going to be filing a motion.

24          MR. LONGO:  Well, your Honor, if I might, I think

25  that's (inaudible).

```
 1            MR. KERTEZ:  We had tried the entire week to --

 2                  (Inaudible, multiple voices.)

 3            MR. LONGO:  My motion says that they had a Rule 37(2)

 4     conference in good faith.  I don't think that's good faith.

 5            MR. KERTEZ:  We -- Your Honor, we tried all week, the

 6     week of July 7th, to talk to Mr. Longo and he would change it.

 7      He would keep changing it.  Now we're talking about 3:00 on

 8     Friday he's willing to talk to me.  You see how long it took us

 9     to do this here.  Given the fact that I thought they were too

10     voluminous in the first place and I saw how many dealt with

11     investigation and training, I thought you know what?  At 3:00

12     on Friday, if that's when you're going to --

13            THE COURT:  I understand.

14            MR. KERTEZ:  -- talk to me, it --

15            THE COURT:  I understand.

16            MR. KERTEZ:  We're at an impasse.

17            MR. LONGO:  I don't know what he's saying about

18     changing.  We were scheduling --

19            THE COURT:  Well, it doesn't matter.  Here, look.  We

20     have done this and we've now accomplished what you guys could

21     have done but I don't think -- (Inaudible) both you wouldn't

22     have gotten anywhere, so it is what it is.  I understand what

23     you're saying.

24            Here's what you can do.  But I want to say this the

25     right way.  You certainly can go to Judge Gottschall because I
```

1    have lumped a lot of these together as the City did.  For

2    example, in this brief, on Page 9 at the bottom, it says almost

3    all of his requests to admit concern training, investigation

4    and the City's policies, practices and customs (required to

5    prove Section 1981 and 1983 claims).  See, for example, and

6    then there's a long listing of all the ones that they thought

7    were inappropriate and so when we went through this initially

8    that's how I analyzed it because I thought that was the right

9    analysis.

10         As we discussed this, as we spent our two-and-a-half,

11   now going on three hours of this, it occurred to me that the

12   fact that there was some inappropriate use of the request to

13   admit mechanism to get information that I had thought Mr. Longo

14   promised he didn't need and wouldn't try to get, while that may

15   have made the City's objections, to the extent they were valid,

16   valid it didn't necessarily answer the question of whether the

17   requests to admit would have been (inaudible) appropriate under

18   the complaint as drafted, that is to say the information sought

19   effectively had independent relevance to Count 1.

20         Now if there's a spillover to Count 2, so be it, but

21   that doesn't invalidate Count 1.  It is the problem, from an

22   evidentiary point of view of, you know, multi(inaudible)

23   admissibility or limiting admissibility where you have evidence

24   admissible for one purpose but not admissible for another.

25         You can have, for example, a court granting

1   substantial justification on Count 2 of the complaint and not

2   on Count 1 and the evidence that would go to Count 2 is still

3   admissible on Count 1 if it's relevant.  So the fact of the

4   summary judgment doesn't make evidence inadmissible, and I

5   think the same kind of analysis applies here.

6         So my question is as to any of these ones, this large

7   body of ones, that I've kept out not on the grounds that it's

8   in a deposition and you can find it yourself, Mr. Longo, or

9   that things are vague, you know, those are just chiefly

10   discretionary rulings, but on the ground that you were

11   attempting to get information that I didn't think -- that I had

12   thought you had promised you wouldn't get.  If those requests

13   are proper under Count 1, this needs to be revisited.

14         I guess your draw, Mr. Longo, is simply just to take

15   an appeal right now to Judge Gottschall and say that I'm

16   misapplying the theory that requests to admit were

17   inappropriate devices to get this information because it

18   pertained to Count 2.  Or you can try to figure out in a very

19   meaningful way and prove to me that these large body of

20   requests are relevant to Count 1, even if they're relevant to

21   Count 2, that is to say the investigation, training, policy and

22   so on as it pertains to 1981 and 1983 counts is also relevant

23   to the count that you drafted the complaint initially.

24         What I urge you not to do is try to appeal and then

25   make the argument to Judge Gottschall that it's relevant to

1    Count 1 when you never made that argument here because that

2    would be inappropriate.

3            MR. LONGO:  I try to resolve (inaudible) wherever I

4    can.

5            THE COURT:  Well, I mean what I'm saying to you is

6    not that I'm happy to do it, but I think that if you can go

7    back and look at the Ellerth-Faragher doctrine and you can

8    conclude that one or more of these exclusions really is

9    relevant anyway to Count 1, you can file something with me and

10   I'll reconsider what I've done even though it's an argument

11   (inaudible) maybe you'll have a chance to make the argument

12   because you never had a chance to file a brief when you tried

13   to do it today expeditiously.

14           I'm not inviting you to do that.  Every time I invite

15   you to do something there's just more stuff, but I think if I

16   can do this and try to figure this out, and of course at that

17   point I'd let the City file a brief in response because I think

18   it's a hard -- to me it's not the kind of argument you can just

19   do on your -- just standing here without any preparation.

20           That's how I look at this.  So the long and short of

21   it is I think what you have done with a large number of these

22   is to attempt to get information via the route of requests to

23   admit that you assured me and I think you assured me and Judge

24   Gottschall you wouldn't do.

25           Now you say there's a misunderstanding.  Maybe.  But

1    again if, apart from any misunderstanding, if the information

2    is otherwise appropriately gathered, and if the requests are

3    otherwise appropriate requests in the sense that they're not

4    vague and they're not so complicated and cumbersome that they

5    can't be answered simply, but they really do also go to the

6    City's affirmative defense on Count 1, I'll rethink some of

7    these.

8            MR. LONGO:   Okay.   Thank you, your Honor.

9            THE COURT:   Okay.   Thanks.   It is now 11:30.   Okay.

10           MR. KERTEZ:   Your Honor, shall we begin to respond?

11   I'm not sure what -- Maybe I should --

12           THE COURT:   You don't need to do anything.   As things

13   stand now --

14           MR. KERTEZ:   Don't do anything.

15           THE COURT:   -- don't do anything.

16           MR. KERTEZ:   Okay.

17           THE COURT:   What I'm going to do, keep your notes.

18           MR. KERTEZ:   We will, Judge.

19           THE COURT:   I'm going to issue a minute order that is

20   going to simply reflect in a big long stream like you don't

21   have to answer however many.

22           MR. KERTEZ:   Right.

23           THE COURT:   And you do have to answer -- And I'll

24   just string cite the requests to admit by number.   And I'll say

25   it's for the reason -- So the motion is going to be granted in

1    part and denied in part.

2           MR. KERTEZ:  All right.

3           THE COURT:  The City's motion for the reasons set

4    forth in our three hours or almost two-and-a-half or three

5    hours of discussion.  If -- And Mr. Longo has three options.

6    He can do nothing and live with this and say I don't care, or

7    it's not worth the effort.  Or two, he can come back and ask me

8    to try to persuade me that the policy/procedure/practice

9    questions are still okay because of your affirmative defense,

10   or he can simply say Cole's not worth it; he's an idiot.  I

11   can't persuade him of anything and go right to Judge

12   Gottschall.

13          MR. LONGO:  I would never say that either way.

14          THE COURT:  It's his call.

15          MR. KERTEZ:  Your Honor, I --

16          MR. LONGO:  Your Honor, could I ask -- Could I

17   suggest this to your Honor?

18          THE COURT:  Yes.

19          MR. LONGO:  For consideration?  Can we get the

20   defendant to answer the ones that your Honor has indicated --

21          THE COURT:  Oh, I'm sorry, thanks.  Thank you.  As to

22   the requests to admit that I've ordered you to answer, and

23   please, Mr. Kertez, I'm begging you, me, I'm begging you, not

24   to try to do -- (inaudible, multiple voices) --

25          MR. KERTEZ:  You don't have to beg, Judge.

1      THE COURT:  All right.  -- not to try to do in these
2  answers what you did fooling around with your sort of atomistic
3  approach to the words in our discussion. Do what Holmes said:
4  Think things, not words, in answering these questions.  Because
5  otherwise we'll be back here and we'll be fooling around
6  endlessly.  I want those questions answered.  They're simple.
7      If you want to qualify them in good faith
8  legitimately, be my guest, but the ones you can answer, answer.
9   You know what he's looking for.
10      How long do you need to do this, two weeks?
11      MR. KERTEZ:  Your Honor, I am so spooked about -- If
12  we could have --
13      THE COURT:  How's 21 days?  You don't have any dates
14  with Judge Gottschall anyway, do you?
15      MR. KERTEZ:  Your Honor, if I could have the 30 days
16  that (inaudible), I would appreciate it, thank you.
17      MR. LONGO:  Your Honor, my only concern is that these
18  have been outstanding since April.
19      MR. KERTEZ:  No.
20      MR. LONGO:  Your Honor had given him 14 days to
21  answer.
22      MR. KERTEZ:  No, they were --
23      THE COURT:  No.  Well, but wait.  But you know what?
24   You took the entire 30 days and then you did it late, you
25  know, and e-filed the stuff and they say they don't accept e-

1   filing.  I'm not going to get into that.  But you had 30 days

2   to dream these up.  I think you could have done it in a much

3   shorter time but that's what it took you, so I'm going to give

4   them 30 days.

5           MR. KERTEZ:  Thank you.

6           THE COURT:  You're not up against any dates.

7           MR. LONGO:  Okay.

8           THE COURT:  Discovery is closed.

9           MR. LONGO:  All right.

10          THE COURT:  You have no dispositive motion date, and

11  it's not going to affect anything.

12          MR. LONGO:  Okay, your Honor.  Have a good day.

13          THE COURT:  Thank you very much.

14          So you've got 30 days to answer.

15          MR. KERTEZ:  Um-hum, okay.

16          THE COURT:  The outstanding ones.  If Mr. Longo

17  doesn't do anything, that's the end of it.  If he appeals, he's

18  got 10 days to do it.  If he wants to come back to me and ask

19  me to re-think certain ones, that's -- I'll look at -- I'm not

20  going to revisit the ones that I think were vague.  I'm not

21  going to revisit the things that I told you are in depositions

22  and you don't need that stuff.

23          But on the ruling of the core things I don't want you

24  to be -- not to have information you should have as it relates

25  to the affirmative defense.  So go back and read the two

1    Supreme Court cases and then read some cases that follow in its

2    wake.  But I -- In my memory of those cases it's just not that

3    they are quite what you're suggesting.  But we'll see.

4              MR. LONGO:  Okay.  May I ask one last question, your

5    Honor?

6              THE COURT:  Yes, of course.

7              MR. LONGO:  You had cited -- You referred to a case I

8    was curious about in the very beginning.  You said that there

9    was a New York case in which there were 400 requests to admit.

10    I don't believe your Honor had given the cite to that.  I'm

11   just curious.  I'd like to look at the case.

12             THE COURT:  If you want to look up something, if you

13   want to find something really interesting, look up "requests to

14   admit" in quotes and 1441 and you'll find a case where there

15   was 1,441 requests to admit --

16             MR. LONGO:  I think I have that case.  That's Gannon,

17   I think?

18             THE COURT:  Maybe.  I think -- But it all dealt with

19   documents.  It wasn't this kind of thing.

20             MR. LONGO:  But the one you referred to, I did not

21   find that in my research and that's why I'm just curious.

22             THE COURT:  I gave it to you.  It's the J.P. Morgan-

23   Chase case.

24             MR. LONGO:  That was the one with the 400

25   requests --

```
 1                THE COURT:  Yes.

 2                MR. LONGO:  I read it, Judge.

 3                THE COURT:  2002 Westlaw.

 4                MR. LONGO:  Yes.

 5                THE COURT:  31159139 at Star 1.

 6                MR. LONGO:  Okay.  That's the one with the 400

 7     requests to admit?

 8                THE COURT:  First.

 9                MR. LONGO:  Okay, and I read that case.

10                THE COURT:  Defendant's application to compel further

11     responses from plaintiff to many of defendant's more than 400

12     requests to admit is denied.  Plaintiff is indeed (inaudible)

13     could have moved to strike.

14                There's another one that has 700-and-some-odd, and

15     just on the face of it the judge wouldn't do it.  Then there's

16     others where there was huge numbers and nobody objected and

17     they went ahead and answered.

18                MR. LONGO:  And your Honor, I know that I spoke with

19     a couple of my colleagues and one indicated that Judge Denlow

20     had a denied a request to strike over 400 requests to admit,

21     and Judge Shadur had denied the defendant's request to strike

22     hundreds of requests.  It was either Judge Shadur or Judge

23     Kennelly, I don't remember.

24                THE COURT:  Well, you know what you have to look at

25     if you're not getting -- You don't get -- Not you, no one will
```

1   get from the opinions, there's a dynamic to these cases as you

2   know, and it can be that the other side is just so bad that the

3   judge isn't going to do anything to help one side or the other,

4   and it's not that you're . . .  And then on the other it could

5   be that they're really legitimate requests and the judge says

6   look, I've got to deal with this at a pretrial conference, you

7   do the work.

8           And if they're really simple things sheer numerosity

9   doesn't make any difference at all.  You know, what if it said

10  the City of Chicago was incorporated on such-and-such a date?

11  And let's say that they're all that straightforward and simple

12  and there's 400 of them.  Well, why not do that?  I mean you

13  wind up doing that when you prepare, you know, findings of fact

14  and conclusions.  You can do it all at the beginning.

15          I had a case once with Judge Marshall.  It's a case

16  that went to the Supreme Court, and I was really mad.  He

17  wanted us to do, I forgot whatever it was, certain kinds -- Oh,

18  stipulations.  Well, you can't do it.  I said Judge, you can't

19  do it in this case.  He says okay, well, come back when you can

20  and we'll set some more dates.

21          MR. LONGO:  (Inaudible).

22          THE COURT:  And he walked off the bench.  And we

23  represented the U.S. Chamber of Commerce, a First Amendment

24  case, and the Federal Trade Commission was involved, or the

25  Federal Election Commission, so we looked at each other and we

1　decided well, somehow we have to do this or this case is never

2　going anywhere.  He would never have set another date.  The

3　case would still be pending today.  But we did it.  Somehow you

4　can do it.

5　　　　　　　MR. LONGO:  When people come together and work things

6　out it can be done.

7　　　　　　　THE COURT:  Absolutely.

8　　　　　　　MR. LONGO:  Have a nice day.

9　　　　　　　THE COURT:  All right.

10　　　　　　　　　　　　　　　　　　　　　　　　　　(Pause.)

11　　　　　　　　　(Inaudible conversation.)

12　　　　　　　MR. LONGO:  . . .  You know, because --

13　　　　　　　THE COURT:  Well, let's do this.  What if I do this?

14　 I need to enter something so that they respond and I don't

15　want your 10 days to run.  If I -- And I don't, you know, I

16　don't want -- What do you want me to do?  Do you want me to

17　just delay the entry of this order?  I mean I could enter the

18　order and make it operative in 30 days.

19　　　　　　　MR. LONGO:  As long as they answer in the 30 days.

20　　　　　　　THE COURT:  Well then, that's not fair.  It should be

21　operative on both sides.

22　　　　　　　MR. KERTEZ:  Yes, for both sides.

23　　　　　　　THE COURT:  Right, and then -- So in other words, if

24　the City wants to appeal any of this stuff they should be able

25　to do that.  I'm not going to have their 10 days run while

1    yours doesn't.

2           MR. LONGO:  How long -- Can I suggest this?  And I

3    don't know if this is a good suggestion.

4           THE COURT:  No, you don't -- Mr. Longo, I'm not going

5    to do that.  This is the order and you're going to have to make

6    a decision from this.  I can't -- I'm not going to (inaudible)

7    the appeal.

8                         (Recording ended.)



        I, RIKI SCHATELL, certify that the foregoing is a

    correct transcript from the record of proceedings in the

    above-entitled matter.

    /s/ Riki Schatell                    September 8, 2008
                                         Date