UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)

DETLEF SOMMERFIELD,           )
                              )
            Plaintiff,        )
                              )        Docket No. 06-CV-3132
        v.                    )
                              )
CITY OF CHICAGO,              )        Chicago, Illinois
                              )        November 18, 2008
            Defendant.        )


HEARING ON MOTIONS
BEFORE THE
HONORABLE MAGISTRATE JUDGE JEFFREY COLE


APPEARANCES:

For Plaintiff:          JOSEPH A. LONGO
                        Attorney at Law
                        2100 West Haven
                        Mt. Prospect, IL  60056


For Defendant:          JAY MICHAEL KERTEZ
                        CITY OF CHICAGO, LAW DEPARTMENT
                        30 North LaSalle Street
                        Suite 1020
                        Chicago, IL  60602


      PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:         Riki Schatell
                        6033 North Sheridan Road, 28-K
                        Chicago, Illinois  60660
                        773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1          THE CLERK:  06-C-3132, Sommerfield vs. The City of

2     Chicago.

3          MR. RUTHERFORD:  Good morning, your Honor, Robert

4     Rutherford for the defendant City of Chicago.

5          THE COURT:  Hi, Mr. Rutherford, how are you?

6          MR. LONGO:  Your Honor, good morning to you, Joe

7     Longo for the plaintiff.

8          THE COURT:  Good morning, Mr. Longo.

9          MR. RUTHERFORD:  I apologize for being late, your

10    Honor.

11         THE COURT:  Don't be silly.  Where's Mr. Kertez?

12         MR. RUTHERFORD:  That's where I was actually --

13         THE COURT:  He seems to be the architect of the

14    problem.

15         MR. RUTHERFORD:  Your Honor, Mr. Kertez is ill.  I

16    tried to call to contact him yesterday.  And his --

17         THE COURT:  I'm sorry to hear that.

18         MR. RUTHERFORD:  His mother was taking care of him.

19    I had an opportunity to even speak with him.

20         THE COURT:  I'm sorry, I'm really sorry to hear that.

21     All right, well, --

22         MR. RUTHERFORD:  We were wanting to ask for --

23         THE COURT:  No, sir.

24         MR. RUTHERFORD:  -- two weeks --

25         THE COURT:  I want to get this done.  This is your

1  third shot at it, Mr. Rutherford.  You know, the first time he

2  chose to raise privileges and the City, who is the most active

3  litigant in this building other than the United States of

4  America, simply thumbed its nose at the requirement that there

5  be a privilege log as required by Rule 26(b)(5).

6      (Addressing the Clerk:)  Carolyn, do me a favor, will

7  you?

8      THE CLERK:  Yes.

9      THE COURT:  Ask (inaudible) to give you (inaudible)

10  and bring them (inaudible).

11      THE CLERK:  Right.

12      THE COURT:  (Addressing counsel:)  What I should have

13  done then is simply say you've waived the issue and ordered you

14  to turn everything over.  That's not normally the way I

15  function.  So I said okay, file a privilege log.  So a

16  privilege log gets filed and Mr. Longo objects, and it seemed

17  to me to be not an appropriate privilege log and Mr. Kertez

18  apparently agreed with that and he was going to file another

19  one.  And he did -- I think my memory of this is right.

20      MR. RUTHERFORD:  Yes, your Honor.

21      THE COURT:  He files another one and here we are

22  again.  Now if Mr. Longo is right -- and he hasn't always been

23  right and I've told him when I thought he wasn't right --

24      MR. LONGO:  Yes, you have.

25      THE COURT:  You folks don't even bother to return his

1   telephone calls.  When I say you folks, the City.  So I'm going

2   to do this today.  This is simple stuff.  This case is dragging

3   on interminably and this case is going to go to trial.  You

4   guys don't want to settle.  He doesn't want to settle.

5                (Addressing the Law Clerk:)  Thanks.

6                (Addressing counsel:)  And cases that don't get

7   settled get tried, and that's how it should be.  But this is

8   not complicated at all and I don't need -- There is nothing

9   that you're going to tell me by way of a memorandum that I

10  think that I don't know and it's not because I'm smart, it's

11  because the principles are unexceptional and well known.

12               The Rule could not be clearer, and I'm going to make

13  -- You're going to force me to do this, I'm going to do it.

14  But I'll be darned if I'm going to sit and let this thing drag

15  on for another three weeks, then come back in here, then have

16  to sit and pore through these things to do the same thing I can

17  do today.  You've had more than enough time and I'm not going

18  to let this thing go on so we're going to do it right now.

19               MR. RUTHERFORD:  Okay, your Honor.

20               THE COURT:  And when I say I think this is Mr.

21  Kertez's responsibility, that's the impression that I have.

22  He's the one that's running this aspect of things.  This is the

23  same deal that we had when Mr. Longo improvidently served an

24  excessive number of requests to admit, I think.

25               He was wrong, and your response to that was well, we

```
1    won't answer anything because there isn't one thing, and Mr.

2    Kertez came in here and argued with me every single -- Nobody,

3    I don't care who they are, could possibly serve the number of

4    whatever discovery things that Mr. Longo did and not get it

5    right one time.  And when you looked through them it became

6    clear that there were things that needed to be answered, so

7    you've had plenty of time.  So let's go.

8             You're the objector.

9             MR. LONGO:  Yes, your Honor.

10            THE COURT:  So let's go through these, I guess, one

11   by one.  I want to be sure I have . . .  All right, Mr. Longo,

12   I'm looking at Exhibit C to your Revised Second Motion to

13   Strike the Defendants' Alleged Privilege Log.  Is that the

14   document I should be looking at?

15            MR. LONGO:  Yes, your Honor.

16            THE COURT:  Okay.  Hold on.

17            And is it true, and you know, I'm sort of -- I try to

18   be as plain-speaking as I can and I know that Mr. Longo's

19   approach to this case has been, from your perspective, vexing.

20    But I think if people call, they're entitled to get a phone

21   call back.  If they're calling about a Rule 37 issue and they

22   want to try to resolve something, I don't think it's

23   appropriate, if it's true, for lawyers not to call other

24   lawyers back.  If you're going to call him back and say I think

25   you're the biggest pain in the neck I've ever seen in my life
```

1    and this is burdensome and vexatious and I'm not going to deal

2    with you anymore, okay.  That's okay.  But you call people back

3    and I know that you're not the main guy, Mr. Rutherford.  I'm

4    just expressing to you my view.

5            MR. RUTHERFORD:  Okay.

6            THE COURT:  Okay.  Well, let's do this.  Let's me

7    hear from Mr. Longo.  We'll do these -- I guess we have to do

8    these one by one.

9            MR. LONGO:  Your Honor, it's our position that as far

10   as the work product privilege, the defendant has failed to meet

11   their burden of proof and it's their burden.  And the

12   (inaudible) cases indicate that privileges are strictly

13   construed.  What is their burden of proof regarding work

14   product?  The defendant must demonstrate that there was

15   substantial and significant threat of litigation.

16           THE COURT:  I'm not sure of where you go with those

17   kinds of qualifiers.  I mean what is substantial?  What isn't

18   substantial?  I mean the question is was it made -- was this

19   made in anticipation of litigation.

20           MR. LONGO:  Exactly.

21           THE COURT:  I don't know how you quantify something

22   like that.

23           MR. LONGO:  And in the case of (inaudible) the

24   defendant must come forward with objective facts.  For example,

25   this case that we submitted to your Honor in which there were a

1   hundred cases regarding securities regulations, and the case in

2   that court involved another securities investigation, and the

3   court indicated that the documents were not covered by work

4   product because it was the documents prepared in the ordinary

5   course of business.

6            The defendant has not demonstrated that these

7   documents they prepared such as taking testimony from

8   witnesses, I might add unidentified witnesses, they haven't

9   demonstrated that those were not done in the ordinary course of

10  business.  Lots of charges are filed with the E.E.O.C.  That

11  doesn't mean that they go to trial or a case is filed.

12  Therefore, the defendant just investigates those trials as they

13  do any investigation.  They're prepared in the ordinary course

14  of business.

15           THE COURT:  Can I interrupt?

16           MR. LONGO:  Please.

17           THE COURT:  Mr. Rutherford, I thought one of the

18  issues that is of concern both to Mr. Longo and to me was you

19  can't tell who got copies of anything, if anybody.  Now I can't

20  tell from this, for example, let's look at the first one.

21           MR. RUTHERFORD:  Sure.

22           THE COURT:  It says addressee Eileen Bell, Assistant

23  Corporation Counsel.  Does that mean that no one else got

24  these?  Or is this log simply deficient in identifying possible

25  other recipients?  For example, Richard J. Daley could have

1    gotten one of these, and that would have been okay.  I mean

2    he's certainly the client, but it could have gone to another

3    lawyer.  It also could have gone to anybody else.  So how do I

4    know?

5            MR. RUTHERFORD:  As far as we know, your Honor, as

6    far as if we look at date, July 2nd, 2004, as far as we know,

7    your Honor, the memorandum went from Eileen Bell to Sergeant

8    Flores.  As far as who Sergeant Flores might have given the

9    document to, that document is --

10           THE COURT:  No, no, I'm talking about on the face of

11   the document, does this suggest or does this say that there

12   were no other -- There were no CC's?

13           MR. RUTHERFORD:  That's correct, your Honor.  I

14   actually prepared the privilege log and I went through all the

15   documents and on the face of the e-mail or the memorandum, if

16   it only says to and from.

17           THE COURT:  That's why I wanted to know, that this

18   isn't an oversight.  So what we're saying then, Mr. Longo, is

19   if nothing -- if no one else is shown, there were no other

20   recipients of this and as Mr. Rutherford says, we don't know

21   whether Sergeant Flores went out and gave it to the Sun-Times,

22   we just don't know.  But that's okay.  All right, so let's go.

23    Go ahead, Mr. Longo.

24           So there's no CC's unless shown.  I mean, Mr.

25   Rutherford, do you have any concerns with the sort of general

1    propositions that are cited in Mr. Longo's memoramdum?

2            MR. RUTHERFORD:  Yes.  Your Honor, one big concern of

3    mine is his statement that as far as the work product privilege

4    that if there's not substantial significant (inaudible) of

5    litigation they should be turned over and in my opinion, your

6    Honor, there's nothing greater than an E.E.O.C. charge.

7            THE COURT:  I agree with you.

8            MR. RUTHERFORD:  And --

9            THE COURT:  I agree with you.

10           MR. RUTHERFORD:  Okay.

11           THE COURT:  I'll go beyond that.  That, to me, is the

12   precursor to what comes next sometimes.  Probably more times,

13   more often than not, but nothing could be a more significant

14   threat of litigation than an E.E.O.C. charge in my view.  And I

15   think that's enough.

16           MR. RUTHERFORD:  And your Honor, one issue that Mr.

17   Longo had with the privilege log and with the attorney notes to

18   Eileen Bell is that he was saying that he did not know, he had

19   issues with who was being interviewed and, you know, what was

20   contained in her notes and I was explaining to him earlier that

21   these notes contain her mental impressions of witnesses.  Those

22   were her notes.

23           THE COURT:  Well, what -- All that Rule 26(b)(5) says

24   is that it has to be -- the log has to be sufficient so that

25   one can make some kind of a conclusion as to whether or not

1   something is or is not privileged.  And the log isn't designed

2   to be an exhaustive depictation of what's in the document.

3   Otherwise the privilege gets waived.  I mean you can't -- That

4   would be counterproductive.  So what the Rule says is:

5                                                        (Pause.)

6           Let's find it.  Hold on.              (Pause.)

7           You've got to describe the nature of the documents,

8   communications or tangible things not produced or disclosed and

9   do so in a manner that, without revealing information itself

10  privileged or protected, will enable other parties to assess

11  the claim and thus enable the Court to assess the claim as

12  well.

13          So let's go through these, Mr. Longo, let's go

14  through them one by one as quickly as we can, and when --

15  Carolyn, when the other folks come in for the Wells Fargo case

16  I'll stop this and let's call them in.

17              THE CLERK:  Okay.

18              THE COURT:  They don't have to wait around.

19              Mr. Longo, what's wrong with Number 1?

20              MR. LONGO:  We have no -- We're not asking for Number

21  1.  Joseph Graham is the attorney, was the attorney in this

22  case.

23              THE COURT:  But that is -- How do I know which one of

24  these you're objecting to and which one not?  I know that --

25              MR. LONGO:  We indicated in our motion, your Honor.

1          THE COURT:  Yes, but it puts -- Let's go through

2     these.  Let's go through the ones that you are objecting to.

3          MR. LONGO:  Okay.

4          THE COURT:  I'll let you go through them.

5          MR. LONGO:  Number 2.

6          THE COURT:  Give me the date.

7          MR. LONGO:  7-2-0 -- 2004.  These are all disarrayed.

8      They're not in any order.

9          THE COURT:  Okay.

10         MR. LONGO:  Again there's a mention of a work product

11    privilege.  We have no idea of whether these documents were

12    submitted, were prepared in the ordinary course of business.

13         THE COURT:  Yes, I know but here, look.  It says the

14    subject is Re:  Sommerfield E.E.O.C. charge and it's a request,

15    and then it's an attorney-client communication for purposes of

16    legal advice and attorney work product.  And it goes to Flores,

17    who is the liaison.  I know we've had this dispute from the

18    beginning.  I mean you said well, I don't know who he is or

19    what he is.  Well, now we know.  We didn't know a number of

20    these people.

21         What it seems to me as to some of these, I think

22    you're right as to some, we'll go through them, but as to

23    others it seems to me what you're doing, it's not so much that

24    you're disputing the adequacy of their log as you are sort of

25    the legitimacy or the truthfulness of the representations in

1   the log.  And that you can't do.  I shouldn't say you can't do.

2    For purposes of what we're doing here you can't do it.

3         This is either satisfactory or unsatisfactory.  Rule

4   26(b)(5) can't make people be truthful.  I mean if somebody

5   wants to lie and make something up, it's not like a Franks

6   hearing where you get to go behind the search warrant and say

7   you know what?  The log on its face is adequate but it's a

8   tissue of lies.  At least I'm not aware that you can do that

9   and certainly not for purposes of contesting the facial

10   adequacy of the log.

11         So can I interrupt you guys just for -- This takes

12   just a couple of minutes and then those folks won't have to

13   wait.

14         MR. LONGO:  Surely.

15         MR. RUTHERFORD:  Surely.

16      (Interval while the Court heard an unrelated case.)

17         THE COURT:  All right, folks, come on back.

18         THE CLERK:  06-c-3132, Sommerfield vs. The City of

19   Chicago.

20         MR. LONGO:  Good morning again.

21         THE COURT:  Okay.  Certainly that's my view of this,

22   and it seems to me that as to Number 2 of the 7-2-2004 entry,

23   it is an adequate entry for purposes of what Rule 26(b)(5).  So

24   what's --

25         MR. LONGO:  Even though we're just requesting

1    documents?  I cited the cases --

2              THE COURT:  No, but it says request for --

3              MR. LONGO:  -- City of Philadelphia --

4              THE COURT:  -- documents and information.  I mean I

5    think that the fact of what you're requesting, in and of itself

6    arguably has a work product component to it.  I mean let's say

7    she says I want to see a certain kind of document.  I --

8    There's Mr. (inaudible).  Let me have you wait again.

9              MR. LONGO:  Surely.

10          (Interval while the Court heard an unrelated case.)

11             THE CLERK:  06-C-3132.

12             MR. LONGO:  Yes, it's next week.

13             THE COURT:  Yes, it's next week is right.

14             MR. LONGO:  I want to point out also, your Honor,

15    that Sergeant Flores is a trainer, even though he has a J.D.

16             THE COURT:  But he's also -- I understand, but he's

17    also -- He's a lawyer, too?

18             MR. LONGO:  Yes, he is a J.D. but he's a trainer.

19             THE COURT:  Okay, and he's a person who operates in

20    two capacities if I understand this right.  One capacity is as

21    a guy, a police officer, I guess, and the other is as a lawyer

22    in the Office of Legal Affairs.  Now I don't think that whether

23    -- So you have to look at in what capacity he's functioning at

24    that moment in time.

25             MR. LONGO:  That's our argument, that --

1      THE COURT:  I mean here.  If I come to you, Mr.

2  Longo, and I talk to you in your legal capacity, that's

3  protected.  If I talk to you as my friend about the very same

4  thing at a cocktail party and it's just out of chitchat, you're

5  not acting as a lawyer, you're acting as a guy who is a friend

6  and I'm looking for free advice at a party.  And it strikes me

7  that Officer Flores is in that position.  People occupy

8  different statuses in their lives, so if he's functioning in

9  connection with the Sommerfield E.E.O.C. charge as the liaison

10  with the Police Department, he's acting on behalf of the

11  client.  I mean who is the client here?  The City of Chicago.

12      MR. RUTHERFORD:  Yes, your Honor.

13      THE COURT:  Right.  So the City is an inanimate --

14  Well, pretty animate but it's a fictive person.  It's a

15  municipal entity that can only act through people.

16      MR. LONGO:  It's my understanding, though, that --

17  And you're right, your Honor -- it's my understanding that when

18  we say that the City can only act through people, it's got to

19  be people who can make -- who have a substantial input in the

20  decision for the City.

21      THE COURT:  Well, that's your argument, that this is

22  the -- What is it in Illinois law?  The core --

23      MR. LONGO:  Are you talking about a control group?

24      THE COURT:  The control group.  What's your view of

25  the control group in the context of this, Mr. Rutherford?

1        MR. RUTHERFORD:  Well, your Honor, as far as control

2    group that would depend on the case.  That's very case-

3    specific.  But also though, I mean, if it's certain persons in

4    the exempt ranks of the Chicago Police (inaudible) in the

5    control group.

6            THE COURT:  Well, I --

7            MR. RUTHERFORD:  As far as --

8            THE COURT:  Mr. -- I just honestly have to tell you

9    that I don't think that if the Police Department assigns a

10   lawyer --

11           MR. RUTHERFORD:  Your Honor, --

12           THE COURT:  -- that all communications with that

13   person are now fair game in every case.  That would be pretty

14   startling, Mr. Longo.

15           MR. RUTHERFORD:  Your Honor, in this case we have an

16   issue of an E.E.O.C. charge.  Sergeant Flores is acting as our

17   client --

18           MR. RUTHERFORD:  -- representative.

19           THE COURT:  I think that's right.  How else do you do

20   it?

21           MR. LONGO:  How would we know that?

22           THE COURT:  Because he says so.

23           MR. RUTHERFORD:  Because I'm representing that to

24   you, Mr. Longo.

25           THE COURT:  He says so in the log as well.  And this

1    representation has been made, I agree with you, almost not from

2    the first, surely not from the first, but almost from the

3    first.  When you first raised this, and I thought quite

4    legitimately, you know, who is this guy?  It was explained who

5    he is.  Now did you take Flores' deposition?

6            MR. LONGO:  Yes.

7            THE COURT:  Okay, well then you know what he is.

8            MR. LONGO:  He said that he acts as a trainer.  And

9    yes, he is, he has a J.D., he's in charge of training.  He was

10    produced for training.

11            THE COURT:  Right, but that was --

12            MR. LONGO:  A 30(b)(6) witness for training.

13            THE COURT:  I understand, but you also -- You had the

14    ability, if you didn't do it, I don't know if you did or

15    didn't, to find out in what capacity he was acting, and all I'm

16    saying to you is a representation has been made here.  It's not

17    like they're saying, you know, Flores is a guy who happens to

18    work gang crimes and oh, by the way, he's also, you know --

19            MR. RUTHERFORD:  Your Honor, just to expound on what

20    Mr. Longo just said, he is right.  Sergeant Flores is a trainer

21    but he is an EEO officer, and what he was training was sexual

22    harassment and other types of harassment training.

23            THE COURT:  Right.

24            MR. RUTHERFORD:  So he wasn't just training gang

25    units or --

1          THE COURT:  Right, right.  He's -- I just -- I think

2     that there is -- I think the log as it exists with reference to

3     Flores and his capacity is satisfactory.  Now we'll do each one

4     in terms of subject and the basis, but I think Number 2 is

5     okay.  So what's your next one?

6          MR. LONGO:  This one is the very next one, 4-13-2004.

7      I'm sorry, 2005.

8          THE COURT:  All right.  Here's a lady who is in the

9     Office of Legal Affairs.

10          MR. RUTHERFORD:  And your Honor, at the time she was

11     functioning just the same as Sergeant Flores.

12          THE COURT:  Okay.  Is she a lawyer, too?

13          MR. RUTHERFORD:  Yes, she is, your Honor.

14          THE COURT:  Oh, she is?  Okay.

15          MR. LONGO:  I don't know who she is.

16          THE COURT:  Well, but it's now being represented that

17     she is also a lawyer and functioning in that capacity in

18     connection with -- See, it's -- I think at some point I know

19     that the representation is made, but given the fact that Mr.

20     Longo seems stuck on this, I don't mean that in a negative way,

21     fixed on this problem, for the future I think that it's

22     helpful, Mr. Rutherford, for you folks to asterisk these things

23     and have a key at the bottom of the first page describing who

24     they are and in what capacity they're acting.  Mrs. So-and-so

25     is a J.D., she received her degree from DePaul University in

1   1991, and she's acting in -- And it makes it so much easier and

2   you'd save yourself hours of wasted time with one line of

3   explanation.

4          All right, so we now know that Karen Connell is also

5   a J.D.  She is acting on behalf of the Police Department Office

6   of Legal Affairs in the same way that Sergeant Flores is, and

7   she is a liaison in connection with the Sommerfield E.E.O.C.

8   charge and I take it ultimately with the Sommerfield present

9   litigation?  Or yes?

10         MR. RUTHERFORD:  She is -- Actually she has changed

11  divisions within the Police Department, so she's no longer

12  acting in this capacity.

13         THE COURT:  Okay.  All right.  But at least as to

14  these things we know that Ms. Bell sends her a fax regarding

15  the Sommerfield E.E.O.C. charge and conciliation and the basis

16  for withholding is it's an attorney-client communication for

17  purposes of legal advice.

18         MR. LONGO:  Okay, I understand your position, your

19  Honor and we accept it, but just for, you know, our position is

20  that if we accept that argument then every investigation by an

21  attorney would be privileged, and --

22         THE COURT:  Well, maybe it is.

23         MR. LONGO:  I believe the case law indicates that if

24  the documents, even if prepared by an attorney, are prepared in

25  the ordinary course of business --

1          THE COURT:  (Inaudible) --

2          MR. LONGO:  -- then they're not privileged.

3          THE COURT:  If you would have looked up, I mean I

4    know you say one case I wrote.  Most of the cases you cite are

5    quite old.  There's lots and lots of more current things and

6    I've written some pretty extensive opinions on attorney-client

7    privilege and I do know what the rules are, I think.  At least

8    I think I do.

9          MR. LONGO:  I'm sure you do.

10          THE COURT:  And I understand the limitations.

11          MR. LONGO:  Okay.

12          THE COURT:  But I don't know how, given the structure

13   of the Police Department, how could Ms. Bell, under your theory

14   Ms. Bell could not communicate with the Chicago Police

15   Department and have a privileged communication.  She just

16   couldn't do it.  Supposing she writes and note and says Dear

17   Karen, I have been reviewing the file.  I've got some real

18   issues with Sommerfield, the Sommerfield case.  Here are my

19   thoughts.  And I need you to gather this kind of information

20   because if it turns out that X Y and Z are so, we have a real

21   problem and we should think about settling this case.  On the

22   other hand, if A B C are true, then this case is baloney and I

23   think that we can proceed along these lines.  Let me have your

24   thoughts.

25          Under your construct, that's all producible, and it

1   strikes me that in cases like this there is no more attorney-

2   client privilege.  That's all I'm saying.

3           MR. LONGO:  I understand.

4           THE COURT:  But so I think that the 4-13-05 -- Let me

5   check this off.  So this is okay.  The 4-13-05 entry will be

6   sustained.  Will be denied.  In other words, your motion is

7   denied.

8           What's the next one?

9           MR. LONGO:  I would imagine your Honor's reasoning

10  will probably be the same for the 3-22-05 and probably the

11  whole next page.

12          THE COURT:  Well, let's just go through them.  3-22-

13  05 is -- These were attorney's notes prepared by Eileen Bell

14  and it has to do with her views about a settlement demand.

15  Tell me how, given the description, not the truthfulness of the

16  description but given the description, and taking it as true,

17  how do you overcome the attorney work product doctrine?

18          MR. LONGO:  Based upon the argument that there is the

19  case law indicates it has these objective facts that there was

20  substantial and significant threat of litigation, because

21  otherwise every internal investigation should --

22          THE COURT:  No, no, no, no, no.

23          MR. LONGO:  I might add that Eileen Bell is not the

24  attorney on this case.  So that leads me to believe that she

25  was fulfilling a business function.

1        THE COURT:  I guess I don't understand.  You conjoin

2  business function and legal function and it seems to me that

3  that is -- Her business function is being a lawyer.  And how do

4  you distinguish between the two?  This is not like the Mayor

5  operating, you know, the City and making sure that things work

6  and trying to get the Olympics here and so on, and then's

7  communicating with Mr. Rutherford about a case.

8        MR. RUTHERFORD:  Sure.  Your Honor, just to clarify,

9  at this point this was not an internal investigation.  It was

10  an informal investigation.

11        THE COURT:  I agree.  No, I understand.  It says

12  right here, it's E.E.O.C. Charge Number 2-10-2004-0557, and I

13  -- If this were an internal investigation where there had been

14  a complaint and she was investigating, but I don't have to deal

15  with that.  What we have is an extent E.E.O.C. charge that I

16  assume reflects what the current case is about, at least in its

17  core components, or we wouldn't be here.

18        MR. LONGO:  And my argument is --

19        THE COURT:  So how in the world, if that -- What more

20  do you need?  In other words, you create a world that, I think,

21  Mr. Longo, that says there can be no attorney-client or work

22  product privilege until a case is filed in some court.

23        MR. LONGO:  That's not my understanding of the law.

24  My understanding of the law is that there has to be substantial

25  and significant threat --

1        THE COURT:  Well, what is this?

2        MR. LONGO:  -- and that the burden is on the

3   defendant.

4        THE COURT:  What do you think -- No, no, I

5   understand.  And Mr. Rutherford is saying to me okay, our

6   burden has been demonstrated because the guy filed -- Mr.

7   Sommerfield filed an E.E.O.C. charge.  What comes next?  What

8   more do you need?

9        MR. LONGO:  Just because an E.E.O.C. --

10       THE COURT:  Let me say this:  Supposing he had

11  written a letter to the Police Department and said you know

12  what?  I'm sick and tired of this.  You've left me no

13  alternative.  I'm going to sue you.  That would cut it for you,

14  wouldn't it?

15       MR. LONGO:  It probably would.  I'd have to --

16       THE COURT:  Well, I mean --

17       MR. LONGO:  -- look at the whole context of the

18  letter --

19       THE COURT:  Well, I just gave you the letter.

20       MR. LONGO:  -- and what were all the circumstances.

21       THE COURT:  I just gave you the letter.

22       MR. LONGO:  Okay, and I'd have to know the

23  circumstances.  But probably.

24       THE COURT:  That's all the -- It's your case.

25       MR. LONGO:  Probably.  Probably.

1      THE COURT:  Your case with a letter from you saying

2  we're getting nowhere with you people.  We tried our best.  You

3  won't do anything.  Your officers continue to harass Sergeant

4  Sommerfield.  You have no -- We have Mr. Pastor on the line

5  ready to go and you people are anti-Semitic bastards.  And I'm

6  going to sue you.  You have 10 days to show me that you're

7  going to take steps to alleviate this awful situation.  If I

8  haven't heard from you in 10 days I'm going to sue.  Those are

9  the facts.  You can't change my facts.  Okay?

10          MR. LONGO:  It seems more likely than not I would --

11          THE COURT:  Well, let me ask you a different question

12  then.

13          MR. LONGO:  -- think that that would be a substantial

14  threat.

15          THE COURT:  Since you're always fun to be with.  What

16  more would you need as an analytical matter to satisfy the

17  burden that you say Mr. Rutherford has?

18          MR. LONGO:  As it relates to this case, your Honor,

19  like for example the case we cited, the CTA, the CTA admitted

20  that they had numerous charges, numerous complaints but that

21  doesn't mean they lead to litigation.  This really, there's no

22  difference between this and --

23          THE COURT:  This is not a --

24          MR. LONGO:  -- an internal investigation.

25          THE COURT:  This is not a --

1       MR. LONGO:  There's no examination of witnesses,

2   there's no cross-examination of witnesses.  There's none of --

3       THE COURT:  Well, I don't understand.  I don't

4   understand what you mean, cross-examination of witnesses.  That

5   never occurs save in a judicial context.  There's no --

6       MR. LONGO:  That's what I'm saying.  This is just an

7   E.E.O.C. investigation.  It's just an --

8       THE COURT:  Right, so your view --

9       MR. LONGO:  -- (inaudible, multiple voices).

10      THE COURT:  I understand.  So your view is that an

11  E.E.O.C. investigation is not enough to satisfy the burden that

12  you think Mr. Rutherford has, plain and simple.

13      MR. LONGO:  That's correct.

14      THE COURT:  Okay.

15      MR. LONGO:  Just like I would presume that the --

16      THE COURT:  No, no, no, forget your --

17      MR. LONGO:  -- Brezino, that the securities

18  investigation -- (inaudible, multiple voices) regulation --

19      THE COURT:  No, I (inaudible) about that.  We were

20  talking --

21      MR. LONGO:  -- was not enough.

22      THE COURT:  Okay, that's one obscure opinion that you

23  found that I forgot what year it's from.  Your cases are old.

24  You've got to update your memo.

25      MR. LONGO:  I think it was 2001 but maybe it was

 1   1999.  I don't recall offhand.

 2          THE COURT:  Well, you know, there's -- Justice Holmes

 3   said in his famous dissent in Lockner vs. New York, general

 4   propositions do not decide concrete cases.  And Judge Posner is

 5   fond of quoting that all the time, although he generally

 6   doesn't quote Lockner, he just quotes Holmes.  And I'll give

 7   you another because I think it's a worthwhile thing to . . .

 8                                                     (Pause.)

 9          So what you have in these cases are then simply

10   discretionary decisions that are fact driven.  They don't

11   purport to state fixed rules because then you don't have a

12   discretionary decision, you have a rule and there is no

13   discretion.  Here's what Rehnquist said in Daubert vs. Merrill

14   Dow, which you folks are all familiar with:

15       "General observations suffer from a common flaw that they

16        are not applied to the specific matter at hand, and

17        therefore they tend to be not only general but vague and

18        abstract."

19          And then Posner said in IFC Credit vs. Alliano

20   Brothers just a couple of years ago, "One must always be

21   worried about generalities in judicial opinions."

22          So I think because you found a case that sort of has

23   a similarity doesn't solve the problem here.  It's my view,

24   without belaboring this, that when somebody files an E.E.O.C.

25   charge, that people then begin to discuss with their lawyer

1    that E.E.O.C. charge.  That doesn't mean -- But something just

2    occurred to me.  We do not agree -- I guess you wouldn't.  Your

3    position then is that in defending the E.E.O.C. charge there is

4    no attorney-client privilege or work product privilege.  That's

5    apparently your view.

6              MR. LONGO:  The E.E.O.C. --

7              THE COURT:  And that's an astonishing view.

8              MR. LONGO:  From what I'm finding is --

9              THE COURT:  Because you don't cite a case that

10   remotely takes that position.  Otherwise it seems to me your

11   position within the E.E.O.C., although I guess -- Is there

12   discovery, Mr. Rutherford, in E.E.O.C. cases?

13             MR. LONGO:  No.

14             MR. RUTHERFORD:  It depends.  Actually we do have to

15   turn over documents to the E.E.O.C.

16             MR. LONGO:  (Inaudible, multiple voices) -- though,

17   with parties.  Just --

18             MR. RUTHERFORD:  No, --

19             MR. LONGO:  -- the investigator ---

20             MR. RUTHERFORD:  -- the investigator requests

21   documents.

22             THE COURT:  Well, could the investigator request --

23   You'll have to help me with this because I never did one of

24   these -- Could the investigator request Ms. (inaudible)'s

25   internal notes and stuff?

1          MR. RUTHERFORD:  No.

2          THE COURT:  Has that ever happened?

3          MR. RUTHERFORD:  No.

4          THE COURT:  No one would ever think to do that?

5          MR. RUTHERFORD:  No.

6          THE COURT:  Why not, Mr. Longo?  Because there

7    clearly is an attorney-client privilege in that sort of quasi-

8    judicial or administrative proceeding.  So to say that there is

9    a privilege within the very confines of that proceeding that

10   suddenly vanishes when you file a lawsuit would make no sense

11   at all and that's really what you're saying.

12         MR. LONGO:  I don't know if there is such a privilege

13   but --

14         THE COURT:  Well, I --

15         MR. LONGO:  -- even if we assume that there is.

16         THE COURT:  Okay, if there's a privilege to begin

17   with there doesn't cease to be a privilege when in fact a

18   lawsuit is filed on the heels of the E.E.O.C. charge, so --

19         MR. LONGO:  Well then, your Honor, wouldn't this wipe

20   out all the case law that says there has to be a substantial

21   and significant threat to the litigation?

22         THE COURT:  No, not at all.  It simply would wipe out

23   your argument that an E.E.O.C. charge doesn't satisfy that

24   test.  I'm not saying to you that that's the test or not and I

25   don't know whether -- To me, even if I accept your formulation,

1    formulas don't help much in terms of analysis.

2              MR. LONGO:   Sure.

3              THE COURT:   They're vague and imprecise.   But even if

4    I accept that formulation, when somebody files an E.E.O.C.

5    charge, I think that does it.

6              Mr. Rutherford?

7              MR. RUTHERFORD:   Your Honor, one thing I want to add

8    also is by for instance in the administrative process of the

9    E.E.O.C., you know, there are such things as position

10   statements and determination letters, certain documents that

11   are drafted, and for instance when it comes to a person who

12   actually files a lawsuit based on an E.E.O.C. charge, those --

13   (Inaudible) those position statements that are prepared by

14   those attorneys have an effect on the present litigation.

15   That's why there is a privilege, there is an attorney-client

16   privilege between what our Labor Division does --

17             THE COURT:   Yes, no question about it.

18             MR. RUTHERFORD:   -- with the charge and what we do.

19             THE COURT:   There's just no question about it.   And

20   I, you know, I was sort of focused on the back end without

21   thinking about the consequences on the front end of your

22   argument.   Begin with the idea that look, somebody writes a

23   letter and says you know what?   We're going to file an E.E.O.C.

24   charge.   Mr. Rutherford gets the letter and he goes to his

25   superiors and they say look, let's figure out what we should --

1   Let's do something about this.  And they begin to jinn up a

2   whole investigation.  It doesn't come to anything.  Nothing is

3   filed.

4          It's inconceivable to suggest that Mr. Rutherford's

5   communications or letters from other people to him seeking

6   legal advice, for example, or letters to him giving legal

7   advice that disclose these confidential communications isn't

8   privileged.  It's just -- It's nonsensical.  So I'm just

9   rejecting your idea.  Here, I'll just read you, because I'm not

10  going to write a long opinion on this.  I'm not going to do it.

11   It's just not productive.  So if you want to appeal this, be

12  my guest but you're going to need the transcript, and the

13  reason I'm going through this is so that you have a transcript

14  that will explain what my thought process is, and I think, to

15  make it clear again, I believe that when an E.E.O.C. charge is

16  filed, that that is a -- And people do things in response to

17  that, those documents are prepared for purposes of the

18  attorney-client privilege and work product privilege in

19  anticipation of litigation.  Well, the attorney-client

20  privilege doesn't have to be in anticipation of litigation.

21          MR. LONGO:  That's an interesting question, you know,

22  if an E.E.O.C. charge is filed, is there automatically, you

23  know, trigger those privileges?

24          THE COURT:  Well, I don't know whether it --

25          MR. LONGO:  Or is it just like any -- (inaudible,

1   multiple voices) investigation --

2           THE COURT:  Wait a second, hold on, hold on.  I don't

3   know whether it automatically does.  But I believe that it does

4   in this case given the intensity of the allegations, given the

5   nature of the allegations, given the vigor with which the

6   allegations were pursued.  I don't think there's any question

7   that the City of Chicago could reasonably have anticipated that

8   something was going to come of this.

9           MR. LONGO:  Well, but your Honor is speaking about

10  hindsight.  According --

11          THE COURT:  No, no, foresight.  Foresight.  I mean

12  here's a guy who comes in.  His charges about national origin

13  discrimination aren't any different for purposes of analysis

14  than if this were an African-American who came in and instead

15  of saying, you know, they're calling me a dirty Jew or kike or

16  I forgot what the epithets were, but they were loathsome.

17          MR. LONGO:  Yes, Hitler should have killed all you

18  Jews.

19          THE COURT:  Yes, I mean -- Those don't -- Those are

20  every bit as significant if not more significant to the

21  recipient of them as it would be to an African-American or to

22  an Asian who was called a gook or whatever the -- I don't know

23  if it's a common parlance anymore but I mean years ago there

24  were expressions, so there's no dividing.

25          MR. LONGO:  Sure, I understand.

1          THE COURT:  There's no oh, well, it was directed to a

2    Jew, therefore it's not as bad as it was directed to an

3    African-American.  That's not how the system works.  And that's

4    my view.

5          MR. LONGO:  Sure.

6          THE COURT:  And I think that the log, the privilege

7    log on its face as to the items we've discussed is

8    satisfactory.  You now take issue with the fact that there

9    should be any kind of work product privilege at all.  It seems

10   to me that that doesn't work.

11         MR. LONGO:  Okay.  Then, your Honor, I would imagine

12   your reasoning would apply to the rest of these.  I just

13   have --

14         THE COURT:  Well, it would apply to them if, in fact,

15   so what you're doing is you're not challenging the adequacy of

16   the log as a log.  You're challenging the underlying concept

17   that there should be no -- no what?  No work product privilege?

18    Or no attorney-client privilege?

19         MR. LONGO:  I'm challenging both, your Honor.  I

20   don't think that --

21         THE COURT:  So there's no privilege.

22         MR. LONGO:  Your Honor, at least the way I understand

23   the case law, the defendant bears the burden to show with

24   objective facts to establish each of these privileges.  I

25   understand Mr. Rutherford today, this is the first time I'm

1  hearing some of this though, as far as asserting who this Karen

2  Kino (phonetic), is it?

3         MR. RUTHERFORD: Kono (phonetic).

4         MR. LONGO: Kono, thank you. Is --

5         THE COURT: Are you telling me -- The log hasn't

6  changed over the course of time. I mean hasn't she been

7  identified from the beginning to you?

8         MR. LONGO: In this log, yes, but I don't know who

9  she is. I don't know if she's performed a business function.

10  I don't know if these documents were performed in the ordinary

11  course of business. I don't know who the client is. Otherwise

12  if an attorney speaks to any person in a corporation is that

13  person a client? If a person speaks to --

14         THE COURT: She is --

15         MR. LONGO: I mean there's got to be -- The way I

16  understand the case law the client is the person who --

17         THE COURT: Okay.

18         MR. LONGO: -- can make substantial decisions for the

19  entity.

20         THE COURT: So your position is that if the City of

21  Chicago delegates somebody to assist in an investigation and

22  somebody in the Corporation Counsel's office deals with the

23  person, there's no privilege.

24         MR. LONGO: I don't think the log establishes that.

25         THE COURT: Well, but the work product privilege,

```
1    which seems to be the dominant privilege here, that has nothing
2    to do with control group or any other kind of group.
3              MR. LONGO:  Right.  I'm just talking about the
4    attorney-client.  As far as control group, as I said, I don't
5    think that this log tells us that these -- that there was a
6    substantial and significant threat of litigation and that these
7    documents were not performed in the ordinary course of
8    business.  My hunch is that they were performed in the ordinary
9    course of business.
10             THE COURT:  I don't know what you mean by that.
11             MR. LONGO:  It's their business to investigate all
12   charges.  Whether they're -- (inaudible, multiple voices) --
13             THE COURT:  So then there's no -- So then your view
14   is --
15             MR. LONGO:  -- (inaudible, multiple voices) lead to
16   litigation or not.
17             THE COURT:  So then your view is let's say that
18   that's what they do.  But if in those cases where they believe
19   there is a substantial threat of litigation, there would be no
20   privilege.
21             MR. LONGO:  No, my understanding of the case law is
22   that it's the defendant's burden, it's not the plaintiff's
23   burden.  It's the defendant's burden to show that in this case
24   we believe that there was substantial significant threat of
25   litigation, and they've got to come back with objective facts.
```

```
1            THE COURT:  Well, you keep saying that, what -- Show
2   me the case that says that and --
3            MR. LONGO:  I believe it was the Allen case.
4            THE COURT:  Where in your brief, what page does it
5   say that?
6            MR. LONGO:  I believe we (inaudible) the quotation, I
7   believe.  Let me --
8            THE COURT:  Well, no, just help me.
9            MR. LONGO:  Sure, I understand.
10           THE COURT:  I didn't memorize your brief.  It's your
11  brief.
12           MR. LONGO:  Yes, I'm just (inaudible) it out.  For
13  example, just one case, for example, I'm quickly opening up my
14  brief on Page 8, the Allen case, says materials that are
15  produced in the ordinary and regular course of business are
16  outside of the work product privilege.
17           THE COURT:  Where are you reading from?
18           MR. LONGO:  Page 8, on the bottom of the page.  The
19  block --
20           THE COURT:  Yes, and not to prepare for litigation.
21           MR. LONGO:  Right.  And the -- right.  Even if
22  litigation is imminent --
23           THE COURT:  No, no, but wait a second --
24           MR. LONGO:  Even if litigation is imminent.
25           THE COURT:  Well, but you're talking -- This is what
```

1  you do, Mr. Longo.  You like to take things out of context.  I

2  don't mean that in a disparaging way but that's what you do.

3  You know, judges expect that pronunciamentos, as Judge Posner

4  says, to be considered in context.  The chief determinant of

5  meaning is context.  You can't take a statement and surgically

6  eviscerate it from the case and then remove the animating gloss

7  that's inherent in that context.

8       In other words, if a document is produced routinely

9  day after day after day, it's not privileged.  But documents

10  that are produced in anticipation of litigation or in

11  connection with the investigation of things, those aren't

12  produced in the ordinary course of business in the sense that

13  -- Here, if materials are produced in the ordinary course of a

14  discovery opponent's business, in other words, the ordinary

15  course of business, your view is, well, since they investigate

16  claims all the time, that's their ordinary course of business.

17  Therefore there's no privilege.  And I don't agree with that.

18       MR. LONGO:  I'm saying --

19       THE COURT:  And this case doesn't begin to say that.

20       MR. LONGO:  I'm saying I don't believe the burden has

21  been met to show that.  I'm saying I would assume, and I can

22  only assume because we have no objective facts from the

23  defendant.  I would assume that they get a lot of claims and I

24  would imagine they investigate all of them.  And I would

25  imagine they investigate whether they think there's litigation

1    or not.  Again, the burden is on the defendant to show

2    otherwise.  It's just an assumption on my part because we have

3    no objective facts by the defendant to show otherwise.

4         Otherwise, you know, I --

5              THE COURT:  Here look, again you did the same thing

6    in the next case on Page 9.  If the party (inaudible) produce a

7    document in the ordinary course of business, it would not be

8    protected from discovery even if the party is aware the

9    document may also be used for the (inaudible) of litigation.

10   That's absolutely correct, and it's unexceptional, and so that

11   if General Motors is producing analyses of its cars'

12   performance, or Ford of the Pinto's gas tank performance in the

13   ordinary course of business, the fact that later on down the

14   road that document becomes central to some litigation doesn't

15   insulate it from being produced.

16             That is a very different matter from Ford's in-house

17   counsel or out-of-house counsel conducting some kind of an

18   investigation in anticipation of litigation and seeking to get

19   information and the guy or lady who prepares internal reports

20   to the law firm or for Ford's board of directors and writes,

21   you know, I have looked at the XYZ documents and we believe

22   they create a problem for us.  Well, the XYZ documents are

23   producible.  The attorneys' impression and evaluations are not.

24    That's what this has reference to.

25             But when there's an E.E.O.C. charge and people begin

1  to try to amass information to protect against the charge of

2  the United States of investigation, of the United States of

3  America, that is (inaudible), that is a very different

4  undertaking.

5              MR. LONGO:  With your Honor's reasoning, for example,

6  here we have interviews with undisclosed witnesses.  What the

7  witnesses said is certainly pertinent, but --

8              THE COURT:  But that's (inaudible), but that's not

9  what you're asking.  You're asking that in some --

10             MR. LONGO:  Well, that's also -- (inaudible, multiple

11 voices).

12             THE COURT:  Well, you're --

13             MR. RUTHERFORD:  Your Honor, those attorney notes

14 contain Ms. Bell's --

15             THE COURT:  Impressions --

16             MR. RUTHERFORD:  -- impressions of those witnesses.

17             THE COURT:  -- of what people said.

18             MR. RUTHERFORD:  We don't have --

19             MR. LONGO:  We don't know that.

20             THE COURT:  You know, I talked to Mr. -- Well, she

21 says that.  I had talked to Mr. Rutherford.  My impression of

22 Mr. Rutherford is that he's really a wonderful guy and -- But I

23 had the sense that he was really frightened and was not telling

24 me the truth.  Now Mr. Rutherford reported to me whatever.

25 Certain facts may not be privileged.  I mean that's what

```
 1    Hickman vs. Taylor is all about.

 2              MR. LONGO:  Exactly.

 3              THE COURT:  But that's a discovery request that you

 4    make.  These notes say these things contain her mental

 5    impressions of what's being told to her.  She's not recounting

 6    what is being said.

 7              MR. LONGO:  I don't know how we know that.

 8              THE COURT:  She says it.

 9              MR. LONGO:  It doesn't say these are mental

10    impressions.  For example, Page 7 --

11              THE COURT:  She says it.

12              MR. LONGO:  I don't.  Perhaps I'm missing it but I

13    don't see it.  For example, I'm just flipping the page here.

14    For example, Page 7, 2-8-2006, it says DOJ interviews with

15    Sergeant Steven Knasiak, and on the bottom it says Sommerfield

16    DOJ -- (inaudible, multiple voices).

17              THE COURT:  Well, which one are you talking about?

18              MR. LONGO:  Page 7.

19              MR. RUTHERFORD:  I think it's February 8th, 2006.

20              MR. LONGO:  Right.  See, these are interviews with

21    witnesses and as I --

22              THE COURT:  Hold on, hold on, hold on a second.

23              MR. LONGO:  So I don't know who is --

24              THE COURT:  What page, 8?

25              MR. LONGO:  Page 7.
```

1        MR. RUTHERFORD:  7.

2        MR. LONGO:  There are a lot more but these are all in

3   disarray.  I mean this is -- (inaudible, multiple voices).

4        THE COURT:  Hold on, I'm just looking at this.

5                                                    (Pause.)

6        MR. LONGO:  So I don't --

7        THE COURT:  Just a second, just a second.   (Pause.)

8        Well, these are your witnesses, aren't they?

9        MR. LONGO:  No.  I don't know who this Steven

10  Cannizzo (phonetic) is.  No, and on the bottom it just says

11  Sommerfield witnesses.

12        THE COURT:  I don't see what you're talking about.  I

13  don't see Steven -- Oh, I see, at the top.  Hold on.   (Pause.)

14        Okay, that doesn't seem quite sufficient.  I agree

15  with you.

16        MR. LONGO:  There's a lot like that -- (inaudible,

17  multiple voices) --

18        THE COURT:  Well, I don't see a lot like that.

19  That's one.

20        MR. LONGO:  See the last two on the bottom there?

21        THE COURT:  You know, Mr. Longo, I -- You're going to

22  have to work through these one by one.  I'm not going to --

23  I've decided the way you're doing it is not the right way to do

24  it.  Let's go through the ones you think are inadequate

25  quickly.  Some of them I've already expressed to you my views

```
 1   and we can get through those in short order.

 2           MR. LONGO:  Okay.  I'm just going to skip the ones

 3   that I think are in the (inaudible) of your reasoning.

 4           THE COURT:  No, sir.  I want to go through them so

 5   that --

 6           MR. LONGO:  You want to go through them one by one?

 7           THE COURT:  -- there's a record of this.

 8           MR. LONGO:  Okay.

 9           THE COURT:  We've finished with Page 1.

10           MR. LONGO:  Okay.

11           THE COURT:  We're on Page 2, and we did 4-11-05.

12           MR. LONGO:  Okay, I'll -- (inaudible, multiple

13   voices) --

14           THE COURT:  And that one I think I said -- All of

15   these -- I'll tell you if I think you're right.

16           MR. LONGO:  Okay.

17           THE COURT:  What's your -- 4-11-05 is -- The motion

18   is denied.  What's the next one you think is within -- where

19   this log is insufficient?

20           MR. LONGO:  (Pause.)  You want to (inaudible)

21   insufficient?

22           THE COURT:  Well, that's what the motion is about.

23           MR. LONGO:  Okay.  Well, I -- See, also --

24           THE COURT:  Your motion is a motion under Rule 26 to

25   strike the privilege log, Mr. Longo.  Not some other motion.
```

```
 1                                                    (Pause.)
 2            MR. LONGO:  Your Honor, I --
 3            THE COURT:  So I know which ones you're objecting to
 4  and which ones you're not.
 5            MR. LONGO:  We object to all of them on Page 2 for
 6  the reasons I gave and I imagine your reasoning would be the
 7  same as 4-11-2005 since they all relate to settlement demand.
 8            THE COURT:  Settlement demand would be a demand from
 9  Mr. Sommerfield.  She's made notes about that demand and you
10  think that's not enough because in your view there is no threat
11  of litigation.
12            MR. LONGO:  Are they notes?  I don't know what they
13  are.
14            THE COURT:  But it says they're attorney notes.
15            MR. LONGO:  It just says settlement demand.
16            THE COURT:  She's the author.
17            MR. LONGO:  It doesn't say notes, yes, it says notes.
18   I didn't know, you know, I don't know what that is.  Are they
19  (inaudible) questions or is she just recording what the
20  settlement demand was?  I don't know.
21            MR. RUTHERFORD:  No, she's not recording what that
22  settlement demand was.  She --
23            MR. LONGO:  All right.
24            MR. RUTHERFORD:  In the E.E.O.C. process you have to
25  present a settlement demand to the E.E.O.C. and it's her
```

1    impressions of what that might or would entail.

2              THE COURT:  Well, that's how I read it.  She's

3    thinking -- She is -- This constitutes an evaluation of what --

4    Were you representing him at that --

5              MR. LONGO:  No, I was not.

6              THE COURT:  Whatever the settlement demand was, she's

7    making notes about it.  Now you know, Mr. Longo, she isn't

8    sitting there transcribing what's in the settlement demand, and

9    if that's what it is I'm going to deny the request because you

10   don't need her recordation of the settlement demand that you

11   have.  She's not a scrivener of the best evidence that's in

12   your possession.  So you can't be serious about that.

13             MR. LONGO:  The next page talks about the termination

14   letter.

15             THE COURT:  So pay all of the ones on Page 2 --

16             MR. LONGO:  All deal with settlement demands.

17             THE COURT:  -- all deal with settlement.  I believe

18   that the log is adequate as to all of these and I'm going to

19   deny your motion as to all of the ones on Page 2.

20             MR. LONGO:  Okay.

21             THE COURT:  What about Page 3?

22             MR. LONGO:  Um, --

23             THE COURT:  The determination letter is the same as

24   the settlement demand.  These are her notes about the E.E.O.C.

25   determination letter.

1          MR. LONGO:  Okay.

2          THE COURT:  So with 1-20-05, the motion is denied.

3          MR. LONGO:  Okay, and the rest are --

4          THE COURT:  The rest are --

5          MR. LONGO:  -- determination letters (inaudible).

6          THE COURT:  -- determination letters or

7    conciliations, it's the same thing.  Except one, which says

8    attorney-client, so 1-20-05, 1-5-05, 12-17-04 and 12-16-04, the

9    motion is denied because I believe those are -- that their log

10   is adequate.

11          12-17-2004, which is the remaining one on Page 3, is

12   an e-mail from Ms. Bell to Sergeant Flores.  It was an

13   attorney-client communication for purposes of legal advice.

14   She is, according to this log, providing Sergeant Flores, who

15   is the liaison, who is a lawyer, is the delegated liaison of

16   the Department of the Office of Legal Affairs, and it's for

17   purposes of giving legal advice to her client.  She's not

18   asking him for any decision.  She's simply communicating

19   through him, so the motion is denied as to 12-17-04.   (Pause.)

20          MR. LONGO:  On Page 4, your Honor, the first one, 12-

21   30-2004, is a position statement --

22          THE COURT:  Every one of these on Page 4 deals with

23   -- Tell me what you think is wrong with the 12-30-04 entry.

24   She has a -- It's her draft of a response to the E.E.O.C.

25   charge.  Are you suggesting to me really, in good faith, that

1   this is not protected?

2          MR. LONGO:  I would think, your Honor, if documents

3   are sent to a third party --

4          THE COURT:  It's not sent to anybody.

5          MR. LONGO:  Well, the position statement usually is

6   sent to the E.E.O.C.

7          THE COURT:  Excuse me, it is a draft that is sent to

8   no one.  (Pause.)

9          And Mr. Longo, what you're doing really, I think,

10  isn't fair.  You've simply given me every single entry and

11  you've got some kind of a broad-based let's throw it out and

12  see what sticks.  Tell me how 2000 -- You have no business

13  including in this privilege log things that you weren't going

14  to contest.

15         MR. LONGO:  Well, your Honor, you know, I understand

16  your Honor's ruling and I respect it, but I don't think that

17  this in itself --

18         THE COURT:  How in the world -- Are you -- So in

19  other words, if you draft an answer on behalf of your client

20  and you decide not to use it, that's discoverable in your view?

21         MR. LONGO:  It's two different things, your Honor.

22  We're talking about an investigation in-house person.  We're

23  not talking about litigation.  We're talking about --

24         THE COURT:  You are talking about litigation.  You

25  are talking about litigation or quasi-litigation with the

1    E.E.O.C.  Under your view, anything that a lawyer does in an

2    E.E.O.C. proceeding is unprivileged.  That is the logic of your

3    position.  And it isn't a stretch.  It is the immediate first

4    step.

5              MR. LONGO:  The way I understand it (inaudible) I

6    indicated it's the defendant's burden and not the plaintiff's

7    burden to --

8              THE COURT:  Don't, please, Mr. Longo, don't just keep

9    repeating the same nonsense.

10             MR. LONGO:  Okay.

11             THE COURT:  Tell me how a draft that's circulated to

12   no one by a party's lawyer at the E.E.O.C. where there is a

13   charge against the City of Chicago isn't work product.  I want

14   to hear you explain that to me.

15             MR. LONGO:  The position, again, if it's prepared in

16   the ordinary course of business, your Honor doesn't want to

17   hear the same argument, but it's --

18             THE COURT:  No, that's -- So your position -- And the

19   reason I'm doing this is because I assume you will appeal, and

20   you ought not to burden Judge Gottschall with this same

21   nonsense.  And I want somebody to -- And I'm not going to spend

22   my -- hours and hours responding to something like that.  If

23   you want to appeal, go ahead, and Mr. Rutherford has the

24   roadmap to my thinking.  But your position is quite simple that

25   the City of Chicago or General Motors or any other employer

1    effectively has no attorney work product privilege, no

2    attorney-client privilege at the E.E.O.C.  Forget litigation

3    after the E.E.O.C.

4             MR. LONGO:  I'm saying it's my --

5             THE COURT:  That is your position.

6             MR. LONGO:  My position is the way I understand the

7    case law:  The defendant bears the burden.

8             THE COURT:  You're not responding at all to what I'm

9    saying.  It is your -- Forget subsequent litigation.  Forget --

10   Somebody files an E.E.O.C. complaint and the process beings.

11   People go out and they hire lawyers.  There are people who do

12   this and do this only, they're called employment -- What are

13   they called?  Employment lawyers, I guess.  And that's their

14   specialty.  And they bring in their large law firms and their

15   staffs and they represent General Motors or a mom-and-pop

16   grocery store in the E.E.O.C.  Under your -- And once the

17   E.E.O.C. resolves itself, there's no more litigation in my

18   hypothetical.  Under your view, no attorney-client privilege

19   within the E.E.O.C. and there is no work product privilege

20   within the confines of the agency proceeding, and if there

21   isn't there, there isn't before the Securities and Exchange

22   Commission or the Federal Trade Commission or any other agency

23   of the United States of America.

24             What an astonishing proposition that is.  And that's

25   what you're telling me.

1    MR. LONGO:  No, I -- One thing, you know, it depends
2    on who the attorney communicates with.  It has to be with a
3    client.
4    THE COURT:  Communicating with herself on behalf of
5    the City of Chicago --
6    MR. LONGO:  Right, and (inaudible) what I'm talking
7    about it is --
8    THE COURT:  I'm talking about this entry.
9    MR. LONGO:  I understand your Honor's position.
10   THE COURT:  No, I want to understand your position
11   because I want -- I want --
12   MR. LONGO:  My position is --
13   THE COURT:  I want when you appeal, I want Judge
14   Gottschall to understand exactly what it is that you're saying
15   without equivocation and without evasion.
16   MR. LONGO:  My -- My -- As I indicated, my position
17   is that the way I understand the case law --
18   THE COURT:  All right, don't repeat yourself because
19   you simply refuse to answer my question.
20   Your motion is denied as to 12-30-04.
21   MR. LONGO:  And is it denied regarding the rest here
22   that deal with attorney notes?  Based upon your previous
23   reason?
24   THE COURT:  I'm going to go through these one by one.
25   I'm not going to let you do, Mr. Longo, what you've done in

1   the past, which is deal with these things in mass, not because

2   I care what you do but I don't want Judge Gottschall burdened

3   and have to go through this thing all over again.

4           MR. LONGO:  Okay, that's fine.  I just was trying to

5   save your Honor's time.

6           THE COURT:  12 -- Well, but you're not saving time at

7   all.

8           MR. LONGO:  Okay.

9           THE COURT:  12-11-05 is an e-mail from Irene Bell,

10  who is, I take it you'll concede, the Assistant Corporation

11  Counsel who is handling the case at the E.E.O.C., right?

12          MR. LONGO:  That's what I'm told.

13          THE COURT:  Okay.  To Robert Flores, who is a police

14  officer, but who is also a lawyer in the Office of Legal

15  Affairs.  There is a department within the Police Department

16  that handles its legal affairs.  He's functioning as a lawyer.

17   She sends an e-mail to him and it regards the conciliation

18  reading of Conrad Batok (phonetic), whoever that is, and they

19  raise attorney-client privilege.

20          MR. LONGO:  So we have a third party.  I don't know

21  who he is.

22          MR. RUTHERFORD:  For the record, your Honor, Conrad

23  Batok was the investigator at the E.E.O.C. level.  That's who

24  he is.

25          THE COURT:  It's not going to him.  It is regarding

1    -- This is the subject category.  It is regarding that meeting,

2    the conciliation meeting.  Now what -- There's another factor

3    to this, Mr. Longo.  What is it that you hope to gain other

4    than to pursue this thing?  People talk about conciliation.

5    Whether it gets conciliated, it doesn't get conciliated, what's

6    the difference?  That's not admissible in this trial.  Even if

7    you had the information.

8             Now I've suggested to you I find -- Look.  For all

9    sorts of reasons I find what has been alleged in this case by

10   your client loathsome, if true.

11            MR. LONGO:  I do, too.

12            THE COURT:  I'm not insensitive to this, and I can

13   tell you I'm a good deal more sensitive to it than you are for

14   obvious reasons.

15            MR. LONGO:  It's very upsetting to me.

16            THE COURT:  Well, but it's not as upsetting to you, I

17   think, as it is to, for example, the person to whom it's being

18   said, your client.  But Mr. Longo, you should focus on the

19   things that will get you information.  Conciliation discussions

20   and settlement discussions are not going to be admissible in

21   this case.  And what I think you do, and I've told you this

22   before, I think you dilute the effectiveness of what you try to

23   do with this unyielding broad-based approach to everything.

24            MR. LONGO:  My -- I am mainly concerned about I stand

25   by the arguments regarding all these, but I'm mainly concerned

1    about the interviews with the witnesses and --

2         THE COURT:  Well, but that's not what you've got

3    here.  If you want -- Let me ask a question.  Did you try to

4    get a straight up request:  I want to have witness interviews?

5     If you interviewed Mr. Smith, say you to the City of Chicago,

6    I'm entitled to that.  Did you ever ask for that?

7         MR. LONGO:  Yes, and the objection was that they were

8    privileged and your Honor had ordered them to produce a

9    privilege log.  And this is the privilege log.

10        THE COURT:  And yet instead of dealing with the

11   things that you want, you object to every entry in the

12   privilege log.

13        MR. LONGO:  For the reasons that I gave.

14        THE COURT:  Include -- I understand.  There's no --

15   You know, and you refuse to yield on something so fundamental

16   as a lawyer who prepares something, a draft of a response at an

17   agency proceeding and you say you're entitled to see that.

18        MR. LONGO:  Again, your Honor --

19        THE COURT:  Don't -- Don't -- Don't.  Mr. Longo,

20   please, please.  There's no need to repeat the same thing --

21        MR. LONGO:  Okay.

22        THE COURT:  -- that I find hopelessly unresponsive to

23   my concerns.

24        MR. LONGO:  Okay.

25        THE COURT:  12-10-05, 1-31-05 and 1-28-05 are truly

1    notes.  They are not sent to anybody.  They are her, Eileen

2    Bell's own notes about the charge in the Sommerfield case.

3    They are attorney work product within the context of that

4    particular proceeding.  They are clearly protected within the

5    context of that proceeding, and they don't lose their

6    protection simply because growing out of that proceeding is the

7    litigation.  And -- And -- I underscore the word "and," and I

8    think that given the charge that was made in this case, that

9    was a reasonable notification that litigation could well ensue.

10   So your objections as to those three on Page 4 are denied.

11                                                      (Pause.)

12           Page 5.  These are the same things, the first three.

13    11-29-04, 11-24-04, 7-15-04 and 7-2-04 are all attorney notes

14   that are circulated to no one from the lawyer handling the

15   E.E.O.C. case and they relate to the charge that Mr. --

16   Sergeant Sommerfield made.  The attorney work product privilege

17   is advanced again within the context not only of that case are

18   they privileged, but the E.E.O.C. charge itself is, for

19   purposes of the subsequent litigation, sufficient notification

20   that these things are prepared in reasonable anticipation of

21   litigation.  So your motion is denied as to those four.

22           The next one, 7-14-04 on Page 5, is a CPD memorandum

23   from Sergeant Flores to Eileen Bell, the Assistant Corporation

24   Counsel, is a request for CPD documents and information.  Mr.

25   Rutherford, what do you say to that?  In connection with the

1   E.E.O.C. charge.

2          MR. RUTHERFORD:  Your Honor, this is also privileged.

3  This is communication between Eileen Bell, who is the City's

4  attorney, from Sergeant Flores, who was the liaison and the

5  client, for our purposes, who was our client.

6          THE COURT:  I know, but it looks like Flores is

7  asking her for information, not --

8          MR. RUTHERFORD:  Well, what it is, your Honor,

9  actually is it's Sergeant Flores responding to Eileen Bell's

10  original request for documents and information.

11          THE COURT:  How do you know that?

12          MR. RUTHERFORD:  Because I'm the person that prepared

13  the log.

14          THE COURT:  I know, but the log needs to reflect

15  that.

16          MR. RUTHERFORD:  Okay.

17          THE COURT:  I mean when you do this the whole idea is

18  so that on the face of it, without your help, somebody can

19  assess what this is.  So which of these do you say this is

20  responsive to?  Which of the earlier requests from Bell?  In

21  other words, he's really responding to her request, right?

22          MR. RUTHERFORD:  Yes.

23          THE COURT:  But which one?

24          MR. RUTHERFORD:  7-2-04 on the first page.

25          THE COURT:  Okay, so 7-14-04 is a response to which

1    one?

2         MR. RUTHERFORD:  The first page, July 2nd, 2004.

3         THE COURT:  To July 2nd, '04.

4         MR. RUTHERFORD:  That's when Eileen Bell sent the

5    (inaudible) memorandum to Sergeant Flores.

6         THE COURT:  Okay, and you know that because you

7    prepared this log and you reviewed the stuff.

8         MR. RUTHERFORD:  Yes, your Honor.

9         THE COURT:  Okay, I'm going to, based on that

10   representation, I'm going to deny the motion.

11        Page 6.                                    (Pause.)

12        Now so far, Mr. Longo, what you've done is we've now

13   gone -- It's now 10:00 almost.  We've now had to go through

14   one, two, three, four, five pages of 20 separate entries and

15   the first entry on Page 6 is 1-28-05.  So it's 21 separate

16   entries before we get to what you claim are the things you're

17   interested in and that's interviews.  Now I want you to explain

18   to me what's the purpose of this exercise?

19        MR. LONGO:  Your Honor, for reasons that I gave, I'm

20   saying that these interviews don't fit with anything your Honor

21   was saying.

22        THE COURT:  Well, tell me -- I agree with you --

23        MR. LONGO:  Okay.

24        THE COURT:  -- that the interviews may be different.

25    I'm saying to you if you're interested in the interviews why

1    do we have to waste an hour talking about things that don't

2    have -- really have anything to do with getting you information

3    that's going to advance your case?

4          MR. LONGO:  I don't know what's in those documents.

5    But this --

6          THE COURT:  You just told me, Mr. Longo, that what

7    you're interested in is not a draft of a lawyer's --

8          MR. LONGO:  Position statement.

9          THE COURT:  -- position statement.  What you want to

10   know is what these harassers may have said to the City of

11   Chicago, alleged harassers.

12         MR. LONGO:  I would imagine a position statement

13   would indicate the information from the witnesses.

14         THE COURT:  Okay.  There's an e-mail to Flores about

15   a conciliation meeting and my guess is that if you saw this

16   this wouldn't give you any information, any admissible

17   information at all, but I think nonetheless it's privileged and

18   I'm going to deny your motion as to the entry on Page 6, which

19   is 1-28-05.  Again, this is from Ms. Bell to Sergeant Flores.

20   It's regarding a conciliation meeting and she says it's

21   attorney-client communication for purposes of giving legal

22   advice to her client.  She's attempting to find out what

23   occurred so that she can give legal advice.

24         I mean I'll concede to you that a case can be made

25   with enormous effort for why this might be producible.  But I'm

1   not sure and I'm not going to -- I want to be clear.  I don't

2   think you make the case at all for why this should be turned

3   over in your memorandum.  I'm not the lawyer in the case.  I'm

4   going to deny your motion.

5          Now we get to the first thing that you told me at the

6   outset was really the focus of what you were looking for, and

7   that is the DOJ interviews at -- within the Sommerfield hear --

8   in the E.E.O.C. hearing or charge of Sergeant Knasiak.  Now

9   what do you say to this, Mr. Rutherford?

10         MR. RUTHERFORD:  What I say to this, your Honor, is

11  that what these contain is, as I was saying earlier, these

12  contain Eileen Bell's mental impressions about Sergeant Knasiak

13  during this proceeding.

14         THE COURT:  Well, we don't -- I -- Let me shorten

15  this up.  As to the entries of 2-6-06, 2-7-06, 2-7-06 which are

16  the last three entries on Page 6, and the four entries on Page

17  7 which deal with the interviews of Sergeant Knasiak, Officer

18  Taliaferro, Officer Abuzanat, those are the ones on 6 and 7,

19  I'm going to order the City to turn those documents over to me

20  for in-camera inspection.                          (Pause.)

21         Okay.

22         MR. RUTHERFORD:  Okay, and just to be sure, your

23  Honor, that's --

24         THE COURT:  The last three entries on Page 6.

25         MR. RUTHERFORD:  Okay.

1          THE COURT:  And the first three entries on Page 7.

2     I'm sorry, the first four entries on Page -- the four entries

3     on Page 7.  Okay?

4          MR. RUTHERFORD:  Okay.

5          THE COURT:  Now let's go to Page 8.          (Pause.)

6          What does this mean?  I can't tell what this -- The

7     first entry on Page 8, 2-3-06, it says notification of

8     witnesses in DOJ interviews.  What does that mean?

9          MR. RUTHERFORD:  That was the --

10          THE COURT:  Since you've reviewed these.

11          MR. RUTHERFORD:  That was the title of the fax

12     transmission and it was involved --

13          THE COURT:  But that doesn't satisfy the requirement

14     that it set forth what it is.  What is it?  Is she just giving

15     dates of things?

16                                                  (Pause.)

17          MR. RUTHERFORD:  I can't remember, your Honor, at

18     this point, if it was just dates --

19          THE COURT:  I think this is not a satisfactory --

20          MR. RUTHERFORD:  Okay.

21          THE COURT:  Or I think the designation is

22     sufficiently clear that I'm going to order this produced, so

23     the motion is granted as to 2-3-06.  I mean if all this is is

24     just a notification of dates and so on, I don't think it's

25     going to help Mr. Longo one bit but I don't think it's

1    privileged.

2           All right, the next one is a memorandum from Flores

3    to Bell.  Is this one of these responsive ones as well

4    responding to something she asked for?

5           MR. RUTHERFORD:  Yes, your Honor.

6           MR. LONGO:  I might add, your Honor, there's a City

7    of Philadelphia case -- Again, I don't know what this document

8    shows, but the City of Philadelphia case that we cited had a

9    similar request, request for information or interrogatories and

10   request to produce and the court ordered them to produce those

11   documents.

12          THE COURT:  What page is that on?

13          MR. LONGO:  Let me flip through the motion.  Page 5.

14    Last sentence on the second paragraph.

15          THE COURT:  And this is a 1962 case.

16          MR. LONGO:  Yes.

17          THE COURT:  I -- What I've told you before, you

18   really ought to upgrade your memo, your memos.

19          MR. LONGO:  I cited it because it involved a city.

20          THE COURT:  Well, I understand, but you know, this is

21   -- This thing is 46 years old.  And, you know, Baum vs. Board

22   of Education is old, too, and the fact that it has some age to

23   it doesn't make it inapplicable.  I mean I enrage my law clerk

24   because I love citing old cases, especially old Supreme Court

25   cases.  But I --

1    MR. LONGO:  (Inaudible).

2    THE COURT:  But you know, this is before all sorts of

3 rule changes and everything else.  Hold on a second.  (Pause.)

4    Oh, yes, this is where you're talking about this

5 control group.  This is -- No, I don't find that case

6 applicable at all.  There's no way that the City of Chicago can

7 act except through people, and there's no way that the Police

8 Department can act except through somebody.  I just -- I mean I

9 don't find your argument persuasive at all.

10    MR. LONGO:  Is this one denied, your Honor?

11    THE COURT:  Well, no, but that doesn't make -- The

12 reason you give, I think, is the wrong reason.  (Pause.)

13    Let me come back to this just for a moment.  The next

14 one is -- I'm starting on Page 8.  1-31-06, which is a fax

15 transmission.  This again is about notification of witnesses

16 and DOJ entities so I'm going to order that produced.

17    Number 8 is an e-mail from Flores to Bell and this

18 just says Sommerfield witness interviews.  I don't know what

19 that means.  And it says attorney-client communication for

20 purposes of legal advice.  I mean if all that's being done is

21 communicating what was said, that isn't privileged.

22    MR. RUTHERFORD:  Your Honor, I believe if I remember

23 correctly there was a conversation between Eileen Bell and

24 Sergeant Flores and then he responded in an e-mail to certain

25 things that were said between them.  I'll have to go back

1    through and review it.

2              THE COURT:  All right, you can produce this in camera

3    as well.

4              MR. RUTHERFORD:  Okay.

5              THE COURT:  So 2-2-06 e-mail will be produced in

6    camera.

7              Now we're on Page 9.  A request for information.

8              MR. RUTHERFORD:  And this would be Eileen Bell

9    requesting information from Sergeant Flores, the CPD liaison in

10   this case.

11             MR. LONGO:  We don't know what kind of information.

12             MR. RUTHERFORD:  Well, it initially has to do with

13   E.E.O.C. charge number 2102 --

14             THE COURT:  Right, right.

15             MR. RUTHERFORD:  Yes.

16             THE COURT:  Yes, I'm going to order this produced as

17   well, and I'll tell you why.  The designation just isn't

18   satisfactory.  As I said, this is the third time around.  You

19   need to say something more.  This could be a request for

20   information about when can we get together to talk about our

21   response?  That isn't -- That's not privileged.  So I can't

22   tell what the information is about and I'm not going to let you

23   keep going over this and over this.

24             The Sommerfield DOJ witnesses, I don't know what that

25   is.  You can produce that in camera as well.

1          The ones that I'm concerned about with, and the ones

2     that Mr. Longo ought to be concerned about with and he says he

3     is, are the witness interviews.  That's where the real

4     information is.  That's where things are that may or may not be

5     admissible but may be admissible, and for example, there may be

6     -- And here's what I'm going to let you -- Well, I don't want

7     to say what I'm going to let you do.

8          Let's take a look at them first.  It may be that

9     they're just nothing.  Most of the things that I look at in

10    camera have no value at all, absolutely none.  But from time to

11    time you look at something and you say, you know, this may have

12    significance.  It's not for me to say.

13         MR. LONGO:  Your Honor, I think these important

14    documents are important because what the City knew at the time

15    is important, particularly based upon their affirmative

16    defense, and what type of notice they had and how grave or

17    minor they thought these statements about Hitler wanting to

18    kill Jews, I think that's --

19         THE COURT:  Well, I don't think you have -- Mr.

20    Longo, how could anybody think that that wasn't a significant

21    statement?  What kind -- (inaudible) you know, when I look

22    through your -- Mr. Pastor's report it struck me that I mean

23    certain things I thought he had some value to but other things

24    it's like do you need somebody to come in and tell the jury

25    that if people are saying these kinds of things and the City is

1    doing nothing that that's, well, it's okay?  I mean I don't

2    have to told that.  I would not need to be told if it was an

3    African-American and there were, you know, lynching -- ropes

4    being hung around his locker, and big swas -- I mean big

5    pictures of the Ku Klux Klan on his locker when he came back

6    from his shift.  Do I need to be told that that's grotesque and

7    offensive?  I don't think so.  So, all right.

8           Attorney notes need not be produced.  So the 1-20-06

9    entry on Page 9, your motion is denied.

10          MR. LONGO:  The same ruling regarding 1-19-06?

11          THE COURT:  Yes.  I mean again you could say well,

12   how do I know that the notes don't contain verbatim recitation

13   of statements?  But I think the designation is sufficient as to

14   the 1-19-06.

15          Now I'm going to ask you, Mr. Rutherford, --

16          MR. RUTHERFORD:  Yes.

17          THE COURT:  -- because you're here and you're an

18   officer of the court and you're -- Frankly, this is as good, if

19   not better, than a notation in the log, as to these attorney

20   notes --

21          MR. RUTHERFORD:  Yes?

22          THE COURT:  -- in any of these entries is there

23   anything besides her mental impressions of strategy, the

24   validity or invalidity of the claims or defenses, the

25   difficulties the City may have, the strength of the City's

1    position and so on?  Is there anything besides what I'm talking

2    about?  I mean the classic work product stuff.  If there is,

3    then I want that produced to me in camera.  I think that the

4    designation is satisfactory.  I'm just trying to be doubly sure

5    and asking you as not only a representative of the City but as

6    an officer of this court and as the person who actually went

7    through these things to tell me if the designation is a bit

8    imprecise, then let's deal with it now.

9           MR. RUTHERFORD:  Well, your Honor, when I went

10   through all of the documents, I made sure if I thought it was

11   attorney -- If she was talking about the case, if she was

12   talking about certain witnesses, I made sure to designate it as

13   attorney notes.  What I can do is I can go back through those

14   documents and double-check to make sure --

15          THE COURT:  That there's nothing in addition.

16          MR. RUTHERFORD:  -- that there's nothing in addition.

17          THE COURT:  All right.  Thank you.

18          You're getting more, Mr. Longo, than I think you're

19   entitled to in a strict Rule 26 sense.  I think that these

20   designations are sufficient.  What I'm going to ask Mr.

21   Rutherford to do he's going to do, is any attorney notes that

22   have more in them than the classical kind of things that are

23   attorney work product, you know, impressions, strategies,

24   defenses, views about the relative strengths or weaknesses of

25   the case, and so on, especially if there's any notations about

1    witness interviews, any recitation of actual testimony, I want

2    those things produced in camera.  Short of that, I think that

3    the designations are adequate and that's what your motion is.

4    You are contesting, Mr. Longo, the adequacy of the designations

5    which I find satisfactory.  So 1-19-06 is denied.

6              Page 10.

7              MR. LONGO:  Request for documents --

8              THE COURT:  Yes, that I'm going to order produced

9    because I don't think that tells us anything and I don't think

10   that's a --

11             MR. RUTHERFORD:  Your Honor?

12             THE COURT:  That does not reveal -- Yes, sir?

13             MR. RUTHERFORD:  Could we just produce those in

14   camera first?  Because if I remember correctly, they were

15   document -- they were information and documents attached to the

16   actual fax cover sheet, so could we produce them to you in

17   camera?

18             THE COURT:  Well, I understand, but what -- Oh,

19   you're saying that some of the things may be -- In other words,

20   well, no, I don't think -- That isn't the way to do it.  I

21   think then the request for documents, the actual request, is

22   not privileged.  What is attached might be privileged.

23             MR. RUTHERFORD:  Okay.

24             THE COURT:  And so I'm going to have you turn over to

25   Mr. Longo the request.  If you think there are otherwise

1   privileged documents I'll let you turn those over in camera.

2       MR. RUTHERFORD:  Okay.

3       THE COURT:  But you've got to do this in the way so

4   that I know what you're giving me.  In other words, I leave it

5   to you mechanically as to how to do this, so when you provide

6   it to me the request should at least designate on it that it's

7   been turned over and you're claiming privilege as to the

8   attachments.

9       MR. RUTHERFORD:  Okay.

10      THE COURT:  Electronic mailing of 1-3-06 -- No, this

11  is definitely producible.  These are the CRs against

12  Sommerfield.  There's nothing in the world.  I mean the way you

13  designated this, it is an e-mail -- Oh, I'm sorry, I'm wrong.

14  I'm wrong.  I read it wrong.  I see.  It is an e-mail from

15  Krasno (phonetic) to Bell --

16      MR. RUTHERFORD:  Discussing complaint registers

17  initiated against Sommerfield.  That was one of the allegations

18  in the E.E.O.C. charge.

19      MR. LONGO:  I don't see why that's . . .

20      THE COURT:  Why don't you produce this in camera as

21  well?  I'm sorry, Mr. Rutherford.

22      The next one is 1-3-06.  And that will be the same as

23  the one above.

24      THE CLERK:  (Inaudible).

25      THE COURT:  Excuse me.

1                      (Interruption.)

2            THE COURT:  Sorry.  We're on 1-3-06, which is --

3            MR. LONGO:  The same ruling as the previous two?

4            THE COURT:  Yes.  The next -- The last two on Page

5    10, which is the 1-3-06 you can produce in camera.

6            MR. RUTHERFORD:  Okay.

7            THE COURT:  On Page 11, 1-3-06, the motion is denied.

8     Those are Eileen Bell's attorney notes about the E.E.O.C.

9    charge and again, the 12-27-05, it's just a memorandum from

10   Sergeant Connell (phonetic) to Bell.  I guess this is what, a

11   response to a request for documents and information?

12           MR. RUTHERFORD:  Yes, it's a response from -- to

13   Eileen Bell from a previous request.

14           THE COURT:  Yes, but I don't know how you -- You'll

15   have to produce this and you can do the same thing.  If there

16   are documents attached that you believe are privileged, you may

17   withhold the documents but the request for information just say

18   please send me . . .

19           MR. RUTHERFORD:  But your Honor, the actual CPD

20   memorandum might have information that is privileged on it.

21           THE COURT:  I know, but might doesn't do it.  Just

22   because -- Look, you can't say send me thus and such and I'd

23   like to see the internal file on this, that or the other thing.

24    That isn't -- I just don't think that's privileged.

25           MR. RUTHERFORD:  But what I was meaning, your Honor,

1   is that in the memorandum I can't remember this particular

2   document but it could be in there by the way this issue is --

3          THE COURT:  Well, but then here.  The answer, Mr.

4   Rutherford, is this:  It is not to claim a blanket privilege,

5   but to claim a privilege as it pertains to Paragraph 2 on Page

6   3, and you redact the document, but you don't get a blanket

7   immunity because there's -- it's partially privileged.

8          MR. RUTHERFORD:  Okay.

9          THE COURT:  Supposing Eileen Bell writes and says

10  listen, I'd like to (inaudible) Dear Karen, would you send me

11  the CRs against Sommerfield.  She writes back and says done,

12  they're attached.  That exchange is not privileged, at least

13  not attorney-client privileged and that's the only privilege

14  you're claiming.

15         Now supposing she then says in addition, by the way,

16  I just met with the Commander or I met with the Chief of

17  Police.  He has a real question as to -- This is what he told

18  me and he needs to know this as to how to proceed in dealing

19  with thus and such.  We need your advice promptly.  She writes

20  back and gives her legal advice.  That's privileged.  The

21  request is privileged and the response is privileged.

22         But that's not what you have here, so let's go to 11-

23  16-05, which is the same thing.  So you're going to --

24  (Sneezes.)

25         MR. LONGO:  God bless you.

1    MR. RUTHERFORD:  God bless you, your Honor.

2    THE COURT:  Thank you.  -- as the previous one so

3 you're going to have to produce that.

4    12-16-05 are Eileen Bell's notes.  The motion is

5 denied as to the notes.

6    The same is true of the last entry on Page 11, which

7 has no date.  They are undated notes.  The motion is denied as

8 to that.

9    MR. LONGO:  Your Honor indicated earlier that if the

10 notes reflect interviews with witnesses, counsel is to review

11 those and produce those in camera.

12    THE COURT:  I've already gone through this.

13    MR. LONGO:  Right.

14    THE COURT:  Anything that has any notes Mr.

15 Rutherford is going to re-review.  If there is something

16 besides what I have said, which is the classic work product

17 privilege, then that's a different story.

18    MR. LONGO:  Yes.

19    THE COURT:  And, you know. . .

20    The first entry on Page 12 are undated attorney

21 notes.  The motion will be denied as to those with the same

22 qualification.

23    MR. LONGO:  To the witnesses?

24    THE COURT:  I'm not there yet.  Oh, I'm sorry.  I

25 didn't see that.  I'm sorry.                          (Pause.)

1          Yes, I think that somebody's impression of who

2    witnesses are going to be and I think that's privileged.  I

3    don't think -- Well, you know, the difficulty with your

4    memorandum is that it doesn't focus at all on the specifics of

5    the chart -- sorry, of the log.  And as to why something is or

6    is not privileged, you had a very different orientation and

7    slant to what you tried to do.  You never looked at this and

8    said well, attorney's notes in the abstract may be privileged

9    but you know what?  A listing of a table of cases -- witnesses

10   -- isn't, and here's why.  You know, I can't make the case for

11  you.

12          Do you know, or can you reflect for me more, Mr.

13   Rutherford, on what this entry table of witnesses means?

14          MR. RUTHERFORD:  I believe it's her -- it's the

15   witnesses in the case as well as her impressions of those

16   witnesses.  But I'm also going to show that one in camera for

17   your Honor as well, and I'll review that.

18          THE COURT:  Yes, let's look at that.  Let me change

19   my ruling then on that.

20          The first entry on Page 12 I'm going to order you to

21   produce in camera.

22          And the last one, mercifully, on Page 12 and on the

23   log is 12-14-05 and it's a memorandum from Karen Connell to Ms.

24   Bell, and this is also a request for documents and information

25   and I'm going to order you to produce that with the same

1    qualification.

2              MR. LONGO:  I think you had one outstanding, your

3    Honor.

4              THE COURT:  Yes.

5              MR. LONGO:  I think it also related to a request for

6    documents but I'd rather check before I make a representation.

7              THE COURT:  No, I have it.                    (Pause.)

8              It's the second one on Page 8.

9              MR. LONGO:  And it's the City's request for

10   documents.

11             THE COURT:  It is.  Yes.  So that will be ordered

12   produced.  Well, let me think for a second.  Hold on.  (Pause.)

13             Yes, because I can't tell what this is.  But we'll do

14   these in the same way that we did the others.  If you think in

15   your review -- My guess is a number of these are simply going

16   to be would you mind sending me something.  It's innocuous.  It

17   doesn't mean anything.  If there's more to it and you have

18   concerns, you can produce the stuff to me in camera, but to the

19   extent that requests for production are just that and nothing

20   more, --

21             MR. RUTHERFORD:  Just produce to Mr. Longo?

22             THE COURT:  Yes.

23             MR. LONGO:  How much time, your Honor?

24             THE COURT:  I don't know.  How long is it going to

25   take, Mr. Rutherford?  And where are we with discovery?  When

1    does discovery close?  It's closed, isn't it?

2          MR. RUTHERFORD:  It closed on May 15th, 2008, your

3    Honor.

4          THE COURT:  So all we have left is the -- Did you

5    take the deposition of Mr. Longo's expert yet?

6          MR. RUTHERFORD:  Actually, Mr. Kertez has not taken

7    that deposition yet.

8          THE COURT:  Is he going to do that?

9          MR. RUTHERFORD:  He's going to do that.  He's going

10   to need, since he is sick, he's going to probably need at least

11   an additional two weeks.

12         THE COURT:  Oh, whatever you do, I don't care when

13   you do it.

14         MR. RUTHERFORD:  Okay.

15         THE COURT:  I mean all I wanted was -- The guy simply

16   could have come in and, for my edification I just would like to

17   know this, I could never tell from what was submitted to me.

18   Were your summaries summaries or were they selected excerpts of

19   deposition testimony?  Or both?

20         MR. LONGO:  Summaries.  They were what the witnesses

21   said.

22         THE COURT:  Not necessarily in hoc verba.

23         MR. LONGO:  So if the witnesses said that this light

24   is turned on, that's what the summary stated.  So . . .

25         THE COURT:  Well, I understand that.  But in other

1    words they weren't excerpts, not that it would matter because

2    it's the same inherent problem, but they were summaries.  Okay.

3     Because it looked like in part he was quoting things, like he

4    had quotes, I thought, if I can remember right.  I thought he

5    had some quotes from the transcripts, but I couldn't tell where

6    they came from.

7              Anyway, what I wanted to do, Mr. Rutherford, was give

8    Mr. Longo's expert the chance to testify based upon information

9    that we know is valid that doesn't come through the distillate

10   of somebody else's reviews.  Now my guess is that Mr. Longo's

11   summaries were probably incredibly accurate but what happens

12   when they're not?  I thought it was sort of an interesting and

13   neat problem.

14             MR. RUTHERFORD:  It is.

15             THE COURT:  So his guy gets to testify if the right

16   information is made known to him at the trial.  But he can't

17   come up and say well, I, you know, here's what I think, and how

18   do we know Mr. Longo is right?  Anyway, that's (inaudible).  So

19   he's in play to the extent there's real information, reliable

20   information, and some stuff is admissible and other stuff, I

21   suppose, isn't and but this case should get tried on the

22   merits.

23             MR. RUTHERFORD:  Your Honor, I also wanted to let you

24   know that either on December 1st or December 16th I'll be

25   withdrawing as an attorney on this case.

```
 1              THE COURT:  Why?

 2              MR. RUTHERFORD:  I'm transferring to a different

 3    division within the City of Chicago, the Law Department.

 4              THE COURT:  I hope it's one that you'll be happy

 5    with.  I mean that you wanted, you know, you'll be happy

 6    wherever you're going and it was a pleasure to have you in the

 7    case.

 8              MR. LONGO:  It helps when we get up in the morning if

 9    we like what we're doing.

10              MR. RUTHERFORD:  Yes.

11              MR. LONGO:  If we're happy with our work.

12              MR. RUTHERFORD:  I'm transferring to the --

13              THE COURT:  Yes, where are you going to?

14              MR. RUTHERFORD:  Actually it's the same division as

15    Ms. Werth, the Federal Civil Rights Litigation Division.

16              THE COURT:  Oh, that's great.

17              MR. RUTHERFORD:  Yes, so I'll be working with Ms.

18    Werth again.

19              THE COURT:  Well, that's really nice.  I hope that

20    this is something that you want to do, I suppose, because they

21    shuffle, they seem to shuffle really good people around in a

22    way that sort of defies understanding sometimes.

23              MR. RUTHERFORD:  Actually, I wanted to have the

24    opportunity to do more trial work so . . .

25              THE COURT:  Well, that's great.  And then here you
```

```
 1   don't do it as much?

 2            MR. RUTHERFORD:  Not with the employment cases.  For

 3   instance, federal civil rights litigation, they've had 18 cases

 4   go to trial this year.  Employment litigation we haven't had

 5   one yet.  We have one pending before the end of the year before

 6   Judge Coar, but we haven't had one go to trial yet this year.

 7            THE COURT:  Let me ask you quick -- We can go off the

 8   record.

 9                 (Discussion had off the record.)

10            THE COURT:  . . . and do something with them.  We're

11   finished.  Our collective work is finished.

12            MR. LONGO:  Yes.  Like I said, I think there is --

13            THE COURT:  Then you've got to go back and look.

14            MR. LONGO:  I will.

15            THE COURT:  Because I don't see anything.

16            MR. LONGO:  Okay, I will.

17            THE COURT:  Don't file any new motions, Mr. Longo.

18            MR. LONGO:  I'll send you a letter.

19            THE COURT:  No, don't send me any letters.

20            MR. LONGO:  Okay.  You want me to call?

21            THE COURT:  I don't want your call.  If you think

22   something is going -- Oh, I see what you mean, in reference to

23   this.

24            MR. LONGO:  Yes.

25            THE COURT:  Well, let's have a conference call.
```

1          MR. LONGO:  Okay.

2          THE COURT:  Because this is something I think we need

3   to talk about.

4          MR. LONGO:  Okay.

5          THE COURT:  And then we can figure it out together.

6          MR. LONGO:  Okay.

7          MR. RUTHERFORD:  And your Honor, is it okay if I

8   produce these documents in camera earlier than the December

9   15th?

10         THE COURT:  Oh, absolutely.  Yes.  Actually, you can

11  produce them whenever you want.  I have just given you an

12  outside date so that everybody knows when we're going and

13  you'll just go ahead and take Pastor's deposition.

14         I know what the last question I want to ask you is:

15  There is no chance of this case getting settled, right?

16  There's two questions I want to ask.  Let me ask the first one:

17   Is it the City's position that Sommerfield essentially isn't

18  telling the truth about what he says he experienced?  Or that,

19  as a legal matter, it's sort of not actionable?  I'm not quite

20  sure what the City's theory is.  Do you know?  Well, you know,

21  because you took the depositions.  What did they say?

22         MR. LONGO:  Well, Mr. Rutherford is in a better

23  position to vouch for what the City's position is.

24         MR. RUTHERFORD:  Well, with Mr. Kertez not being

25  here, your Honor, I don't want to represent --

1       THE COURT:  Okay, no, no.  But from the depositions
2   is it their position that they didn't say these things and he's
3   making this all up?
4       MR. LONGO:  I'm not really clear what their position
5   is.  All I know is they're fighting very hard.
6       THE COURT:  But Mr. Longo, you took the depositions.
7       MR. LONGO:  I understand that.
8       THE COURT:  And didn't you say did you say to
9   Sergeant Sommerfield too bad they didn't kill all the Jews, or
10  whatever?  And he said no, I never said that.  Or he said yes,
11  I said it, or I was kidding.
12      MR. RUTHERFORD:  Are you talking about Sergeant
13  Knasiak?
14      THE COURT:  Whoever it was who said it.  Knasiak,
15  yes.
16      MR. LONGO:  Yes.  He said he didn't say it.
17      THE COURT:  He said he never said it.  Okay.  So
18  somebody is lying, given the disparate positions.  And is that
19  the way the depositions for most of these people went:  It
20  didn't happen?
21      MR. LONGO:  No, they said they didn't remember.
22      MR. RUTHERFORD:  Or, your Honor, with a lot of the
23  statements that are -- that have been in Longo's beliefs and
24  that were alleged, persons don't remember hearing, they don't
25  recall those statements being said or they don't recall --

```
 1              THE COURT:  No, hold on, hold on.  Is it that they
 2     were witnesses and don't remember?  What about the actors
 3     themselves?  Their position is they don't remember saying it or
 4     hearing it said by others?  Or both?
 5              MR. RUTHERFORD:  I wasn't around for Sergeant
 6     Knasiak's deposition but I have read it and I believe that he
 7     denied those statements.
 8              MR. LONGO:  Right, he denied them.
 9              THE COURT:  Is he the main guy, he's the main actor
10     in this?
11              MR. LONGO:  Yes.
12              MR. RUTHERFORD:  He's the --
13              THE COURT:  Anybody also said these things.
14              MR. LONGO:  No.
15              MR. RUTHERFORD:  No.  He's the only person.
16              THE COURT:  Okay.
17              MR. LONGO:  The plaintiff complained to several
18     supervisors.
19              THE COURT:  And did they say -- they admit that he
20     complained?
21              MR. LONGO:  They said they don't remember.  Your
22     Honor, if you'll excuse me.
23              THE COURT:  All right.
24              MR. LONGO:  I'm going to be late, I'm already late
25     for an appointment so --
```

1          THE COURT:  All right.

2          MR. LONGO:  -- I hope it's okay with you.

3          THE COURT:  Okay, yes, go ahead.

4          MR. LONGO:  I hope you, both of you, have a wonderful

5  Thanksgiving.

6          THE COURT:  You, too, Mr. Longo.  Here's what -- Go

7  ahead.

8                     (Recording turned off.)


     I, RIKI SCHATELL, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.

/s/ Riki Schatell                    January 5, 2009
                                     Date