# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DETLEF SOMMERFIELD, | ) | No. 06 C 3132 |
| | ) | |
| Plaintiff, | ) | Judge Joan Gottschall |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

This is a Title VII employment discrimination case against the City of Chicago. The complaint asserts that while a Chicago Police Officer assigned to the Eighth District between 2000 and 2007, Mr. Sommerfield was subjected to discrimination and harassment because he is Jewish. The complaint also alleges that the City retaliated against Mr. Sommerfield after he complained about the discrimination by repeatedly disciplining and suspending him, thereby precluding him from being promoted to a canine handler – a position he had wanted for many years.

On November 26, 2008, the plaintiff filed a "Motion for Ruling on Plaintiff's Motion to Compel the Defendant to Produce and Answer Discovery Regarding Similarly Situated Employees." [287]. This was but the most recent in what Judge Filip earlier described as a "series of acrimonious discovery battles." [#102].[1] *See also Sommerfield v. City of Chicago*, 252 F.R.D. 407, 411, n. 2 (N.D.Ill. 2008)(Gottschall, J.). Some of what has gone on in the case is simply inherent in an

---

[1] The docket in this case reflects 28 discovery related motions. *See* Docket Nos. 57, 52, 59, 72, 75, 84, 90, 106, 107, 110, 147, 148, 152, 163, 164, 165, 171, 172, 181, 194, 211, 212, 213, 231, 246, 252, 270, 287. In addition, the plaintiff has filed four appeals to the district court, one of which the City moved to strike. *See* Docket Nos. 188, 217, 229, 240, 289.

adversarial system in which discovery plays an integral role. But not all. And those aspects that were not have squandered scarce judicial resources. Each hour needlessly spent on a dispute that could be profitably spent on a case in which resolution of the issues could only come from the court is an hour wasted. *See Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991).

The City blames the plaintiff's counsel for what appear to be excesses in and needless dilation of discovery and has accused Mr. Sommerfield's counsel of "bombard[ing] the City with discovery requests, most of them cumulative and unnecessary." This, the City contends, is his "standard practice." (*Defendant's Response to Plaintiff's October 26, 2007 Memorandum of Law*)[#126 at 10]. To support this thesis, the City points to the Seventh Circuit's extraordinary castigation of Mr. Sommerfield's counsel in *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012 (7th Cir. 1999):

> Mr. Longo's extensive but inept and wholly unsuccessful efforts to conduct class actions have drawn unusually pointed criticisms from Illinois state judges. In one case the judge called the complaint drafted by Longo (which had already been amended four times) the "lousiest complaint I've ever read" in twenty years on the bench, and added that "I wouldn't want to be in a class action where you were representing the Plaintiff." Longo has several times sought to file Truth in Lending class actions with his own relatives as the named plaintiffs, which is of course improper. [2] He has filed untimely appeals, failed to protect the right of clients to opt out of doomed class actions, engaged in flagrant forum shopping, made exorbitant settlement demands, filed frivolous motions, displayed a lack of familiarity with procedural rules-and in the end always lost.

> In *Urso v. United States*, 72 F.3d 59 (7th Cir.1995), we criticized him on multiple grounds, while in *Estate of Henry, by Henry v. Folk*, 285 Ill.App.3d 262, 220 Ill.Dec.

---

[2] *See e.g., Latona v. Carson Pirie Scott & Co.*, 1997 WL 109979 at *1 (N.D.Ill.1997)(plaintiffs' counsel, Mr. Longo, was the husband of Ms. Latona's niece. The district court noted that Latona did not read her complaint until the night before her deposition, more than two months after the complaint was filed. At the deposition, Latona had a very vague idea of the nature of her claims, often not knowing her allegations or stating allegations that did not appear in the complaint. She also admitted that defendant's actions did not cost her any money).

831, 674 N.E.2d 102, 103 (1996), the court noted that he had attempted to serve process on a saloon by leaving a copy of the summons with one of the saloon's customers. In one of his class actions, he sent a nonlawyer to appear in his stead at oral argument, and in the same case he filed a motion to jail the opposing counsel for nonexistent discovery abuses. Acting as his own lawyer in a consumer-protection case, the field of his claimed expertise, he not only lost the case but was sanctioned for his incompetent handling of the litigation. *See Longo v. AAA-Michigan,* 201 Ill.App.3d 543, 155 Ill.Dec. 450, 569 N.E.2d 927 (1990); *Longo v. Michel,* 1993 WL 476967 (6th Cir.1993) (per curiam); *Longo v. Glime,* 1991 WL 32356 (6th Cir.1991) (per curiam).[³] We are about to see that he has sacrificed the interests of the named plaintiff in this case to his desire to keep the case going in the forlorn hope that it might somehow, someday fly as a class action. Given Longo's track record, the district judge was clearly right to refuse to let the suit proceed as a class action.

*Id.* at 1014.

More recently, Mr. Sommerfield's counsel drew the court's fire in *Atkins v. City of Chicago,* 547 F.3d 869 (7th Cir. 2008)("Attorney Longo confused matters terribly"), and on remand Judge Shadur, after "review[ing] the voluminous docket in this action,"expressed dismay at Mr. Longo's "failure to keep the Court of Appeals apprised of the actual situation...." *Atkins v. City of Chicago,* 2009 WL 922368, 1 (N.D.Ill. 2009). Other examples of what the City contends is counsel's "standard practice" may be found in *Perez v. Z Frank Oldsmobile, Inc.,* 2001 WL 849476, *1 (N.D.Ill.2001),[4] and *Mader v. Motorola Inc.* 1999 WL 519020, *1 (N.D.Ill.1999).[5]

---

[³] The Sixth Circuit affirmed a magistrate judge's award of sanctions against Longo for his abuses in the discovery process. 1991 WL 32356 at *3.

[4] In *Perez,* Mr. Longo claimed he worked 1,241 hours and was entitled to a fee award of $236,911.00. The Seventh Circuit disagreed finding that the hours claimed were "hard to swallow." *Perez v. Z Frank,* 223 F.3d 617, 625 (7th Cir.2000). The court questioned the amount, stating "[h]ow can a case this simple, which required only three trial days and led to a compensatory award of only $11,500.00 have commanded that investment of resources." *Id.* at 625. On remand, the district court concluded, "after careful examination of the hours billed by Mr. Longo," that they were unreasonable "for a case of this magnitude." For example, the district court pointed out that Mr. Longo's claim that he spent more than 97 hours for drafting correspondence, and more than 200 hours for telephone calls "is clearly excessive." The court concluded that 50 hours for telephone calls and correspondence is appropriate. Further, the district court concluded that Mr. Longo's claimed 320 hours for legal research, more than 145 hours for preparing
(continued...)

The adversary system is fundamental to Anglo-American jurisprudence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993); *United States v. O'Neill*, 437 F.3d 654, 660 (7th Cir. 2006). Consistent with the role of an advocate in that system, counsel "is supposed to give the evidence a partisan slant." *Philips Medical Systems Intern. B.V. v. Bruetman,* 8 F.3d 600, 606 (7th Cir.1993). Indeed, "a partisan scrutiny of the record and assessment of potential issues, goes to the irreducible core of the lawyer's obligation to a litigant in an adversary system...." *Smith v. Robbins,* 528 U.S. 259, 293 (2000)(Souter, J., dissenting). *See Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D.Ill. 2008). But, the single-minded devotion to a client's interests – which "follows from the nature of our adversarial system of justice," *Penson v. Ohio,* 488 U.S. 75, 84 (1988) – has limits. As we shall see, they have been exceeded in this case.

## BACKGROUND

To fully understand the current Motion, some discussion of the lengthy and labyrinthine history of the case is essential. On April 25, 2007, plaintiff served written discovery on the City. Included was "Plaintiff's First Set of Interrogatories," which, among other things, sought for the period 2000 to 2007, the identities of:

---

[4](...continued)
documents, and 195 hours for reviewing his written work was excessive and that "allotting 100 hours of research is appropriate." Of the 145 hours claimed for preparing documents, only a third were allowed. Finally, of the more than 130 hours claimed were spent in preparing for trial and other court appearances, depositions, meetings, etc., the court noted that depositions in the case were limited, and the trial was short. Thus, only 50 hours were deemed reasonable. *Perez*, 2001 WL 849476 at *2.

[5] In *Mader*, the district court said that despite being given four opportunities, Mr. Longo was unable to file a proper Local Rule 12 statement of facts, thereby requiring that the statement of facts in the opponent's motion be deemed admitted and resulting in an award of summary judgment against Mr. Longo's client. The district court described what happened next: "Hoping to snatch a reprieve, Longo filed a motion for reconsideration arguing everything from, the court abused its discretion under the local rules to, most startlingly, that the court lacked proper subject matter jurisdiction." *Mader*, 1999 WL 519020 at *1.

4

all persons who were charged with insubordination, failing to perform their work duties while at work, or involving the same type of conduct of the plaintiff which the defendant labeled as 'insubordination,' [and the identities of and the] position and duties of all accusers, [and required the City to] specify what discipline was issued, if any and why...if a person were not issued a suspension for insubordination, detail exactly why.

[#126-10, Exh. H, ¶23].

When the City objected that the request was overbroad, plaintiff moved to compel on July 31, 2007. [#59]. At the conclusion of the three-hour hearing on August 9, 2007, I held, *inter alia,* that such discovery requests should be limited to complaints of discrimination based on national origin or religion by Sergeant Knasiak – whom Mr. Sommerfield claims was responsible for the harassment and discrimination. [# 63].[6] I denied the request as it related to claims of other kinds of discrimination and to claims of discrimination by police officers in District other than the Eighth District, which was the District where Knasiak and Sommerfield worked.[7] I did so because how different decision-makers in the other 24 Districts into which the Police Department is divided, meted out discipline – whether formal or informal, direct or disguised – was irrelevant to the discrimination and retaliation the plaintiff claims he experienced in the Eighth District. *United States v. Moore,* 543 F.3d 891, 897 (7th Cir. 2008)("where 'different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects'"); *Balderston v. Fairbanks Morse*

---

[6] On October 4, 2007, the plaintiff would identify as possible other victimizers, Lieutenant Carson Ernest, Sgt. Majewski, Sgt. Betty Woods, and Lieutenant Byack. (*See Transcript of Proceedings,* October 4, 2007 at 63-65)("Tr.").

[7] Of course, Mr. Sommerfield was entitled to inquire about all acts of discrimination by Sergeant Knasiak. based on national origin – which was the basis of the discrimination charged in the complaint. *See Warren v. Solo Cup Co.,* 516 F.3d 627, 632 (7th Cir. 2008)(Sykes, dissenting) (collecting cases); *Ferguson v. Extraco Mortgage Co.,* 264 Fed. Appx. 351, 352 (5th Cir. 2007); *O'Sullivan v. City of Chicago,* 2007 WL 671040 at *8 (N.D.Ill. 2007)(collecting cases); *Ortega v. Fedcap Rehabilitation Services, Inc.,* 2003 WL 21383383 (S.D.N.Y. 2003).

5

*Engine Div. of Coltec Industries,* 328 F.3d 309, 320 (7th Cir.2003)("The district court limited discovery to the relevant corporate department, similarly situated employees, time period, and decisionmakers. ... There was no abuse of discretion.").

Phrased differently, the plaintiff was not "similarly situated" to Chicago Police Officers outside the Eighth District, and thus discovery directed towards them would be irrelevant. Even more irrelevant would be discovery that sought information about discipline of or discrimination against an employee of the five Bureaus of the Chicago Police Department (*i.e.,* Bureau of Administrative Services, Bureau of Investigative Services, Bureau of Patrol, Bureau of Professional Standards, Bureau of Strategic Deployment).[8]

In any event, plaintiff appealed the August 9, 2007 ruling to Judge Filip on August 17, 2007. [#67, 70]. Rather than awaiting the ruling from Judge Filip, the plaintiff, in August and September 2007, served on the City a number of expansive Rule 30(b)(6) deposition notices, which sought testimony about the same information previously sought in the interrogatories. Among the numerous topics on which the plaintiff sought Rule 30(b)(6) testimony were the identity of those employees of the Chicago Police Department who, between 2000 and 2007, were accused of misconduct similar to that for which the plaintiff was disciplined and who received punishment similar to that received by plaintiff. Despite the obvious burden on the City, production of documents relating to these and other specified topics were demanded in seven days from the date of service of the 30(b)(6) notice. [#90, ¶10].

On September 28, 2007, the City moved to quash the Rule 30(b)(6) deposition notices. [#90,

---

[8] Information about the structure of the Chicago Police Department was obtained from its website: *egov.cityofchicago.org/city/webportal/portalEntityHomeAction.do?entityName=**Police**&entityNameEnumValue=33*

91].[9] On October 4, 2007, I granted the motion in part and denied it in part, as explained during the three-hour colloquy with counsel. [# 101]. The transcript of that hearing spans more than 150 pages. While I concluded that the extensive discovery sought was overbroad, I said that it was desirable to restructure the deposition notices so that the plaintiff would know what it was entitled to and the City would know what its obligations were. (*See Transcript of Proceedings*, October 4, 2007 at 73)("Tr."). That is what occurred.

During the course of the hearing and consistent with the August 9 ruling, I made it abundantly clear that I was limiting to the Eighth District the quite extensive discovery I was granting since that is where the alleged discrimination and harassment were claimed to have occurred by fellow officers assigned to that District. (Tr. 22, 24, 41-42,115-116 ). Harassment in other Districts involving other harassers and other decision-makers simply was not relevant. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). Of course, issues of Department-wide policy regarding the handling of complaints of discrimination like those in the instant case and matters relating to training of police officers were held to be proper subjects for a 30(b)(6) witness and were not so restricted. (Tr. 71, 108-109).

At one point, I remarked that the extensive discovery being granted "is going to give you I mean virtually everything you've asked for, Mr. Longo, in a manageable way and in a way that the City can accommodate you. ... I think that some of what you're asking for and the way you've asked for it is not [at the core of the case]. It is preoccupation with discovery for the sake of endless discovery and would get you nowhere." (Tr. 71-72). I also remarked that the deposition notices, to

---

[9] The motion noted that I had ordered the City on August 9, 2007 to produce, among other things, all documents relating to complaints of discrimination based upon national origin or religion, harassment, or retaliation against Sergeant Knasiak from January 1, 2000 to August 9, 2007. [#90, ¶7].

the extent they sought discovery about any kind of claim of harassment or discrimination made by anyone in the Chicago Police Department between 2000 and 2007, were improper and constituted an evasion of the prior ruling. (Tr. 76, 85).

During the course of the hearing, plaintiff's counsel stressed that the scope of the requests was limited to the Eighth District: "Mr. Longo: 'Your Honor, I just want to add that we really have been asking about the Eighth District. We have not been asking about the whole Chicago Police Department.'" (Tr. 45). When I asked plaintiff's counsel, midway through the hearing, whether he was agreeing with the revisions being made to the notices of deposition, he responded, "Your Honor, I can tell you that it would seem to me I would probably recommend [to my client] that we are agreeable... to nearly all of what your Honor is saying." (Tr. 74). When later in the proceedings Mr. Longo attempted to argue: "[b]ut later on though, you may decide-" I refused to speculate on the future and was emphatic that I would not deal with the plaintiff's discovery requests "on a City-wide basis" since the only discrimination and retaliation occurred while Mr. Sommerfield was assigned to the Eighth District. (Tr. 114-116).[10]

On October 19, 2007, Judge Filip denied the plaintiff's objections to my August 9 rulings. In an uncharacteristically stern and censorious opinion, he characterized plaintiff's counsel's objections as "verg[ing] on [the] frivolous...." [#102]. After "review[ing] the entire transcript of th[e] proceedings [of August 9]" – which Judge Filip noted occupied more than three hours of in-court time and spanned more than 150 pages of transcript – Judge Filip rejected all of what he

---

[10] Undaunted, Mr. Longo said "I'm sure we'll look at this – your honor will look at this at a later time once we get some preliminary information from the City, that at a minimum it would be the Chicago Police Department." (Tr. 115). Although I made it clear to counsel that I was not going to revisit the issue (Tr. 115-116), Mr. Longo continued to press: "But wouldn't it be relevant, your Honor-" I responded: "Mr. Longo, I'm committing myself to nothing." (Tr. 116).

described as the plaintiff's "unfocused objections." [11] Judge Filip also said that "Plaintiff's motion is extraordinarily poorly presented. It does not, for example, attach a copy of the rulings it seeks to overturn. Relatedly, the motion is written without reference to the specific rulings and reasoning set forth by Judge Cole. . . . [In addition] the failure to include a transcript of Judge Cole's rulings is especially egregious in this case." *Id.* Thus, as things stood on October 19, 2007, the only relevant discovery was of national origin discrimination within the Eighth District.

On October 26, 2007, the plaintiff filed a "Memorandum Of Law Of Contrasting How The Defendant Disciplined Similarly Situated Employees For Infractions Under The Same Rules And Policies For Which The Defendant Charged The Plaintiff." [#104].[12] The Memorandum argued that the prior Rule 30(b)(6) notices were proper, that personnel files were discoverable, and that discovery should be allowed outside the Eight District. While the Memorandum was filed pursuant to my order of October 4, 2007 [#101], Judge Filip's ruling mooted the arguments. And even if it had not, the Memorandum was insufficient to justify the kind of unlimited discovery the plaintiff as seeking.

On December 19, 2007, the City responded to plaintiff's Memorandum." The City offered three reasons why the plaintiff was not entitled to the information he was seeking: 1) plaintiff was requesting the same information that was denied to him on August 9, 2007 – a ruling sustained by

---

[11] Judge Filip concluded that I had "carefully engaged the parties' arguments and issued thoughtful rulings as to the issues presented." He said that "[t]he bottom-line is that one would be hard pressed to find a judge who would more thoughtfully review the discovery issues presented than Judge Cole did here. It is thus somewhat difficult to review Plaintiff's unfocused objections—which are generically presented, in a seeming rehashing of the motion to compel, without including any meaningful discussion of Judge Cole's extended analyses or any explanation for why his discovery rulings could constitute clear error or an abuse of discretion. In this case, Plaintiff faced a substantial hurdle in attempting to upend Judge Cole's discovery rulings. He has not come close to doing so." [#102].

[12] The only victimizer identified in the Memo was Sgt. Knasiak.

Judge Filip; 2) the information is cumulative, repetitive, and unduly burdensome; and 3) the information is not germane to plaintiff's claims, and to the extent that it is, plaintiff has failed to confine his requests to similarly situated persons.

On March 24, 2008, the plaintiff, ignoring his own representations and the prior rulings that had refused to allow discovery beyond the Eighth District, again moved to allow discovery of complaints of discrimination, harassment and retaliation outside the Eighth District and involving officers other than Knasiak. [#164].

On April 28, 2008, I denied without prejudice plaintiff's motion to hold defendant in contempt of court for noncompliance with the Rule 30(b)(6) depositions [#165] I had authorized on October 4, 2007. The ruling was based on the motion's the lack of support. [#187]. On May 1, plaintiff again filed a motion to compel compliance with the Rule 30(b)(6) depositions and requested that the City be required to produce documents of complaints of national origin, discrimination and harassment both within and without the Eighth District and without regard to whether they involved Sgt. Knasiak. [# 181-182]. Ignored were the prior rulings that were adverse to the plaintiff.

On May 6, 2008, I denied various of Mr. Sommerfield's requests for discovery that sought, *inter alia*, production of complaints of discrimination, harassment and retaliation outside the 8th District. I did so, in part, on the ground that this was a matter that I had already decided and Judge Filip had refused to overrule that decision. *See Sommerfield*, 252 F.R.D. at 408. I also issued a Report and Recommendation recommending to Judge Gottschall that she not hold the City in contempt since the City had not violated any court order requiring production of information to the plaintiff. Quite the contrary, both the minute order and the Memorandum Opinion and Report and Recommendation concluded that the information sought by the plaintiff involved matters that have

10

previously been decided, and that the plaintiff's counsel was simply attempting to have another go at the same issues. [#184, #186]. [13] All that the City was obligated to turn over were complaints in the Eighth District based upon claims of harassment, retaliation or discrimination because of national origin or religion between 2000 and 2007. [#184, #186].

On May 9, 2008, the plaintiff filed objections with Judge Gottschall to the Memorandum Opinion and Report and Recommendation. The motion acknowledged that the request for discovery of complaints outside the Eighth District had been previously denied. [#188]. The May 2008 order also entered and continued the plaintiff's motion to compel relating to the 30(b)(6) depositions until Mr. Longo provided a transcript reflecting what had occurred. Instead of submitting the transcript of the hearing, which would have reflected what the City was ordered to do, Mr. Longo had chosen impermissibly to submit his own summary of what he claimed the City had been ordered to do. The summary took the form of a letter to defense counsel. In an extended opinion, I held that Mr. Longo's letter could not be a substitute for the transcript. *Sommerfield,* 252 F.R.D. at 408-409.

On May 14, 2008, the City filed a motion to quash plaintiff's requests to admit, which numbered 698, not counting the scores of subparts, on the ground that they were abusive, unreasonable, oppressive, unintelligible, convoluted, hypothetical, and sought to have the City reaffirm statements already made during depositions. These were but some of the claimed deficiencies. [#194-196]. On May 20, 2008, instead of simply granting the motion with prejudice, I granted it without prejudice to plaintiff's filing appropriate requests to admit. [#204]. Later, 198 requests to admit were propounded by the plaintiff.

---

[13] On May 12, 2008, I entered an Amended Memorandum Opinion and Order and Report and Recommendation to correct mistakes in two footnotes and to add an additional case. These amendments had no effect on the analysis or outcome of the case.

On June 20, 2008, Judge Gottschall overruled Sommerfield's objection to the discovery-related rulings and adopted in full my May 2008 Report and Recommendation [#223, #224]. She concluded that it was not clearly erroneous to have denied the motion to compel, in part, because the matter had already been adversely decided to the plaintiff. She noted that "Sommerfield does not directly address how this conclusion is contrary to law. He simply argues that the discovery is necessary and relevant, which goes to the merits of the issue, not to the correctness of Judge Cole's conclusion that the motion was duplicative. Therefore, Sommerfield fails to show that the Order was in clear error on this basis of his need for discovery to address the affirmative defense." *Sommerfield*, 252 F.R.D. at 410.

Judge Gottschall also adopted in full my Report and Recommendation recommending that the plaintiff's motion to hold the City in contempt for discovery violations be denied since the City was not obligated to turn over information relating to events outside the Eighth District. Finally, she concluded that it would be premature to consider the plaintiff's motion to compel relating to the Rule 30(b)(6) deposition "as it remains pending while Judge Cole awaits the requested transcript." [#223, #224]; *Sommerfield*, 252 F.R.D. at 409, 410, n.1 and 411.[14] The transcript was never provided.

On June 10, 2008, I denied a number of the plaintiff's further discovery requests, including one that I prohibit the City from violating my April 28, 2008 order regarding the canine patrol. [#216]. Judge Gottschall's Order of October 10, 2008, overruling the plaintiff's objection to this

---

[14] The Report and Recommendation is reproduced at the end of Judge Gottschall's opinion at 252 F.R.D. at 411-419. Plaintiff's counsel again failed to submit transcripts to sustain his position when he sought to have his expert base his opinion and report on Mr. Longo's summary of depositions of testimony on which the expert relied. The report depended on the *assumption* that the 26-page summarization of 11 deposition transcripts, spanning 2,649 pages of transcript, was accurate. On November 3, 2008, I concluded that a lawyer's summarization of testimony was not a reliable basis on which an expert could base an opinion. *See Sommerfield v. City of Chicago*, 254 F.R.D. 317, 320 (N.D. Ill. 2008).

order noted that plaintiff's counsel did "not attach a copy of the deposition transcript, quote relevant sections of testimony, or attach a copy of the Rule 30(b)(6) deposition notice outlining the scope of the matters for examination." [#280 at 4]. Judge Gottschall ultimately found that "Sommerfield attempts to recast the history of the discovery motions on the canine patrol, arguing that Judge Cole erred in refusing to order the City to produce relevant documents. Such an argument seriously misstates what occurred in this case." [#280 at 5].

Unwilling to take no for an answer, on July 7, 2008, plaintiff filed a motion requesting reconsideration of Judge Gottschall's June 20th Order, Or, Alternatively, to Allow Discovery and Compel Defendant to Respond to Discovery Relating to Defendant's Investigations. [#229]. Mr. Longo argued that he would need documents and information relating to investigations, not just in the Eighth District, of complaints of discrimination, harassment and retaliation, indicating 1) when an investigation started, 2) when it was completed, 3) who the victim was, 4) who the accused was, 5) the nature of the charge, 6) discipline if any, 7) who was interviewed, 8) whether the charge was sustained or rejected. [#229]. Plaintiff acknowledged that I had previously denied this request, and Judge Gottschall had affirmed this decision. However, the motion to reconsider repeated the information was essential, and that the Court misunderstood earlier statements that additional discovery was not needed.

On July 21, 2008, the City filed a motion to strike plaintiff's July 7th Motion to Reconsider. [#235]. Judge Gottschall denied that motion. [# 245]. On October 21, 2008, Judge Gottschall denied the Motion to Reconsider and Allow Discovery and Compel Defendant to Respond to

13

Discovery Relating to Defendant's Investigations." [#282].[15] She stressed the earlier denials of these motions based on overbreadth. [#282].[16]

On November 26, 2008, plaintiff filed the instant motion for ruling on the October 26, 2007 motion to compel. [#104, #287]. The motion claimed that there had been no ruling on discovery requests relating to harassment, discrimination and retaliation against similarly situated people. Quite rightly, the City insisted there had been several prior rulings. Because Sommerfield's discovery requests were so intertwined and tortured, folding back and forth on each other like a Mobius strip, I asked the parties to review the history of discovery to support their respective positions. The City's responsive brief did just that. [#126 at 5]. Nonetheless, the plaintiff's reply brief intransigently argued that no answer from this Court has been given on the issues. [#305]. As the preceding chronology demonstrates, Mr. Longo's claims are glaringly false.

Plaintiff now asserts, without any support, that he "is entitled to information about how the defendant treated other employees [outside the Eighth District] because the defendant's punishment comes from a centralized department." [#305 at 4].

On April 16, 2009, Judge Gottschall overruled the plaintiff's objection to my November 18, 2008 ruling regarding the adequacy of the City's privilege log, which I had concluded was inadequate, after conducting an extensive hearing at which time I reviewed each entry with the City and the plaintiff's attorney. [#286]. In her order, Judge Gottschall noted that Mr. Longo had once

---

[15] Judge Gottschall treated plaintiff's motion as a motion under Rule 60(b), even though plaintiff failed to specify the Rule of Civil Procedure under which he brought his motion.

[16] Judge Gottschall was also not convinced that failure to grant plaintiff's motion would affect his ability to prove his claim since plaintiff had filed a second lawsuit against the City in which he asserts "similar claims."

again failed to provide a transcript of the hearing in which the rulings were made. Indeed, she noted that despite Mr. Longo's promise to provide such a transcript (which was available), no copy was ever provided to the court. It is certainly fair to say that at least in this particular, this is indeed Mr. Longo's "standard practice." She went on to note the repeated admonitions against Mr. Longo for failure to provide transcripts in support of his motion. [#314 at 1, n.1]. Finally, she noted the "disingenuous[ness]" of his continued assertion that he "cannot fathom the details of a [privilege] log entry after it has been discussed *ad nauseam*," and she concluded that Sommerfield's waiver argument "misstates the record." *Id.* at 4-5.

## ANALYSIS
### A.
### The Law Of The Case Doctrine And the Prior Rejections Of Requests For The Information Being Sought

District courts enjoy extremely broad discretion in controlling discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir.2002); *Sommerfield*, 252 F.R.D. at 410; *Sommerfield v. City of Chicago*, 251 F.R.D. 353, 355 (N.D.Ill. 2008). Under Rules 26(c) and (d), Federal Rules of Civil Procedure, a court may limit the scope of discovery or control its sequence. *Crawford-Ed v. Britton*, 523 U.S. 574, 598 (1998). Seeking, as it does, the information Judge Filip and Judge Gottschall concluded Mr. Sommerfield was not entitled to, granting the current motion would be contrary to the law of the case doctrine and thus an abuse of discretion.

As explained in the May 7, 2007 Report and Recommendation and Memorandum Opinion and Order, which Judge Gottschall adopted and the objections to which she overruled:

> The City's brief suggests that the current motion is an attempt to have another go at the issues that have twice been decided. If the City is right-and to an extent it is-the endeavor is impermissible and is barred by the law of the case doctrine. The presumption against revisiting matters already decided is demanded by what Holmes liked to call "the shortness of life." Reflecting as it does interests in consistency,

15

finality, and the husbanding of judicial resources, among others, the doctrine applies even when a case is reassigned from one judge to another. In that context, the law of the case doctrine reflects the " 'rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one.' " *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir.2007). *Accord Crews & Associates, Inc. v. United States*, 458 F.3d 674, 677 (7th Cir.2006).

*Sommerfield*, 252 F.R.D. at 419. *See also HK Systems, Inc. v. Eaton Corp.*, 553 F.3d 1086 (7th Cir. 2009).[17]

Despite repeated rebuffs by three judicial officers, the plaintiff has continued to insist that he has yet to receive a ruling on his claimed entitlement to the broad-based discovery regarding discrimination, harassment and retaliation throughout the 25 Districts and 5 Bureaus of the Chicago Police Department, *by anyone against anyone,* for at least a seven-year period. Only a studied avoidance of the record could enable this argument to be made.

The plaintiff's April 25, 2007 "First Set of Interrogatories," sought, among other things, the identities of:

all persons who were charged with insubordination, failing to perform their work duties while at work, or involving the same type of conduct of the plaintiff which the defendant labeled as 'insubordination,' [and the identities of and the] position and duties of all accusers, [and required the City to] specify what discipline was issued, if any and why...if a person were not issued a suspension for insubordination, detail exactly why.

[#126, Exh. H, ¶23].[18]

This request was found to be overbroad. Nonetheless, on August 30, 2007, the plaintiff

---

[17] In *HK Systems*, the court said: "The doctrine of law of the case counsels against a judge's changing an earlier ruling that he made in the same case or that his predecessor as presiding judge had made. The doctrine has greater force in the second type of case-when there is a change of judges during the litigation and the new judge is asked to revisit the rulings of his predecessor." 553 F.3d at1088 (citations omitted).

[18] In addition, in his 64 paragraph request for production of documents, the plaintiff sought all documents, notes, and tapes relating to any complaint of harassment, discrimination and retaliation by any person from January 2000 to the present. [#126-11, Exh. I].

issued a five-page Rule 30(b)(6) Deposition Notice requiring production of a witness to testify about:

> [A]ll persons in the Chicago Police Department who were suspended from 1 January 2000 until the present . . . . [and] all persons in the Chicago Police Department from 1 January 2000 until the present who received similar charges as the plaintiff which led to the defendant disciplining the plaintiff including, but not limited to, 1) the incident occurring at the Wedgewood Nursing Home, 2) the plaintiff allegedly not notifying the dispatcher of his change in status and allegedly not making himself available for further assignment immediately after an assignment was completed and allegedly yelling at the supervisor, 3) the plaintiff allegedly removing the sheet over a homicidal victim and allegedly disturbing the evidence, 4) the plaintiff allegedly conducting personal business while at work. [#126, Exh. B at 4].

But changing the form in which impermissible information is sought to evade an unfavorable ruling does not make the information discoverable, for it is the underlying reality rather than the form or label that is controlling. *W.B. Worthen Co. ex. rel. Board of Commissioners v. Kavanaugh*, 295 U.S. 56, 62 (1935)((Cardozo, J.). "It would be strange, indeed, if parties could be allowed, under the protection of its forms, to defeat the whole objects and purpose of the law itself." *Welch v. Mandeville*, 14 U.S. 233, 236 (1816)(Story, J.). *See also Electric Bond and Security Company v. SEC*, 303 U.S. 419, 440 (1938)("It is the substance of what they do, and not the form in which they clothe their transactions, which must afford the test.").

By obdurately insisting on overbroad discovery in the face of repeated, adverse judicial rulings, the plaintiff's lawyer has improperly taken time away from the never-ending queue of cases that compete for limited judicial time. *See Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)(discovery not only imposes costs on the litigants but burdens on the judicial system when scarce judicial resources must be diverted from other cases to resolve discovery disputes). This is a significant problem that the Seventh Circuit has repeatedly underscored and to which the plaintiff

17

has significantly contributed through his insistence that there has been no prior ruling covering the information he persists in demanding. *See, e.g., Otto v. Variable Annuity Life Ins. Co.,* 134 F.3d 841, 854 (7th Cir.1998); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996). *Cf. Custom Vehicles, Inc. v. Forest River, Inc.,* 464 F.3d 725, 727 (7th Cir.2006) (Easterbrook, J.)(in chambers).

**B.**
**The Discovery Sought Is Impermissible Since It Is Not Directed To**
**Obtaining Information About Individuals "Similarly Situated" To Mr. Sommerfield**

**1.**

Even if we were to ignore the law of the case doctrine, the information being sought is not properly discoverable because it is not relevant. It is no answer to say, as does the plaintiff, that the plaintiff needs access to this information to show that similarly situated employees were treated more favorably than the plaintiff. This was the contention made from the beginning and found wanting. In any event, seeking discovery *of every complaint of discrimination by anyone in the Chicago Police Department and every suspension of any employee of the Chicago Police Department* in the last seven years, is manifestly overbroad since it is not directed to obtaining information about "similarly situated" individuals. Indeed, the inquiry as it relates to suspensions, is illogical since the end of the inquiry is not to obtain information that would allow the plaintiff to compare himself with those who were similarly punished, but rather with those who were treated more favorably or less harshly even though they were involved in conduct similar to that which resulted in the plaintiff's discipline.

The over-breadth that inheres in discovery directed outside the Eighth District is not cured by limiting the discipline to infractions similar to those allegedly committed by the plaintiff.

18

Suppose for example, that a person in the Fifteenth District in 2002 was not suspended for insubordination or failure to follow orders. Since a different decision-maker in that District would have authorized the more lenient action, the fact that the decision-maker in the Eighth District chose to treat the plaintiff more severely would not tend to show that Mr. Sommerfield was being punished because of his religion or national origin. That is, the officer in the Fifteenth District would not be "similarly situated" to the plaintiff. Moreover, the discovery as drafted does not even require that the suspensions or complaints involve individuals of the same religion or national origin as the plaintiff or that their job, rank, work history, disciplinary history, etc. be similar to the plaintiff's. Consequently, the discovery requests do not seek information about "similarly situated persons" as that concept has been consistently interpreted.

For example, in *Radu v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000), the court held that "[i]n determining whether two employees are similarly situated a court must look at all relevant factors . . . . [F]or example, . . . [when a] plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee . . . a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." This normally requires a showing that the employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*, at 618. In *Hill v. Stoughton Trailers, LLC*, 445 F.3d 949 (7th Cir. 2006), the court held that employees were not similarly situated where plaintiff's "evidence lack[ed] any information pertaining to the job duties of the comparators, the supervisor(s) involved in the comparators' discipline, and whether any of the comparators had job performance histories somewhat comparable to [plaintiff's]."

19

The principles in *Radu* and *Hill* have been repeated time and again by the Seventh Circuit. *See e.g., Caskey v. Colgate Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008); *Amrhein v. Healthcare Service Corp.*, 546 F.3d 854, 860 (7th Cir. 2008)("a similarly situated employee needs to be 'identical,' but the Plaintiff must show that the other employee 'dealt with the same supervisor, [was] subject to the same standards and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'").

The plaintiff's oceanic discovery requests cover every suspension or disciplinary action of any employee of any kind in the Chicago Police Department for a seven-year period. Such requests would impose on the City an undue burden, without an appropriate and proportionate gain to the fact finding process. It would require the City to review the files of not only of every one of the 13,000 police officers in the Chicago Police Department, but of those officers who retired over that extended period, as well as the thousands of non-police officers employed by the Police Department. And that review and ultimate production to the plaintiff would be required regardless of the employee's job, rank, duty station, disciplinary history, supervisor, or other factor which would have to be examined in order for the employee to be a proper comparator. *Cf., Ulreich v. Ameritech Cellular Communications, Inc.*, 1999 WL 160838, 6 (N.D.Ill.1999)("Vogt and Clark were not similarly situated because they were not in management positions and had no responsibilities for managing the processing of the reseller credit requests.")(Gottschall, J.).

To prove his claim of discrimination, plaintiff must show that similarly situated employees were treated more favorably than he. It is irrelevant whether employees who are not similarly situated were disciplined less harshly – or not at all – than the plaintiff. Care must be taken to be sure that the comparison is one between "'apples and apples' rather than one between 'apples and

oranges.'" *Sommerfield*, 254 F.R.D. at 336. The plaintiff has already been given extensive information through document requests, interrogatories, depositions, and Rule 30(b)(6) depositions about how police officers in the Eighth District who committed infractions like those claimed by the plaintiff were disciplined and how work assignments were made. The law requires no more.

The Supreme Court has cautioned that the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Failure to exercise that control results in enormous costs to the litigants and to the due administration of justice. *Cf. Bell Atlantic Corp. v. Twombly*, 530 U.S. 544 (2007); Frank Easterbrook, *Discovery as Abuse*, 69 B.U.L.Rev. 635 (1989).

Rule 26(b)(2)(C)(iii) empowers a court to limit the frequency or extent of discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit or that it is unreasonably cumulative or duplicative. The application of Rule 26(b)(2)(C)(iii) involves a highly discretionary determination based upon an assessment of a number of competing considerations. It is not unlike the discretionary balancing of harms involved in determining whether to grant injunctive relief, which, the Seventh Circuit has said, is "not mathematical in nature," but rather " 'is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations ....'" *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir.2001).

21

By any fair calculus, the discovery requests the plaintiff says must be answered are overbroad, cumulative, and duplicative, and the burden and expense that would be imposed on the City outweigh any likely benefit. Mr. Sommerfield has been provided with several years worth of complaints, if any, against the sergeant he claims was his oppressor in this case. He has had the virtually unlimited opportunity to depose not only that sergeant, but other officers in the Eighth District – including those who, on October 4th, he claimed were his oppressors (Tr. 63-65) – and he has taken 30(b)(6) depositions on every topic relevant to this case.

That discovery has encompassed all information relating to: claims of discrimination or retaliation by police officers in the Eighth District that are similar to that which the plaintiff contends he suffered; and all disciplinary decisions involving infractions by such officers similar to those alleged to have been committed by the plaintiff. He is entitled to no more. In addition to the cases cited *supra* at 18, *et seq.*, *see Balderston v. Fairbanks Morse Engine Div. of Coltect Industries*, 328 F.3d 309 (7th Cir. 2003)(plaintiff wanted company-wide personnel files on all who had been terminated, laid-off, or retired; district court properly limited discovery to the relevant corporate department, similarly situated employees, time period, and decisionmakers).

In an attempt to justify Department-wide discovery, plaintiff contends that discipline within the Chicago Police Department is centralized. [#104-2; #305]. There are two obvious flaws in the argument. First, the statement is unsupported, and unsupported statements, whether in oral argument, *In re: Payne*, 431 F.3d 1055, 1066 (7th Cir. 2005), or in briefs do not count. *See Woolard v. Woolard*, 547 F.3d 755 (7th Cir. 2008); *United States v. Stevens,* 500 F.3d 625, 628-629 (7th Cir. 2007); *IFC Credit Corp v. Aliano Brothers General Contractors, Inc.*,437 F.3d 606, 610-611 (7th Cir. 2006); *United States ex rel. Feingold v. AdminiStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir.

2003); *Campania Management Co., Inc. v. Rooks, Pitts & Poust,* 290 F.3d 843, 853 (7th Cir. 2002).
*Compare, Trading Technologies Intern., Inc. v. eSpeed, Inc.,* 2005 WL 1300778, *1 (N.D.Ill.
2005)(Moran, J.).

Second, the claim of centralization would seem demonstrably incorrect. There are some
13,000 police officers in the Chicago Police Department and thousands more performing support
functions throughout the 25 Districts and 5 Bureaus that comprise the Police Department – to say
nothing of the employees in the office of the Superintendent and Deputy Superintendent of police.
Requiring that every disciplinary decision be made by a single, centralized authority rather than by
the 25 District Commanders, would create insuperable administrative problems and limitless
administrative backlogs.

We know, for example, that questions relating to requests for compensatory leave by Chicago
Police Officers "are left up to each watch commander or shift supervisor" within each of the 25
Districts. *Heitmann v. City of Chicago,* 560 F.3d 642, 643 (7th Cir. 2009). Why disciplinary
decisions should also not fall within the authority of each District Commander is not explained by
the plaintiff. Nor does he attempt to say who the decision making authority is in the "centralized
hierarchy." If it is not the Commander of the District or the particular Watch Commander
supervising one of the four watches into which each work day is broken, is it the Area Deputy Chief?
Or is it the Deputy Superintendent of Patrol to whom they report? Or is it the Superintendent of
Police? Or is it some combination? Not surprisingly, the plaintiff offers no explanation. In short,
the claim of centralized disciplining on which the argument for the overbroad discovery rests cannot
be accepted.

The cases cited by the plaintiff in the instant motion do not begin to support his view of

23

discovery in this case. In *Saket v. American Airlines, Inc.*, 2003 U.S. Dist. LEXIS 2797, *7 (N.D. Ill. 2003) [#104 at 2], the court limited discovery to documents, including investigation and disciplinary records, of employees at O'Hare (excluding pilots and flight attendants) who worked with or reported to any of the individuals alleged to have discriminated against plaintiff, and who were investigated or disciplined for the same misconduct as Saket – falsifying records or violating the harassment policy. The court did not allow discovery of all American employees because it found that American employed some 11,000 workers during the relevant time period, and Saket had not demonstrated a need for information relating to employees who did not work with or report to the same individuals alleged to have discriminated against him.

In *Butta-Brinkman v. FCA International*, 164 F.R.D. 475 (N.D. Ill. 1995), *McIntyre v. Main Street*, 2000 U.S. Dist. LEXIS 19617 (N.D. Cal. 2000) and *Thornton v. Mercantile Stores Co.*, 180 F.R.D. 437 (M.D. Ala. 1998), more extended discovery was allowed to show that the employer's remedial actions were inadequate. In *Thornton*, it was the existence of centralized authority above and separate from the store managers to make employment decisions that prompted the court to allow discovery that extended beyond an individual store.

It is important to note that the court in *Thornton* began its analysis by looking at *Earley v. Champion Intern. Corp*, 907 F.2d 1077 (11th Cir. 1990), which held that "'in the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination-the employing unit or work unit.'" *Id.* at 1084. The court in *Earley* went on to say that, "where, as here, the employment decisions were made locally, discovery on intent may be limited to the employing unit." *Id.*

The plaintiff's string-citation of cases articulating the general and unassailable principle that

comparators need not be identically situated with the plaintiff does not dictate that the result here be in the plaintiff's favor. First, "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). *See also Daubert v. Merrell Dow*, 509 U.S. 579, 598 (1993)(Rehnquist, C.J., concurring in part and dissenting in part)("'general observations'" suffer from the common flaw that they are not applied to the specific matter and "therefore they tend to be not only general, but vague and abstract."); *IFC Credit Corp.*, 437 F.3d at 611("...one must always be wary about generalities in judicial opinions...."). Second, not a single case cited by the plaintiff remotely supports the proposition that in a discrimination or retaliation case there need be no similarity between the plaintiff and the comparator except for the infraction that gave rise to the punishment. Yet, that is the unarticulated premise on which the plaintiff's argument proceeds and which is essential to its success. *Ezell v. Potter*, 400 F.3d 1041, 1050 (7th Cir. 2005), *Lynn v. Deaconess Med. Ctr. West Campus*, 160 F.3d 484, 488 (8th Cir. 1998), and *Graham v. Long Island Railroad*, 230 F.3d 34, 40 (2d Cir. 2000) are consistent with the result in the instant case.

*Graham* held that the "all material respects" standard for being similarly situated requires a showing that the plaintiff's co-employees were subject to substantially the same performance evaluation and discipline standards and engaged in comparable conduct. The court also held that the district court was inflexible in its determination of what constituted "similarly situated" because it required that the employees be found to have performed the exact same misconduct. In *Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007), the court found the employee to be a sufficient comparator, because he held the same position as plaintiff, shared the same supervisor and the same ultimate decision-maker, had received past negative performance evaluations, and had engaged in the same misconduct as plaintiff.

None of these cases remotely advances the plaintiff's contentions here. In all those cases, the employees found to be "similarly situated" worked in the same department or unit as the plaintiff claiming discriminatory treatment. And, unlike *Humphries*, the discovery sought here would encompass anyone employed by the Police Department without regard to whether they were even a police officer, shared the same supervisor, shared the same ultimate decision-maker, or had any feature in common with Mr. Sommerfield, other than having committed "infractions" substantially similar to those alleged to have been committed by Mr. Sommerfield.

Nor does *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) support the plaintiff's extravagant theory of relevance and his overbroad demand that he be allowed to discover every act for which the Chicago Police Department issued a written reprimand or suspended an employee. [#104-2]. In *McDonald*, two white plaintiffs were fired for their participation in a cargo theft. An African American employee, who participated with them, was not fired. The plaintiffs sued, claiming they had been discriminated against on the basis of race. The district court dismissed the complaint on the pleadings, and the court of appeals affirmed. The Supreme Court reversed and remanded. The Court concluded that fairly read, the complaint asserted that the reason for the disparity in treatment between the plaintiffs and the non-fired African American participant in the theft was race. That, the Court said, was enough as a pleading matter to state a claim under Title VII.

Nothing in *McDonald* suggests, let alone holds, that a plaintiff is entitled to conduct wide-ranging discovery the object of which will be a comparison between individuals who worked in different police districts, at different times, under the supervision of different Commanders, Watch Commanders, Captains, Lieutenants and Sergeants, and who may have shared no other features in common other than their having engaged in the same "misconduct." For example, had the complaint

in *McDonald* charged that a white employee in California 1970 had only been suspended for participation in a theft, while an African American employee in Chicago had been fired in 1976 for participation in a theft, there can be no doubt that the result of the case would have been different. Recently, the Seventh Circuit concluded that employees who had been terminated for their participation in a theft and for having lied about it, were not similarly situated to a coworker who had confessed his involvement in the theft and was allowed to keep his job. *Antonetti v. Abbott Laboratories*, _F.3d_, 2009 WL 1053155 (7th Cir. 2009). While *Antonetti*, like *McDonald*, is not *per se* a discovery case, it teaches that "substantial similarity" does not exist merely because the plaintiff and the comparators were involved in the same conduct.

The discovery rules are not a ticket, Judge Moran has wisely observed, to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055 at *2 (N.D.Ill. 1994). "Parties are entitled to a reasonable opportunity to investigate the facts -- and no more." *Id.*

## CONCLUSION

The Plaintiff's Motion to Compel Certain Discovery [#287] is denied. The plaintiff has at least twice been told that discovery directed to national origin discrimination outside the Eighth District will not be permitted. He has ignored those rulings and persisted as though they were never made. That obduracy has adversely affected the efficiency with which cases of other litigants are handled. But even as an initial matter, it is obvious that discrimination in one of the other 24 Districts -- or in one of the five Bureaus, which are also part of the Police Department -- is not relevant. Officers in the other 24 Districts were subject to the imposition of discipline by decision-makers other than those who, it is alleged, victimized Mr. Sommerfield while he was a police officer

in the Eighth District. There is no proof – indeed the available proof and common sense refute the claim – that discipline emanated from a centralized authority. Since a similarly situated employee must be comparable in all material respects, *Tyson v. Gannett Co., Inc.*, 538 F.3d 781, 783 (7th Cir. 2008); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002), victims of discrimination in other Districts are not "similarly situated," and because they are not, discovery directed towards what occurred in those Districts would be irrelevant and thus should not be allowed.

In conclusion, it is important to note the extraordinary latitude the plaintiff has had in discovery. Over the City's consistent and vocal objections, he has been allowed to serve extensive requests to admit, extensive interrogatories directed to every facet of this case, extensive Rule 30(b)(6) depositions notices for witnesses knowledgeable about all manner of topics including, discrimination within the Eighth District over a seven-year period and the Chicago Police Department's training policies regarding the kind of harassment and discrimination alleged to have occurred in this case. He has had virtually unlimited opportunities to depose all relevant witnesses, including his fellow officers in the Eighth District, the plaintiff's superiors in that District, and the several police officers who, it is claimed, victimized him. (Tr. at 63). Finally, the plaintiff has been able to discover information that: refers, reflects or relates to non-Jewish police officers in the Eighth District who may have been disciplined less "harshly" than he for infractions or conduct similar to his. (To the extent this comparative information has not already been provided, it must be). He has, in short, received all to which the law entitles him.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE:5/8/09

28