```
              UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS (Chicago)


DETLEF SOMMERFIELD,            )
                               )
            Plaintiff,         )
                               )      Docket No. 06-CV-3132
       v.                      )
                               )
CITY OF CHICAGO,               )      Chicago, Illinois
                               )      September 17, 2007
            Defendant.         )



                       HEARING ON MOTIONS
                          BEFORE THE
            HONORABLE MAGISTRATE JUDGE JEFFREY COLE


APPEARANCES:

For Plaintiff:            JOSEPH A. LONGO
                          Attorney at Law
                          2100 West Haven
                          Mt. Prospect, IL  60056


For Defendant:            JOSEPH FRANCIS GRAHAM
                          MEERA WERTH
                          CITY OF CHICAGO, LAW DEPARTMENT
                          30 North LaSalle Street
                          Suite 1020
                          Chicago, IL  60602



     PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:           Riki Schatell
                          6033 North Sheridan Road, 28-K
                          Chicago, Illinois  60660
                          773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

2

1 THE CLERK: 06-C-3132, Sommerfield vs. City of
2 Chicago.
3 THE COURT: Wait. Before we do this, Mr. Longo, hold
4 on. Let me take care of these folks. We'll just set a date
5 for them. I don't want them to just sit here.
6 MR. LONGO: No, I don't either.
7 THE COURT: Just give me two seconds, okay? Recall
8 that case.
9 (Interval while the Court heard unrelated cases.)
10 THE CLERK: 06-C-3132, Sommerfield vs. City of
11 Chicago.
12 MR. LONGO: Good morning to you, your Honor, Joe
13 Longo for the plaintiff.
14 MR. GRAHAM: Good morning, Judge, Joe Graham on
15 behalf of defendant, City of Chicago.
16 MS. WERTH: Meera Werth on behalf of the City as
17 well, your Honor.
18 THE COURT: Good morning, everybody. Well, what do
19 you have to say? I've read the City's motion and I've read
20 your response so tell me what you have to say.
21 MR. LONGO: Your Honor, as you know --
22 THE COURT: It's the City's Motion to Compel and you
23 don't want to provide discovery and I've read both things and
24 there's not a reply, and it seems pretty straightforward and I
25 want to hear what you have to say.

1        MR. LONGO: Sure. Well, your Honor knows our
2 procedural arguments have -- There's no strict compliance, as
3 your Honor requires. There's just --
4        THE COURT: Well, let me ask you this. It struck me
5 sort of as curious that you would rely on a Local Rule when
6 your response violates a Local Rule. So free advice is the
7 Local Rules, and there's a reason for them. The Local Rules
8 require not just tabs but protruding tabs and the reason is
9 obvious: If you want somebody to read this stuff and people go
10 back and forth, it takes forever to re-find things. So you
11 didn't comply with the Local Rule. You say they didn't and one
12 is almost inclined to say it's a wash but there's a more
13 fundamental reason.
14        I wrote an opinion called Fingal (phonetic) vs. The
15 City of Chicago -- Don't write this down, this is a waste of
16 time -- Fingal vs. The City of Chicago in which I concluded
17 that I had discretion over the document's utility to do away
18 with the Rule 37 conference. And I was thrilled to see that
19 Judge Filip, relying on that case and a case called Jackson
20 again vs. the City of Chicago, you will find this at 220, it's
21 either 2 or -- It looks like 2224052 Westlaw, July 31st, citing
22 that case I came to the same conclusion and that is the
23 document's utility is unavailable doctrine in cases like this
24 and judges, of course, have discretion not to follow the Local
25 Rules, and I'm inclined to do away with the meet-and-confer

```
 1  requirement because it strikes me in light of your history --
 2  the history of this situation -- it's an exercise in futility.
 3          MR. GRAHAM:  And it is, and not to interrupt you,
 4  your Honor, we in fact, and Mr. Longo didn't mention this, we
 5  did have a Rule 37 conference on Friday afternoon.
 6          THE COURT:  Then I'll adjust my assessment of
 7  futility --
 8          MR. LONGO:  I'll address the substance --
 9          THE COURT:  -- was only partly right because you at
10  least had the conference, but I think my ultimate assessment is
11  even -- I assume you didn't get anywhere or you wouldn't be
12  here -- is accurate, and so let's talk about the specifics.
13          MR. LONGO:  Sure, your Honor, let's talk about --
14          THE COURT:  Did you instruct or did somebody instruct
15  this fellow not to answer questions on relevancy grounds in
16  deposition?
17          MR. LONGO:  No.
18          MR. GRAHAM:  Your Honor, the only objection that was
19  raised was attorney-client privilege.
20          THE COURT:  And that went to the questions of when
21  did you get him and how did you get him and when did you hire
22  him?
23          MR. GRAHAM:  Yes.
24          MR. LONGO:  Does your Honor want me to respond to the
25  other issues first as far as the discovery --
```

```
 1              THE COURT:   Pick whatever ones you want.
 2              MR. LONGO:   Okay.
 3              THE COURT:   In whatever order you want.
 4              MR. LONGO:   Your Honor, --
 5              THE COURT:   The documents strike me as -- Well, it's
 6   all easy, but I think the documents are very straightforward.
 7              MR. LONGO:   Well, your Honor, if I -- I -- Quite
 8   frankly, I don't quite understand the nature of the motion and
 9   I'll tell you why if I could.
10              THE COURT:   And the nature of the motion is they want
11   what they want that you won't give them.
12              MR. LONGO:   Well, that's why I'm saying that because
13   if you look at my correspondences, all three of them, we
14   indicate that we will be (inaudible).
15              THE COURT:   But you don't have them.  You haven't.
16   You say you will but you haven't and so here we are.
17              MR. LONGO:   Well, yes we have, actually.
18              MR. GRAHAM:  After we filed the motion to compel,
19   your Honor, he did provide us with some of the documents and
20   then he provided us with additional documents today.
21              MR. LONGO:   (Inaudible) more --
22              THE COURT:   Well then the motion may be moot but it
23   certainly wasn't moot at the time he filed it.
24              MR. LONGO:   No, actually --
25              THE COURT:   He filed a motion.  He filed a motion
```

```
 1  because you refused to give him things they wanted.
 2           MR. LONGO:   Well, your Honor --
 3           THE COURT:   And you have to take --
 4           MR. LONGO:   Oh, I'm sorry.
 5           THE COURT:   You have to take turns.  And you did so
 6  on the grounds of relevancy.  But now you've produced the
 7  things and you say you don't understand the nature of the
 8  motion.  That strikes me as really sort of --
 9           MR. LONGO:   Your Honor, --
10           THE COURT:   -- deceptive.
11           MR. LONGO:   Could I specify what I meant?
12           THE COURT:   No, it's not important what you meant.
13  Did you give them the stuff?
14           MR. GRAHAM:  Not some of it.
15           MR. LONGO:   Yes, I did.
16           MR. GRAHAM:  Not the medals.
17           THE COURT:   Let's talk about --
18           MR. LONGO:   (Inaudible, multiple voices) --
19           THE COURT:   Let's talk about what it is you want so
20  we don't waste everybody's time.
21           MR. GRAHAM:  Me?  I believe --
22           THE COURT:   What's outstanding in terms of things or
23  documents?
24           MR. GRAHAM:  Things or documents.  With respect to
25  documents, at this point I mean I'll be questioning him further
```

```
 1   at his deposition because I have four more hours to depose him.
 2    I believe at this point everything that he has identified at
 3   his deposition document-wise has been produced.  With respect
 4   to the medals --
 5            THE COURT:  Let me stop you.  So then the motion to
 6   compel the production of the named documents in the motion is
 7   denied as moot since the documents have been produced
 8   subsequent to the filing of the motion.
 9            MR. GRAHAM:  Well, and if I may say one thing, your
10   Honor, that is to the extent that he identifies -- I mean you
11   may recall when we were in here for --
12            THE COURT:  I do.
13            MR. GRAHAM:  -- many hours.
14            THE COURT:  I do.
15            MR. GRAHAM:  And I had mentioned to you that
16   plaintiff's counsel had only produced 65 pages of documents and
17   he stated to you well, that's all we have.  Well, that was not
18   an accurate statement so I'm concerned at his deposition
19   because he has, on more than one occasion, identified documents
20   at his deposition that are responsive to the City's production
21   requests, so I would like to at least -- I mean obviously if he
22   identifies additional documents that I don't know about at this
23   point, I mean would like to -- I mean at least -- I mean he'd
24   be ordered to produce those as well.
25            THE COURT:  Well, I mean there's outstanding document
```

8

```
 1   requests.  If he's obligated to produce things, he's obligated
 2   to supplement production.  You don't need me to tell him to do
 3   it.
 4              MR. GRAHAM:  Okay.
 5              THE COURT:  The Federal Rules of Civil Procedure
 6   require that it be done.
 7              MR. GRAHAM:  Well, I --
 8              THE COURT:  And if it isn't being done come in and
 9   ask for sanctions.  I mean I know you folks almost never do and
10   I understand why.  I can only do so much.
11              MR. GRAHAM:  With respect to the medals and the
12   (inaudible) we've requested, he has -- The only argument he
13   raises in his response --
14              THE COURT:  Yes.  I just want to know what's
15   outstanding.  I'm not interested in the argument.  I know what
16   the argument --
17              MR. GRAHAM:  The medals, medallions, ribbons, the
18   commendations and the like.
19              THE COURT:  Those things are ordered produced.  And
20   you will be the custodian.  If you lose them you're
21   responsible.
22              MR. GRAHAM:  Okay.
23              MR. LONGO:  Can't we just make photocopies of them
24   and then --
25              THE COURT:  There is a reason why the City wants the
```

1   originals and I'm not going to ask them to reveal their
2   strategy or their reasoning. I think they're entitled to see
3   the originals.
4           Now what do you want to do in terms of the City
5   keeping these? They either have value to this gentleman or
6   they don't, (inaudible) tell you. I don't know that and I
7   don't think his lawyer has to say. But they're his and he's
8   entitled to them back and I want to be sure there's a mechanism
9   so that these things aren't lost in the bowels of the City
10  somewhere.
11          MR. GRAHAM: The City does have a safe, your Honor,
12  at the Law Department and I believe we'll keep them in there.
13          THE COURT: Okay, then I'm telling you the medals,
14  the non-documentary materials that have been requested are
15  ordered to be produced not later than Friday, and the City is
16  ordered to keep them in its safe for safekeeping.
17          MR. LONGO: Your Honor, the plaintiff is away on a
18  wake and a funeral, so he's asking (inaudible).
19          THE COURT: What do you mean he's away on a wake and
20  a funeral? What does that mean? Where is he?
21          MR. LONGO: I don't know where he is. But I do know
22  he's out of town (inaudible). When he comes back I'll get them
23  from him and I'll produce them to you.
24          THE COURT: Well, is there -- Do you have a listing
25  -- a list of them? Do you have a description of them? Do you

1  know how many --
2          MR. GRAHAM:  Well, they're identified to some -- with
3  some particularity in the affidavit.
4          THE COURT:  Well, but they're identified in kind of a
5  generalized way as swastikas and things like that.
6          MR. GRAHAM:  I was told they were medals with
7  swastikas on them.  That's how I know.  I have not seen them.
8          THE COURT:  It is my very late suggestion that these
9  things ought not disappear.                              (Pause.)
10         I'm just telling you.  They're not to disappear.
11 They're not now be in a position where your client comes back
12 and suddenly says oh, I don't know where they are.  I don't
13 know what you're talking about, I can't find them, I misplaced
14 them, I lost them in a river when I was going to the wake.
15 Just tell him they'd better be produced.  You need to -- I'm
16 ordering you to produce them by Friday.
17         People don't go -- You don't know -- I want to know
18 where -- I think the officer should inform the City where he
19 is, where he's been, when he left and when he returns.  And
20 that's part of the order, (inaudible).  Don't make any
21 representations on behalf of your client that may be accurate,
22 they may not be.  But given --
23         MR. LONGO:  I'm an officer of the court.
24         THE COURT:  No, no, I'm not questioning you.
25         MR. LONGO:  Okay.

```
 1              THE COURT:  This is why there's a hearsay rule.
 2              MR. LONGO:  All right.
 3              THE COURT:  All you can report to me accurately is
 4  what you were told.  You can't --
 5              MR. LONGO:  (Inaudible, multiple voices) -- the
 6  truth.
 7              THE COURT:  And that's exactly right.  So I'm not
 8  questioning you at all.
 9              MR. LONGO:  That's what I do.
10              THE COURT:  Well, and that's what you're doing when I
11  accept you and Ms. Werth and Mr. Graham accept your word.  It
12  isn't your word that counts.
13              MR. LONGO:  Okay.
14              THE COURT:  It's your client's.  Otherwise we can
15  finish the deposition today and you'll testify.
16              MR. LONGO:  I (inaudible).  Just for the record, your
17  Honor, I do want to say that on August 31st we did send a
18  correspondence indicating we would produce the documents as
19  soon as we got them.  And then on August 5th I sent another
20  letter out saying that we are, as far as the Fraternal Order
21  of, Fraternal Order of Book Manual of Police --
22              THE COURT:  That long 150 or 60-page manual, is it?
23              MR. LONGO:  I'm sorry?
24              THE COURT:  The long manual, the thick manual?
25              MR. LONGO:  Yes.  I indicated again that we were
```

12

```
 1   going to produce it and asked them if they wanted a copy of it
 2   and they just didn't -- (inaudible, multiple voices) --
 3               THE COURT:  I know, and you say they didn't respond.
 4               MR. GRAHAM:  I did respond, your Honor.  I called him
 5   and -- (inaudible, multiple voices) --
 6               MR. LONGO:  And I sent another letter on September
 7   10th saying that we have this, do you want a copy of it?  I
 8   imagine you have a copy but just to give you --
 9               MR. GRAHAM:  (Inaudible, multiple voices) --
10               THE COURT:  But look, it starts in August and
11   continues on to September.  There just isn't any reason to have
12   disputes over nothing.
13               MR. LONGO:  There were no disputes.  That's why I'm
14   saying we were waiting for a response.
15               THE COURT:  But Mr. Graham doesn't strike me as a
16   particularly (inaudible) nasty pugnacious adversarial sort of
17   guy, and Ms. Werth is anything but those things.  But my
18   goodness, they're entitled after a reasonable period of time to
19   say enough is enough.  I think people who sit around on their
20   hands and do nothing trying to be good guys while their
21   opponents dwadle [sic] or dawdle, whatever the right word is,
22   are foolish.  People should do things.  Don't wait around.
23   They're not waiting so here we are.  This is simplicity itself:
24    Produce the information.
25               You've already produced the documents.  If it turns
```

```
 1   out that your client continually comes up with more and more
 2   documents, you know, I wouldn't be surprised that it's just the
 3   nature of discovery.  Nobody gets everything the first time
 4   around.  Few people do.  So it is what it is.
 5           But just be sure at some point this stuff is
 6   produced, that there are proper supplementations.  I mean it
 7   will be a terrible thing to lose a case because of fooling
 8   around in discovery.  It's just a dumb thing.  And I know it's
 9   not you.  But have a heart-to-heart talk with your client.
10           It's not going to work.  I'm not going to run out of
11   patience.  And I have nothing but time.  And I really don't
12   like this because it was done to me too many times as a lawyer.
13    And so I understand the significance.
14           MR. GRAHAM:  Your Honor?
15           THE COURT:  Do what you need to do.
16           MR. GRAHAM:  May I speak to one issue that during the
17   plaintiff's deposition he had stated with respect to -- with
18   the exception of the FOP book and all of his handwritten notes
19   he had regarding the allegations of the complaint, he had -- He
20   testified at his deposition that he had produced those to his
21   attorney.
22           THE COURT:  Right.  I saw.
23           MR. GRAHAM:  So --
24           THE COURT:  Where are they?
25           MR. GRAHAM:  I mean he has subsequently --
```

```
 1   (inaudible, multiple voices).
 2           THE COURT:  Did you get them?
 3           MR. LONGO:  I've already produced them.
 4           MR. GRAHAM:  After the motion to compel was filed he
 5   did produce them.
 6           MR. LONGO:  Well, I'm going to, just for the record
 7   because he's mentioned that twice, before the motion was filed
 8   we did produce these, on the same day several hours before --
 9           THE COURT:  Let me ask you how long a period of time
10   elapsed between the time your answers or the production itself
11   was due and when you finally did it?
12           MR. LONGO:  I believe, like I said, on August 31st I
13   sent out a letter saying as soon as I get the material I will
14   turn them over.  We did turn them over.  I sent another letter
15   on September 5th saying I got this manual or I understand the
16   manual is a regular manual distributed to thousands of
17   officers; do you want it?  It's 160 pages.  Let me know if you
18   do.  I will produce a copy.  Never got an answer.  Sent another
19   letter on September 10th saying listen, I have this manual or,
20   you know, do you want it?  Let me know and we will produce it.
21           MR. GRAHAM:  Seven months, your Honor.
22           MR. LONGO:  Thereafter, we had produced --
23   (inaudible, multiple voices) --
24           THE COURT:  Seven months is apparently the answer.
25   Well, I think that seven months is too long a period of time.
```

```
 1   And I don't think there's a -- I think if you were on the
 2   receiving end of this, you would think seven months is, is too
 3   long by about six months.  So I just think you're -- you're
 4   lucky in that you have decent and nice adversaries who aren't
 5   seeking sanctions because I'd award sanctions.
 6            The great operative principle of Rule 37, as the
 7   current Chief Judge of this Court, of the Seventh Circuit has
 8   said, is that loser pays, quoting Wright & Miller.  But
 9   nobody's asking for sanctions so you're in a -- I'm just
10   telling you, produce the stuff.
11            MR. LONGO:  I have, your Honor.
12            THE COURT:  And I'm also suggesting to you that there
13   had better not be -- That there will be no more seven-month
14   delays and I have the power to invoke sanctions on my own.  I
15   don't have to wait for a request from somebody, and that's what
16   I'm going to do.
17            MR. GRAHAM:  Your Honor, --
18            THE COURT:  If there's a repeat of this.  I'm just
19   telling you right now.
20            MR. GRAHAM:  (Inaudible - multiple voices.)
21            THE COURT:  Yes?
22            MS. WERTH:  Your Honor, may I clarify on the Court's
23   ruling on the ordering plaintiff to produce the medallions and
24   such?
25            THE COURT:  I'm ordering you to produce by Friday.
```

16

1  Now if the guy is not here, Ms. Werth, obviously you're going
2  to have to go along with that but there's going to be a written
3  report filed or do it in a letter.
4          MR. LONGO:  Sure.
5          THE COURT:  But I want the City to know where he is,
6  where he was, where he stayed.  I want them to be in a
7  position, if they choose, to be able to examine him in his
8  deposition about -- based on -- If, in fact, the materials are
9  produced on Friday then it's all academic.  I'm only doing this
10 in case they're not produced on Friday and then they are to be
11 produced not later than Wednesday, a week from this Wednesday.
12   But you're going to have to prove to the City that he was
13 really away and if there's been misrepresentations made, the
14 City will come back and I will do what I need to do.
15         MR. GRAHAM:  Your Honor, the only other outstanding
16 issue on the motion at this point is plaintiff --
17         THE COURT:  Questions at the deposition.
18         MR. GRAHAM:  Right.
19         THE COURT:  Right.
20         MR. GRAHAM:  And I read his response and --
21         THE COURT:  Let me hear the question.  I mean I read
22 this.  I don't think there's anything more to say.  This is no
23 more covered by the attorney-client privilege than asking the
24 man his name.
25         MR. LONGO:  Your Honor, our argument is it's beyond

1 the scope of discovery and we cite cases to that effect.

2     THE COURT: No, you cite cases, one of them is from
3 1953, which is -- I mean I almost gasped when I read that.
4 What you do -- And you guys shouldn't laugh, Ms. Werth, you
5 could update your --

6     MS. WERTH: I'm sorry, your Honor, I'm --

7     THE COURT: No, no, no, there was a certain comedic
8 quality to it. But I read your stuff and you're citing cases
9 that are decades old and that -- Where there's very, very
10 current and significant Court of Appeals cases, you're only
11 using canned briefs and I'm saying you could upgrade your
12 stuff, too.

13     You cite cases for general propositions. As Justice
14 Holmes said, general propositions do not decide concrete cases.

15     Things are covered by the attorney-client privilege
16 that involve confidential communications seeking or the giving
17 of legal advice. It doesn't involve the dates on which
18 somebody was hired. It doesn't involve how did you get to Mr.
19 Smith? Oh, my girlfriend at the beauty shop told me.

20     Now once you get to Mr. Smith's office, did you call
21 Mr. Smith and make an appointment? Yes, I did. When did you
22 do it? None of that is privileged. Now once you get to Mr.
23 Smith's office and the client is talking to Mr. Smith about the
24 case and there's an exchange of confidential communications,
25 well, that's all privileged. The City is not trying to get --

1  I don't know what the relevance of this is.  But there must be
2  a reason and I'm not going to have you folks fighting and
3  taking up more time to argue about relevance than simply to
4  have him answer a question that would take a millisecond.
5           There's basically three or four questions.  The
6  questions that were asked at the depositions I am ordering the
7  plaintiff to answer at his resumed deposition.  They are not
8  covered by the attorney-client privilege.
9           MR. GRAHAM:  Your Honor, can the (inaudible) order
10 also reflect that he is to answer other follow-up questions
11 that do not invoke the attorney-client privilege?
12          THE COURT:  Well, listen, I can't tell that.
13          MR. GRAHAM:  Well --
14          THE COURT:  You -- What you call a follow-up question
15 may be, the follow-up question would be oh, you got to Mr.
16 Smith's office; tell me what you talked about.  That is indeed
17 a follow-up question but it doesn't mean that it's outside of
18 the scope of the privilege.
19          MR. GRAHAM:  (Inaudible) your Honor.
20          THE COURT:  I'm not going to order -- I'm not going
21 to presume to know what you're going to ask.  In light of this
22 ruling, I think you should govern yourself accordingly and
23 here's what I'm telling you and I think, Mr. Graham, I told you
24 this when you were here the last time but maybe not.  If you
25 have difficulties at the deposition pick up the phone and call

```
 1  me and we'll deal with them on the spot.
 2          MR. GRAHAM:  Okay.
 3          THE COURT:  And so -- And you should not feel
 4  hesitant to raise the attorney-client privilege if you think
 5  it's appropriate.  I'm just saying to you do it in a judicious
 6  and proper way.  I mean everything that involves an attorney
 7  isn't protected by the attorney-client privilege.  You could be
 8  with your lawyer and having a cocktail conversation and there
 9  could be six people there.  You could be having a conversation
10  in your lawyer's office and your client's girlfriend is there.
11   It's not privileged.  There's all sorts of reasons why
12  something may not be privileged.  All I've read is things that
13  are clearly not privileged.
14          You know, if there's a problem and you want to raise
15  the privilege call me and we'll do it on a question-by-question
16  basis.
17          I'm going to grant the City's -- The City's motion is
18  granted in part and denied in part on the grounds of mootness.
19          MR. GRAHAM:  Okay.
20          THE COURT:  And the medals will be produced within
21  five -- (inaudible) I don't know the (inaudible).  You know
22  what the ruling is.  This is pretty straightforward stuff.
23          MR. LONGO:  I do.
24          THE COURT:  Thanks, everybody.
25          MR. GRAHAM:  Thank you, Judge.
```

```
1            THE COURT:  Okay.
2            MS. WERTH:  Thank you, your Honor.  Always a pleasure
3   to (inaudible).
4                       (Hearing adjourned.)


       I, RIKI SCHATELL, certify that the foregoing is a
   correct transcript from the record of proceedings in the
   above-entitled matter.

   /s/ Riki Schatell                          April 29, 2009
                                              Date
```