UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)


DETLEF SOMMERFIELD,           )
                              )
            Plaintiff,        )
                              )     Docket No. 06-CV-3132
        v.                    )
                              )
CITY OF CHICAGO,              )     Chicago, Illinois
                              )     September 28, 2007
            Defendant.        )



HEARING ON MOTIONS
BEFORE THE
HONORABLE MAGISTRATE JUDGE JEFFREY COLE


APPEARANCES:

For Plaintiff:            JOSEPH A. LONGO
                         Attorney at Law
                         2100 West Haven
                         Mt. Prospect, IL  60056


For Defendant:           JOSEPH FRANCIS GRAHAM
                         CITY OF CHICAGO, LAW DEPARTMENT
                         30 North LaSalle Street
                         Suite 1020
                         Chicago, IL  60602



PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:          Riki Schatell
                         6033 North Sheridan Road, 28-K
                         Chicago, Illinois  60660
                         773/728-7281


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1            THE CLERK:  06-C-3132, Sommerfield vs. The City of

2    Chicago.

3            MR. LONGO:  Good morning to you, Judge, Joe Longo for

4    Mr. Sommerfield.

5            THE COURT:  Good morning.

6            MR. GRAHAM:  Good morning, Judge, Joe Graham.

7            THE COURT:  Good morning, Mr. Graham.

8            MR. GRAHAM:  And Melissa Henry on behalf of

9    defendant, City of Chicago.

10           THE COURT:  Good morning.

11           MS. HENRY:  Good morning.

12           THE COURT:  What's the problem, Mr. Longo?

13           MR. LONGO:  Your Honor, we were before you on --

14           THE COURT:  You don't need to repeat anything.  I

15   know exactly what the background of the case is.

16           MR. LONGO:  Okay.

17           THE COURT:  What's the problem with --

18           MR. LONGO:  There is no problem.

19           THE COURT:  -- the reply?  Let me finish what I'm

20   saying.

21           MR. LONGO:  Oh.

22           THE COURT:  What's the problem?  So what you're

23   telling me is these folks just filed a frivolous motion.

24           MR. LONGO:  Well, if I can explain that might help,

25   your Honor.

1          THE COURT:  You haven't complied with the order, have

2    you?

3          MR. LONGO:  Yes, we have.  We have submitted the

4    ribbons and medals on the 26th, Wednesday.  Your Honor had

5    indicated if we could not produce them by Friday, the 21st, we

6    could produce them by Wednesday, the 26th, with a letter

7    explaining the plaintiff's whereabouts.  On the 21st, Friday, I

8    explained or I told defendant that we would not be able to

9    produce them at that time but we would produce them by what the

10   Court stated on Wednesday with the letter.  Come Wednesday the

11   26th --

12         THE COURT:  That's what I said.  I said if he isn't

13   back.

14         MR. LONGO:  Right.  And he was not back.  So -- And I

15   told that to the defendant, so --

16         THE COURT:  Not according to what they say, Mr.

17   Longo.

18         MR. LONGO:  I'm telling you what transpired on

19   Friday.  I told them that.

20         THE COURT:  You're telling me your version of what

21   transpired.

22         MR. LONGO:  I'm sorry?

23         THE COURT:  You're telling me your version of what

24   transpired.

25         MR. LONGO:  Well, your Honor is asking.  And I

4

1    responded.  And we produced the medals --

2              THE COURT:  Mr. Graham, where do we stand with this?

3              MR. GRAHAM:  Where do we stand?  I --

4              THE COURT:  Yes, what's the status?  You filed a

5    motion.

6              MR. GRAHAM:  Okay.

7              THE COURT:  Have things been produced?  Is there

8    compliance or is there not?

9              MR. GRAHAM:  There is partial compliance, your Honor,

10   but in the process of Mr. Longo responding, providing a note

11   explaining the whereabouts, there are misrepresentations in

12   that.  And I -- I have a little statement I'd like to make if I

13   could.

14             THE COURT:  Well, I'll tell you what.  You decide

15   what you -- I'll hear you today.

16             MR. GRAHAM:  Okay.

17             THE COURT:  You decide what you want to do about

18   this.

19             MR. GRAHAM:  I want to move to dismiss and I can

20   explain.  I have some documentation here explaining.  I mean

21   just repeated misrepresentations, your Honor.  And enough is

22   enough.  And --

23             THE COURT:  Well, I don't think -- I think the --

24   Yes, go ahead.

25             MR. GRAHAM:  All right.  First of all, can I have you

1    ask plaintiff's counsel to identify who died and where the

2    funeral was held?

3            THE COURT:  Okay.  What I had instructed, Mr. Longo,

4    you to do was to provide a comprehensive letter that would

5    confirm the validity of the representations that you made.

6    You, of course, have no knowledge, I assume.  You're simply, I

7    think we laughed about this, you're a conduit for information.

8     I think I said that's why the hearsay rules exist.  It's a

9    question of whether your client is playing fast and loose with

10   you and everybody else.  And so what I said was provide a

11   comprehensive letter that set forth where he was, the dates, et

12   cetera, so that somebody would be in a position to know if

13   discovery couldn't be complied with, that there was a

14   legitimate reason for it.

15           Now either he provided a letter that's truthful, or

16   he provided a letter that's not truthful.  I don't know the

17   answer.

18           MR. GRAHAM:  He provided two letters, one of which

19   clearly is untruthful.

20           THE COURT:  Well, I know, but you say that, that

21   isn't -- How does one know that?  How do I know that?

22           MR. GRAHAM:  Because this is one letter from Mr.

23   Longo signed by him.  This is a second letter from Mr. Longo

24   which contradicts his first letter.

25           THE COURT:  Okay, so we both --

1         MR. GRAHAM:  Can I provide those to you?

2         THE COURT:  Sure.  Both, you say, cannot be true.

3         MR. GRAHAM:  Well, yes.  They are --

4         THE COURT:  Diametrically opposed?

5         MR. GRAHAM:  Well, I would have said contradictory

6    but I think both are true.

7         THE COURT:  Well. . .

8         MR. GRAHAM:  And again, you're --

9         THE COURT:  And he signed -- I guess I can't see

10   this.  Who is this -- Whose handwriting is this?

11        MR. GRAHAM:  This is Mr. Longo's.

12        MR. LONGO:  That's my handwriting.

13        MR. GRAHAM:  There's the original.

14        THE COURT:  Well, that's not what I asked when I told

15   you to have -- All right, go ahead.  Never mind.  From

16   September 16th, 2007 until late on the 23rd of September Mr.

17   Sommerfield was out of town in Florida.  That isn't what I told

18   you to do, Mr. Longo.

19        MR. LONGO:  I know.  That's why (inaudible) is it's a

20   quick letter.  It was a handwritten thing at a deposition.  I

21   said a more formal letter would follow and the more formal

22   letter has the details of where --

23        THE COURT:  Just a quick note written at a deposition

24   and then there's something below that, all of which is crossed

25   out.

```
 1              MR. LONGO:  Correct.
 2              MR. GRAHAM:  Ms. Werth was at this deposition and she
 3    told me to say that this was presented by agreement of the
 4    parties or something along those lines, and she said no, that's
 5    not true.  So that was struck, is what I was told.
 6              MR. LONGO:  So I struck that out.
 7              THE COURT:  So here's another letter dated September
 8    27th when you obviously had time to think about what you wanted
 9    to say.  So let me look at this.                    (Pause.)
10              It's not what I told you to do.
11              MR. LONGO:  Okay, it was my understanding of --
12              THE COURT:  Well, you couldn't possibly have had an
13    understanding.  What I told you to do was to say with
14    specificity where he was, where he stayed.  I wanted the names
15    and the places.  If he stayed at the Holiday Inn at such-and-
16    such an address, that's what I wanted in there.
17              MR. GRAHAM:  Oh, you want a --
18              THE COURT:  How does one ever check unless one has
19    detailed information?  These folks don't trust your side of the
20    situation.  I think that's an understatement.  I don't know
21    where the truth lies.  All I wanted to be sure of was that
22    there would be some sort of deterrence to non-productivity on
23    the date that I assigned, and I thought the best way to do that
24    was to require the kind of specificity that I wanted.  That
25    isn't what you did.
```

1   But you came relatively close, I guess.  You at least

2   have the place where the fellow was.

3   MR. LONGO:  That was my --

4   THE COURT:  The dates that he was out of town.  Now

5   you say --

6   MR. LONGO:  And you mentioned the cities as well.

7   THE COURT:  And you mentioned the cities.

8   MR. LONGO:  Well, I --

9   THE COURT:  So it comes close to what I wanted.  But

10  here, your letter, oh, this is -- Where's the other letter?

11  The letter says:  From September 16th until late on the 23rd he

12  was out of town.  Now this letter says on September 14th he was

13  involved with funeral arrangements in the local area.  I don't

14  what that means.  I guess that means here.

15  MR. LONGO:  Right.  In the Chicago area.

16  MR. GRAHAM:  Your Honor, can I --

17  THE COURT:  Well, no, hold on, Mr. Graham.  Let me

18  read.  On the 15th he attended a funeral.  That's consistent.

19  On the 16th he proceeds to go out of town, staying in Plymouth

20  City.  On the 17th he was in Georgia.  On the 18th he was in

21  Florida.  On the 19th he was in Florida.  On the 20th he was in

22  Florida.  On the 21st -- The inconsistency is this letter, this

23  formalized letter says on the 23rd he arrived in Chicago.  This

24  one says -- No this one says he was out of town until late on

25  the 23rd.  What's the distinction that you're making, Mr.

1   Graham?

2           MR. GRAHAM:  Well, your Honor --

3           THE COURT:  How is it different?

4           MR. GRAHAM:  Well, the letter that is the handwritten

5   letter?

6           THE COURT:  Yes?

7           MR. GRAHAM:  Stated from the 15th September until

8   late on the 23rd Mr. Sommerfield was out of town in Florida.

9   That, to me, means that entire time he was in Florida.

10          MR. LONGO:  No, that means that we went to Florida.

11          MR. GRAHAM:  Well --

12          MR. LONGO:  This, the more detailed letter indicates

13  his travels to, with the various cities and the differences

14  in --

15          THE COURT:  Well, I mean if that's the basis for your

16  concern, that's not a concern that I share.

17          MR. GRAHAM:  Okay.

18          THE COURT:  (Inaudible) he goes on to say in the more

19  formalized letter, there's a couple of other places that he was

20  at.  He was out of town.  The question is my concern is this:

21  Do you have what you're entitled to?  All the rest doesn't

22  matter.

23          MR. GRAHAM:  I do not know.  I mean I would like --

24          THE COURT:  What do you mean you don't know?

25          MR. GRAHAM:  Well, I mean there were certain things

1   that were produced.  I --

2           THE COURT:  I thought we went through this and there

3   were very specific things that were ordered to be produced.

4           MR. GRAHAM:  Well, there were things produced but I

5   obviously do not know because I would have no personal

6   knowledge whether or not it's everything that he had.

7           THE COURT:  Well, we have the defendant -- the

8   defendant -- we have the plaintiff here.  Let's have Mr.

9   Sommerfield come to the stand right now.  We'll swear him in

10  and you can ask whatever questions you want, Mr. Graham.  We're

11  going to get this done by today.

12          MR. LONGO:  Your Honor, I can represent -- I mean --

13          THE COURT:  You can't represent anything other than

14  what you're told, Mr. Longo.  And that's why there's a hearsay

15  rule.  You can represent, for example, that your client turned

16  over everything and you don't have a clue as to whether he has

17  unless you tell me that you've conducted an inventory of his

18  home, and even then you wouldn't know because you wouldn't know

19  whether he had a safety deposit box or a treasure trove of the

20  materials stashed somewhere.

21          MR. LONGO:  Does counsel have a belief that there's

22  more to it?  I mean we can --

23          THE COURT:  Well, why don't you tell me, Mr. Graham,

24  what's been produced, first of all.  There's been an

25  explanation.  It's pretty consistent with what I wanted.  Have

1   you deposed Mr. Sommerfield?

2            MR. GRAHAM:  I'm in the process but I was --

3            THE COURT:  Okay.  Well, you're free to ask him about

4   this letter and where he stayed and all the rest.  And if, in

5   fact, it turns out that this letter that is being produced to

6   you and now to me turns out to have been a fraud, there are all

7   sorts of things available to you to do.  You guys are very

8   experienced and incredibly smart guys.

9            MR. LONGO:  Your Honor, --

10           THE COURT:  I use the word guys collectively as a

11  colloquialism.  And you'll do what you want to do.  So now the

12  question is do you have the stuff?  What are the materials that

13  you wanted?

14           MR. GRAHAM:  Well, I have --

15           THE COURT:  One, two, three, four, six --

16           MR. GRAHAM:  Yes.  One of them, I mean from my

17  interview what I have learned that I thought it was more like a

18  medal and I think that that was consistent with the affidavit,

19  but there were no medals produced.

20           THE COURT:  Well, but you're deposing --

21           MR. GRAHAM:  Yes, I understand, your Honor.

22           THE COURT:  Okay.  So I didn't know, I thought you

23  were through.  We're not going to have Mr. Sommerfield testify

24  now --

25           MR. GRAHAM:  Okay.

1          THE COURT:  -- if you're deposing him.  You're free

2   to do whatever you want.

3          MR. GRAHAM:  Right.

4          THE COURT:  If it turns out that you don't have what

5   you are supposed to have, you will then file an appropriate

6   motion.

7          MR. GRAHAM:  Right.

8          THE COURT:  But don't waste your time now filing a

9   motion to dismiss this case based upon where we are because

10  it's not going to be granted.  It would be a grotesque abuse of

11  discretion.

12         MR. GRAHAM:  I understand, your Honor, and I mean at

13  the time that I filed the motion --

14         THE COURT:  Yes.

15         MR. GRAHAM:  -- he had until the 21st, and the way

16  that I read your order, I read it that he had until the 21st.

17  Regarding his statement and what he told me at the deposition

18  on the 23rd saying that I have until Wednesday, that simply did

19  not happen.  And so I waited until the close of business on the

20  24th to file the motion.

21         THE COURT:  I urged you --

22         MR. GRAHAM:  So obviously -- (inaudible, multiple

23  voices) --

24         THE COURT:  -- Mr. Graham, if you didn't get a timely

25  response or a timely explanation of why the response wasn't

1    timely, to do something and that's what you did.  Now the

2    question is do you have what you want and you say that you're

3    not sure.  What else was produced that was required that had

4    been withheld before?

5              MR. GRAHAM:  Well, your Honor, when we were in open

6    court on the 9th of September and, I'm sorry, are you asking

7    what has not been produced?  Or --

8              THE COURT:  Well, give me what has been produced.

9              MR. LONGO:  Everything has been produced.

10             MR. GRAHAM:  Can I give a brief history, your Honor?

11             THE COURT:  Please.

12             MR. GRAHAM:  Um, as -- The City was in on the motion

13   to compel the plaintiff had filed wouldn't be -- As you'll

14   recall we were here for four hours.  I would say we argued it

15   for approximately three hours.  At one point I had mentioned

16   that --

17             THE COURT:  I do recall.

18             MR. GRAHAM:  -- and there were only -- that he had

19   only produced 65 pages of documents.  And he said in open court

20   both to you on the 9th and then the following week when he

21   filed the motion to amend his complaint before Judge Filip,

22   that quote, unquote, (inaudible) both times, quote, unquote,

23   that's all he has.  Your Honor, that was not the truth.  Less

24   than two days before the plaintiff's deposition he faxed over

25   136 pages of additional documents.

1          THE COURT:  Okay.

2          MR. GRAHAM:  At his deposition plaintiff identified

3    that he also had handwritten notes that he had prepared and

4    given to his attorney.  And that -- I have those parts of the

5    proceedings attached to the motion to compel.

6          THE COURT:  Right.  Do you have -- Did you get that

7    stuff?

8          MR. GRAHAM:  I did, your Honor.  But again, I think

9    it is -- This entire case, I'm defending the case based upon

10   misrepresentations and it's consuming, it's harassing, and it

11   -- I -- the City has been forced to expend considerable time

12   and financial resources getting what he is entitled to right

13   off the bat.

14         THE COURT:  I don't disagree with you.  I'm just

15   asking though for now, let's do this sort of step by step.

16         MR. GRAHAM:  Okay.

17         THE COURT:  My first concern is do you have what you

18   asked for and that I ordered be produced and that Mr. Longo

19   says has been produced in its entirety?  That's all I want to

20   know.  As the first matter.

21         MR. GRAHAM:  Yes.  It was -- And noncompliant with

22   the Court order it was presented on the 26th in the absence of

23   a previous letter explaining the details.

24         THE COURT:  But what I said --

25         MR. GRAHAM:  Yes.

```
 1          THE COURT:  Here's my concern:  If Mr. Sommerfield
 2   wasn't here it would be hard to comply with the date that I
 3   gave you.  Mr. Sommerfield has now provided a letter that
 4   accounts for his time.  You're free to ask, you're free to
 5   demand documents that will reflect payment of charges that
 6   actually will reflect his attendance including airline tickets,
 7   gas charges, credit card things.  I think that that's fair game
 8   for you.
 9          MR. GRAHAM:  Okay.
10          THE COURT:  That's number one.  Let's go on the
11   assumption, because it doesn't strike me that Mr. Longo and
12   that Mr. Sommerfield, although who knows, would be foolish
13   enough to make up this itinerary.
14          MR. LONGO:  Well, first of all, your Honor --
15          THE COURT:  I'm not done, Mr. Longo.  It's my turn.
16   I just don't think they would do that.  So let's go on the
17   assumption that what you have been told is accurate and that
18   Mr. Sommerfield was away for a funeral and then traveling on,
19   for whatever reason he was traveling, until he came back and
20   thus couldn't provide you with the information.
21          Upon his return he's now provided you with a number
22   of things that you say is compliant with what you asked for,
23   right?
24          MR. GRAHAM:  Correct.
25          THE COURT:  Except you are not certain whether or not
```

1    the medals or the five things you showed me in that photograph

2    is all, comprises what there should be.  You'll find out at the

3    deposition.

4              MR. GRAHAM:  I will.

5              THE COURT:  If it turns out that there has not been

6    compliance you'll do whatever you think you need to do.

7              MR. GRAHAM:  I understand, your Honor, but again

8    I mean I --

9              THE COURT:  So now let's go to the next step.

10             MR. GRAHAM:  Okay.

11             THE COURT:  The next step in the last part of what

12   you've asked for which is a motion for contempt and for fees.

13   I don't have contempt authority; this is not my case.  But

14   Judge Filip has sent this here.  I do think I have the

15   authority to deny the motion for contempt.  In a consent case,

16   I have the same powers as an Article 3 judge in terms of

17   contempt.  I'm going to deny the motion insofar as it seeks

18   contempt.  I think I have the authority to do that.  I just

19   don't think that that's -- That's without prejudice to your

20   renewing the motion in the event it turns out that Mr.

21   Sommerfield's representations were fraudulent, false and

22   fraudulent.  And I don't think you're going to find that.  I'd

23   be flabbergasted.

24             Now the second thing is the question of fees.  You

25   cite nothing in support of your request for fees, which sort of

1  surprised me.  It surprises me because there's a whole -- First

2  of all, Rule 37 is mandatory and Judge Easterbrook, in a case

3  called Rickles vs. The City of South Bend, and it's at 33 Fd.3d

4  785, has said, quoting Wright and Miller:

5      "The operative principle with Rule 37 is loser pays."

6          You're entitled to fees if they're appropriate, they

7  become mandatory.  The question is is it appropriate?  Mr.

8  Sommerfield says he was out of town, and he couldn't do it

9  before then.  I gave him leave to do this later than I wanted,

10 than you wanted, and that Mr. Longo wanted, because he wasn't

11 here.  He apparently wasn't here.

12          How long after he returned, Mr. Longo, did you give

13 him the stuff?  Was it compliant with sort of the extended

14 date?

15          MR. LONGO:  Yes.  Exactly.  The exact date that you

16 dictated.

17          THE COURT:  Okay.

18          MR. LONGO:  The 22nd, I want to say the 22nd is the

19 exact day that we turned everything over.

20          THE COURT:  Okay.

21          MR. LONGO:  And I had told that to counsel on the

22 21st.  I even mentioned Judge Cole said we could turn it over

23 on Wednesday --

24          MR. GRAHAM:  (Inaudible, multiple voices) --

25          MR. LONGO:  -- with the letter.

1          MR. GRAHAM:  -- (inaudible, multiple voices) that,

2    your Honor.  He never said that.  And I will tell you this:

3    Had Mr. Longo said that I would have asked the court reporter

4    to go on the record and I would have objected to it and said

5    that that is not what the order was.

6          MR. LONGO:  Your Honor, --

7          MR. GRAHAM:  And --

8          THE COURT:  Well, the order is what it is.  And you

9    all knew what I said.  I mean I didn't look at the order.  Jan

10   is astonishingly efficient in doing this.  And it seems so

11   simple and straightforward.  Maybe I did.  Is that one of the

12   ones you and I went over?  I can't remember.

13         MR. LONGO:  Your Honor, could I ask Mr. Graham to

14   indicate exactly what I did say?

15         THE COURT:  No, I don't think --

16         MR. LONGO:  Because --

17         THE COURT:  Look.  I don't think this kind of --

18         MR. LONGO:  All right.

19         THE COURT:  -- bickering is worth anybody's time.

20         MR. LONGO:  Nor do I.  I just don't appreciate

21   someone saying I'm not representing things correctly.

22         THE COURT:  Mr. Longo, you've been a lawyer for a

23   long time.  This isn't the first time it's happened.

24         MR. LONGO:  You're right.

25         THE COURT:  And it's not the last.  And it's not the

1  first -- (Inaudible) when you say it won't be the first or the

2  last time.

3          MR. LONGO:  Okay.

4          THE COURT:  This is the life we've chosen.

5          MR. LONGO:  You're right.

6          THE COURT:  The question is do you have it?  You tell

7  me you do.  The next question is are you entitled to fees even

8  under the mandatory loser-pay rules?  I don't think in this

9  case, Mr. Graham, you are if you got the stuff by the extended

10 date that I anticipated.  If it turns out, as I'm telling you,

11 that Mr. Sommerfield is playing fast and loose with everybody

12 with the itinerary and that he really was here we have a whole

13 different set of circumstances.

14         MR. GRAHAM:  Can I show you the order, your Honor?

15         THE COURT:  Sure.  Of course.              (Pause.)

16         MR. GRAHAM:  The order states that plaintiff shall

17 file a report if he doesn't produce the items by the 21st.  The

18 plaintiff shall file a report with the City detailing where the

19 plaintiff currently is.  Your Honor, if -- Where he had been

20 and where he had stayed for the period of 9-14 through 9-21, I

21 mean I read the currently is to mean that --

22         THE COURT:  Oh, no, no, no, no.

23         MR. GRAHAM:  Well then I misread the order.

24         THE COURT:  Mr. Graham, this is a minute order that's

25 drafted as we sit here in court and we're not going to -- You

1  know, what did Holmes say?  We should think things, not words.

2   You knew what I wanted.  I wanted to protect the City's right

3  to get this material and more importantly I wanted to have some

4  sort of deterrent to noncompliance with the earlier date.  And

5  I thought the best way to do that was to have somebody be

6  required to say where they were because people generally won't

7  lie too grossly on things like that.  That was my overall

8  intent.  And I'm not going to pick out that single phrase that

9  was not what was --

10            MR. GRAHAM:  Well, your Honor --

11            THE COURT:  -- in my mind at the time.

12            MR. LONGO:  That's not what you said either.  He

13  didn't (inaudible) until Wednesday the 26th.

14            MR. GRAHAM:  He did not comply by the 26th, your

15  Honor.

16            THE COURT:  Well, when did he comply with it?

17            MR. GRAHAM:  He complied late in the afternoon -- I

18  mean to the extent that he complied it was late in the

19  afternoon yesterday.  And I mean -- I don't know what to say

20  frankly.  I mean it is -- I've tried -- We've been reasonable

21  with him.  He did not comply with the order.  He represented in

22  court last time that the reason he couldn't produce them by the

23  end of the week was because his client was at a funeral.

24  That's not true.  And I mean I cannot litigate --

25            THE COURT:  Well, no.  What he said was he couldn't

1    provide them on the date that I wanted because he wasn't sure

2    whether his client was going to be back, I thought.

3            MR. GRAHAM:  Well, he represented, as your Honor

4    states, that he was at an alleged funeral.  So --

5            THE COURT:  But apparently he was out of town.

6            MR. GRAHAM:  But he wasn't at a funeral.  All I'm

7    saying is I'm getting --

8            THE COURT:  Wait, wait, wait, hold on, Mr. Graham.

9    The question was whether he was here.  I didn't look at this as

10   an indication that, oh, he was at a funeral.  He had to return

11   the moment, you know, the last spade of dirt went into the

12   ground.  I was concerning with when he would return.  And if

13   there was other travel incident to that or that ultimately

14   stemmed from it, whether related or not, I didn't care.  I

15   wanted to be sure you got this document as quickly upon his

16   return as you could.  And you did.

17           I don't for a moment, I'm not unsympathetic to your

18   angst about this.  I think that these discovery disputes are

19   nauseating.  I thought they were when I was a lawyer.  I found

20   them nauseating at the time, and I was furious at judges who

21   would never, ever, ever issue sanctions against people who

22   weren't doing what they should do.

23           Having said that, we'll find out whether or not you

24   were ill-treated in this case.  I'm telling you, you can spend

25   as much time as you want questioning Mr. Sommerfield about --

1    When I say where he was, he tells you he was in a certain city,

2    ask him where he was, what he was doing, (inaudible), do it at

3    whatever length you want.  If it turns out that he has filed

4    something with you and thus with me which is false, we'll take

5    up the whole matter again.  And beyond that I can't tell you.

6              MR. GRAHAM:  May I ask for (inaudible)?

7              THE COURT:  I'll tell you what (inaudible).  I don't

8    understand frankly why the City -- And I think I do understand

9    why and sort of, you know, you live by the sword, you die by

10   the sword.  The City almost never asks for fees.  Regardless of

11   the circumstances, I take it that's probably a City policy so

12   that you don't find yourself with fee requests when you are not

13   as prompt as (inaudible) because of the press of business.

14             So I do think there's got to be a little bit of --

15   not a lot, but a little bit of play in the joints to account

16   for human frailty and human error, and the fact that lawyers

17   tend to be procrastinators.  They just do.  The City does.  Mr.

18   Longo might.  But here we are.  You've got what you wanted.  I

19   don't think you got it in a terribly untimely way, so I'm going

20   to deny the part of the motion that asks for fees and I'll tell

21   you again, I don't want to be repetitive:  If it turns out that

22   you've been had by Mr. Sommerfield, please come back and you

23   will find me not sympathetic to the situation -- unsympathetic

24   to the situation.

25             MR. GRAHAM:  I just have one request, your Honor, and

1    since the plaintiff is in here and just so I can prepare

2    accordingly, and did you -- and because it has come up in play

3    in this case, and it was a representation to the Court, can you

4    -- can we have plaintiff's counsel state on the record, after

5    consulting with his client, who died and where the funeral was

6    held?  Because he represents in the -- he represents in his

7    letter --

8            THE COURT:  No.  You can do it on the record.  You

9    can do it at the deposition.

10           MR. GRAHAM:  Well, I would like --

11           THE COURT:  Why do you want to do it now?

12           MR. GRAHAM:  Because then we'd be able to research it

13   and find out and have the information at the time of his

14   deposition.

15           MR. LONGO:  You can ask it at the deposition.

16           THE COURT:  Well, I -- You don't get to rule, Mr.

17   Longo.  I get to decide.

18           MR. LONGO:  I'm sorry.

19           MR. GRAHAM:  That's all I need because that is the --

20   I mean first of all, these documents, these medals and things

21   should have been produced --

22           THE COURT:  Mr. Graham?

23           MR. GRAHAM:  Yes.

24           THE COURT:  At the deposition.  You can -- You have

25   -- Next to the federal government, at least on some theoretical

```
 1   level, you have unrestricted resources.  You can research it

 2   then.

 3              MR. GRAHAM:  Well --

 4              THE COURT:  You're the City of Chicago, for heaven's

 5   sakes.

 6              MR. GRAHAM:  I understand.

 7              THE COURT:  I mean that's why I say on a theoretical

 8   level.

 9              MR. GRAHAM:  Okay.

10              THE COURT:  Then -- But you can research it now you

11   can research it after the fact.

12              MR. GRAHAM:  Well, your Honor --

13              THE COURT:  And if it turns out that Mr. Sommerfield

14   has lied under oath about that, you know what?  You should

15   rejoice.  You should just rejoice.

16              MR. GRAHAM:  Your Honor, --

17              THE COURT:  Yes?

18              MR. GRAHAM:  If I may say one thing.

19              THE COURT:  Yes.

20              MR. GRAHAM:  My concern is this:  Is that while it's

21   potentially that again you said earlier we have -- the City has

22   some distrust of, I don't think that was the exact word.

23              THE COURT:  Well, here, that was the word.

24              MR. GRAHAM:  Okay.  Well, I -- You hit the nail on

25   the head.  My concern is this:  --
```

1     THE COURT:  It's not the first time, Mr. Graham,

2  you've had that sense in the case, have you really?

3     MR. GRAHAM:  My concern is this, your Honor, is that

4  if -- when the deposition comes that he may not have an answer

5  here today to explain it and I do think it would be reasonable

6  for him to identify that since that is the explanation that was

7  given why they weren't produced.  I am certainly concerned that

8  at the time of the deposition he will have a pat answer on

9  that.  And I think that it is --

10     THE COURT:  Mr. Longo, ask your client for the name

11  of the deceased and where the funeral was held.  I think that's

12  a fair inquiry.

13     MR. GRAHAM:  (Inaudible, multiple voices).

14     MR. LONGO:  Can we have one moment, your Honor?

15     THE COURT:  Sure.

16     MR. GRAHAM:  Thank you, Judge.

17                                              (Pause.)

18     THE COURT:  And the record can reflect that you and

19  your client are leaving and it's now -- it's now two minutes

20  after 9:00.

21     MR. GRAHAM:  Should we wait or --

22     THE COURT:  Please, call the next -- Recall the first

23  case, (Inaudible) vs. Owen.

24     THE CLERK:  Um-hum.

25     MR. LONGO:  Your Honor, let the record reflect we're

1    returning three seconds later.

2              THE COURT:  Well, it is like three seconds.  So okay.

3              MR. LONGO:  The name of the deceased is Tia Rafaela.

4              THE COURT:  How do you spell it?

5              MR. LONGO:  Tia, T-i-a.  Rafaella, at least what I

6    understand the spelling is.

7              THE COURT:  Okay.

8              MR. LONGO:  R-a- --

9              THE COURT:  Well, ask, ask, ask your client how to

10   spell it.  If he knows.

11             MR. SOMMERFIELD:  Judge, the last name is . . .

12                                                  (Pause.)

13             MR. LONGO:  The spelling is Rafaela, R-a-f-as in

14   frank, a-e as in edward, l-a, Robledo, R-o-b as in boy, l-e-d

15   as in david, -o.

16             THE COURT:  And where was the funeral.

17             MR. LONGO:  Philomena Church.

18             THE COURT:  Where?

19             MR. LONGO:  In Chicago.

20             THE COURT:  Where in Chicago?

21             MR. LONGO:  At (inaudible) and Armitage.

22             MR. GRAHAM:  (Inaudible, multiple voices).

23             THE COURT:  Well, I thought he was traveling out of

24   the city for the funeral.

25             MR. GRAHAM:  Well, that's what he said in court, your

1　Honor.

2　　　　MR. LONGO:  I was wrong.

3　　　　MR. GRAHAM:  And that contradicts the letter.

4　　　　THE COURT:  That's exactly what you told me in court.

5　　　　MR. LONGO:  That's correct.

6　　　　THE COURT:  He wasn't in the city, he was attending a

7　funeral.

8　　　　MR. LONGO:  Right.  That's what I thought.  He had

9　(inaudible) the city.  The funeral, I guess, was in town and

10　then he went out of town afterwards.  That's what I thought.

11　　　　MR. GRAHAM:  That's isn't his representation.

12　　　　THE COURT:  Okay, here's where the --

13　　　　MR. GRAHAM:  That's my problem.

14　　　　THE COURT:  Here's what we're going to do, folks.

15　Let's change the order.  The motion for entry of an order of

16　contempt and for fees is going to be continued.  When is the

17　deposition going to be completed?

18　　　　MR. GRAHAM:  I don't know, your Honor, I will try to

19　get a letter to him today.  I was -- (inaudible, multiple

20　voices) --

21　　　　THE COURT:  Why would you serve a letter?  Everybody

22　is here.  Let's get a date right now.

23　　　　MR. GRAHAM:  Well, discovery closes on the 9th, and I

24　mean we will (inaudible) things (inaudible) on this.

25　　　　THE COURT:  That's -- I --

1        MR. GRAHAM:  I understand, your Honor,

2  (inaudible) --

3        THE COURT:  Mr. Graham, you have this incredible

4  sense of urgency about this and I understand that.  I'm simply

5  trying to accommodate you.  Let's not have any more problems.

6        MR. GRAHAM:  Okay, let's do it right here.  I mean I

7  (inaudible).

8        THE COURT:  You've got the defendant, you've got the

9  plaintiff, you've got Mr. Longo and you've got you.  The

10  perfect storm.                              (Pause.)

11        I'll tell you what.  You guys go out --

12        MR. GRAHAM:  Judge, how about the --

13        THE COURT:  No, how about going out and I want to

14  have these folks not wait for you.

15        MR. GRAHAM:  That's (inaudible).

16        THE COURT:  Just use -- Go talk to Mr. Longo, see if

17  you can work it out and then when I finish with them we'll take

18  this up again.

19        MR. GRAHAM:  All right, thank you.

20        MR. LONGO:  Sure.

21        THE COURT:  So go into my witness room in back of the

22  court or wherever it's convenient, pick a date.

23        Come on up, folks.

24     (Interval while the Court heard an unrelated case.)

25        THE CLERK:  06-c-3132, Sommerfield vs. City of

1   Chicago.

2          MR. LONGO:  Your Honor, good morning again, Joe Longo

3   for Mr. Sommerfield.

4          THE COURT:  Hi, Mr. Longo.

5          MR. GRAHAM:  Joe Graham on behalf of the City of

6   Chicago.

7          MR. LONGO:  We have a date set for the 5th in the

8   afternoon.

9          THE COURT:  What's the date?

10          MR. LONGO:  The 5th of October in the afternoon.

11          THE COURT:  Okay, so the (inaudible) will provide

12   that the motions in there (inaudible) and Mr. Sommerfield --

13          MR. GRAHAM:  One p.m. on Friday.

14          THE COURT:  Sorry?

15          MR. GRAHAM:  One p.m.

16          THE COURT:  One p.m., okay.

17          THE CLERK:  It could not be October 5.

18          THE COURT:  Why not?

19          THE CLERK:  You're not here.

20          THE COURT:  I'm not here, okay.  I'm not here on

21   October 5th.  So --

22          MR. GRAHAM:  Could we do it on the 4th?

23                                              (Pause.)

24          THE COURT:  Is the 5th a Friday?

25          MR. GRAHAM:  Yes.

```
 1              MR. LONGO:  Yes.
 2              THE CLERK:  You're not going to be here.
 3              THE COURT:  I'm not sure what time I'm leaving.
 4              THE CLERK:  Yes, and it can't be in the afternoon of
 5    the 4th.
 6              THE COURT:  Well, how about in the morning?
 7              THE CLERK:  The morning is okay.
 8              THE COURT:  Well, how about the 5th?  Well, when do
 9    you want to do this?
10              MR. LONGO:  The 5th in the afternoon.
11              THE COURT:  All right, so the date for the deposition
12    is the 5th in the afternoon?
13              MR. LONGO:  Right.
14              MR. GRAHAM:  Yes.
15              THE CLERK:  Yes.
16              MR. LONGO:  One o'clock.
17              THE COURT:  Oh, so that's not for me.  It's for you
18    guys.
19              MR. GRAHAM:  Oh, that's right.
20              MR. LONGO:  (Inaudible, multiple voices).
21              THE COURT:  So the deposition will proceed by
22    agreement on September -- on October -- I'm sorry, September --
23    October 5th.
24              MR. GRAHAM:  You had previously ruled, your Honor,
25    that if there were any issues regarding the answering of
```

1    questions relating to attorney-client privilege we could call

2    you.  Can we -- We'll just call Judge Filip.

3              THE COURT:  All right, here's the -- No, no, no, no.

4     I don't want you to do that.  Here's -- Oh, God.      (Pause.)

5              Can we do it before the 5th so that I can be

6    available in the event that there's not a problem?  In the

7    event there is a problem?

8              MR. GRAHAM:  I could do it the afternoon of the 4th.

9              THE COURT:  Mr. Longo, can you do it?

10             THE CLERK:  You'll be in settlement conference.

11             THE COURT:  It doesn't matter.

12             MR. GRAHAM:  Your Honor, if Mr. --

13             MR. LONGO:  I guess we could do it the afternoon of

14   the 4th.

15             THE COURT:  I really would appreciate it.

16             MR. LONGO:  All right then, we'll do it the afternoon

17   of the 4th.

18             THE COURT:  We've had a lot of problems.

19             MR. LONGO:  Okay.

20             MR. GRAHAM:  All right.

21             THE COURT:  You'll do the deposition on the afternoon

22   of the 4th.  You are instructed if there are concerns or issues

23   relating to the assertion of the attorney-client privilege or

24   any other issues you are to call chambers.

25             MR. GRAHAM:  Okay.

1        THE COURT:  And we'll deal with them that way on the

2  telephone so the deposition can proceed expeditiously.

3        MR. LONGO:  Sure.

4        THE COURT:  And as I said, you are free to ask at the

5  deposition -- You can put this in the order.  Mr. Graham, the

6  City is free to ask questions dealing with the letter that was

7  produced -- the letter of September 27th, 2007 from Mr. Longo

8  to Mr. Graham and the handwritten note of September 26th, '07

9  to Ms. Werth from Mr. Longo.  I'll give these back to you, Mr.

10  Graham.   (Pause.)

11        Now that's set up, let's set another status so that I

12  can decide what I want to do about this motion.  Assuming -- So

13  what's a good date everyone has next week?  October the 8th?

14        MR. LONGO:  The 8th is Columbus Day.

15        THE COURT:  So (inaudible).  How about the 9th?

16  At --

17        MR. LONGO:  How about the 11th or the 12th?

18        THE COURT:  Okay.  How about the 11th?  I'll see you

19  on October 11th at -- What time do we normally do this?  Nine?

20   8:30?

21        MR. LONGO:  Nine is fine.

22        MR. GRAHAM:  9:30.  (Inaudible).

23        THE CLERK:  (Inaudible).

24        THE COURT:  Well, that's just for you.  I'm here.

25        MR. GRAHAM:  9:30?

```
 1            THE COURT:  All right, let's do 9:30.

 2            THE CLERK:  No, you're not here October 11th, Judge.

 3            THE COURT:  Why not?

 4            THE CLERK:  You're in Vermont.  (Inaudible).

 5            THE COURT:  All of a sudden I'm like the big

 6   traveler.

 7            MR. GRAHAM:  You are a big traveler, Judge.

 8            THE COURT:  (Inaudible) going (inaudible) never go

 9   anywhere.

10            MR. GRAHAM:  I'm not going to --

11            THE CLERK:  (Inaudible, multiple voices).

12            MR. GRAHAM:  -- ask you for an itinerary, though.

13            THE CLERK:  (Inaudible, multiple voices) -- that

14   week.

15            MR. LONGO:  How about the 12th?

16            MR. GRAHAM:  How about the 9th?

17            THE CLERK:  The whole week is gone.

18            MR. GRAHAM:  Friday the 9th.

19            THE COURT:  I'm not going to be here.  I'm going to

20   be at an American Bar Association Litigation Magazine.

21            THE CLERK:  (Inaudible) day available that week.

22            THE COURT:  What?

23            THE CLERK:  October 9th is the only day available

24   that week.  Otherwise it's going to be -- (inaudible, multiple

25   voices).
```

1       MR. LONGO:  How about the 12th?

2       THE COURT:  I'm not going to be here.

3       MR. GRAHAM:  How about Friday the 9th?

4       THE CLERK:  That whole week is gone.

5       THE COURT:  I'm not going to be here.  I'm going to

6  be at an American Bar Association Litigation Magazine meeting.

7       MR. GRAHAM:  Friday the 9th?

8       THE COURT:  Yes, (inaudible) on the 9th?  Let's do it

9  the 9th.

10      MR. GRAHAM:  Correct.

11      THE COURT:  Let's do it the 9th.

12      THE CLERK:  (Inaudible) day.

13      THE COURT:  Let's do the 9th at 9:30, okay?  And then

14 you folks will tell me where you are.  Assuming all things are

15 as they appear to be now --

16      MR. LONGO:  Your Honor, --

17      THE COURT:  -- I'm going to deny the motion.  Yes,

18 you want to do it later?

19      MR. LONGO:  If you don't mind --

20      THE COURT:  Any time --

21      MR. LONGO:  -- can we do it the 16th?  Or any day

22 next --

23      THE COURT:  No, No, I don't want this dragging out

24 that long.

25      MR. GRAHAM:  The 9th then at 9:30.

 1          THE COURT:  No.  Well, hold on.  Mr. Longo, you pick

 2   the time.  I'll do it in the afternoon if you want.  I don't

 3   care.  I just want this thing to be over with.  Discovery is

 4   closing.  We have one little issue and then you guys can do

 5   what you need to do.

 6          MR. GRAHAM:  Your Honor, we're going to have to --

 7   The City is going to move for an extension.  I mean --

 8          THE COURT:  Okay.  Well, so there you are.  The 9th

 9   at what time?  You pick the time.  This is -- I promise I'll

10   call you first.

11          MR. GRAHAM:  9:30.

12          MR. LONGO:  9:30.

13          THE COURT:  All right, if there's anything ahead of

14   you, and I don't think there will be, and Mr. Graham, unless

15   there's a program let's get Mr. Longo in now so he can attend

16   to his other cases.

17          MR. GRAHAM:  Your Honor, this other matter is --

18          MR. LONGO:  Mr. Graham tends to keep going on and on

19   and on and on.

20          THE COURT:  He likes to do that, so?

21          MR. GRAHAM:  Well --

22          THE COURT:  It's his -- He can talk.  Nobody else is

23   here.

24          MR. GRAHAM:  His other -- His deposition is one that

25   he is propounded, (inaudible) going to be one (inaudible) the

1  City so that's his (inaudible) deposition would be unavailable

2  to come in on a case, to come in before you on the case.

3         MR. LONGO:  Thank you, Mr. Graham, for telling me

4  what I need to do -- (inaudible, multiple voices).

5         MR. GRAHAM:  Sure, I'm not telling you what to do,

6  I'm saying what you --

7         THE COURT:  Wait, hold on.  So is the other matter a

8  deposition in this case?

9         MR. GRAHAM:  Yes.

10         THE COURT:  Oh, okay.  Well, you can be here then,

11  Mr. Longo.

12         MR. LONGO:  Well --

13         THE COURT:  If it's the same case.

14         MR. LONGO:  (Inaudible) have a good weekend.

15         THE COURT:  Thank you, you, too.

16         MR. LONGO:  (Inaudible).

17                  (Hearing adjourned.)


       I, RIKI SCHATELL, certify that the foregoing is a

   correct transcript from the record of proceedings in the

   above-entitled matter.


   /s/ Riki Schatell                    May 4, 2009
                                        Date