UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS (Chicago)

DETLEF SOMMERFIELD,              )
                                 )
            Plaintiff,           )
                                 )     Docket No. 06-CV-3132
        v.                       )
                                 )
CITY OF CHICAGO,                 )     Chicago, Illinois
                                 )     June 6, 2008
            Defendant.           )


HEARING ON MOTIONS
BEFORE THE
HONORABLE MAGISTRATE JUDGE JEFFREY COLE


APPEARANCES:

For Plaintiff:          JOSEPH A. LONGO
                        Attorney at Law
                        2100 West Haven
                        Mt. Prospect, IL  60056


For Defendant:          JAY MICHAEL KERTEZ
                        MEERA WERTH
                        CITY OF CHICAGO, LAW DEPARTMENT
                        30 North LaSalle Street
                        Suite 1020
                        Chicago, IL  60602


PLEASE PROVIDE CORRECT VOICE IDENTIFICATION

Transcribed by:         Riki Schatell
                        6033 North Sheridan Road, 28-K
                        Chicago, Illinois  60660
                        773/728-7281


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

```
 1          THE COURT:  Okay.  Sommerfield vs. the City of
 2  Chicago, 06-C-3132.  And I'm sorry that you all had to wait but
 3  as I say, this came in on an emergency basis last night.  I had
 4  to deal with -- (inaudible, multiple voices).
 5          MS. WERTH:  Good morning, your Honor, Meera Werth on
 6  behalf of the City of Chicago.
 7          MR. KERTEZ:  Good morning, your Honor, Jay Kertez on
 8  behalf of defendant, City of Chicago.
 9          THE COURT:  Good morning, everybody.
10          MR. LONGO:  Good morning to you, your Honor, Joe
11  Longo on behalf of the plaintiff.
12          THE COURT:  Hi, Mr. Longo.
13          MR. KERTEZ:  Your Honor, we were able to work out one
14  agreement.
15          THE COURT:  All right, hold on.  Just one moment.
16  Okay, go ahead.
17          MR. KERTEZ:  Regarding the canine patrol motion?
18          THE COURT:  All right, let me get all this stuff
19  together.  Okay, the canine patrol, is that -- You're going to
20  withdraw that?
21          MR. KERTEZ:  No, no, regarding Request to Produce No.
22  1, the defendant -- Your Honor had --
23          THE COURT:  Hold on, hold on.              (Pause.)
24          Well, I've got three motions.  The first one is the
25  motion to prohibit defendant from (inaudible) the Court's,
```

1   pardon me, order regarding a canine patrol.

2           MR. KERTEZ:  Right.  And now this --

3           THE COURT:  What about that one?

4           MR. KERTEZ:  Regarding this, regarding the Request to

5   Produce No. 1, the defendant says they will go back and check

6   and see if there's any documents for that, so we have an

7   agreement about that.  Regarding the --

8           MS. WERTH:  The --

9           THE COURT:  Wait a minute, wait a minute, wait a

10  minute.  Hold on.

11          MR. LONGO:  It's on Page 6.                    (Pause.)

12          THE COURT:  I don't -- Oh, I see.  So what are you

13  doing with Request No. 1?

14          MR. LONGO:  They will go back and check and see if

15  they have documents that are responsive as the Court ordered

16  the defendant to produce all documents pursuant to --

17  (inaudible, multiple voices).

18          THE COURT:  City agrees to check, I take it check

19  again?

20          MR. LONGO:  Yes.

21          MS. WERTH:  Yes, check again, your Honor.

22          THE COURT:  They say they don't have it.  Now when

23  somebody tells me they don't have it I don't understand, Mr.

24  Longo, why that's a violation of the order.  They say they

25  don't have it.

1          MR. LONGO:  Well, the --

2          THE COURT:  You know, otherwise that would be --

3     Discovery would be an endless process.  You order somebody to

4     produce.  They respond and say look, we don't have it.  Then

5     the next step is met with the opposition coming in with this

6     kind of motion and (inaudible).  Then they say we don't have it

7     again and then where does the cycle end?

8          MR. LONGO:  I've asked them if they have these

9     documents --

10          THE COURT:  But they say that --

11          MR. LONGO:  -- and got no response.

12          THE COURT:  -- Mr. Longo, they don't say they

13     don't --

14          MR. LONGO:  They're saying it now.

15          THE COURT:  They don't say -- You say Ms. Werth blows

16     you off and never calls you back.  But that's -- Well, whether

17     that's true or not I don't know, but it's different than when

18     she says I don't have this.  I mean --

19          MR. LONGO:  But now she's going to check, so if she

20     doesn't have it she doesn't have it.

21          MS. WERTH:  (Inaudible).

22          MR. LONGO:  Request to Produce Number 4 --

23          THE COURT:  Excuse me.  Let's do it one by one.

24          MS. WERTH:  Your Honor, we have previously told

25     counsel that we don't have documents to that (inaudible).  We

1   have checked.  We (inaudible) looked.  Our (inaudible) the

2   Chicago Police Department.  When counsel says that we have

3   agreed to check, we've only agreed that (inaudible) he insists

4   we will go ask them again.

5           Your Honor, if I may, this is as you pointed out, an

6   endless cycle.  It's almost (inaudible).  You know, we respond

7   to something.  If the Court orders us to produce a privilege

8   log, for example, we do that and that brings us -- (inaudible,

9   multiple voices).

10          THE COURT:  Well, but in fairness, Ms. Werth, I --

11  People more often than not do lousy jobs on privilege logs.

12  Major law firms and small shops and municipalities and other

13  sovereigns invariably either don't want to do it right or don't

14  get it right, so the fact that there's a motion on a privilege

15  log isn't anything out of the ordinary.

16          Now his motion may be worthless; it may not be.  I

17  don't know.  We're not there yet.

18          MS. WERTH:  Well, let me just go back --

19          MR. LONGO:  Regarding Request to Produce No. --

20          THE COURT:  Just a second.  I don't -- If you --

21  Look, you've agreed to check again.  Okay, then that's it.

22          Mr. Longo, if she says she doesn't have it and you

23  file another motion I'm going to sanction you.  You're going to

24  run the risk of sanctions.  You can't keep doing this.

25          MR. LONGO:  It's fine with me.  I just want a

1   straight answer.  I have not gotten one.

2         THE COURT:  She says she has.  You know, you really

3   should put this stuff in writing, Ms. Werth, so that you don't

4   have this problem.

5         MR. LONGO:  I've asked her to actually.  Request to

6   Product Number 4, your Honor?

7         THE COURT:  Mr. Longo, I'm not there yet.  We are not

8   there yet.

9         MR. LONGO:  Okay.  Sorry.

10         MR. KERTEZ:  You know, when you said that this

11   discovery is endless, well, in fact Judge Gottschall has said

12   that all of the discovery in this case, all of it, is over May

13   16th except for the discovery of the City of Chicago regarding

14   the new claims in his amended complaint.  Now, look what he's

15   doing.

16         THE COURT:  No, no, no, no, wait, wait, wait.  Stop.

17   I thought it was precisely the opposite, that there is no need

18   to -- There's no discovery on the amended complaint.

19         MR. KERTEZ:  No, your Honor.

20         MS. WERTH:  No, there is.  (Inaudible).

21       (Inaudible - three voices simultaneously.)

22         MR. LONGO:  -- the City of Chicago.

23         MS. WERTH:  (Inaudible) and Judge Gottschall's --

24         THE COURT:  I thought -- I thought -- It was

25   represented to me that you didn't need any discovery.

```
 1            MS. WERTH:  That's true, your Honor.

 2            THE COURT:  Okay.

 3            MR. KERTEZ:  The plaintiff.

 4            MS. WERTH:  The plaintiff.  But --

 5            THE COURT:  So it's you guys who need --

 6            MS. WERTH:  Yes.  Judge Gottschall gave us leave --

 7            THE COURT:  Ah.  You guys.  I had forgot that part.

 8            MS. WERTH:  -- to defend (inaudible) the Monell --

 9            THE COURT:  No, no, no.  I thought, that's right.  I

10  thought that you were saying Mr. Longo was getting discovery

11  and you told --

12            MS. WERTH:  No.

13            THE COURT:  Okay.

14            MS. WERTH:  No.  But the point, I think, --

15            THE COURT:  But this is not new discovery.  This is

16  old discovery and he may be totally all wrong but -- if it's

17  old stuff, no?

18            MS. WERTH:  But, your Honor, the point is it is old

19  discovery except that -- And I know my point on this, we --

20  Discovery closed on 5-16.  May 16th.  And Mr. Longo has filed

21  these motions well after that date.  He filed them on June 2nd,

22  2008.

23            THE COURT:  Well, but when you say --

24            MS. WERTH:  We were -- (inaudible, multiple

25  voices) --
```

```
 1              THE COURT:  He's saying these are not new discovery
 2    motions.  He's saying that the prior discovery motions'
 3    responses were not adequate and that's not the same thing.
 4              MR. LONGO:  Let me just for the record --
 5              THE COURT:  No, no.  I want to hear the balance of
 6    this.
 7              MR. LONGO:  Okay.
 8              MR. KERTEZ:  But your Honor, I would like to
 9    elaborate a little bit.
10              THE COURT:  Sure.
11              MR. KERTEZ:  The Judge made clear in her order, Judge
12    Gottschall, on April 29th, stated that all fact discovery must
13    be completed, everything must be completed by May 16th, 2008,
14    except for the discovery that City may do as to the remaining,
15    the new claims that he's put into his amended complaint.
16              THE COURT:  Right.
17              MR. KERTEZ:  Mr. Longo then was bound to make sure
18    that his discovery was all completed by that date.  He didn't
19    do so.  In fact, he didn't even depose the witness until after
20    the discovery close date.  He takes his chances when he does
21    that.
22              THE COURT:  Right.  You're right.  If you file a
23    motion to compel after the discovery close date, then it
24    becomes a matter of discretion whether a judge wants to say too
25    late, a lot of judges say that, or not too late.  But what he's
```

1    doing is he's saying I did this.  The discovery comes after the

2    close date.  The response comes after the close date, and now

3    I'm objecting to that because it's not adequate and that's not

4    a violation of any kind of anything.  (Inaudible) of the

5    discovery scheduling, you see what I'm saying?

6              MR. KERTEZ:  Yes.

7              THE COURT:  Supposing you respond, what did you say

8    the last date was, May 16th?

9              MS. WERTH:  16th.

10             MR. KERTEZ:  Correct.

11             THE COURT:  Okay.  Let's say that you respond May 1st

12   to a discovery request.  And Mr. Longo waits till June 1 to

13   rise himself up and file the thing that says you know, I don't

14   like their response.  It's no good.  That motion it's in the

15   Court's discretion can be deemed too late.  If, let's say, on

16   the 12th you respond and he doesn't like the way it looks and

17   he files the motion on the 15th, that's perfectly okay.  Or he

18   gets the stuff (inaudible) way so that's, I guess, in some

19   instances you've got to tell me, are these motions that are

20   simply made long after your responses?

21             MS. WERTH:  Yes.

22             THE COURT:  After the close date?

23             MS. WERTH:  Yes.

24             MR. KERTEZ:  Yes.

25             THE COURT:  Okay.  Well, let's go through this

1    because I'm not going to entertain those.  I didn't read them

2    that way because (inaudible) the dates.  I thought that some of

3    these were just continuations of problems that we've had.  In

4    other words, he files a motion.  You've had a dispute and you

5    say okay, we'll get it, and then your response to that is due

6    after the close date and he's still not satisfied.  I thought

7    that's what we are talking about.

8            MS. WERTH:  No.

9            THE COURT:  Then let's go through them because, Mr.

10   Longo, I'm not going to let you file motions, first time

11   complaints, after the discovery closes if you had an

12   opportunity to do it beforehand.

13           MR. LONGO:  Your Honor, can I respond to that?

14           THE COURT:  Yes, I don't know what the response could

15   be.  Yes, of course.

16           MR. LONGO:  Thank you.  This is not the first time.

17   Your Honor had everything ruled on April 28th.  We had brought

18   a motion on April 28th.  Your Honor had overruled the

19   defendants' objections and ordered the defendant to produce the

20   documents that we had requested.  They had not.

21           Now I'd like to state for the record regarding the

22   Plaintiff's Request to Produce No. 1.  This request asks for

23   documents relating to the plaintiff.  At the deposition the

24   witness testified, the Rule 30(b)(6) --

25           THE COURT:  I'm not going to -- Mr. Longo, I am not

```
 1   going to talk about things that she's agreed she's going to
 2   check again.
 3             MR. LONGO:  That's fine.
 4             THE COURT:  Now we get to the next one, we'll talk
 5   about the theory --
 6             MR. LONGO:  Okay.
 7             THE COURT:  -- I just heard.
 8             MS. WERTH:  Your Honor, if I --
 9             THE COURT:  But there are no documents, so I'm not
10   going to argue about things that are just a big waste of time.
11    What about Number 4?
12             MR. LONGO:  Request to Produce Number 4 asked for
13   documents and your Honor had ordered the defendant to produce
14   these.  It asked for all documents of people who have become
15   canine patrol handlers since January 1 of 2000, and documents
16   on how and why they were selected.  We received no documents at
17   all.  There were 35 people who were selected.
18             THE COURT:  All right, Ms. Werth, what do you say?
19             MS. WERTH:  Your Honor, we produced all the documents
20   that requested in his document production.  They relate to how
21   canine handlers are selected, what criteria is used for them.
22   We have produced in (inaudible) February -- (inaudible,
23   multiple voices) --
24             THE COURT:  Wasn't this the last time you were here?
25             MS. WERTH:  Indeed, your Honor.
```

```
 1              MR. LONGO:  And your Honor ordered them to produce
 2   it.
 3              MS. WERTH:  We come back again and again.  This is
 4   (inaudible), your Honor.  This is (inaudible) it comes very
 5   close.  Mr. Longo continues to bring these motions time and
 6   time again.  We have produced the documents that the Court
 7   ordered us to produce regarding canine.  We have produced the
 8   30(b)(6) witness the Court ordered us to produce.
 9              THE COURT:  Well, wasn't that a separate motion, the
10   30(b)(6)?  Or was that part of this?
11              MS. WERTH:  This is all part of the same (inaudible),
12   your Honor.
13              THE COURT:  Okay.
14              MS. WERTH:  The 30(b)(6), the canine, (inaudible)
15   expert, and he was deposed for four hours during which Mr.
16   Longo had all the time in the world to ask him all the
17   questions and he (inaudible).  I attended that deposition
18   (inaudible) and he explained at length not only what criteria
19   was used in selecting canine --
20              THE COURT:  All right, so let me stop you.  So
21   requests to produce Number 4, there are no documents to produce
22   beyond you say what you're given him.
23              MS. WERTH:  Yes.  Your Honor, I believe that from
24   the --
25              THE COURT:  Mr. Longo, what are we doing?
```

1          MS. WERTH:  Your Honor, if I may just clarify.

2          THE COURT:  Yes.

3          MS. WERTH:  I believe from the discussion we had in

4     the conference room just before we were called up again, Mr.

5     Longo seems to want documents related to all applicants who

6     applied to the canine unit.  Well, to the extent that those

7     exist, your Honor, those are applications by other police

8     officers that involve --

9          THE COURT:  Well, they --

10         MS. WERTH:  -- their personal matter and the Court

11    has already ruled --

12         THE COURT:  Well, no, but here.  Request Number 4 --

13    This is your motion, Mr. Longo -- Plaintiff requests all

14    documents of persons who had become canine officers and how

15    they were selected.  You didn't ask for people who applied but

16    weren't selected.

17         MR. LONGO:  That's correct.

18         MS. WERTH:  (Inaudible).

19         MR. LONGO:  And I'm saying, your Honor, that we did

20    not get not one document of any other person who had -- There

21    were 35 of them.  We did not get any document of any of those

22    35.  Particularly important --

23         THE COURT:  Well, you got documents how they were

24    selected.

25         MR. LONGO:  General policies on how people were

1   selected.

2          THE COURT:  Well, that's how they do it.  Those are

3   the rules and regulations.

4          MR. LONGO:  But we're talking about in Request to

5   Produce Number 4 is the particular people, how is it that they

6   were selected.  More important, and most important, is the one-

7   page document --

8          THE COURT:  The guy testified, he testified that they

9   were selected by reference to the documents selecting the

10  selection criteria, which are memorialized in documents you

11  have.

12         MR. LONGO:  No, there's a one-page --

13         MS. WERTH:  (Inaudible, multiple voices) --

14         MR. LONGO:  There is a one-page -- He testified, by

15  the way, and we'll talk about the fact that he had deficient

16  testimony, he was not prepared.  And that's illustrated in our

17  motion.  And as a side note, he did not know how people were

18  selected --

19         THE COURT:  All right, that's what I said to you.

20  We're not there.  We're talking about Number 4.

21         MR. LONGO:  Okay, Number 4.

22         THE COURT:  The 30(b)(6) witness testified about how

23  people are selected.  You have the list of the 35 people.

24         MR. LONGO:  Yes, I do.

25         THE COURT:  And you've got the criteria that were

1  utilized, according to the 30(b)(6) witness, in making that

2  selection process.

3        MR. LONGO:  We do not have the one-page document of

4  the disciplinary history.  The witness testified that Mr.

5  Sommerfield would have been selected --

6        THE COURT:  You didn't ask for that.

7        MR. LONGO:  Yes.

8        THE COURT:  You asked how people were selected.

9        MR. LONGO:  This --

10        THE COURT:  You didn't ask for the disciplinary

11  history.

12        MS. WERTH:  But that -- -- (inaudible, multiple

13  voices) --

14        MR. LONGO:  Of all of them.  This request to

15  produce --

16        MS. WERTH:  -- (inaudible, multiple voices) --

17        MR. LONGO:  I'm responding -- The Request to Produce

18   Number 4 asks for any and all documents of persons who have

19  become canine officers and why and how they were selected.  The

20  disciplinary --

21        MS. WERTH:  (Inaudible, multiple voices) --

22        MR. LONGO:  -- history document is a document that is

23  looked at as part of the criteria to determine whether that

24  person will be selected.  Now if other people of the 35 have

25  CRs, okay, and they were selected and the plaintiff was not

1    because of the CRs --

2          THE COURT:  No, why wasn't he selected?  My

3    recollection of what was testified to is he wasn't qualified,

4    not he had CRs.

5          MR. LONGO:  No, the witness testified --

6          THE COURT:  Is that right, Ms. Werth?

7          MS. WERTH:  Your Honor, it --

8          MR. LONGO:  The witness testified that --

9          THE COURT:  Look, folks, let me tell you, it's 10:00.

10   There is going to come a time, Mr. Longo, when you're going to

11   actually have to go to trial and the tail, as I told you, ought

12   not to be wagging the dog.  This is a strikingly simple case.

13   Your guy has said that terrible things were said.  They say

14   they weren't said.  Then that's at least the front end of the

15   case.

16          The rest of it is all circumstantial evidence where

17   you're going to be comparing things that occurred with others

18   to him and I suppose you're going to try and show that he was

19   treated in a very dissimilar way.  He wanted to be a dog

20   handler, a canine handler, and he wasn't because he had CRs.

21   Those people were lower down with CRs and they were all taken

22   care of favorably.  That's compelling evidence.  I don't

23   disagree with you.  But you've got to get to it.  And I just --

24   I think you want discovery to go on endlessly.

25          MR. LONGO:  Your Honor, --

```
 1              THE COURT:  All good things must come to an end.
 2              MR. LONGO:  But your Honor, we had asked for it.
 3    Your Honor had ordered them to produce it.  They did not
 4    produce it.
 5              THE COURT:  She says they did.
 6              MS. WERTH:  Your Honor, if I may (inaudible)?
 7              MR. LONGO:  Okay then, perhaps the defendant can
 8    point it out to the Court where this document is?
 9              THE COURT:  I assume it's in her files and yours.
10              MR. LONGO:  I don't have it.
11              THE COURT:  Listen, when you produce things to him
12    don't you say here's a letter, I've included Bates numbers,
13    whatever?
14              MS. WERTH:  Yes.
15              THE COURT:  If you don't --
16              MS. WERTH:  Exactly.
17              THE COURT:  -- in light of all that's happened you
18    people are derelict.
19              MS. WERTH:  Your Honor, we produced -- Our paralegal
20    prepares a letter.
21              THE COURT:  Sure.
22              MS. WERTH:  And I --
23              THE COURT:  You don't have to bring the letters.  I'm
24    not going to review this like this.  You say that it was done.
25              MS. WERTH:  It was done, your Honor, and what's more
```

```
1    we have the witness, the 30(b)(6) witness testify who doesn't
2    know his client, who doesn't know Mr. Sommerfield, never met
3    him, doesn't know him, testify strictly on the basis of what
4    are the criteria for selecting canine handlers.  And then
5    there's a list on which their names are set forth, and the
6    well-qualified list and the 30(b)(6) witness testified that
7    yes, here's the list and Mr. Sommerfield's name is on the list
8    and to the answer to the question well then, why wasn't Mr.
9    Sommerfield or Officer Sommerfield selected for a canine
10   handler the witness testified he has Mr. Sommerfield's record.
11    He said the reason he said there are these CRs that are in
12   place and we don't -- and here's the rule that says when there
13   are two or more CRs within X number of --
14           THE COURT:  So now Mr. Longo's position is well,
15   therefore I get to take a look at the disciplinary history of
16   the 35 to see if they had two or more CRs.
17           MR. LONGO:  Right.  That's what we have requested --
18           MS. WERTH:  Your Honor, he --
19           MR. LONGO:  -- in our requests to produce.  The Court
20   ordered them to produce these documents.  We've --
21           MS. WERTH:  No, -- (inaudible, multiple voices) --
22           MR. LONGO:  -- asked them --
23           MS. WERTH:  No.
24           THE COURT:  All right, are you prepared to say those
25   people didn't have two or more CRs, the folks that got
```

| | |
|---|---|
| 1 | selected? |
| 2 | MS. WERTH:  The witness testified under oath, your |
| 3 | Honor, to that effect. |
| 4 | THE COURT:  That they didn't? |
| 5 | MS. WERTH:  That people who were selected did not |
| 6 | have CRs. |
| 7 | MR. LONGO:  We -- |
| 8 | MS. WERTH:  And your Honor had previously, long ago, |
| 9 | since this has been going on ad nauseam, had previously ruled |
| 10 | that Mr. Longo, the plaintiff, is not entitled to other police |
| 11 | officers' disciplinary history, and this will -- |
| 12 | THE COURT:  Well, this is a sort of refined version |
| 13 | of that.  In the abstract I said that.  This is a little bit |
| 14 | different. |
| 15 | MS. WERTH:  But your Honor, we produced a witness. |
| 16 | THE COURT:  Yes, I understand. |
| 17 | MS. WERTH:  And (inaudible) said that these were the |
| 18 | people who were selected and I'm the person who is involved in |
| 19 | the selection process and I think that these people were |
| 20 | selected because they did not have CRs within the (inaudible)- |
| 21 | year period and Mr. Sommerfield was not selected because he had |
| 22 | CRs.  We showed them his CRs because their his own and that's |
| 23 | the reason. |
| 24 | And in fact the witness also testified about some |
| 25 | other police officers who were not selected. |

```
 1              THE COURT:  Because of CRs?

 2              MS. WERTH:  Because of CRs.

 3              THE COURT:  All right, Request Number 4 is denied.

 4              MR. LONGO:  Your Honor, I'd like to respond to this.

 5              THE COURT:  Let's move on.  You've got three motions.

 6     I'm going to do three motions.

 7              MR. LONGO:  But that's false, your Honor.

 8              THE COURT:  Mr. -- Let me tell you something.  If you

 9     were in the United States Supreme Court arguing the most

10     complicated case involving national security, Mr. Longo, you

11     wouldn't have the kind of time you get every single time you

12     walk in.  There has got to be some measure of efficiency.  I'm

13     not taking a day to deal with these motions.  I'm going to get

14     them done and you'll be heard but for heaven's sake you can't

15     go on and on and on and on on every subset of every motion you

16     file.

17              MR. LONGO:  I'm just asking for these documents,

18     that's all I'm asking for.

19              THE COURT:  And I understand.  She's now told me

20     something:  There is a 30(b)(6) witness who says these people

21     didn't have CRs.  That's good enough for me.

22              MR. LONGO:  Your Honor, I'd like to answer that

23     though.  This witness said he did not know how people were

24     selected prior to 2006.

25              THE COURT:  You say X and she says Y and on the
```

1  strength of what I'm hearing, Request Number 4 is denied.

2          You know what?  The two of you can sit down and you

3  can exchange memories of what happened or you can exchange

4  transcripts of what happened and either you're right or she's

5  right.  I'm not going to prefer your word over hers.  She said

6  that this is what he testified to.  If that isn't true, you've

7  got a transcript.  Come in and file another motion.  You can

8  ask for fees because Ms. Werth has lied to me.  She's adamant

9  that this is what happened.  I'm going to accept her word in

10  this context.  Number 4 is denied.

11          Now if you come back and say the witness said I

12  didn't have a clue as to what happened, that's a different

13  question.  Let's go to the next one.  What's next?  Number 5.

14          MR. LONGO:  Number 5, your Honor, is --

15          THE COURT:  Keep notes, Ms. Werth, because I want you

16  -- You folks are going to prepare this order, I'm not.  So

17  Number 4 is you're going to check, re-check, okay?

18          Number 5 is denied, and this is connection with the

19  plaintiff's motion to prohibit the defendant from violating

20  Court's order regarding canine patrol.

21          MR. LONGO:  (Inaudible) I think you meant, your

22  Honor, Number 1 --

23          THE COURT:  Yes.

24          MR. LONGO:  -- as far as checking on the Number 4.  I

25  thought you said Number 4.

1           THE COURT:  No.  Number 4 is denied.  Number 1 is
2      going to be re-checked.  What's 5?
3           MR. LONGO:  Number 5 is the documents of who selected
4      canine officers.  As I mentioned, the witness said prior to
5      2006 he was not there, he does not know.  He took some guesses
6      but we didn't see any documents.  Same thing with Number 4; we
7      didn't receive any documents.
8           MS. WERTH:  Your Honor, if I may, in response to
9      that, the witness testified that prior -- He testified about
10     the procedure in place before he came to the canine.
11          THE COURT:  Well, that's good enough.  That's what a
12     30(b)(6) witness does, he finds out.  The fact that he wasn't
13     there isn't an impediment to his testifying.
14          MR. LONGO:  He didn't know, though, who selected.  We
15     were looking for documents of who selected.  He took some
16     guesses but he didn't know.
17          THE COURT:  Number 5 is denied.  What's Number 6?
18          MR. LONGO:  Number 6, your Honor, is we -- Again your
19     Honor had ordered the defendant to produce these documents.
20     This is not the first time so we had asked for documents of --
21     any documents of why the plaintiff was not selected.
22          THE COURT:  Well, one of them she said they did
23     produce were his CRs.
24          MS. WERTH:  And -- (inaudible, multiple voices) --
25          MR. LONGO:  And your Honor, the witness testified

1  that he believed that letters are sent to the Internal Affairs

2  Division and then the Internal Affairs Division only responds

3  when the summary is -- when they need a canine patrol handler

4  to find out about that person.  We didn't get any of those

5  documents regarding the plaintiff or anybody else.

6        THE COURT:  I don't understand.  It says the request

7  for 6 is documents referring to why the plaintiff was not

8  selected.  The guy testifies that he wasn't selected because he

9  had CRs.

10        MR. LONGO:  That's his testimony.  This is a request

11  to produce.  We're asking for documents.

12        THE COURT:  You got the CRs.

13        MR. LONGO:  We didn't get these documents from

14  Internal Affairs.

15        THE COURT:  You got the CRs, didn't you?

16        MR. LONGO:  We did not get the letter from the

17  Internal Affairs saying don't select this guy because he has

18  CRs.  Or whatever the letter said.

19        THE COURT:  There is no such letter.

20        MR. LONGO:  The witness testified that a letter is

21  sent, he believes a letter is sent to Internal Affairs saying

22  we're considering this person to be a canine patrol handler.

23  Then Internal Affairs then responds.  I'm saying we did not

24  get --

25        MS. WERTH:  May I -- (inaudible, multiple voices),

1    your Honor?

2          MR. LONGO:  -- those documents.  Your Honor had

3    ordered them to produce these documents.

4          THE COURT:  Well, Internal Affairs wouldn't respond

5    to the recommendation.  That's not what Internal Affairs does.

6     It responds with the CRs.  It says okay, here's some CRs, do

7    what you want to do.

8          MR. LONGO:  I'm just telling you that the witness

9    testified to --

10          THE COURT:  Right, well, is there a letter?  Is there

11    a letter from Internal Affairs saying don't hire this guy?

12          MS. WERTH:  No, your Honor.

13          THE COURT:  He's a -- Or even --

14          MR. LONGO:  The letters --

15          MS. WERTH:  Your Honor, the witness testified that

16    answer be --

17          THE COURT:  Well, you don't have to (inaudible).  Is

18    there a document that is responsive to Number 6?

19          MS. WERTH:  No.

20          MR. LONGO:  Letters back and forth, we did not get

21    those.  The witness said that that's how they find out about

22    the disciplinary history.  They write --

23          MS. WERTH:  He didn't say that.

24          MR. LONGO:  He said he believes the procedure --

25          MS. WERTH:  He didn't say that, Mr. Longo.  Excuse

1   me.  If you have -- If you want to talk about what the witness

2   testified to, --

3           THE COURT:  You really should use transcripts.

4           MS. WERTH:  -- (inaudible, multiple voices) the

5   transcript.

6           THE COURT:  I told you this.  I wrote a long opinion

7   and it applies to all of this stuff.  You just can't say this

8   is what somebody testified.  You sat through this whole long

9   thing.  I just told -- I mean I wrote an opinion about this.

10  I've written a lot of opinions about this, and it's not my

11  idea, it's the Court of Appeals.  You just don't get to say

12  something and then, when it's opposed by the other side insist

13  on your -- And the burden is yours -- insist on your memory and

14  your rendition.  But I'm sorry --

15          MR. LONGO:  Even without his testimony, your Honor,

16  we got no documents of any requests relating to the plaintiff

17  relating to him wanting to be a canine patrol handler and

18  documents saying --

19          THE COURT:  Are there such documents?

20          MR. LONGO:  -- don't select this person.

21          THE COURT:  Are there any documents like this?

22          MR. KERTEZ:  Well, your Honor, we know they have the

23  CRs.

24          MS. WERTH:  Yes.

25          THE COURT:  Yes, we know that.

1    MS. WERTH:  We produced the documents that are

2    responsive to the extent they exist, your Honor.

3        THE COURT:  But answer my question, though:  Is there

4    a letter to or from Internal Affairs asking for or transmitting

5    CRs?

6        MS. WERTH:  No, your Honor.

7        THE COURT:  In other words, Mr. Longo's point --

8    Well, okay.  Then I suppose at trial you get to argue this is

9    just a big sham.  There aren't any letters.  These people

10   didn't even know anything about the CRs.  That's not why he was

11   denied.  But Mr. Longo, for heaven's sakes, you ought to be a

12   little grateful the documents don't exist.

13       MR. LONGO:  Well, the problem is that they did

14   produce the plaintiff's one-page disciplinary history so that's

15   why we needed to see the disciplinary history of other

16   employees.

17       THE COURT:  And they're saying to you now, they're

18   saying to you now there are no -- So Request 6, write this

19   down, folks, Request 6 is denied on the basis of the

20   representations of counsel for the defendants that there are no

21   responsive documents beyond the CRs which have been provided.

22       MR. KERTEZ:  And your Honor, if I may add, the

23   documents that indicate how the selection was made, which they

24   got.

25       THE COURT:  And whatever --

1          MR. LONGO:  What does that mean, the policies?

2          THE COURT:  Yes.  And the policies that have also

3    been previously provided.  Now you get to argue from whatever

4    you want to argue that you've got a 30(b)(6) witness who said

5    that they wrote letters of transmittal back and forth.  Hey,

6    guess what, ladies and gentlemen:  There's no such thing.

7    Therefore we know that the City didn't follow its own

8    procedures and it was -- He was denied being a canine handler

9    because he was Jewish.  Or because he voices his concerns.  Or

10   because he's five foot three.  All these things, Mr. Longo, are

11   beneficial to you now.

12          Okay, that takes care of the three things in the

13   plaintiff's motion to prohibit defendant from violating the

14   Court's order.  One is recheck, recheck the remainder, denied

15   based upon the City's representations that no documents exist

16   beyond the policies for selection and his CRs.  And that's what

17   the order needs to say.  So that later on if suddenly documents

18   get produced you will be able to point to an order and say wait

19   a minute, this stinks.

20          MS. WERTH:  And your Honor, just to be clear, --

21          THE COURT:  Um-hum.

22          MS. WERTH:  -- (inaudible) we've had a 30(b) --

23          THE COURT:  And also -- Hold on.  When you do this be

24   sure to go on the computer and put in the docket numbers of the

25   motions we're referring to.

```
1              MS. WERTH:  Right.

2              THE COURT:  Yes, go ahead.

3              MS. WERTH:  Your Honor, just to be clear, --

4              THE COURT:  You can put in at the beginning that when

5     the case was called I ordered the parties to have another

6     30(b)(6) -- I mean another Rule 37 conference which they did.

7     Yes, now go ahead.  The 30(b)(6), what about that?  We're not

8     there.

9              MS. WERTH:  Your Honor, I'd just like to make a point

10    that there may be documents that are CRs of other police

11    officers who are on the (inaudible), but as I said earlier, the

12    Rule 30(b)(6) witness testified under oath that the people

13    who --

14             THE COURT:  Put that in the order.

15             MS. WERTH:  -- were selected --

16             THE COURT:  Put that in the order.  No, don't put it

17    here.  The City has represented -- I don't know what the truth

18    is -- The City has represented that the 30(b)(6) witness

19    testified that the other -- that the successful candidates for

20    the canine patrol did not have CRs.

21             MR. LONGO:  Well, how would we be able to challenge

22    that without looking at their documents?  Without looking at

23    their disciplinary history.

24             THE COURT:  How can you look at that which doesn't

25    exist.
```

```
 1            MR. LONGO:  But there is a document for every person.
 2            THE COURT:  No, there's not.  If you don't have a CR
 3    there's not a document.  There's not a CR.
 4            MR. LONGO:  No.
 5            MR. KERTEZ:  That's right.
 6            MR. LONGO:  It's a summary sheet that has like your
 7    employment date when you start . . .
 8            THE COURT:  No, no, no.  You've got a witness who
 9    testified under oath that there are no CRs.  You don't -- I
10    wouldn't let you then go in and look at the -- all the other
11    stuff that relates to these police officers.  And not at this
12    late -- especially not at this late stage.
13            MR. LONGO:  Okay, so the defendant represents that as
14    far as the other people that were selected --
15            THE COURT:  The 30(b)(6) witness, whatever his name
16    is, testified on whatever the date was that these folks had no
17    CRs.
18            MR. LONGO:  Okay.
19            THE COURT:  All right.
20            MS. WERTH:  As defined by the criteria.
21            MR. LONGO:  The next motion?
22            MS. WERTH:  Because there is a criteria, your Honor:
23    Three or more CRs within X number of years.
24            THE COURT:  Well, whatever the criteria.
25            MS. WERTH:  Yes.
```

1    THE COURT:  Right.  Now the next document or the next

2  motion --

3    MR. LONGO:  Well, your Honor, as far as in this

4  document, your Honor, as far as the 30(b)(6) witness did not

5  have knowledge of how canine selected its -- the canine unit

6  was --

7    THE COURT:  Wait a minute.  You know, Mr. Longo,

8  we're not summarizing testimony.  This is an order that relates

9  to things you've asked for.

10    Let's go to the next one:  Plaintiff's motion to

11  prohibit defendant from violating Court's May 6th order.

12    MR. LONGO:  Your Honor, the defendant represents that

13  they have no documents so I will take that.  I asked them to

14  put that in a letter --

15    THE COURT:  Then why did you file this motion?

16    MR. LONGO:  Because they just represented to me

17  today.

18    MS. WERTH:  That is not true, your Honor.

19    MR. LONGO:  That is true.

20    MS. WERTH:  In fact, in my -- There is (inaudible)

21  pending before Judge Gottschall, Mr. Longo's motion to review

22  and his objections to this Court's previous discovery rulings

23  and in fact --

24    THE COURT:  (Inaudible, multiple voices) -- Which

25  one?  Is there more than one?  I thought there was one appeal.

```
 1              MS. WERTH:  There is -- No, this is the second set of

 2    objections he's filed to your discovery rulings.  The previous

 3    rulings, and --

 4              THE COURT:  Well, the ones she's ruled on.

 5              MR. LONGO:  Right.

 6              MS. WERTH:  No, this is another one.

 7              THE COURT:  Oh, so there's two pending.

 8              MR. LONGO:  No, one pending.

 9              MR. KERTEZ:  There's one pending.  One has been

10    decided already.

11              THE COURT:  That's what you said; she ruled on one.

12    Right.

13              MR. LONGO:  Well, it's --

14              THE COURT:  That's where you got to file the --

15              MS. WERTH:  -- second amended complaint.

16              THE COURT:  -- the second amended complaint.

17              MR. LONGO:  Right.

18              THE COURT:  Yes, I know that.

19              MS. WERTH:  The one that is pending, your Honor, I

20    just recently filed our response and in that I represent to the

21    Court that I have already told Mr. Longo that no such documents

22    exist.

23              MR. KERTEZ:  That's (inaudible) writing in the brief.

24              MS. WERTH:  It's in the brief and I don't want --

25              MR. LONGO:  That's correct.  They just recently filed
```

```
 1   it.  They have not told me before --
 2            MS. WERTH:  Excuse me, Mr. Longo, I --
 3            THE COURT:  Did you file -- You filed this after you
 4   got that brief.
 5            MR. LONGO:  No, your Honor, I made several calls and
 6   several letters.  All they had to do was let me know there were
 7   no documents, that's all I asked for.
 8            MS. WERTH:  You --
 9            THE COURT:  Ms. Werth, you knew you ought to just --
10   I know it's a pain, but you can write a one-line letter and you
11   can avoid hours of extra work for yourself.  I mean when in
12   Rome do as the Romans do, I guess.  I can't -- I can't -- I
13   can't make --
14            MS. WERTH:  Will e-mail suffice, your Honor?
15            THE COURT:  Sure.  Something.
16            MS. WERTH:  I have no opinion --
17            THE COURT:  Yes, e-mails of course suffice.
18            MS. WERTH:  -- and I told him I will go --
19            THE COURT:  Here's the problem.  Ms. Werth, here's
20   the problem, as you see.
21            MS. WERTH:  Yes, I see.  I see it.
22            THE COURT:  And I can't officiate.  I don't know who
23   is saying what.  But Mr. Longo is having a problem, he says,
24   with returned phone calls.  You don't want to deal with him by
25   phone?  Okay, that's -- I can't make lawyers deal with each
```

1    other in a certain way.  But you certainly can write an e-mail

2    that says on this I told you I don't have any documents and we

3    don't have any documents.

4            MR. LONGO:  That would be fine.

5            THE COURT:  When the motion then gets filed in the

6    face of that without something demonstrating that your

7    representations are untrue, that, in my view, is sanctionable

8    behavior.  It's either sanctionable under Rule 11 or it's

9    sanctionable under 28 U.S.C. §1927.  And it's sanctionable

10   under -- Well, those two, those are enough.  There's a

11   (inaudible) provision in the discovery rules as well.

12           MS. WERTH:  Your Honor, I will check --

13           THE COURT:  I don't -- Look, and you ought to keep

14   track, if you really feel this strongly about this, you ought

15   to keep track of these things so that in the event you don't

16   win and there's a fee petition for $4 million, you get to say

17   wait a minute, you know, $2 million of this is crazy because

18   it's just manufactured stuff.

19           MS. WERTH:  Your Honor, now --

20           THE COURT:  But in the meantime if Mr. Longo files

21   something, he's certifying to me under Rule 11 this is done in

22   good faith, and I take him at his word.

23           MS. WERTH:  Your Honor, I -- (inaudible, multiple

24   voices) --

25           MR. LONGO:  I don't file something unless I have sent

1    out letters and made calls.

2            THE COURT:  And don't you have to come -- You're not

3    downtown, are you?

4            MR. LONGO:  No, I'm not.

5            THE COURT:  He's got to come from Outer Kishnev.

6            MS. WERTH:  Right.

7            THE COURT:  I can't imagine he wants to do this and

8    spend his time writing this stuff for nothing.

9            MR. LONGO:  I do not.  I have other things to do.

10           MS. WERTH:  (Inaudible) he does, your Honor, because

11   he's doing this.

12           THE COURT:  Well, no, but he -- in his view he must

13   feel the need to do it and what I'm suggesting to you is you

14   can maybe short-circuit this with a few e-mails which you may

15   find unnecessary but that will save you -- I bet you type as

16   fast as you can think, don't you?  I bet you --

17           MS. WERTH:  I do, your Honor, and --

18           THE COURT:  Okay.

19           MS. WERTH:  -- I will in fact after today's hearing I

20   will go back and check my records to make -- and if there is,

21   in fact, an e-mail or any written communication --

22           THE COURT:  You should keep it on file.

23           MS. WERTH:  -- I will bring it to the Court next

24   time.

25           THE COURT:  No, I'm not interested in any of that.

1   That is really -- It's not what I signed on to do.  But I think

2   for your own benefit, and I think you should keep it in some

3   systematized orderly file in the computer.

4           MS. WERTH:  And bring it with me each time.

5           THE COURT:  Well, then you know, you can file a

6   motion for fees, but as it stands now I'm going to deal with

7   what I have to deal with.  All right, the last one --

8           MR. LONGO:  The next motion, your Honor, is the --

9           MR. KERTEZ:  Well, your Honor --

10          MS. WERTH:  Your Honor, --

11          THE COURT:  Shhhhsh.  So this is the motion from --

12  This is the May 6th order?

13          MR. LONGO:  That's correct, your Honor.

14          THE COURT:  This one --

15          MS. WERTH:  Your --

16          THE COURT:  -- is denied based upon --

17          MR. LONGO:  -- defendants' representation that they

18  have no documents.

19          THE COURT:  Right.  Based upon defendants' rep- --

20  Folks, have you got this?

21          MS. WERTH:  No, your Honor, I'm sorry, just give me a

22  moment please.

23          MR. KERTEZ:  (Inaudible).

24          MS. WERTH:  Your Honor, which number motion?

25          THE COURT:  I don't have numbered motions.  I have --

```
 1              MR. KERTEZ:  That one.

 2              THE COURT:  -- Mr. Longo's done what --

 3              MR. KERTEZ:  (Inaudible, multiple voices) --

 4              THE COURT:  --  I've asked him and sent me courtesy

 5    copies.

 6              MR. LONGO:  May 6th.

 7              THE COURT:  So I don't have -- That's what I'm saying

 8    to you, you've got to go on the computer and see which numbers

 9    these are.

10              MR. KERTEZ:  We have the numbers.

11              MS. WERTH:  Yes, we have the numbers, your Honor.

12              THE COURT:  Okay, which -- The motion to prohibit --

13    This is the May 6th order.  Which number is that?

14              MS. WERTH:  The one called Plaintiff's Motion to

15    Prohibit Defendant --

16              THE COURT:  Right.

17              MS. WERTH:  -- from Violating Court's 6th May --

18              THE COURT:  Yes.  6 May, right.  What --

19              MS. WERTH:  That's Number 213.

20              THE COURT:  All right now, what's the one before that

21    that we just did?

22              MS. WERTH:  The one we just did was called

23    Plaintiff's Motion to Prohibit Defendant from Violating the

24    Court's April -- (inaudible, multiple voices) --

25              THE COURT:  Right.  What number is that?
```

```
 1              MS. WERTH:  That number is 212.

 2              THE COURT:  Okay.  So we've done 212 and 213.  Now is

 3   the next one 214?

 4              MS. WERTH:  No, it's 211.

 5              THE COURT:  211.  Okay, we went in reverse order.

 6              MR. LONGO:  So your Honor was mid-stream in the

 7   sentence regarding the May 6th order.

 8              THE COURT:  That's based upon representation in

 9   briefs before Judge Gottschall --

10              MR. LONGO:  That they have no documents.

11              THE COURT:  -- that there are no responsive

12   documents.

13              MR. LONGO:  Okay.  Then --

14              THE COURT:  Now 211 is --

15              MR. LONGO:  Do you want -- (inaudible, multiple

16   voices)?

17              THE COURT:  -- the privilege log.  Now that's the one

18   I asked you guys to discuss.

19              MR. LONGO:  Your Honor, as you know from this --

20              THE COURT:  Who is Eileen Bell?

21              MR. KERTEZ:  She's the Assistant Corporation Counsel,

22   your Honor, with the City's Law Department.  She works in the

23   Labor Division representing the City and administrative cases

24   -- (inaudible, multiple voices).

25              THE COURT:  And Mr. Graham I know.
```

1          MR. KERTEZ:  Yes, -- (inaudible, multiple voices).

2          THE COURT:  My suggestion, folks, when you do this

3    the next time, is put in a parenthetical or a comma and

4    identify who these people are.  Okay, so are you happy now with

5    -- Are you satisfied?  Not happy, are you satisfied that these

6    people are who they -- I would guess they were?

7          MR. LONGO:  I'm -- Based upon the defendants'

8    representation that Eileen Bell also was not an investigator

9    involved in the investigation because the case law says that

10   even if an attorney is involved in the investigation of

11   discrimination and harassment, because they're taking on a

12   different role, those documents are not privileged.

13         THE COURT:  I know -- I actually do know the name.  I

14   should have recognized this.  This is a letter from, for

15   example, the first one is a letter from Mr. Graham to Ms. Bell.

16    She's involved in the case.

17         Let me ask you something:  Where do you stand now

18   after your Rule 37 conference with 211?

19         MR. LONGO:  We've asked for more detail and I pointed

20   out the case law to demonstrate that, for example, on Page 7 we

21   cite the Construction Products case in which --

22         THE COURT:  I've written a couple of cases you -- You

23   really ought to -- It just doesn't -- I don't know why you

24   wouldn't look at them.  It just as a strategic matter, why

25   wouldn't you look at the cases I've written on this as opposed

1   to cases that are 10 years old?

2               MR. KERTEZ:  (Inaudible) --

3               MS. WERTH:  And I -- (inaudible, multiple voices),

4   your Honor.

5               MR. LONGO:  Well, this, the settings, the headings --

6               MS. WERTH:  (Inaudible, multiple voices) -- on the

7   second (inaudible).

8               MR. LONGO:  -- though, the descriptions were similar

9   to this one.

10              THE COURT:  (Inaudible) the same.  It's a federal

11  rule.  There's no -- They don't -- My understanding is there is

12  no particular difference in the analysis.  But it's just, if

13  nothing else, you're going to get more recent and more

14  seemingly relevant cases and at least, if nothing else, stuff

15  I'm familiar with.  Now if you don't like what I written

16  because you think it's wrong, that's different.  But my guess

17  that there's lots of what's in there would be supportive of

18  you.

19              But anyway, what do you want to do with the motion?

20              MS. WERTH:  Your Honor, if I may speak to the --

21              THE COURT:  Yes.

22              MS. WERTH:  -- conference we had --

23              THE COURT:  Wait, wait, maybe (inaudible) he'll

24  withdraw the motion.

25              MS. WERTH:  Sorry?

1          THE COURT:  Maybe he's going to withdraw the motion.

2          MS. WERTH:  I --

3          THE COURT:  That's why I'm asking you what do you

4   want to do about this?

5          MR. LONGO:  Your Honor, we'd like to, you know, we

6   don't believe this privilege log complies with the law.  They

7   have the burden of proof and persuasion.

8          MS. WERTH:  Your Honor, may I respond to that?   Your

9   Honor, in the --

10          THE COURT:  Well, no, not yet.

11          In what way is it deficient?

12          MR. LONGO:  As we pointed --

13          THE COURT:  For example, electronic mail, and it's an

14   e-mail from one lawyer to another.

15          MR. LONGO:  I'm not -- For example, your Honor, if we

16   took a look at the two February 3rd, 2006 --

17          THE COURT:  Well, wait, let's go through this.  Look,

18   we're here.  Let's go through these.  Is Number 1 okay with

19   you?

20          MR. LONGO:  Yes, it's fine.

21          THE COURT:  Okay.  So number -- The first entry is

22   okay.  What about the second entry?

23          MR. LONGO:  City of Chicago memorandum.  I think

24   that's a deficient description.

25          THE COURT:  All right, we'll put a question mark.

```
1    The third one from Bell to Sgt. (inaudible)?

2            MR. LONGO:  City of Chicago fax transmission.

3    According to case law that I've read that's deficient; it

4    doesn't tell us enough.

5            THE COURT:  Well, no, no, that just identifies --

6    It's not a -- She's saying it's not a letter, it's an e-mail.

7    It's from Eileen Bell, who is a lawyer, to the addressee, Sgt.

8    Karen Connell.  Now why is Karen Connell, why is she -- Why

9    does this get privileged?

10           MS. WERTH:  She is the client, your Honor.

11           THE COURT:  Who?

12           MS. WERTH:  She --

13           THE COURT:  She's the client, okay.

14           MR. KERTEZ:  She's (inaudible) the Legal Affairs of

15   the police department.

16           MR. LONGO:  So how do they know she's a client?  I

17   don't think they've met their burden.

18           THE COURT:  Yes, how is she the client?

19           MS. WERTH:  She is the attorney for the Chicago

20   Police -- She's sort of like in-house counsel for the --

21           THE COURT:  Sgt. Karen Connell?

22           MS. WERTH:  Yes.

23           THE COURT:  Oh, she's a lawyer.

24           MS. WERTH:  Right.

25           THE COURT:  Well, why wouldn't you put her name down
```

1    as a lawyer?  I don't understand how people do these things.

2    It's just so simple.  There's no -- You look at this, you know,

3    I thought she was a police officer.

4              MS. WERTH:  Your Honor, if I may, we --

5              THE COURT:  But she's also a lawyer.

6              MS. WERTH:  But --

7              THE COURT:  So why wouldn't you put down lawyer?

8              MS. WERTH:  Your Honor, may I say one thing?

9              THE COURT:  Sure.

10             MS. WERTH:  Before we came to you just now, we had a

11   meeting in the conference room and we told Mr. Longo.  Granted,

12   we haven't put it down in this document but we told him Eileen

13   Bell is the Assistant Corporation Counsel.  Sgt. Karen Connell

14   is an attorney and a client --

15             MR. LONGO:  You and I didn't say that at all.  We had

16   no discussion regarding Sgt. Karen --

17             MS. WERTH:  And Mr. Longo insists that we give him

18   something in writing or prove it somehow that these people are

19   who we say they are.  I will make this representation in court

20   just now --

21             THE COURT:  No, you don't have to prove it.  If you

22   say Eileen Bell is a lawyer, Mr. Longo can go check.  What do

23   you want, do you want her A.R.D.C. registration?  Come on.

24             MR. LONGO:  No, no, no, no.  I didn't -- Your Honor,

25   as far as Karen Connell and Sgt. Robert Flores.

```
1            THE COURT:  Yes?

2            MR. LONGO:  Okay?  The case law indicates even if

3    they are lawyers what is their capacity?  For example, the case

4    law, for example, Sgt. Robert Flores does training.  He went to

5    law school but he does training for discrimination, harassment,

6    et cetera.  If his role is a managerial role even though he's a

7    lawyer, the case law indicates the document is not privileged.

8     It's their burden to prove.  I don't think this log provides

9    sufficient information.  I've asked before I filed this motion.

10           THE COURT:  Well, let me go -- Let's go back.  What

11   about the E.E.O.C. demand letter?  The author is Eileen Bell

12   and it's, I take it this is in response to the E.E.O.C.'s -- or

13   this is to the E.E.O.C.?

14           MR. LONGO:  Yes.

15           THE COURT:  All right, let's --

16           MS. WERTH:  (Inaudible) wrote (inaudible).  Which

17   should clue Mr. Longo in to --

18           THE COURT:  Well, no.  But look, I take it --

19           MS. WERTH:  -- the fact that he's a lawyer.

20           THE COURT:  Well, no, that's not fair.  Eileen Bell

21   could be anybody.  What I don't understand, Ms. Werth, and I

22   know you're going to do it again the next time, why in the

23   world the City wouldn't put down that Eileen Bell is a lawyer?

24    I mean --

25           MS. WERTH:  We will do it from now on.
```

```
 1              THE COURT:  It's crazy.  All right, let's start with
 2    all the E.E.O.C. demand letters from Eileen Bell.  Every one of
 3    those is privileged as far as I'm concerned, unless I hear
 4    something different from you.  These are -- This is from a
 5    lawyer in response to an E.E.O.C. request and she's responding.
 6              Okay, so we then get to Bell to Flores and that's the
 7    same problem.  And then Eileen Bell, the determination letter.
 8     What does that mean?
 9              MR. KERTEZ:  A determination letter, your Honor, is
10    from the E.E.O.C. determining whether there is substantial
11    cause to believe a violation occurred or not.  These are Eileen
12    Bell's notes regarding that determination letter and her, you
13    know, thoughts about it.
14              THE COURT:  Oh, I see.  It says attorney notes, okay.
15              MR. LONGO:  But your Honor, just so that -- You know,
16    determination doesn't tell us enough.  That's why we had to
17    bring the motion.
18              THE COURT:  A determination letter is a term of art.
19              MR. LONGO:  Um-hum.  But your Honor, I want to point
20    out --
21              THE COURT:  All right, the attorney notes of Ms.
22    Bell, 12-17, are privileged.  12-16 are going to be privileged.
23              MR. LONGO:  12-17?
24              THE COURT:  12-17 and 12-16, the attorney notes of
25    Eileen Bell re determination letter.  12-30-04 is a draft,
```

1   E.E.O.C. respondent's position statement in response to charge.

2    That's privileged.

3          MR. LONGO:  Your Honor, I want to point out as we

4   point out in the brief that documents prepared by an attorney

5   as part of the ordinary course of business, even if litigation

6   is imminent, are not privileged.

7          THE COURT:  Okay.  Fine.  You can ask --

8          MS. WERTH:  Your Honor, --

9          THE COURT:  You can ask Judge Gottschall to review

10  this.

11         2-11-05, the electronic -- the e-mail from Bell to

12  Flores has the same problem, with Flores.  We'll come back to

13  that.

14         You have nothing in here that tells me that exchanges

15  back and forth from the E.E.O.C. are discoverable is really the

16  issue but you don't raise that and so that is waived.

17         Attorney notes Eileen Bell, validity notes of.  I

18  mean there's no description here.  They're notes of what?

19         MR. KERTEZ:  They are notes, your Honor, regarding

20  her thoughts and concept about this case, (inaudible) what's

21  going on and what about the DOJ interview, for example, with

22  Officer Abbruzata.

23         THE COURT:  But that's how you should describe these

24  things.

25         MS. WERTH:  Your Honor, we'll be happy to --

THE COURT: This doesn't tell me anything.

MS. WERTH: We'll be happy to have my colleague, Robert Rutherford, prepare this privilege log.

THE COURT: No, Ms. Werth, you're the lawyer in the case.

MS. WERTH: I am.

THE COURT: You approved this. And I don't -- It doesn't make any sense that people do this day in and day out. It is ridiculous. All you have to do is sit down and type in work, I mean a privilege log, if you don't want to use a text, and plug it into Westlaw and you'll get about a zillion cases that tell you how you're supposed to do it.

MS. WERTH: Your Honor, we'll --

THE COURT: It's so simple.

MS. WERTH: If my representation now that --

THE COURT: No, the representation, if they are willing to accept the representation that these are her attorney notes about this case.

MR. LONGO: Your Honor, I'd like to see more detail because at trial time I can't pull out transcripts of representations. I need to have documents that I can point to.

THE COURT: All right.

MS. WERTH: Your Honor, we'll be happy to --

THE COURT: I don't know what you mean, a document --

MR. LONGO: Just in general. I'm saying all these

1    representations --

2             THE COURT:  What are you talking about?

3             MR. LONGO:  What I'm saying is they're saying

4    something here.  It says electronic mail --

5             THE COURT:  A representation in court is the same

6    thing as a representation on a piece of paper, and if you tell

7    me you're unwilling to accept what she says and you want to see

8    it written, that's okay.  Because I don't think that this log

9    complies with the requirements.  I agree with you.  I'm trying

10   to get this done so that you can really go to trial, if that's

11   what you want to do.

12            MR. LONGO:  Yes.

13            MS. WERTH:  Your Honor, --

14            MR. LONGO:  I'd like to have a privilege log that

15   complies with the law.

16            MS. WERTH:  Your Honor, we --

17            THE COURT:  Well, some of these do.

18            Just a second.  I'm sorry.  If we get down to -- All

19   right, all of Eileen Bell's notes I think need to be clarified

20   in greater detail.

21            The next one, 7-14-04, is a CPD memorandum.  I don't

22   think this is adequate.

23            MS. WERTH:  I'm sorry, your Honor, which --

24            MR. LONGO:  7-14-04.

25            THE COURT:  I mean I think just to save Detlef

 1    Sommerfield I don't think is enough.  There needs to be a kind

 2    of descriptive qual- -- a description of what the document is.

 3     That doesn't mean you have to reveal the content.

 4              MS. WERTH:  Your Honor, 7-14-04 it says it's a CPD

 5    memorandum from --

 6              THE COURT:  From Flores.

 7              MS. WERTH:  To Eileen Bell regarding the charge, and

 8    the charge number is given in the --

 9              THE COURT:  No, but look.  It could be -- The

10    question is is it seeking -- Is it a document that seeks -- Is

11    it a confidential communication seeking legal advice?

12              MS. WERTH:  It is a confidential --

13              THE COURT:  Well, I don't know that.

14              MS. WERTH:  -- (inaudible, multiple voices) from

15    attorney to client.

16              THE COURT:  Well, I -- Well, that is absolutely not

17    the test.  You guys better go back and read it.  Spend five

18    minutes and plug in my name and privilege log and look up some

19    of the cases on attorney-client privilege.  You plug my name

20    and Shadur's name and you'll find cases or a case that deals

21    extensively with what constitutes a document.  The fact that a

22    document goes back and forth between a lawyer does not make it

23    privileged.

24              MR. KERTEZ:  Well, your Honor, if you look at what it

25    is is a letter or rather it looks like it's some (inaudible) to

1    Bell and it concerns a legal matter.

2          THE COURT:  You know what?  You don't want to listen

3    to what I said to you, don't do it.  You'll wind up turning the

4    stuff over.  I'm telling you, spend five minutes and read a

5    couple of cases and it will help you.  Here, I'll tell you

6    what, since you're all here I'll give you the cases.  (Pause.)

7          All right, I'm going to -- I'm going to -- Number 2-

8    11 I'm going to grant in part and deny in part.  I'm going to

9    grant the part that requires you to produce a better privilege

10   log, one that complies with the Federal Rules of Civil

11   Procedure.  I don't think this does.  And I'm going to deny it

12   to the extent that it seeks to compel you to produce the

13   documents listed in the privilege log.

14         MR. KERTEZ:  How much time, your Honor?

15         THE COURT:  I don't know.  How much time do you need,

16   folks?  Discovery is over.  There doesn't seem to be a gigantic

17   rush.  You have no trial date.  You have no dispositive motion

18   date, do you?

19         MR. LONGO:  No.

20         MS. WERTH:  No, your Honor, none.

21         MR. KERTEZ:  Your Honor, while we're on this, what we

22   would like is if we could have till June 30th to initiate and

23   propound discovery regarding the new claims in the case.

24         MS. WERTH:  Which Judge Gottschall has allowed us.

25         THE COURT:  Go ahead.  Why do you need till June

```
 1   30th?  Do it.  I'm not going to give you a cut-off.  Just do
 2   it.
 3            MS. WERTH:  Okay.
 4            MR. LONGO:  But there's no motion, your Honor,
 5   pending.
 6            THE COURT:  So what?
 7            MS. WERTH:  We are asking the Court now --
 8            THE COURT:  So what?  Everybody is here.  You want to
 9   come in on a motion that they're going to file and drag you in
10   here?  I would think if they wanted to do that then you'd want
11   it resolved here and I said no you'd have a fit and you'd be
12   right.
13            MR. KERTEZ:  Judge Gottschall gave us --
14            MR. LONGO:  Your Honor, the time, Judge Gottschall
15   gave a certain amount of time to file that discovery.  That
16   time is passed.
17            MR. KERTEZ:  Well, the problem, the problem with it
18   is I was on a leave of absence.
19            THE COURT:  Oh, I see what you want.  You want --
20   Have you not complied with her schedule?
21            MS. WERTH:  Your Honor, she gave us 14 days after he
22   filed the second amended complaint which, by the way, was a day
23   late.  So he hadn't complied --
24            THE COURT:  All right, so you get --
25            MS. WERTH:  But let me just finish.
```

```
1            THE COURT:  You -- Yes.

2            MS. WERTH:  And then we -- It was a very lengthy

3    second amended complaint.  It has -- It's twice the length of

4    what the original, the prior complaint was, and we asked the

5    Court for additional time to answer that complaint that she

6    (inaudible).

7            THE COURT:  Well, if it's twice as long then that's

8    not just an amended complaint.  She didn't give him leave to

9    amend what was on file.  She gave him leave to add something.

10           Did he amend the other counts?

11           MS. WERTH:  Your Honor, my point is that we've asked

12   for additional time to answer that complaint and -- (inaudible,

13   multiple voices) --

14           THE COURT:  You ought to answer my question.  And Ms.

15   Werth, you ought to listen.  Did he amend the other counts that

16   should not have been amended?  There's a difference between

17   amending and beefing up everything that's already on file and

18   adding something, or did he just add something?

19           MS. WERTH:  Your Honor, I believe, and I will have to

20   make doubly sure, I believe that he has beefed up his earlier

21   counts as well.

22           THE COURT:  Well, that's not what he was given leave

23   to do.  So you folks will have to deal with Judge Gottschall on

24   that.  What is it that I can do for you?

25           MS. WERTH:  Your Honor, we just need until a certain
```

1  time to depose and propound some requests to defendant, the new

2  complaints.

3          MR. LONGO:  Your Honor, we're going to Judge --

4  Again, I'm going to object because there's no notice on this.

5  If there were notice I would be prepared to argue it, number

6  one.  Number two, Judge Gottschall gave a strict certain amount

7  of time, number of days for them to file --

8          THE COURT:  Here's the case.

9          MR. LONGO:  -- that discovery.

10          THE COURT:  Here's one of the cases.  You can find

11  the rest yourself.  It's 2007 Westlaw 1052495.  It's Steele vs.

12  Lincoln Financial Group, April 3d, 2007.  It --

13          MR. KERTEZ:  Can we have those numbers again?  I'm

14  sorry.

15          THE COURT:  Yes.  2007 Westlaw 1052495, Northern

16  District of Illinois 2007.  It's quite short and here, for

17  example, is:

18      "The protection of the privilege extends to confidential

19      communications made by a client to his lawyer where legal

20      advice of any kind is sought from a professional legal

21      advisor in his capacity as such.  The privilege is limited

22      to situations in which the attorney is acting as a legal

23      advisor.  Business advice does not count and is not

24      protected.  While the privilege is deemed generally to

25      apply only to communications by the client, statements

1      made by the lawyer to the client will be protected where

2      those communications rest on confidential information

3      obtained from the client or where those communications

4      should reveal the substance of a confidential

5      communication by the client."

6           As Judge Shadur summarized in whatever:

7      "Communications from the attorney to the client should be

8      privileged only if the statements do, in fact, reveal

9      directly or indirectly the substance of a confidential

10     communication by the client.  Disclosures from a client to

11     an attorney are likewise only entitled to limited

12     protection as the privilege protects only those

13     disclosures necessary to obtain informed legal advice

14     which might not have been made absent the privilege."

15          There's lot of other cases if you --

16          MS. WERTH:  Your Honor, we will look at the cases --

17          THE COURT:  You ought to take a look.

18          MS. WERTH:  -- and we will present --

19          THE COURT:  And the idea --

20          MS. WERTH:  -- a revised --

21          THE COURT:  -- the idea --

22          MS. WERTH:  -- privilege log.

23          THE COURT:  -- that simply because a lawyer is

24     communicating with a client anything that transpires is

25     privileged just isn't the law.

1          MS. WERTH:  We will correct the deficiencies in the
2     (inaudible).
3          MR. LONGO:  And furthermore they have to establish
4     that the person they were corresponding to is the client.
5          MS. WERTH:  If the --
6          THE COURT:  You've won part of the motion and you
7     can't do better than that today.  They're going to re-do it.
8     You're not getting the documents.  We'll see what they come up
9     with in terms of the privilege log.  And you're going to --
10          MS. WERTH:  Your Honor, we just wanted to get
11     clarification on the ruling that we are allowed to --
12          THE COURT:  Oh, sorry, yes.
13          MS. WERTH:  -- (inaudible, multiple voices).
14          THE COURT:  And you have until June --
15          MR. LONGO:  Your Honor, I didn't finish my objection.
16      The second objection, your Honor, is that Judge Gottschall was
17     very clear in her order that she did not want us --
18          THE COURT:  The Judge was very clear that you file by
19     a certain date.  You filed late without permission.  What about
20     that?
21          MR. LONGO:  No, I don't believe that's true.
22          THE COURT:  I know, Mr. Longo.  Nothing that anybody
23     says is true.
24          MR. LONGO:  What I'm saying is they're asking for an
25     extension of time beyond the time that she allotted, and they

1  don't provide any just cause or any reason to explain the undue

2  delay here.

3          THE COURT:  I thought I was just going to hear that

4  you were --

5          MR. KERTEZ:  I was on a leave of absence, your Honor,

6  for five weeks.

7          MR. LONGO:  They have three attorneys on this case.

8  They've had --

9          MR. KERTEZ:  I'm the supervisor on this case.

10          MR. LONGO:  They've had two attorneys --

11          MR. KERTEZ:  (Inaudible, multiple voices) --

12          MR. LONGO:  They've had two attorneys on the case

13  while Mr. --

14          MS. WERTH:  (Inaudible, multiple voices) -- Mr.

15  Longo.

16          MR. LONGO:  (Inaudible, multiple voices) --

17          THE COURT:  It's really extraordinary.  You're the

18  most -- In this case you are the most demanding lawyer.  You

19  don't want to give an inch to anybody for anything.

20          MR. LONGO:  Your Honor, that's not true.  I'll

21  explain why.  I have agreed --

22          THE COURT:  It's now 10:35.

23          MR. LONGO:  May I just respond to that?  I've agreed

24  to like five extensions of time and the record supports that.

25  We asked for an extension of time a week ago or so; the

```
 1   defendant adamantly, vehemently objected to it.  And --
 2             MS. WERTH:  Your Honor, --
 3             MR. LONGO:  -- that's just not proper amongst
 4   attorneys.
 5             MS. WERTH:  Your Honor, if I may?  The (inaudible)
 6   deposition was taken on May 21st because that was the date that
 7   was suitable to Mr. Longo.  I mean he has -- I have never had a
 8   case like this --
 9             MR. LONGO:  Nor I.
10             MS. WERTH:  -- with counsel quite like this.
11             THE COURT:  May I say, Mr. Longo --
12             MR. LONGO:  Nor I have had counsel like this.
13             THE COURT:  -- Ms. Werth, nor I.
14             MS. WERTH:  It's just astonishing, your Honor.
15             THE COURT:  Nor I.  So in other words you want to
16   object to their having time to be able to respond and defend
17   against your new claim.  Well, you're technically right.  I
18   can't change Judge Gottschall's order.
19             MS. WERTH:  Your Honor, Judge Gottschall's order is
20   not that.  Judge Gottschall's order is --
21             THE COURT:  It's not that?
22             MS. WERTH:  -- that all discovery is to go according
23   to Judge Cole's discovery schedule and that was May 16th and
24   then she gave us additional time for -- (inaudible, multiple
25   voices).
```

```
 1              THE COURT:  I mean I can tell you --
 2         MS. WERTH:  (Inaudible, multiple voices) --
 3              THE COURT:  I can tell you I can do two things.  I
 4    wouldn't dream of bothering Joan Gottschall with this utter
 5    nonsense.
 6         MS. WERTH:  Yes.
 7              THE COURT:  So what I would do, if I'm precluded, in
 8    other words, if she's got an order with a time frame in it --
 9         MS. WERTH:  Yes.
10              THE COURT:  -- I'll simply send her an e-mail and say
11    Dear Joan, another dispute has arisen, can I change your order?
12     And she'll say yes and I'll issue an order.  Or you can be
13    magnanimous and I'll enter the order today.  You tell me what
14    you want to do, Mr. Longo.  But I have to say this:  I believe
15    in merits discovery, in merits-based resolution of cases, not
16    in cases of lawyers delighted in let's manufacture discovery
17    disputes.  And you're not going to win this case without your
18    opponent having an adequate opportunity to respond, any more
19    than they're going to win without you having an adequate
20    opportunity to prosecute.  And I've made that as clear to you
21    as can be.  There isn't anybody in this building who would have
22    given you the kind of time that I've given you.  Nobody.
23    Nobody on this earth.
24              So I'm not going to let you, because of a couple of
25    week delay, preclude somebody from responding.  You effectively
```

1    want a default judgment because they didn't file on time or

2    they're not done.  Right?  Is that it?  Is that what you want?

3     So you tell me what you want to do.

4              MR. LONGO:  Your Honor, I --

5              THE COURT:  But I'll tell you this:  If you want to

6    do it that way then I'm going to enforce every rule that

7    exists.  If your margins aren't right I'm going to enforce

8    those rules.  If your briefs are repetitive I'm going to

9    sanction you.  You tell me what you want to do because I don't

10   think it's very -- I think it's cheeky at best for you to

11   insist on certain things and have a different set of rules for

12   your opponents.  I wouldn't let -- I wouldn't let -- I wouldn't

13   let the City do it to you and I haven't.  And by heavens, I'm

14   not going to let you do it to them.  You tell me how you want

15   me to do it.

16             Do you want me to ask Judge Gottschall's permission

17   to change the order?  Now Ms. Werth tells me I've got to go

18   back and look.  Ms. Werth tells me that it's here for

19   discovery, and but if she set an order then I don't have

20   technically probably the right to change her order as a

21   jurisdictional matter.  She's not going to care.  But I want to

22   know if I give them the time without consulting with her, I

23   don't want you running up there and appealing my order because

24   I don't think that's appropriate, so you tell me how you want

25   me to do it.

1    MR. LONGO:  Well, but let me tell you my position,
2    your Honor.  First of all --
3    THE COURT:  For heaven's sakes, Mr. Longo, you can't
4    do the simplest thing.  Simply --
5    MR. LONGO:  Well, your Honor, let me just tell you my
6    position.
7    THE COURT:  I'll do it the way I want to do it.
8    Thanks for coming in, everybody.
9    MS. WERTH:  Thank you, your Honor.
10    MR. LONGO:  Judge, let me --
11    THE COURT:  What's the date that you need?
12    MR. KERTEZ:  It's June 30th, your Honor.  (Inaudible)
13    initiate discovery by June 30th.  (Inaudible).
14    THE COURT:  And Mr. Longo objects.
15    MR. KERTEZ:  Yes.
16    THE COURT:  Okay.
17    MR. KERTEZ:  Thank you.
18    THE COURT:  After filing a day late it would seem to
19    me that maybe what you want to do is --
20    MR. LONGO:  I don't believe -- (inaudible, multiple
21    voices) --
22    THE COURT:  I'll ask -- I'll ask -- Well, I don't
23    know.  I'll ask Judge Gottschall.  Maybe she'll want to strike
24    the pleading.
25    MS. WERTH:  Thank you, your Honor.

1          MR. KERTEZ:  Thank you, Judge.

2          MR. LONGO:  Your Honor, just for the record --

3          THE COURT:  If you file the motions, Mr. Longo, that

4    are repetitive from this point forward, repetitive, if you do

5    what I think has been done to a certain extent --

6          MR. LONGO:  I will agree to it.  I will not object.

7          THE COURT:  Put in the order that you have until

8    June --

9          MR. LONGO:  But I don't -- Does that satisfy this

10   Court?    (Pause.)

11         THE COURT:  Send me -- Well, you'll just send me the

12   order and I'll take a look at it.  We're adjourned.

13         MR. LONGO:  Couldn't we just draft it right now, your

14   Honor?

15         THE COURT:  No.

16         MR. LONGO:  Just so we're all -- while memories are

17   fresh?

18         THE COURT:  Well, how exactly -- what kind of order?

19    This isn't the state court.  We don't write things out.

20         MR. LONGO:  No, what I mean is we write it out, we

21   agree upon it and then it can be sent to you.

22         THE COURT:  Be my guest.  Come around and let me know

23   how you're doing.

24         MR. KERTEZ:  Well, unfortunately I have another

25   (inaudible) that I have.  I didn't expect --

1          MR. LONGO:  It seems worth it, sir.

2          MS. WERTH:  No, I have to leave.  (Inaudible,

3 multiple voices) --

4          MR. KERTEZ:  We'll (inaudible) with you with an e-

5 mail if you (inaudible).

6          MS. WERTH:  (Inaudible).

7                    (Hearing adjourned.)




     I, RIKI SCHATELL, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.


/s/ Riki Schatell                    May 6, 2009
                                     Date