**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DETLEF SOMMERFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 3132 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Detlef Sommerfield has been a Chicago Police Officer for many years. During much of that time, he served in the Chicago Police Department's ("CPD's") Eighth District. Sommerfield sued the City of Chicago (the "City") alleging that one of his supervisors at the Eighth District, Sergeant Lawrence Knasiak, engaged in a pattern of anti-Semitic and anti-German harassment against Sommerfield. Sommerfield is of German national origin, and he identifies as Jewish. Sommerfield also alleges that he was subject to other forms of discrimination based on his religion and national origin, and that, once he complained about this discrimination, his supervisors began retaliating against him. Sommerfield and the City have filed cross-motions for summary judgment.

## I. BACKGROUND

Sommerfield joined the CPD in July 1994 and has continued to serve as a police officer since that time. (*See* Def.'s Ex. 1 at D0739.) By the year 2000, Sommerfield had been assigned to the CPD's Eighth District. He served on the third watch in the Eighth District until August 2007, when he received a requested transfer to the First District. (Def.'s Rule 56.1 Stmt. ¶ 1.) During much of Sommerfield's time at the Eighth District, Lieutenant Carson Earnest served as the Watch Commander and was responsible for assigning officers to specific beats or duties each

day.  (*Id.* ¶ 2.)  Other senior officers who worked at the Eighth District with Sommerfield included Knasiak and Sergeants Betty Woods and Christine Deierl (formerly Christine Pickering).  (*Id.* ¶¶ 3-6.)  The parties dispute the extent to which these other officers, especially Knasiak, exercised control over Sommerfield's day-to-day activities.

Sommerfield alleges that, in approximately 2000, Knasiak began publicly making frequent offensive and hostile comments about Sommerfield's Jewish religion and German national origin:

> Sgt. Knasiak would say to me and/or others at the Chicago Police Department: 1) why didn't Hitler kill all of you Jews; you should know, you are one; 2) burn Jew burn; 3) f--k--g Jew boy; 4) you Jews are bloodsucking parasites; 5) don't you two jagoffs go pulling over Jews and niggers all night; 6) Germans should be shot in the head for not getting rid of the Jew problem; 7) did your parents crawl from under the fence in the concentration camp; 8) f-k--g Germans can't do anything right; they missed a whole bunch of Jews and now they are living in this f--ked up country; 9) Germans are just like niggers, couldn't get rid of them then, can't get rid of them now; 10) how do you fit 1000 Jews inside of a car--by putting them in the ashtray and so forth.

(Pl.'s Ex.1 ¶ 3.)  The exact details of the harassment are somewhat hazy.  Sommerfield cannot recall any specific dates on which harassing remarks were made.  But he insists that Knasiak made these remarks repeatedly and continuously over multiple years.  In affidavits provided to the court, some of Sommerfield's co-workers corroborate Sommerfield's account, although none of these other officers are able provide many specifics.

Sommerfield avers that he complained repeatedly to Knasiak, Earnest, Woods, and Deierl.  (Pl.'s Ex. 1 ¶¶ 4-5.)  Sommerfield complained to CPD's Internal Affairs Division ("IAD") about harassment in March 2004, and an official investigation or complaint register ("CR") was initiated on March 16, 2004.  (Pl.'s Ex. K at D0819.)  IAD investigator Christopher Taliaferro conducted the investigation into Sommerfield's CR, and as a result, on April 30, 2007, the Superintendant ordered that Knasiak be suspended.  In June 2004, Sommerfield filed a

2

charge against the City with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Ex. 1 at D0761.)  The EEOC investigated the charge and issued a determination on November 29, 2004 stating that "evidence obtained in the investigation establishes reasonable cause to believe that [CPD] violated Title VII by harassing [Sommerfield] based on his national origin, German, and religion, Jewish."  (Pl.'s Ex. 17.)

Sommerfield alleges that, after complaining, the harassment continued and that his supervisors began inflicting further acts of discrimination.  According to Sommerfield, he was often assigned undesirable duties, was forced to use his own car, to work alone, to work in dangerous parts of the city, and had his starting times changed regularly.  (Pl.'s Ex. 1 ¶¶ 6-17.) On March 15, 2004, Knasiak initiated a CR against Sommerfield for alleged insubordination. (Def.'s Ex. 16 at D0998.)  After a lengthy investigation, the Superintendent of Police, Philip Cline, ordered that Sommerfield be suspended on June 14, 2006.  (*Id.* at D0987.)  Other police officers initiated CRs against Sommerfield in January 2003, December 2004, and April 2005. (Def.'s Ex.1 at D1090, D1148, D0938.)  As a result, Sommerfield served two more suspensions and was reprimanded once.  (*Id.* at D1071, D02128.)  Sommerfield was also denied a position as a K-9 handler sometime in 2006 or 2007, even though he was on a list of well-qualified candidates.  (Def.'s Rule 56.1 Stmt. ¶ 22.)

On July 12, 2006, Sommerfield filed an additional EEOC charge complaining of retaliation.  The EEOC investigated the charge and issued a determination on August 14, 2009 that there was "reasonable cause to believe that [Sommerfield] was retaliated against for engaging in protected activity, in that he was subjected to different terms and conditions of employment, discipline and suspension in violation of Title VII."  (Pl.'s Ex. C.)

Sommerfield filed his original complaint in this case on June 6, 2006.  (Doc. 1.)  The

most recent version, Sommerfield's Second Amended Complaint (the "Complaint"), was filed

May 10, 2008.  That Complaint asserted five counts.  Count I alleges discrimination and

harassment based on religion.  Count II alleges discrimination and harassment based on national

origin.  Count III alleges retaliation.  And Counts IV and V each allege violations of 42 U.S.C.

§§ 1981 and 1983.  Sommerfield's case has a long history which need not be discussed for the

purposes of this opinion.  At this point, the only defendant in this case is the City, and it has

moved for summary judgment on all of Sommerfield's claims.  (Doc. 413.)  Sommerfield has

made cross motions for summary judgment and has moved to strike the City's affirmative

defense.  (Docs. 354, 355, 375.)  There are a number of other related motions that remain

pending which the court will also address.

## II. ANALYSIS

### A. Sommerfield's Motion for Sanctions

As a preliminary matter, Sommerfield has filed a motion for sanctions against the City.

(Doc. 488.)  Sommerfield complains that the City failed to disclose evidence in response to his

document requests.  The allegedly withheld evidence is apparently two resolutions passed by the

Chicago City Council congratulating Knasiak on his retirement from CPD on November 13,

2007 and February 6, 2008.  The resolutions are, of course, publicly available.  As the City

points out, when searching for "Lawrence Knasiak" on Google, the first two search results link

to the evidence.

Even if Sommerfield could show that the City's conduct is technically sanctionable, the

court does not see any reason to believe the City acted in bad faith or that Sommerfield has

suffered any prejudice whatsoever.  Sommerfield contends that this latest slight by the City is

4

part of a pattern of discovery misconduct. In support of this argument, Sommerfield points to court orders regarding depositions and settlement negotiations which the City allegedly violated, and he contends, the City repeatedly acted to obstruct depositions. All of this earlier complained of conduct occurred more than two years ago. This is ancient history, and the court declines Sommerfield's offer to peer back in time to examine the City's conduct in 2007 and 2008.

Sommerfield's motion is denied.

## B. Summary Judgment Standard and Procedure

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the summary judgment stage, the court should view the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Cedillo v. Int'l Ass'n of Bridge & Structural Iron Works, Local Union No. 1*, 603 F.2d 7, 11 (7th Cir. 1979). However, the evidence presented at this stage must comport with the Federal Rules of Evidence and be admissible at trial, *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), or it must consist of affidavits "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant is competent to testify on the matters stated," Fed. R. Civ. P. 56(e)(1).

In addition to complying with the Federal Rules, the parties must also adhere to the Local Rules for the Northern District of Illinois and this court's Standing Order Regarding Motions for Summary Judgment. Local Rule 56.1 provides that the moving party shall serve and file:

1) any affidavits and other materials referred to in Fed. R. Civ. P. 56(e);

2) a supporting memorandum of law; and

3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law . . . .

The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.

L.R. 56.1(a). The party opposing summary judgment is required to respond with its own supporting evidence, memorandum of law, and "a concise response to the movant's statement . . . ." L.R. 56.1(b). The opposing party's Rule 56.1 statement should also contain "any additional facts that require the denial of summary judgment." *Id*. The opponent must include references to its supporting materials. *Id*. Local Rule 7.1 sets a page limit of fifteen pages for all briefs. Any briefs exceeding that limit must contain a table of contents and table of cases, and, if a party fails to seek prior leave to file a brief in excess of the limit, the brief is subject to being stricken by the court. L.R. 7.1. This court's Standing Order makes clear that all argument must be contained in the party's brief, and not in the Rule 56.1 statement. Standing Order at 1-2. The court may deny a motion for summary judgment for failure to comply with the rules.

The purpose of the procedures set forth in these rules is not to burden counsel with technical requirements. Rather, this process is designed to assist the court in focusing on the actual disputes in the case. The Rule 56.1 statements should be limited to key facts upon which

the summary judgment motion will succeed or fail.  Each paragraph should contain a single fact, and a reference to the party's best evidence for that fact.  A long list of references to the record is not necessary because, at this stage, the party need only show that a dispute exists.  This is not the opportunity for each side to try and prove its case.  If multiple references are necessary to support a paragraph, that suggests the paragraph includes an inference, rather than a fact.  All inferences from the facts should be contained in the party's brief.  *See* Standing Order at 2.  The opposing party's response should be brief.  If the fact is undisputed, nothing more need be said. If the fact is disputed, the opponent should simply state "Disputed," give no more than a brief explanation, and include a reference to the record.  Again, one or two references to the record is sufficient.

The parties in this case have failed to conform their motions to this procedure.  The City's Rule 56.1 statement includes seventy-nine paragraphs—one less than the maximum of eighty permitted by Local Rule 56.1(a).  But each paragraph contains numerous facts.  This bulking up of the statement makes it very difficult for the opposing party to respond concisely, and it is almost impossible for the court to discern where the true dispute lies.  Sommerfield's failure to comply with the rules is even more egregious.  Sommerfield has divided his motion for summary judgment into two separate motions (not including his additional motion to strike the City's affirmative defense).  For each one, Sommerfield has filed a lengthy motion filled with argument in addition to an oversized memorandum of law.  He includes no table of cases.  The court could strike Sommerfield's motions for failure to comply with Local Rule 7.1, but, as shown below, each one is easily disposed of on the merits.  Both parties have violated the letter and spirit of the rules regarding the Rule 56.1 statements by including lengthy argument in these documents and by loading up each paragraph with long string citations to portions of the record.

As a result, these statements are mostly unhelpful to the court. The court has little confidence that a second round of briefing would improve the situation, so the court proceeds to address the merits of each motion.[1]

### C. Sommerfield's Motion to Strike the City's Affirmative Defense and Motions for Summary Judgment

Sommerfield has moved to strike the City's affirmative defense. Sommerfield, himself, recognizes that the motion is untimely. Federal Rule of Civil Procedure 12(f) permits a party to make a motion to strike an affirmative defense within 21 days of being served with the answer containing the defense. The city filed its amended answer on April 20, 2009. (Doc. 315.) Sommerfield's motion was filed on September 14, 2009. (Doc. 354.) On its own initiative, however, the court may choose to address the merits of a motion to strike. *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399 (7th Cir. 1991). Looking to the merits in this case, it is clear that Sommerfield's motion should be denied.

Sommerfield contends that, in violation of Magistrate Judge Cole's May 12, 2008 order (Doc. 199), the City expanded its affirmative defense based on the Supreme Court cases *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). In the May 2008 order, Judge Cole denied Sommerfield's request to strike the City's *Farragher/Ellerth* defense as lacking sufficient factual definition. Judge Cole concluded that although the City's answer included only a bare bones statement of the defense, Sommerfield had sufficient notice through the City's interrogatory responses that the defense

---

[1] Sommerfield has filed "corrected" versions of many of his summary judgment documents including his motions, memoranda of law, Rule 56.1 statements, and appendices. (*See* Docs. 382, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456.) These documents were filed after briefing on Sommerfield's motions was already complete. The City has not sought any relief in light of these late filings—at least as far as the court can ascertain, and the "corrected" documents do not appear to differ significantly from the originals. But the court notes that plaintiff should have sought leave to make any corrections. The court and the City should not have to compare dozens of documents to determine if Sommerfield is trying to sneak something past the court's attention. Finally, Sommerfield has improperly designated several documents as new motions. The clerk is ordered to terminate pending motions appearing at docket entries 365, 452, 453, 454, and 456.

would "be based on plaintiff's failure to have availed himself of procedures that the City has put in place to deal with the kind of discrimination claims involved in this case." (Doc. 199 at 13.) Sommerfield thus understood that the *Farragher*/*Ellerth* defense required the City to prove that it "had a policy and procedure in place to resolve and handle discrimination complaints" and that Sommerfield failed to avail himself of the appropriate procedure. (*Id.* (quoting Sommerfield's motion).) Judge Cole ordered that, "If, however, the defense is something other than Mr. Sommerfield's mere failure to have complained about the discrimination and retaliation alleged in the complaint, the City must inform Mr. Sommerfield of the additional aspects of that defense." (*Id.* at 14.) This court later affirmed Judge Cole's order. (*See* Doc. 224.)

> In an amended answer, the City rephrased its bare bones defense as follows:
>
> If plaintiff were subjected to a hostile working environment under applicable law, defendant is not liable because defendant exercised reasonable care to prevent and promptly correct any harassing behavior and plaintiff unreasonably failed to take advantage of preventative or corrective avenues or otherwise avoid injury.

(Doc. 315 at 36 ¶ 3.) This statement of the defense does not appear to materially differ from the defense as described in Judge Cole's order. The court does not agree with the premise of Sommerfield's motion that the City has somehow expanded its defense.

Sommerfield suggests that Judge Cole's order had the effect of limiting the City to arguing only the second element of the *Farragher*/*Ellerth* defense: that Sommerfield failed to avail himself of the City's procedure for addressing discrimination. Sommerfield contends that he was denied discovery regarding the existence of procedures to prevent and correct discrimination. This argument is nonsensical. The City can only establish the second element of the defense if it first establishes that it had a procedure in place for responding to discrimination. And Judge Cole found that Sommerfield had already obtained discovery of the City's policy. (Doc. 199 at 13.) The contours of City's defense are clear, and the motion is denied.

Sommerfield has also filed a separate motion for summary judgment on the City's *Farragher/Ellerth* defense. (Doc. 354.) Sommerfield's motion first argues that, because Supreme Court case law requires the City to prove both elements of the *Farragher/Ellerth* defense, and because the court previously limited the City to arguing only the second element, the City cannot establish the defense as a matter of law. If this argument is not completely disingenuous, it is certainly meritless. Neither Judge Cole nor this court would have refused to strike the City's defense while, at the same time, limiting the defense in a way which would make it impossible to establish the defense. In any event, the court will deny Sommerfield's motion as moot. The *Farragher/Ellerth* defense only becomes necessary if Sommerfield can first establish that he was subjected to discrimination by a supervisor. *See Ellerth*, 524 U.S. at 765. As explained below, Sommerfield has failed to make this required showing, so the affirmative defense will never be at issue.

Sommerfield's other motion for summary judgment is also easily disposed of. Sommerfield contends that the City's internal investigation which resulted in the suspension of Knasiak is an admission of guilt, and that the admission along with other evidence conclusively establishes liability on each of the counts of the complaint. Sommerfield cites cases dealing with Federal Rule of Evidence 801(d)(2) and party admissions. Even if it were true that evidence of the investigation is admissible—and the court does not so hold at this time—Sommerfield cites no authority for the proposition that the admission binds the city in this litigation. The City and the CPD officials involved with this case have denied that any harassment or act of discrimination or retaliation occurred. Sommerfield, as the plaintiff, bears the burden of establishing a *prima facie* case of discrimination. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir. 1994) ("[T]he ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."). The City clearly has evidence to contradict that offered by Sommerfield, and the City is entitled to put Sommerfield to his burden of proving his claims at trial.

## D. The City's Motion for Summary Judgment

The City has moved for summary judgment on each of Sommerfield's five counts. The City's forty page motion, in essence, challenges Sommerfield's ability to prove every single element of each count. Although all the facts are hotly disputed, the City contends that Sommerfield can point to no evidence establishing that a dispute actually exists.[2]

### 1. Counts I and II: Discrimination Based on Religion and National Origin

Counts I and II of Sommerfield's Complaint challenge the same alleged acts of discrimination and harassment. Count I is entiled "Religious discrimination against the City of Chicago," and Count II is entitled "National origin discrimination: German; against the City of Chicago." (Doc. 190 at 4-9.)

#### a. EEOC Charge

The City first argues that, to the extent Sommerfield's claims of discrimination are based on discrete adverse employment actions, the claims are barred because Sommerfield failed to raise them in his June 24, 2004 EEOC charge. A Title VII plaintiff may not raise claims that do not fall within the scope of earlier allegations contained in his EEOC charge. *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). To determine whether a claim falls within the scope of an EEOC charge, the court looks "to whether the allegations are like or reasonably related to those

---

[2] Sommerfield has moved to strike the City's reply brief concerning its motion for summary judgment. (Doc. 475.) Sommerfield argued in response that some of the defendant's exhibits were unauthenticated hearsay. The City, in reply, provided affidavits to authenticate its exhibits. Sommerfield argues that the City should not be permitted to include new evidence in reply and that Sommerfield has been prejudiced. However, Sommerfield does not even attempt to argue that the affidavits are insufficient to authenticate the City's evidence. Thus the court cannot find any prejudice. Sommerfield's motion is denied.

contained in the EEOC complaint. If they are, then we ask whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id.* The charge should be read liberally. *Id.* at 1047. But, "[a]t a minimum, this means that the EEOC charge and the complaint must describe the same conduct and implicate the same individuals." *Id.* at 1046; *accord Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996) (upholding grant of summary judgment with respect to sexual harassment allegations and allegations of disparate treatment in training, job placement, and compensation where EEOC charge mentioned only disparate treatment in the employer's response to absenteeism and provision of sickness and accident benefits).

Sommerfield's charge alleged:

I was hired by the Respondent as a Police Officer on July 5, 1994. Since January 2000, Respondent has subjected me and other officers to a racially hostile work environment. The Respondent has allowed a supervisor to consistently use offense [*sic*] racial remarks about Jewish people, Germans, African-Americans and Mexicans. I and other Police Officers have filed internal complaints about the hostile work environment but no effective action has been taken to stop the racial and national origin based remarks.

I believe that I have been discriminated against because of my religion, Jewish, and my national origin, German, in violation of Title VII of the Civil Rights Act of 1064, [*sic*] as amended.

(Def.'s Ex. 1 at D0761.) Next to "Issue/Action taken," he listed "HARASSMENT, RELIGION, NAT. ORIGIN." (*Id.* at D0765.) Next to "Basis/type of discrimination," he wrote "VERBAL ABUSE REGARDING RELIGION, RACE." (*Id.*) Where the questionnaire asked Sommerfield to "Explain why you feel the action taken against you was discriminatory," he wrote "CONTINUES VERBAL ABUSE." (*Id.*) Sommerfield also indicated on the form that he believed the action taken against him occurred because he "FILED OFFICIAL COMPLAINT

FORM WITH THE INTERNAL AFFAIRS OF THE CHICAGO POLICE DEPARTMENT."

(*Id.* at D0766.)

Sommerfield's EEOC charge can be reasonably read to include verbal harassment by Sommerfield's (unnamed) supervisor. However, the charge makes no mention of any of the specific employment actions that Sommerfield now alleges constitute actionable discrimination and retaliation under Title VII, including that he was assigned to work alone and in dangerous areas, was forced to switch beats and starting times, was forced to perform "dreaded hospital duty," was forced to use his own car for police business, was denied a promotion to K-9 handler, and was suspended. None of these actions fall with the scope of Sommerfield's EEOC charge which was limited to complaints of verbal harassment. Thus the City's motion should be granted to the extent that Sommerfield's Title VII claims cover these actions.[3]

    b.  Harassment

Title VII prohibits harassment based on an employee's religion or national origin which creates a hostile working environment. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (national origin harassment prohibited under Title VII); *Venters v. City*

---

[3]     Sommerfield's 2006 EEOC charge stated:

I was hired by Respondent as a Police Officer on July 5, 1994. On June 24, 2004, I filed a charge of discrimination (210-2004-05557) against Respondent based on my national origin and religion. Ever since this date, I have been subjected to different terms and conditions of employment by my immediate supervisors including being placed to work alone in high crime areas and being falsely accused of not providing police service while being at work. On June 29, 2006, I was suspended for five days for being allegedly insubordinated, [*sic*] and the suspension will take place on August 21, 2006. The other police officer who was accused of being insubordinated, was only verbally reprimanded.

I believe that Respondent has discriminated against me based on retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Pl.'s Ex. C.) Under "DISCRIMINATION BASED ON" Sommerfield checked only the box for "RETALIATION." Sommerfield does not argue that this charge could serve as a basis for Counts I and II. The court will not consider the issue *sua sponte*.

*of Delphi*, 123 F.3d 956, 974-75 (7th Cir. 1997) (religious harassment prohibited). Whether the harassment is based on religion, national origin or any of the other protected categories of Title VII, the analysis is the same. *Venters*, 123 F.3d at 975. In order to establish that a hostile environment existed, a plaintiff must demonstrate that he "has been subjected to 'behavior so objectively offensive as to alter the conditions of [his] employment.'" *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Conduct that is either sufficiently severe or pervasive may entitle a plaintiff to relief. *Id*.

The City argues that Sommerfield has no competent evidence of severe or pervasive harassment. Sommerfield's argument is generally disorganized, and he cites dozens of portions of his numerous summary judgment exhibits. The citations appear throughout his briefs on the three summary judgment motions, in his statements of material facts, and his response to the City's statement of material facts. Many of the record citations Sommerfield identifies cannot be found in the materials provided to the court, do not support his contention that harassment occurred, are not based on personal knowledge, are too conclusory or vague to be helpful, or do not identify any time period in which the harassment occurred. The court will not dig through hundreds of pages and dozens of exhibits in search of the evidence that Sommerfield bears the burden of identifying. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Nonetheless, the court has identified at least some evidence, cited in the response to the City's motion, that appears to support Sommerfield's position. Sommerfield submitted two affidavits of Officer Edward Burger, one of his co-workers. The second affidavit states:

> 8. On several occasions, from March 2004 until May or June 2004, Sergeant Knasiak at the police station when I was with officer Sommerfield stated, burn

14

Jew burn. Other officers were present. Indeed sergeants and lieutenants were next to Sergeant Knasiak.

9. I looked at the other sergeants and lieutenants when Sergeant Knasiak would say burn Jew burn and noticed that they did not reprimand Sergeant Knasiak in any way, but just looked at us.

. . .

17. At roll call, when Sergeant Knasiak would abuse me or Officer Sommerfield regarding our German nationality and Jewish heritage, many times Sergeant Knasiak would yell the abusive remarks regarding our German nationality and Jewish heritage across the room with approximately 5-10 police officers present.

18. These police officers included sergeants and lieutenants.

. . .

21. They did nothing to stop Sergeant Knasiak from continuing to abuse myself and officer Sommerfield regarding our nationality and Jewish heritage from approximately July 2003 until October 2005 while I was still in the eighth district.

22. I know they did nothing to stop Sergeant Knasiak because repeatedly and regularly, if not constantly, Sergeant Knasiak would abuse me and officer Sommerfield regarding our German nationality and Jewish heritage in the presence of other sergeants and[4]

(Pl.'s Ex. 22.) Sommerfield also cites a portion of his deposition:

Q: The reason I am asking you this, you very specifically identified certain times when he made certain comments to you. The last one is the latter part of 2004?

A: Yes.

Q: You haven't identified any other dates when he made those comments; why is that?

A: Well, because there are so many. So many numerous insults and personal attacks that I certainly do not know all of the dates. But even after December 2004 there were many, many instances while walking in the hallway or coming to work or in the parking lot where he made these jokes. What some people consider jokes. But those were insults that are not funny.

Q: So after 2004, he continued to make jokes based on your national origin or religion?

---

[4] The rest of the paragraph is cut off in the affidavit provided to the court.

A: I would not call it jokes, I would call it more of attacks.

Q: What were the attacks?

A: "Well, watch yourself little Jew boy.  I am going to get even with you, you fucking Jew boy."  There were quite a few.  And every time he said that to me, you could feel and see the anger because his face almost turned red and you could see the anger.  He just – the man was out of control.

Q: So this continued after December of 2004?

A: It even continued up until the summer of 2007, right before he retired.

(Pl.'s Ex. 24 at 61-62.)  These two pieces of evidence create a dispute of material fact regarding whether Sommerfield suffered pervasive or severe harassment.  According to Burger and Sommerfield, Knasiak made offensive and hostile statements to Sommerfield about his religion and national origin.  Burger and Sommerfield identify specific examples of discriminatory statements.  According to Burger the incidents occurred regularly in early 2004—thus, during the 300 days immediately preceding the filing of the June 24, 2004 EEOC charge.  And Sommerfield's deposition establishes that the harassment continued after 2004.  The evidence demonstrates that a dispute of material fact exists regarding whether the harassment occurred, that the harassment was pervasive and severe, that the harassment was based on Sommerfield's religion and national origin, and that Sommerfield's EEOC charge was timely.

The City challenges the use of Burger's affidavit which is one of several affidavits submitted by Sommerfield which have been heavily redacted.  (*See* Pl.'s Exs. 2 (Aff. of Edward A. Burger), 3 (Aff. of Margaret E. Baron), 22 (Second Aff. of Edward A. Burger), M (Aff. of John J. Minich), N (Aff. of Peter Trinidad), P (Aff. of Sherece Holland).)  The City previously moved to compel production of the entire affidavits.  (Doc. 372.)  At the hearing on the City's motion, Sommerfield claimed that redacted portions of the affidavits were privileged.  The court

entered and continued the motion and ordered Sommerfield to produce unredacted versions of the affidavits to the court in camera, and to provide the City with a privilege log within seven days. (Doc. 393.) Sommerfield provided the City with a privilege log (Doc. 394 Ex. 3), but the court never received the affidavits. In a footnote to one his briefs, Sommerfield asked the court for clarification of its order. (Doc. 394 at 5 n.2) The court did not notice this footnote until recently and, due to a clerical error on the docket, the court was unaware that the City's motion to compel remained pending.

The court now grants the City's motion to compel and orders Sommerfield to provide the City and the court with the unredacted affidavits within seven days. Sommerfield's privilege log includes six entries, one for each affidavit. The log lists the date, affiant, author—in each case, the author is Joseph A. Longo, Sommerfield's attorney—"subject," and privilege claimed. Sommerfield claims work product protection for each affidavit, and under the heading "subject" Sommerfield states that the redacted affidavit contains "information supporting plaintiff's allegations of the complaint." (Doc. 393 Ex. 3.) Sommerfield cites several cases holding that affidavits collected in advance of summary judgment need not be disclosed. However, in those cases, the party had not used portions of the affidavits as support for its motion. Here, Sommerfield waived whatever privilege may have existed by affirmatively using portions of the affidavits as exhibits to his motions. The holder of a privilege may not use the privilege as both a sword and a shield. *Hollinger Int'l Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 518 (N.D. Ill. 2005). Fairness dictates that the City be able to see the redacted portions of the affidavits to ascertain if they contradict the paragraphs that Sommerfield has chosen to disclose.

The court recognizes that its opinion relies, in part, on Sommerfield's redacted affidavits. If, after reviewing the complete affidavits, the City believes that new grounds can be identified in

support of summary judgment, the City may seek leave to file a new summary judgment motion

on that basis.[5]

      c.   <u>Liability for the City</u>

Where the harasser creating a hostile work environment is the plaintiff's supervisor, Title

VII imposes strict liability on the employer unless the employer can establish an affirmative

defense. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). "An individual

is not a supervisor unless he possesses the authority to directly affect the terms and conditions of

a victim's employment." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002) (emphasis

removed). The Seventh Circuit takes a narrow view of the definition of "supervisor," narrower

than other circuits and narrower than the EEOC's definition. *Rhodes*, 359 F.3d at 509 (Rovner,

J., concurring). In this circuit, a supervisor is generally one with the authority to hire, fire,

promote, demote, discipline, or transfer. *Andonissamy*, 547 F.3d at 848. The fact that a co-

worker has the power to direct work activities and recommend disciplinary action is not

sufficient to establish that individual is a supervisor. *Id.*

Sommerfield points to evidence which allegedly demonstrates that Knasiak had the

power to assign Sommerfield to particular duties and that Knasiak recommended Sommerfield

for suspension. The City disputes that the evidence establishes these facts. However, even

accepting Sommerfield's characterization of the evidence, Knasiak was not a supervisor for Title

VII purposes, as the Seventh Circuit has defined the term. Sommerfield has identified no

evidence that Knasiak exerted direct control over the terms of Sommerfield's employment.

Even though Knasiak was not Sommerfield's supervisor, the City might still be liable if it

were negligent in discovering or remedying the hostile work environment. *Id.* The portions of

---

[5]     Sommerfield moved to strike defendant's reply concerning its motion to compel. (Doc. 401.) The reply
was unnecessary because it is clear that the City is entitled to the affidavits. Consequently, Sommerfield's motion is
denied as moot.

Burger's affidavit and Sommerfield's deposition quoted above raise a dispute of material fact regarding whether the City was negligent in discovering and remedying the harassment by Knasiak. According to the affidavit and deposition, Knasiak repeatedly used anti-Semitic slurs in a public setting, and the slurs continued for several years.

The City argues that Sommerfield failed to take advantage of the proper channels for reporting the harassment. But even if this is correct, the City would still have been negligent because notice of harassment "may be presumed where the work environment is permeated with pervasive harassment." *Wilson v. Chrysler Corp.*, 172 F.3d 500, 509 (7th Cir. 1999), *overruling on other grounds recognized by Lee v. City of Salem, Ind.*, 259 F.3d 667 (7th Cir. 2001). Pervasive harassment is precisely what is alleged in Burger's affidavit and Sommerfield's deposition.

As to Counts I and II, summary judgment is granted in part and denied in part. The claims are thus limited to Sommerfield's allegation of a hostile work environment. [6]

## 2. Count III: Retaliation

Title VII also prohibits discrimination against employees because of opposition by the employee to unlawful employment practices. *Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007). An employee may prove discrimination by either the direct or indirect method. *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010). As to his retaliation claim, Sommerfield proceeds only under the direct method. Sommerfield must show that "(1) [he] engaged in statutorily

---

[6] In a footnote to the section of his brief discussing Counts I and II, Sommerfield states:

> The defendant fails to mention race discrimination/harassment. Therefore, the defendant does not move for summary judgment on such. Consequently, the plaintiff will not address it.

(Doc. 450 at 10 n.13.) This argument appears to the court to be completely disingenuous. Counts I and II encompass claims of religion and national origin discrimination, not race discrimination. The City has plainly moved for summary judgment on all of Sommerfield's claims. If a race discrimination claim is hiding somewhere in Sommerfield's complaint, he had the burden to come forward with the evidence.

protected activity; (2) [he] suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* (quoting *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008)).

Sommerfield's response to the City's motion discusses the retaliation claim over eight pages. The argument is not organized in any logical fashion. The court has attempted to review all of the record evidence of retaliation cited by Sommerfield in this portion of his brief. Several of the citations point to portions of documents that were not provided to the court; others point to evidence which does not support Sommerfield's contentions. In many places, Somerfield's only citation is "Supra." or "Infra." The court cannot determine whether these generic references are meant to incorporate other citations. In any event, the court will not sift through the lengthy record for Sommerfield's evidence. He alone bears the burden of adequately responding to the City's arguments and pointing the court toward the evidence establishing a genuine dispute of material fact.

The only direct evidence of retaliation that Sommerfield appears to rely on comes from his two affidavits and one of his depositions. Sommerfield's September 29, 2009 affidavit states:

> 5. Immediately after I began complaining about harassment/discrimination, retaliation began, including, but not limited to, the continued harassment, assigning me to dreaded hospital duty, requiring me to use my own car for work-related matters, refusing to assign me to a specific beat car, refusing to assign me a specific starting time, frequently changing my starting time, refusing to assign me to a partner and requiring me to work alone and so forth.

> 6. Even after I filed a 3/16/04 IAD complaint and a 6/24/04 EEOC complaint, the harassment continued for a few years. Indeed, the defendant's harassment continued even after I filed the lawsuit in 2006.

> 7. I found the harassment offensive, complaining to several supervisors for years.

> 8. Sgt. Knasiak and watch commander Lieut. Ernest were my supervisors, amongst others.

. . .

10. Sgt. Knasiak told me that I was stupid for filing a complaint of discrimination and harassment.

(Pl.'s Ex. D.)  Sommerfield's September 12, 2009 affidavit states:

4. Repeatedly, I respectfully asked Sergeant Knasiak to stop referring to my national origin, race and religion, but he ignored me, continuing to refer to them.

5. I complained about Sgt. Knasiak's personal attacks against my religious, race and national origin background to my supervisors, such as, on his watch, Sgt. Christine Pickering, Sgt. Betty Woods, and Lieut. Carson Ernest.

6. Before I began complaining about discrimination and harassment, my supervisors had not assigned me to dreaded hospital duty.

7. After I began complaining about harassment and discrimination, my supervisors regularly assigned me to dreaded hospital duty, despite my objections.

8. Before I began complaining about harassment and discrimination, I never had to use my car for work-related matters.  Rather, I used a police car.

9. After I began complaining about discrimination and harassment, my supervisors regularly required me to use my own car for police matters, despite my objections.

10.  Before I began complaining about discrimination and harassment, I was assigned to a specific beat car.

11. After I began complaining about discrimination and harassment, I was no longer assigned to a specific beat car, despite my objections.

12. Before I began complaining about discrimination and harassment, I had a specific starting time.

13. After I began complaining about discrimination and harassment, my supervisors no longer gave me a specific starting time, despite my objections. Rather, my supervisors frequently changed my starting time, despite my objections.

14. I complained to my supervisors that they had not assigned me to a specific beat car, a specific starting time and that they kept changing my starting time.

15. Before I began complaining about discrimination and harassment, I had a regular partner.

16. After I began complaining about discrimination and harassment, I did not
have a regular partner, despite my objections.

17. I complained to my supervisors that they were requiring me to work alone
without a partner regularly, though officers with lesser seniority had partners. I
also complained that working alone was dangerous. Nevertheless, my supervisors
continued to require me to work alone without a partner for years.

(Pl.'s Ex. 1.) Sommerfield clearly alleges retaliation in these affidavits. However, the court

cannot consider this evidence as meeting Sommerfield's burden to establish a genuine dispute of

material fact. Rule 56 provides that summary judgment may be granted where the opposing

party responds with affidavits that set out "specific facts showing a genuine issue for trial." Fed.

R. Civ. P. 56(e)(2). "Rule 56 demands something more specific than the bald assertion of the

general truth of a particular matter, rather it requires affidavits that cite specific concrete facts

establishing the existence of truth of the matter asserted." *Lucas v. Chicago Transit Auth.*, 367

F.3d 714, 726 (7th Cir. 2004). There are too many unanswered questions in these affidavits.

When did Sommerfield complain? And to which supervisor? What is "dreaded hospital duty?"

When was Sommerfield required to perform this duty, to work alone, to change starting times,

and to use his own car? How often was he required to do these things? Which supervisor

required him to do these things? These affidavits lack the specificity required by Rule 56, and

the court will not consider them.

In addition to the affidavits, Sommerfield provided testimonial support for his retaliation

claim. At his February 11, 2008 deposition, the following exchange took place between counsel

for the City and Sommerfield:

Q: Now, in paragraph 63 of the complaint -- of your complaint, you say that
Sergeant Knasiak would inform you that he would get you. Do you see that?

. . .

A: 63, yes.

Q: When did he say that to you?

A: Pretty much right after I filed the complaint against him with the Internal Affairs Division.

Q: Did anyone hear him say that besides you?

A: He made a statement to me, but he made that statement to the other police officers as well because they came up to me and they told me about it.

Q: When Sergeant Knasiak made that statement to you, where were you? Where did this take place?

A: Most of them happened in the hallway of the 8th District.

Q: How many times did he say that?

A: I would say, about three or four times.

Q: Was anyone present when he made the statement?

A: I do not remember.

(Pl.'s Ex. 24 at 49-50.) This evidence is sufficient to suggest that Knasiak sought to retaliate against Sommerfield after he complained to IAD in March 2004. Thus, to the extent that Knasiak continued to harass Sommerfield after March 2004, there is sufficient evidence of retaliation. "[R]etaliation can take the form of a hostile work environment." *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998). The court has already established that Sommerfield presented evidence that Knasiak's harassment affected the terms of Sommerfield's employment, and that the City was on notice of the harassment.

Sommerfield also contends that his three suspensions were the result of retaliation. However, the parties appear to agree that the Superintendent of police was the final decision maker with respect to the suspensions. There is no evidence that the Superintendent had a retaliatory motive. Sommerfield argues that Knasiak was part of the decision-making process for

one of the suspensions because Knasiak filed the complaint which led to the suspension. Even if Sommerfield is correct that Knasiak's complaint could serve as a basis for holding the City liable for retaliation, Knasiak's CR naming Sommerfield was filed on March 15, 2004. Sommerfield's CR naming Knasiak is dated March 16, 2004. There is no evidence that Knasiak knew about Sommerfield's CR before March 16. Sommerfield argues in his brief that he complained to Knasiak and other supervisors before March 2004. However, Sommerfield cites as evidence only his conclusory affidavits which do not identify any dates or otherwise give any specifics about when Sommerfield complained or what the content of the complaints were.

Sommerfield argues that he was denied a promotion to K-9 handler because of his suspensions, so that the failure to promote was indirectly the result of retaliation. But since Sommerfield has failed to establish that the suspensions were the result of retaliation, this argument necessarily fails.

Summary judgment is accordingly granted in part and denied in part on Sommerfield's retaliation claim. The claim is limited to Knasiak's verbal harassment of Sommerfield after March 2004.

### 3. Counts IV and V: §§ 1981 and 1983

In counts IV and V of the Complaint, Sommerfield asserts claims under 42 U.S.C. §§ 1981 and 1983, seeking redress for the same acts of discrimination, harassment, and retaliation alleged in the first three counts. In order to hold the City responsible for violations of these provisions, Sommerfield cannot rely on the doctrine of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (§ 1983); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989) (§ 1981). *Monell* requires Sommerfield to show that his constitutional injury is the result of an express policy, "a widespread practice constituting

custom or usage," or action by a final policymaker. *Kujawski v. Bd. Of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999).

First, Sommerfield argues that the Superintendent of Police was a final policymaker, that he had knowledge of the harassment by Knasiak, and that nothing was done to intervene. Local law defines who is the final policymaking authority, *id*., and, in the City of Chicago, it is clear that the Superintendent is not the final policymaking authority. *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992); *Ekerman v. City of Chicago*, No. 01 C 9686, 2002 WL 1008458, at *2 (N.D. Ill. May 16, 2002). Sommerfield points to City of Chicago Personnel Rules which, he argues, show that the City Council delegated to the Superintendent policymaking authority as to training, discipline, and equal employment opportunity. (*See* Pl.'s Ex. K at D0036, D0050-51, D0054.) The City contends that the rules cited by Sommerfield had been superseded by the time the alleged harassment began. But even assuming these rules applied, they only grant the Superintendant discretion in the area of personnel administration. "Mere unreviewed discretion" is not sufficient to establish liability under *Monell*; rather, Sommerfield must show that the City has delegated its authority to set policy. *Kujawski*, 183 F.3d at 739. There is no such evidence here.

Second, Sommerfield argues that the City is liable for failure to properly train its personnel regarding national origin and religious discrimination. According to Sommerfield, the City's EEO policy is deficient in many respects and none of Sommerfield's supervisors seemed to know how to handle Sommerfield's complaints. To succeed on a failure to train claim, however, it is not sufficient to allege that a municipality's training was inadequate. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989). Sommerfield must show "that in light of the duties assigned to specific officers or employees the need for more or different training is so

obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Sommerfield's evidence does not come close to meeting this high threshold.

Finally, Sommerfield argues that the City had a custom or practice of taking too long to investigate claims of discrimination and harassment. According to Sommerfield, the result is that those violating EEO guidelines are allowed to continue tormenting their victims. In his case, Sommerfield claims the investigation into the abuse by Knasiak lasted for three years. The City disputes that this is so. In any event, Sommerfield presents no evidence that the practice of prolonged investigations is widespread. He cites to the deposition of Lieutenant Clark, the City's 30(b)(6) witness who, he claims, stated that other investigations have taken multiple years. But Sommerfield has not provided the court with the relevant pages from the deposition transcript. Further, Sommerfield points to no evidence that these other extended investigations led to prolonged harassment.

Because Sommerfield's evidence cannot establish that the City is responsible under the *Monell* standard, the City is entitled to summary judgment on counts IV and V.

### III. CONCLUSION

Sommerfield's motion for sanctions (Doc. 488) is denied. Sommerfield's motion to strike the City's affirmative defense (Doc. 354) is denied. Sommerfield's two motions for summary judgment (Docs. 355, 375) are denied. The City's motion for summary judgment (Doc. 413) is granted in part and denied in part. The City's motion to compel (Doc. 372) is granted. Sommerfield's motions to strike the City's replies (Docs. 401, 475) are denied. The clerk is ordered to terminate docket entries 365, 452, 453, 454, and 456 which have been incorrectly designated as motions.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 20, 2010