1     IN THE UNITED STATES DISTRICT COURT
      NORTHERN DISTRICT OF ILLINOIS
2       EASTERN DIVISION

3 DETLEF SOMMERFIELD,     )
             )
4     Plaintiff,   )
             )
5    -vs-      ) No. 06 C 3132
             )
6 CITY OF CHICAGO,     ) Chicago, Illinois
             ) July 8, 2011
7     Defendant.   ) 10:30 a.m.

8
    TRANSCRIPT OF PROCEEDINGS - PRETRIAL CONFERENCE
9    BEFORE THE HONORABLE JOAN B. GOTTSCHALL

10 APPEARANCES:

11 For the Plaintiff:   JOSEPH A. LONGO
           Attorney at Law
12          2100 West Haven
           Mt. Prospect, Illinois  60056
13
           JACKSON LEWIS LLP
14          150 North Michigan Avenue
           Suite 2500
15          Chicago, Illinois  60601
           BY:  MR. JAMES F. BOTANA
16            MR. JASON A. SELVEY
            MR. NEIL H. DISHMAN

17

18

19     COLETTE M. KUEMMETH, CSR, RMR, FCRR
       Official Court Reporter
20      219 South Dearborn Street
        Room 2328-A
21      Chicago, Illinois  60604
       (312)554-8931
22

23

24

25

 1    (Proceedings heard in chambers:)

 2          THE COURT:  Okay.  Let's see who is here.  For the

 3    plaintiff is Mr. Longo, right?

 4          MR. LONGO:  And Hen Herman, H-e-n, H-e-r-m-a-n.

 5          THE COURT:  For the defendant?

 6          MR. BOTANA:  James Botana, B-o-t-a-n-a.

 7          MR. SELVEY:  Jason Selvey, S-e-l-v-e-y.

 8          MR. DISHMAN:  Neil Dishman, D-i-s-h-m-a-n.

 9          THE COURT:  So I think the first thing is -- what

10    is the trial date?

11          MR. LONGO:  The 18th.  A week from this Monday.

12          THE COURT:  I hope you know that nothing is

13    happening on the 18th in this case because I'm starting a

14    criminal trial on the 12th.

15          MR. LONGO:  Thank you for telling us.

16          THE COURT:  We'll have to get Rhonda in here.  She

17    was actually supposed to come, but I don't know where she is.

18          MR. LONGO:  She was in her office.  We just talked

19    to her a few minutes ago.

20          THE COURT:  Oh, you did?

21          MR. BOTANA:  She came to get us.

22          THE COURT:  This case will take how long to try?

23          MR. LONGO:  Two weeks.

24          MR. BOTANA:  Two weeks at the outer edge.

25          MR. LONGO:  Maybe less time.

1  THE COURT:  What should we do today?  What's the

2  best use of our time?  You've got the ruling on the motions

3  in limine, so that's resolved.

4  MR. LONGO:  May I suggest the objections to the

5  exhibits?

6  THE COURT:  Well, yes, we can do that.  The problem

7  with -- where are the exhibits?  Do we have the exhibits or

8  not?

9  MR. SELVEY:  We have copies here with us.

10  THE COURT:  Usually what I like to do is rule on

11  any exhibits that you need to have a ruling on before opening

12  statement.  Normally opening statement is extremely helpful

13  for me in figuring out how I'm going to rule on the exhibits.

14  So if you can highlight for me the exhibits that you know

15  where there is -- you probably know where there is a big

16  legal issue as opposed to just relevancy here.  All the kinds

17  of things that are easy to resolve during trial.

18  MR. BOTANA:  Judge, not to jump in immediately, but

19  I think to the extent you're looking for just broad legal

20  issues, I think there are a number of exhibits that we have

21  that are related to collective bargaining agreement

22  provisions:  Provisions for grievances, provisions for

23  personnel policies and City anti-discrimination policies that

24  Mr. Longo has objected to.

25  I think based on -- our position would be, based on

1    the rulings on the motions in limine, that the objections

2    that Mr. Longo had would no longer be applicable.  To the

3    extent that you've already ruled, he filed a motion in limine

4    saying that grievances -- that we could not mention that

5    Mr. Sommerfield did not file a grievance.  I think you've

6    ruled that we can mention that he did not file a grievance.

7    To that extent, I think that all of his objections to the

8    collective bargaining agreement and similar provisions should

9    be overruled.

10              MR. LONGO:  I don't think so.  Just because they

11   can be mentioned at trial --

12              THE COURT:  I can already tell you that this case

13   is up on my obnoxious case level, because I don't want to

14   hear a fight about everything.  Just tell me what your issue

15   is and leave me a plan to rule on it.  I don't want to get

16   into what's going on in this case.  It's unpleasant, it's

17   unprofessional.  I don't know who is at fault, and I don't

18   like it.

19              If you're going to argue about what the meaning is

20   of motions in limine, that's fine.  They ought to be clear.

21   I don't think that there should be anything ambiguous about

22   them.

23              Where is the list of exhibits?

24              MR. SELVEY:  Exhibit C.

25              THE COURT:  All right.  So right away -- it's an

1    employment discrimination case, right?

2              MR. BOTANA:  Correct.

3              THE COURT:  So every single one of these requires a

4    pretrial ruling, is that what you're telling me?

5              MR. BOTANA:  Mr. Longo has objected to all our

6    exhibits, your Honor.

7              MR. LONGO:  I don't think we need all those

8    exhibits for a harassment claim.

9              THE COURT:  It's not for you to talk about what the

10   defendants need.  Tell me if there is a legal basis for

11   excluding them.  Let's look at this.

12             So we begin with D 1.  Are there any of the

13   exhibits that the defense has offered that plaintiff doesn't

14   object to?

15             MR. BOTANA:  As far as I know, your Honor, there

16   are not.  I know that there are some exhibits because of your

17   motions in limine that we would to have to withdraw.  You

18   ruled on us not being able to use the Nazi insignias, and

19   based on that there are certain exhibits that we would

20   obviously withdraw based on that.

21             MR. SELVEY:  D 35 through D 41, your Honor, is --

22             THE COURT:  Maybe we can simplify this task a

23   little bit today.  That would be great.

24             D 35.  I've got it.

25             MR. SELVEY:  D 35 through D 41 we will need to

1  withdraw as a result of your ruling on one of plaintiff's

2  motions in limine.

3            THE COURT:  35, 36, 37, 38, 39, 40, and 41, right?

4            MR. SELVEY:  Correct.

5            MR. BOTANA:  That's correct.

6       (Courtroom Deputy enters proceedings:)

7            THE COURT:  Rhonda, trial date.  Two weeks or less.

8  Jury, right?

9            MR. LONGO:  Yes.

10            MR. SELVEY:  Yes.

11            THE COURT:  Judge, right now the first available

12  date is January 30th.  Monday, 9:00 a.m.

13            I can tell you that we're judges down.  The City of

14  Chicago is not -- is this a City case?

15            MR. BOTANA:  It is, your Honor.

16            THE COURT:  The City isn't settling anything, so

17  the effect of that on the court system is unbelievable.  I'm

18  on trial all the time.  The criminal cases are -- you know,

19  they get priority obviously.  Where there aren't criminal

20  cases, there are City of Chicago cases.

21            I can give you that if that's the best we can do.

22  Two weeks is really hard.  If that's the best we can do, it's

23  the best we can do.

24            But I would really urge you to consider if you want

25  to be on this kind of calendar -- who is the magistrate judge

1  in this case?  I don't want to know, but it's crazy to put up

2  with this.

3            MR. SELVEY:  Magistrate Cole.

4            THE COURT:  Well, he's certainly more than

5  competent to try this case, so -- but I'll leave that to you.

6  I hope when we get to January we can do it, but the problem

7  with late January -- and you need to keep in touch with

8  Rhonda -- is that we're getting criminal indictments every

9  day.  They're all subject to the Speedy Trial Act.  We

10  haven't started scheduling criminal cases for that period,

11  unless it's something that -- I think by agreement we did one

12  the other day, right?

13            THE CLERK:  Yes.

14            THE COURT:  What date was that?

15            THE CLERK:  January 23rd.

16            THE COURT:  What's this date?

17            THE CLERK:  The 30th.

18            THE COURT:  That's a one-week trial?

19            THE CLERK:  Yes.

20            THE COURT:  Okay.

21            MR. LONGO:  One never knows.

22            COUNSEL TWO:  As far as agreeing to the magistrate,

23  we're outside counsel for the City, we'll be more than glad

24  to talk to the City about consenting to the magistrate.

25            THE COURT:  Think about that, because with a

1   two-week civil trial, you'll get bumped, and bumped, and

2   bumped.  It's inevitable.  Unless we get more judges.

3           MR. BOTANA:  There were four nominations yesterday.

4           THE COURT:  Nominations?

5           MR. BOTANA:  Names that were submitted by Senator

6   Durbin and Kirk.

7           THE COURT:  To the White House?

8           MR. BOTANA:  Yes.

9           THE COURT:  I think we've got three vacancies right

10  now.  Maybe something would help.  That would hugely help.

11          Okay.  So Mr. Longo, then we've got objections

12  beginning with Defense Exhibit 1.

13          Can you isolate which of these issues that you need

14  to know about before you make your opening statement?  Or do

15  you want to let me know?

16          COUNSEL ONE:  Yes.  I don't think I need to -- I

17  don't think it would affect my opening statement.  But my

18  concern with many of these is, for example, if we take a look

19  at the first one this is the Chicago Municipal Code on Human

20  Rights.  The defendant's Rule 30(b)(6) witness and other

21  witnesses said well, I never refer to this.  They said the

22  only document that they refer to as far as their EEO policy

23  is their own general order.

24          So now the City is bringing in documents that there

25  is no evidence for whatsoever.  And there's a lot of them.

1          THE COURT:  I'm not sure why that would be a basis

2     for exclusion rather than cross-examination, but maybe I'm

3     missing something.  I don't even know why -- the City is

4     telling me why it's -- so the City says it needs it for --

5     and there was a holding on September 10th that Faragher and

6     Ellerth are not issues in this case?

7          MR. LONGO:  Um-hum.

8          MR. BOTANA:  The reason was for that was because

9     you had determined that the alleged harasser, Sergeant

10    Knasiak, was not a supervisor, so Ellerth and Faragher did

11    not become an issue as a defense, but the principles behind

12    Ellerth and Faragher, the reasonable measures to prevent

13    harassment are still an issue and that's a part of the

14    ordinance and the grievance procedure and everything else,

15    which is a part of the City's argument.

16         THE COURT:  How many of the exhibits raise that

17    issue?

18         MR. LONGO:  A lot of them.

19         MR. SELVEY:  It's several.  I would say a dozen.

20    More towards the back also.

21         THE COURT:  Maybe that's something that can be

22    resolved before trial that would be helpful to you.  It would

23    be nice if there were a way to isolate which of those

24    exhibits --

25         MR. BOTANA:  Can I propose something, Judge?

1           THE COURT:  Sure.

2           MR. BOTANA:  Since we're not going to trial on the

3  18th, and I don't want to produce any more paper in this case

4  that has already produced an extreme amount of paper, would

5  it be helpful to do some type of a chart that would isolate

6  these or put these in broad categories?

7           THE COURT:  That would be fabulous.

8           MR. BOTANA:  Then we'll do that.

9           THE COURT:  What's the issue with the collective

10  bargaining agreement?

11           MR. BOTANA:  Same issue, your Honor.

12           THE COURT:  Same issue.

13           MR. LONGO:  If I may add, if you look at Exhibit

14  No. 4, this is a collective bargaining agreement until 1999.

15  It predates -- the City says that it predates the facts of

16  this case.  So what does that have to do with anything, No.

17  1?  And No. 2, there's -- you know, I just think it has

18  nothing to do with this case.

19           And the Rule 30(b)(6) --

20           THE COURT:  What is the time period that we're

21  dealing with in this case?

22           MR. LONGO:  The City argues that the plaintiff

23  complained in March of 2004 to the Internal Affairs Division.

24  And the plaintiff argues that prior to that he had complained

25  to several sergeants and lieutenants.

1          THE COURT:  How much prior?

2          MR. LONGO:  In the IAD, the Internal Affairs

3    Division statement, it says two years prior to 2002.  But in

4    his EEOC statement it says approximately 2000.

5          THE COURT:  So you're contending 2000.

6          MR. LONGO:  Yes, 2000, 2002, 2001, but any of those

7    years.

8          THE COURT:  So why would a collective bargaining

9    agreement only effective through 1999 be relevant to this

10   case?

11         MR. SELVEY:  If I may, Judge, there is ambiguity in

12   Officer Sommerfield's deposition testimony about exactly when

13   he claims that the harassment, the alleged harassment began,

14   including some the moment he got to -- just about the moment

15   he got to the Eighth District, which is where he was, which

16   does predate 2000.

17         MR. BOTANA:  Again, if he could get some type of

18   stipulation that he did not complain before 1999, then

19   obviously I would agree that that exhibit would not be at

20   issue.

21         MR. LONGO:  But also if you look at the defendants'

22   response, the reason why they want to admit this, they say

23   that plaintiff has consistently complained of the length of

24   their internal investigation.  So that would be the complaint

25   filed in March of 2004.

1       THE COURT:  You know, all of this is stuff that you

2    know that I don't understand.  Okay?  I don't know what

3    you're talking about.

4       MR. LONGO:  We know it cold, because we live with

5    it.

6       THE COURT:  Thank God I don't live with it, but I

7    have two weeks to look forward to when I will be living with

8    it.

9       MR. LONGO:  It might be interesting.

10      THE COURT:  I doubt -- maybe it will be

11    interesting.  It would be a surprise, given the history, but

12    I don't think any judicial officer having anything to do with

13    this has found it a pleasant experience.

14       I'm trying to figure out how I can get this

15    resolved, and whether it makes sense to try to resolve it

16    before trial or wait and see how things hang out in trial.

17       This is part of the defendant's case, or the

18    plaintiff's case will go first.

19      MR. BOTANA:  Yes, your Honor.

20      THE COURT:  So if the plaintiff doesn't put in

21    evidence about things that happened before 1999, then you

22    might not want to use it.

23      MR. BOTANA:  If we can get that stipulation from

24    Mr. Longo --

25      THE COURT:  Even if you can't get a stipulation,

1   you have to listen to the proof that plaintiff puts in.  It

2   seems to me that you're not going to be introducing your

3   exhibit during the plaintiff's case anyway, most likely.  I

4   don't know that that has to be dealt with before trial.

5          All of this is collective bargaining, collective

6   bargaining, and then later collective bargaining agreements.

7          MR. LONGO:  Exactly.

8          THE COURT:  When we get into the later collective

9   bargaining agreements that do deal with the same time frame,

10  then what's the issue?

11         MR. LONGO:  Well, according to the defendant, for

12  example, looking at No. 13 -- well, again, the City is

13  alleging that Mr. Sommerfield did not complain prior to March

14  2004, so this is dated through June 30 of 2003, so it

15  predates --

16         THE COURT:  But you don't agree with them.

17         MR. LONGO:  Yes.

18         THE COURT:  So that's why they're putting it in.

19         MR. LONGO:  Also several of these we would argue,

20  and your Honor indicated that the motions in limine were

21  denied without prejudice, that the victim doesn't have to

22  complain to all of these agencies.  He just has to complain

23  to his supervisor, which he did.  The City is arguing that if

24  it's true that he was harassed, he would have filed a

25  grievance with the union.

1     THE COURT:  All of this I think is for the trier of

2     fact.  I don't think this has to be dealt with ahead of time.

3         MR. LONGO:  Okay.

4     THE COURT:  I think my inclination is to let this

5     hang out at trial.  I think what to do with it is going to

6     become very clear once the evidence starts going in.

7         MR. LONGO:  Also, there is many documents as far as

8     work history, as far as the plaintiff's work history.  What

9     does his work history have to do with a harassment claim?

10     THE COURT:  The next thing is complaint registers,

11     according to this list.  What's the problem with complaint

12     registers?  What is the relevance of complaint registers?

13     What complaint registers are we talking about?

14         MR. LONGO:  Could I ask what number you're on?

15     THE COURT:  I just opened to page 19, but it starts

16     before that.

17         MR. LONGO:  Okay.

18         MR. DISHMAN:  18 is the first.

19         MR. BOTANA:  These are the very complaint registers

20     that are at issue in this case, your Honor, the CR numbers

21     that Officer Sommerfield filed against Sergeant Knasiak that

22     contained the statements, investigatory notes.

23     THE COURT:  Statements of the plaintiff against the

24     defendant?

25         MR. BOTANA:  By the plaintiff and by witnesses.

1    MR. SELVEY:  There is also a second CR that was

2    initiated by the alleged harasser, the day before Officer

3    Sommerfield initiated his CR.

4    THE COURT:  These are the complaints that the

5    plaintiff is making about the defendant, right?

6    MR. LONGO:  No, no.

7    THE COURT:  No?

8    MR. LONGO:  This is the harassers complaining that

9    Mr. Sommerfield went to get his ID to get gas for the police

10   car without contacting the dispatcher.

11   So I don't see why these documents -- I mean, I'm

12   sure the defendant wants to raise it at trial, but I don't

13   see why all of these documents have to be an exhibit.  The

14   fact that they're alleging that Mr. Sommerfield was

15   insubordinate --

16   THE COURT:  I think I'll be in a much better

17   position to rule on this when I've heard the argument and the

18   evidence.

19   MR. LONGO:  Sure.

20   THE COURT:  So I don't think that's something we

21   can deal with before trial.

22   MR. LONGO:  Okay.

23   THE COURT:  I'm just trying to get --

24   MR. LONGO:  A feel?

25   THE COURT:  No, I'm trying to give you what you

 1    need to be able to construct your opening statements without

 2    -- I don't want the whole thing to blow up in a bunch of

 3    objections --

 4              MR. LONGO:  Sure.

 5              THE COURT:  -- because nobody knows what the

 6    exhibits are going to be.

 7              MR. LONGO:  Sure.

 8              THE COURT:  But all of these issues, it seems to me

 9    that it basically comes down to -- I mean, there are a lot of

10    rules cited here, but it basically comes down to whether it's

11    relevant to the issues or not relevant to the issues, and

12    that I will know much better down the road than I do today.

13              I can let you tell me -- I mean, I'm looking at

14    employee training record for Detlef Sommerfield, employee

15    work history of Detlef Sommerfield, then something that's

16    only identified as GO0003, I assume general order?

17              MR. BOTANA:  Yes.

18              MR. SELVEY:  Correct.

19              MR. LONGO:  The training records, what does that

20    have to do with a harassment case of whether he was trained

21    or not?  My concern with all of these documents is the jury

22    is going to be side-tracked and think there must be legal

23    significance because they're exhibits.

24              THE COURT:  No, I don't think jurors get confused.

25              MR. LONGO:  No?

1    THE COURT:  You can make an objection and I can

2    exclude it, but I don't think if I rule that it's

3    admissible -- if you make your objection and I allow it in, I

4    think the jury can -- I don't think they get confused so

5    easily.

6    But in any event, it's clearly something that needs

7    to wait, because you're arguing about whether it's relevant

8    to the issues or not.

9    MR. LONGO:  And also these transfer documents, for

10   example, they want to -- the City wants to introduce records

11   of personnel at the police station.  What does that -- why is

12   that relevant?

13   MR. BOTANA:  I don't know what number you're on,

14   Mr. Longo.

15   MR. LONGO:  I'm going from memory, to be honest

16   with you.

17   MR. SELVEY:  I think in the 40s.

18   MR. LONGO:  In the 40s?  I just remember it.  There

19   is another set.  You have another set.  I'm sorry.

20   MR. SELVEY:  If I may, they could be relevant to

21   establishing when certain officers were --

22   THE COURT:  Where is it?

23   MR. SELVEY:  I'm sorry.

24   MR. BOTANA:  42.

25   THE COURT:  42?

1      MR. SELVEY:  It begins at 42.

2      MR. LONGO:  I guess we have other documents prior

3  to that.  I'm sorry.  I apologize.  I thought we were at the

4  end of this, but the City has a whole other set of documents.

5      Also in this set, 28 or 29, the City wants to

6  introduce again grievances against -- or, rather, reprimands

7  against Mr. Sommerfield.  For example, he filed -- this one

8  is a grievance.  This is 29.

9      THE COURT:  Again, why is that not something that's

10 best ruled on in the context of the trial as opposed to now?

11 That's all I'm trying to do.  I'm trying to make it possible

12 for you to give opening statements.

13     MR. LONGO:  Yes, I see your point.

14     THE COURT:  It sounds to me like that will -- a lot

15 of these things become completely clear, even to all of you,

16 once you've heard the opening statement.

17     MR. LONGO:  Sure.  I see your point.

18     THE COURT:  I'm looking at page 42?

19     MR. BOTANA:  Yes, your Honor.

20     MR. SELVEY:  Yes, your Honor.

21     THE COURT:  Personnel listing?

22     MR. LONGO:  Um-hum.  And several of these, you

23 know, I don't see the relevance of this.

24     THE COURT:  I don't even know what it is.

25     MR. LONGO:  According to this, personnel who were

1    transferred from the Chicago Police Department.  What does

2    that have to do with anything?  If anything, I think the

3    defendant wants to show that there were a lot of people who

4    transferred, and Mr. Sommerfield should have transferred if

5    he didn't like being harassed.

6            THE COURT:  Okay.  Why do you say it's relevant?

7            MR. SELVEY:  We believe it's relevant because these

8    documents -- this is just the title of the document.  It

9    includes people who are transferred.  The way the City

10   printed out the personnel records were in batches of people

11   that are still there, people who had transferred and so

12   forth.  And all these documents list is when they came into

13   the Eighth District, when they left, and some basic

14   information like their names.

15           THE COURT:  And what does it have to do with this

16   case?

17           MR. SELVEY:  It can establish when witnesses were

18   present in the district to witness these alleged acts of

19   harassment.

20           MR. LONGO:  Can't you just get that through oral

21   testimony:  Were you in the Eighth District, or weren't you?

22           THE COURT:  Let's move on.  Again, this is not an

23   earth-shatteringly important issue.

24           MR. LONGO:  Okay.

25           MR. BOTANA:  I think the next broad category, your

1    Honor, would start at document 47.

2           MR. LONGO:  Yes.  The same argument as previously,

3    that -- and I don't think we need to know this before opening

4    statement, but again, the Rule 30(b)(6) witnesses, when

5    telling me about training, etcetera, said they rely on

6    General Order 00-03, and never once did they mention or did

7    any witness mention that they ever received personnel rules

8    of the City of Chicago, or EEO rules of the City of Chicago,

9    or anything like that.

10          So is the City going to introduce the EEO rules of

11   the Aviation Department as well?  Certainly not.  I mean, it

12   should only be what the Chicago Police Department used.

13          MR. SELVEY:  These are the rules of the entire City

14   of Chicago, who is the defendant in this case.

15          THE COURT:  Again, I don't have a clue.  Let's move

16   on.

17          Again, this is, from my point of view, nothing that

18   needs to be ruled on at this point.  If there is nothing, and

19   there is nothing you want to bring to my attention, we'll

20   just wait.  That's fine.  That's the way most trials happen.

21          MR. SELVEY:  On the defendant's side, beyond the

22   ones that we will withdraw, the ones about the Nazi

23   insignias, I do believe that it would be helpful if we could

24   just establish the motions in limine do, in fact, bar five of

25   the plaintiff's exhibits.

1    THE COURT:  If you can't agree, maybe someone

2    should submit something to me in the form of a motion that

3    says exactly what it is, and I'll issue you a clear ruling

4    rather than -- I'm not obviously prepared to say right now.

5    I would have to review all the rulings and see what the

6    arguments are.

7              MR. SELVEY:  Certainly.

8              MR. LONGO:  One thing -- I don't know if we need a

9    ruling on this, we might need it before opening statement,

10   but the Defendant's Exhibit 56 is a training video, and it's

11   just on sexual harassment.  It does not deal with national

12   origin harassment or religious harassment.  So it's

13   irrelevant.

14             And I think that might be something that we would

15   need to know about before trial.  In fact, the City does not

16   deny that it's on sexual harassment.  Are they going to

17   introduce videos on pregnancy discrimination and disability

18   discrimination?  It doesn't have anything to do with the

19   exhibits.

20             MR. SELVEY:  We have our exhibit list here, and no,

21   we are not.  And Mr. Longo has consistently tried to

22   differentiate the types of harassment out there, but

23   harassment policies apply across the spectrum.

24             THE COURT:  So the City's view is that this goes to

25   all harassment, and the plaintiff's view is it goes only to

1    sexual harassment.

2            MR. LONGO:  The City doesn't deny it.  If I

3    remember correctly, the City's Rule 30(b)(6) witness said

4    this deals with sexual harassment.  They give examples of

5    sexual harassment.

6            THE COURT:  I'm looking at what the defendant says.

7    I'm not seeing where there is the admission that you say

8    there is.

9            MR. LONGO:  The Rule 30(b)(6) witness.  But the

10   defendant's response does not say that it's more than sexual

11   harassment.  In our objection we say clearly that it is

12   sexual harassment.

13           THE COURT:  What's the -- why is the video coming

14   in?  What are you going to do with the video?

15           MR. BOTANA:  As part of the whole mosaic of the

16   training that the City has in terms of preventing and --

17           THE COURT:  Did Knasiak say that he saw this video?

18           MR. LONGO:  Not that I recall.

19           MR. BOTANA:  I don't believe that he said he saw

20   this video specifically, but this is the type of video that's

21   played in streaming videos throughout roll call, and this is

22   one of those videos.  And there has been substantial

23   testimony as to that.

24           THE COURT:  Does anything matter besides Knasiak?

25   We're talking about Knasiak's action, or is there -- how does

1    the City get involved in this at this point?

2         MR. BOTANA:  How does the City gets involved in

3    Knasiak?

4         THE COURT:  In this lawsuit.

5         MR. SELVEY:  Yes.

6         THE COURT:  As the employer?

7         MR. BOTANA:  Yes, as a Title VII employer.  Which

8    is what's left in the case, just a Title VII claim as opposed

9    to Section 1983.

10        MR. LONGO:  If your Honor wants to think about it,

11   I guess there doesn't have to be a ruling right now.

12        THE COURT:  There is not going to be a ruling right

13   now, but I'm trying to think through, does the City get to --

14   I mean, let's say if you had a bad actor in the form of

15   Knasiak, but you had wonderful videos, I don't know that -- I

16   just am not sure what happens.

17        Knasiak was just a co-employee, not a supervisor?

18        MR. LONGO:  He was a sergeant.

19        THE COURT:  Right.  But there has been a ruling on

20   that.

21        MR. LONGO:  As far as Title VII.  But in the Police

22   Department he is a supervisor.  They refer to him as a

23   supervisor.  But as far as Title VII definition he's not.

24   Does that make sense?

25        THE COURT:  As much as anything does, which isn't

1    much these days.  Nothing makes much sense to me in the law.

2           So I'm trying to figure out, with co-employee

3    harassment, which is mostly what we're talking about --

4           MR. LONGO:  Absolutely.

5           MR. BOTANA:  The standard is negligence --

6           THE COURT:  Right.

7           MR. BOTANA:  -- in discovering it and remedying

8    it --

9           THE COURT:  Right.

10          MR. BOTANA:  -- and providing the videos and this

11   type of training is part of what goes into the City saying

12   that it's not negligent by providing these instruments that

13   are out there to prevent harassment.

14          MR. LONGO:  If it were a video on national origin

15   discrimination, or religious discrimination, but it's sexual

16   harassment.

17          THE COURT:  It depends on the video, which I, of

18   course, haven't seen, so I don't know.  Maybe anybody

19   watching the video would understand that it had to do with

20   any kind of harassment, but maybe they wouldn't.  I don't

21   know.  Depends on what's in it.  I may have to look at it

22   ahead of trial.

23          MR. LONGO:  It's six minutes.

24          MR. SELVEY:  Not long.

25          THE COURT:  The easy way is to look at it.  Six

1  minutes?  Good grief.  So they're having roll call, and

2  meanwhile all those videos are --

3           MR. BOTANA:  Or after roll call.

4           MR. SELVEY:  It's a part of roll call.  Nothing

5  occurs during the video.

6           THE COURT:  It's not like musak or something that

7  goes on.

8           MR. BOTANA:  In the background or --

9           MR. LONGO:  Witnesses will testify the TV is on,

10  people are reading the newspaper, nobody is watching.

11           MR. SELVEY:  I assure you there are many witnesses

12  that will testify to the contrary.

13           THE COURT:  Are there any issues with the

14  plaintiff's exhibits?

15           MR. SELVEY:  I believe there are.

16           THE COURT:  Where are they?

17           MR. SELVEY:  I can hand you my copy if you'd like.

18           THE COURT:  They're not in the pretrial order?

19           MR. BOTANA:  They are.  Tab B, your Honor.

20           THE COURT:  Okay.

21           MR. SELVEY:  Five of the six have been barred by

22  your Honor's granting --

23           THE COURT:  Okay.  This is an issue really of what

24  the motions in limine did to this exhibit list.

25           MR. LONGO:  That's correct.

1    MR. SELVEY:  Some are very explicit.  Like the City

2    Council resolutions you explicitly ruled are out.

3        THE COURT:  If you can't reach agreement, you're

4    going to have to submit it to me in the form of a motion.  I

5    want there to be no disagreement by the time we get to trial.

6        MR. BOTANA:  We can do that, your Honor.

7        MR. LONGO:  I believe we can do that.

8        THE COURT:  That's good.  And maybe you could even

9    sit down and meet and confer a little bit if you think that

10   the motions in limine will make it clearer.

11       MR. SELVEY:  I believe they do.

12       THE COURT:  So then we've gotten through B and C.

13   We get then to the witness list, which normally is something

14   that's best dealt with at trial.  But again, if for some

15   reason you need to have it resolved before trial, let me know

16   what it is.

17       MR. LONGO:  I think there is an issue, if possible,

18   that could be resolved before trial.  I think it would help

19   everybody as far as preparation for trial.

20        It's the plaintiff's argument that the City has 15

21   witnesses that they never disclosed under Rule 26.  They

22   disclosed them for the very first time in this pretrial

23   order.

24       THE COURT:  Okay.

25       MR. LONGO:  And that would certainly help if we can

1  get a ruling on that.

2  THE COURT:  You know what my ruling is going to be?

3  It's bad news, but you're going to try this case in January.

4  You have plenty of time to take all these people's

5  depositions.  And if they weren't disclosed beforehand, the

6  City has to make them available.

7  MR. SELVEY:  Your Honor, you've ruled on

8  plaintiff's motion in limine regarding this very matter.

9  MR. LONGO:  Yes.

10  MR. SELVEY:  Plaintiff's motion in limine No. 2.

11  You denied it.

12  MR. LONGO:  Without prejudice.

13  THE COURT:  Whatever happened in the motions in

14  limine, we're now dealing with a situation where we're not

15  going to try this case for seven months.  So barring

16  something on the basis that it's a surprise doesn't make any

17  sense.

18  Who are these people?  Are they like -- are they

19  substitute witnesses for other people who were disclosed, are

20  they surprise witnesses?  What are they?

21  MR. BOTANA:  They're not surprise witnesses.  They

22  were disclosed throughout discovery.

23  THE COURT:  Who are they?

24  MR. BOTANA:  People in the command chain of review.

25  MR. SELVEY:  People that Officer Sommerfield

1  identified as witnesses that the IAD interviewed during the

2  course of the investigation.

3          THE COURT:  Okay.

4          MR. LONGO:  These are people -- I had written the

5  City a letter September 14 saying in your answers to the

6  interrogatories you refer to 2,000 documents as far as people

7  who have knowledge.  So I sent them a letter saying there is

8  over 50 in these documents, can you tell me who the witnesses

9  are that have knowledge.  They never did that.

10          So there is over 50 people, so I guess the

11  defendants are expecting the plaintiff to guess.

12          THE COURT:  Now you know.

13          MR. LONGO:  Right.  Now I know.  But can I suggest

14  taking 15 depositions would be extremely expensive for the

15  plaintiff.

16          THE COURT:  Then don't take them, but I'm not

17  barring them.  If you want to take them, you have the right

18  to take them.

19          MR. LONGO:  Thank you.

20          THE COURT:  If you know what they're going to say,

21  why take them.

22          MR. LONGO:  Could we then get the defendants to

23  answer what knowledge these people have?  Because they're not

24  disclosed.

25          THE COURT:  Oh, sure.  Basically what the subject

29

1    of their testimony is going to be, you don't know that?

2                MR. LONGO:   Yes.   I don't know that.

3                THE COURT:   Why don't you give the plaintiff on the

4    15 new witnesses a very brief description of the subject

5    matter of their testimony.

6                MR. LONGO:   Could we get their knowledge?   What

7    knowledge do they have as opposed to just a brief description

8    of the subject of their testimony?

9                THE COURT:   What do you mean, what knowledge?

10               MR. LONGO:   For example, they may just say briefly

11   this person will testify about training.   What knowledge does

12   he have about training?   So we can determine whether to take

13   his deposition.

14               MR. BOTANA:   I think what Mr. Longo is suggesting

15   is we sort of give him an anticipated mini-deposition of what

16   the witnesses would say.   I think what we can do is what your

17   Honor has suggested, which is to identify the subject of

18   their testimony, what they're going to testify about, and

19   then Mr. Longo can depose them at this point.

20               MR. LONGO:   Well, what I'm thinking like is one of

21   our interrogatories asked for witnesses, and the subject of

22   their knowledge, and what their knowledge is.

23               THE COURT:   Look.   This is a really silly dispute.

24   I think you should sit down -- I'm giving you permission to

25   disclose people late.   And it's not in their interest to sit

1  for depositions if their deposition is unnecessary.

2  Presumably they have important things to do to serve and

3  protect.

4          So I would hope that you could give the plaintiff

5  enough so that he can make the decision whether or not he

6  wants to depose them.  If you feel that you're not getting

7  enough, come in on my motion call.  But basically, if in

8  doubt, you probably are going to have to depose them.  Okay?

9          MR. LONGO:  Okay.

10         THE COURT:  But it would seem to me that

11  everybody's self-interest here is exactly aligned.

12         MR. LONGO:  We don't want to take unnecessary

13  depositions.

14         THE COURT:  If these witnesses are just

15  authenticating materials that plaintiff objects to, and you

16  just say that's what they're going to be called for, then at

17  least you know that the dispute is with the materials and not

18  with the witness.

19         But who are some of these people?

20         MR. BOTANA:  Tab G, correct?

21         THE COURT:  Oh, tab G.

22         MR. SELVEY:  Tab F.  Eugene Hoffman.  Are you

23  there, Judge?

24         THE COURT:  Yes.  Hoffman is new?

25         MR. SELVEY:  Well, Eugene Hoffman was identified

1   during the course of discovery by plaintiff himself as one of

2   the individuals that he -- that witnessed an event that he

3   finds significant.

4              THE COURT:  Who are the 15 surprises?

5              MR. SELVEY:  Well, Eugene Hoffman, who plaintiff

6   would consider a surprise --

7              THE COURT:  Because at some prior date you didn't

8   identify him?

9              MR. SELVEY:  They weren't identified in formal

10  discovery disclosure documents; however, the plaintiff

11  himself identified these people during the IAD investigation.

12             THE COURT:  But the fact that plaintiff identified

13  them doesn't mean it's a witness for you.  What's Hoffman

14  going to say, basically?

15             MR. SELVEY:  Hoffman can testify to a December

16  23rd, 2004 event that Officer Sommerfield complained to the

17  IAD about, and what occurred, and what Officer Sommerfield

18  said to him.

19             THE COURT:  I think if you could give Mr. Longo

20  that kind of information he would know whether he's going to

21  have to depose these people, and he wouldn't have to take a

22  deposition on every conceivable subject in the world that

23  would last for three days.  If you're going to call him for

24  some specific purpose, it should help the plaintiff to take a

25  one or two-hour deposition, maximum.  That's what I would

1  hope.

2        MR. BOTANA:  Incidentally, Officer Hoffman's

3  statement is part of the CR statement, so there is a

4  statement by Officer Hoffman.

5        THE COURT:  So you could indicate that he's going

6  to testify about his statement in the CR files.  I think you

7  can do that without having to basically answer interrogatory

8  questions.  Which I could just say plaintiff can ask

9  interrogatories, but I think that's going to create more

10 problems, so I'm not going to do that.

11       Should we go through any more of these?  Or why

12 don't you see if you can work it out, and then just let me

13 know if you can't.

14       MR. LONGO:  That's fine.

15       THE COURT:  Okay.  So that's G.  What's H?

16       MR. SELVEY:  I think we skipped over plaintiff's

17 witnesses.

18       THE COURT:  We did.  Okay.  Are there any major

19 disputes of --

20       MR. SELVEY:  I believe there are multiple witnesses

21 that are at least implicitly barred by your Honor's rulings

22 on the motions in limine, such as an EEOC representative that

23 was unnamed.

24       MR. LONGO:  I agree.

25       THE COURT:  So --

1          MR. SELVEY:  I'm sorry.  Tab D.

2          THE COURT:  Tab D?

3          MR. SELVEY:  D, as in David.

4          MR. BOTANA:  The next page, your Honor.

5          THE COURT:  The EEOC representative.  And based on

6  the motions in limine you're not going to call that person?

7          MR. LONGO:  Yes.

8          THE COURT:  Let's just take something out of

9  contention.

10          MR. LONGO:  It's a good thing to do.

11          THE COURT:  It's a good thing to do.  Too many

12  trees have lost their lives to this case.

13          Any other things that we could get rid of so easily

14  as that?

15          MR. BOTANA:  The next one that's in the witness

16  list, your Honor, after the page of D 1 that we just had

17  withdrawn.

18          THE COURT:  Yes.

19          MR. BOTANA:  Mr. Guerrieri.  I think that the only

20  thing Mr. Guerrieri was going to testify to was about the

21  canine position.

22          MR. LONGO:  I agree.

23          MR. BOTANA:  So we can withdraw him.

24          MR. LONGO:  I agree.

25          THE COURT:  Hold on.  That's withdrawn.  Okay.

1      MR. SELVEY:  Then on page 4.

2      MR. LONGO:  Page 2, the EEOC representative.

3      THE COURT:  Page 2?

4      MR. LONGO:  Correct.

5      THE COURT:  We just did that, I think.

6      MR. SELVEY:  And page 4, the City Council

7   resolution, person unnamed, would also be barred by your

8   Honor's ruling.

9      MR. LONGO:  The only thing I would say to that is

10   your Honor may decide at trial, because your Honor denied the

11   motions without prejudice depending how the evidence is going

12   to come out at trial, and I don't know myself.

13      THE COURT:  You can assume that the rulings are the

14   rulings.  If I reconsider, everything changes that's based on

15   that.  So we can get past some of these arguments, consider

16   the ruling made.

17      No ruling on a motion in limine is set in stone.  I

18   mean, if the evidence requires it to be reconsidered, it's

19   always reconsidered.

20      MR. SELVEY:  And this one was one that was granted,

21   not just denied.

22      MR. LONGO:  Yes.  So withdrawn.

23      THE COURT:  Page 4?

24      MR. LONGO:  Page 4.  That covers ours.

25      MR. SELVEY:  Well, there is Dr. Pastor, tab E, page

1  2.

2        THE COURT:  Tab E, page 2.

3        MR. SELVEY:  There is an objection.

4        MR. BOTANA:  This was a purported expert witness,

5  your Honor, that Magistrate Cole basically struck his report,

6  and then he was deposed, and Magistrate Cole just sets forth

7  what this witness could testify and not testify to, so we

8  have objections based on it.

9        And again, I think a lot of this is going to depend

10 on what his testimony is going to be at trial.

11       MR. LONGO:  Exactly.  Because your Honor said you

12 would rule at trial.  That's fine.

13       He did strike the report, but he also said

14 Dr. Pastor has opinions, and the City can take his

15 deposition, and they did.

16       THE COURT:  I don't quite understand what's going

17 on.  Maybe you should brief it if you want me to decide

18 something.

19       Judge Cole made some rulings, but then he said that

20 wasn't going to govern at trial?

21       MR. LONGO:  Exactly.  Because he said that at trial

22 Dr. Pastor -- he's an expert on procedures, training, and

23 investigations, and Judge Cole indicated that at trial an

24 expert could be asked hypothetical questions, so -- and the

25 expert could then give an opinion based upon the evidence --

1   on the hypothetical question based upon the evidence already

2   introduced at trial.

3         So Judge Cole said that your Honor then would make

4   any rulings on any specific objections.

5         THE COURT:  Okay.  I don't understand this, so I

6   think you'd better present it to me.  Especially if it's

7   depending on what some other judge did, I need to have it

8   sort of --

9         MR. LONGO:  Unless we can just agree and save

10   paperwork.  We can take a look at the order again.

11         MR. BOTANA:  We'll take a look at the order.

12         MR. LONGO:  That would save a lot of paperwork and

13   time.

14         THE COURT:  He struck his report?

15         MR. LONGO:  Yes.  See, the reason is because I had

16   given him a summary of the depositions of each of the people

17   and asked him to come up with opinions.  So Magistrate Judge

18   Cole indicated that Dr. Pastor was relying on my summaries,

19   which is not necessarily something an expert would rely on.

20   So he ruled.

21         THE COURT:  Okay.

22         MR. LONGO:  So therefore he said that the report is

23   stricken, and Judge Cole said that it's irrelevant anyway,

24   because you don't introduce the report at trial.  But he said

25   notwithstanding the fact that I'm striking the report,

37

1   Dr. Pastor does have opinions, and the City can explore them

2   at the deposition, and they did.

3          And Judge Cole said that at trial, you know, these

4   opinions can be presented.  And one example that Judge Cole

5   gave was that plaintiff's counsel could ask hypotheticals:

6   What if this sergeant said this, what if he said this, that,

7   what is your opinion.  So --

8          MR. SELVEY:  I think he left open that possibility

9   for your Honor.

10         THE COURT:  You'd better present this to me.  This

11  sounds like it's going to be really difficult to deal with.

12  Once you strike an expert's report, then how does the defense

13  even have any -- you're saying that --

14         MR. LONGO:  He didn't strike the whole report.  He

15  just struck the part as far as my summaries of the

16  depositions.

17         THE COURT:  You're in disagreement.  You know, this

18  sounds to me like something you should present before trial.

19         MR. SELVEY:  I believe the entire report was

20  stricken.

21         MR. BOTANA:  We can present this.  We have plenty

22  of time now.

23         THE COURT:  Good.

24         MR. LONGO:  Unless we can work it out.

25         MR. SELVEY:  We may be able to.  Probably not at

1  this second.

2          THE COURT:  What's next?

3          MR. LONGO:  Save some trees.  I think that's it.  I

4  think that's it.

5          MR. SELVEY:  H is the pretrial damages memo.

6          The proposed voir dire, if you would like --

7          THE COURT:  Yes.  Where is your proposed voir dire?

8  Because I will get you --

9          MR. SELVEY:  Plaintiff's is in I, ours is in J.

10          THE COURT:  I and J.

11          MR. LONGO:  Yes.  I had a couple questions, too,

12  your Honor.

13          THE COURT:  I want to talk a little bit about just

14  jury selection and some other things and whatever you want to

15  talk about.

16          Let me ask you this:  Do you lawyers want to do the

17  voir dire?

18          MR. LONGO:  Yes, I would like to.

19          MR. BOTANA:  I would like to.

20          THE COURT:  Let me tell you how I do it when I let

21  the lawyers do it.  I give you -- no matter who is doing the

22  voir dire, I call 16 people into the jury box at a time.  I

23  have a question sheet that's on my website that asks for

24  specific background information.  Each one of them will get a

25  copy of that questionnaire, and the first thing I do is ask

1　each of them to answer the questions on the sheet.

2　　　　　MR. LONGO:  Of the 16.

3　　　　　THE COURT:  Of the 16.

4　　　　　In terms of the people in the venire who are not in

5　the jury box, the only thing I will have asked them before

6　then is if they have heard anything about the case, if they

7　know the lawyers, and I will read them that list of witnesses

8　and other involved parties, and make sure they don't know any

9　of those people.

10　　　　　We call the 16 in the box.  Each one answers the

11　questions on the sheet.  I try to prompt them a little bit to

12　make sure we get answers to all those questions.  And then if

13　I'm going to allow you to do the voir dire, I would give each

14　side an hour with that 16.

15　　　　　But I would limit the question areas.  I'm going to

16　go through your questions.  I would not ask the jury what --

17　how do you feel about Germans.  Okay?  But if you want to ask

18　the jury how they feel about Germans, fine with me.  I don't

19　think it's an offensive question in terms of being

20　impermissible, it's just not one that I personally would feel

21　comfortable asking.  Same about the Jewish thing next.

22　　　　　So I'm looking at these -- the Hitler questions.  I

23　mean, it looks to me like if you want to ask them these

24　questions, I would allow you to do it.  I wouldn't

25　necessarily do it myself.

1    So assuming that the lawyers are going to do the

2  voir dire, I will go through this, I will tell you what's

3  permissible and what is impermissible, and then your

4  questioning should be limited to what's permissible, with any

5  reasonable follow-up, but not going into any other areas.

6    After you've done the voir dire of the 16, we will

7  meet in a private place, and I will take your cause

8  challenges and rule on them.  But before we do that, if there

9  are any jurors who have indicated that they wish to answer

10  any of the questions in private -- and I will ask them that

11  before we start.  I'll say if there is anything you want to

12  talk about privately, just say private instead of answering.

13  And I'll also ask them if there's anything they want to talk

14  to me about in private.

15    And we'll call those people back and see what they

16  want to talk to us about, and we'll also, if you're

17  contemplating a cause challenge to any of the people in the

18  first 16, I need to know that and know what is on your mind

19  so that I can call them back and we can have some private

20  inquiry to go a little deeper into whatever you see the

21  problem as.

22    After that I will rule on your cause challenges.

23  I'll give you a little bit of time, and take your

24  peremptories in writing simultaneously from both sides.

25    And how many jurors do you think we should select?

1    As you may know, there are no alternates in federal civil

2    juries, so everybody that we select, assuming that they make

3    it through the end of the case, will deliberate.

4              MR. BOTANA:  Well, Judge, we had originally talked

5    about six.

6              THE COURT:  That's dangerous.

7              MR. SELVEY:  Yes.  Now that --

8              THE COURT:  We have to have six.

9              MR. BOTANA:  Now you have reminded us there are no

10   alternates, we probably should go with ten.

11             MR. LONGO:  Yes, I guess ten would be okay.

12             THE COURT:  Let's do ten.

13             MR. LONGO:  You don't want to do 12?

14             THE COURT:  The 12-person civil jury is coming back

15   with a vengeance.

16             MR. LONGO:  Maybe we could be on the wave.  Take

17   the wave to the beach.

18             THE COURT:  You don't get any more preemptories.

19   Let's do the 12.  I'm curious to see how it works out.

20             This case is not -- I have been trying these

21   excessive force cases one after another, and the juries are

22   just having a tremendously hard time with them, and I'm

23   sitting there waiting to see if I'm going to get a hung jury.

24   A two-day trial with two or three days of deliberation is the

25   way it's been going.

1     MR. LONGO:  More so now than previously?  They're

2  having a hard time?

3     THE COURT:  That I can't say for sure, because

4  these cases used to mostly be settled, and they're not being

5  settled anymore.  But I do sense in voir dire -- I'm not sure

6  that I would write an article about this because I haven't

7  taken a scientific survey -- but I do see a lot more

8  skepticism about the police than there used to be.  That

9  comes out in the voir dire process.  Across racial lines.

10     MR. SELVEY:  And who knows how that turns out in

11  this case.

12     THE COURT:  Exactly.  I don't think it will be an

13  issue in this case.  There will be other issues, but not that

14  one.

15     But let's try 12.  That will be interesting.  I'll

16  let you know about your voir dire ahead of time.  You'll do

17  the voir dire; that's wonderful.  I really don't like doing

18  voir dire, so I'm always very happy when the lawyers want to

19  do it.

20     MR. LONGO:  Oh, good.

21     THE COURT:  The only thing you need to be cognizant

22  of is that Colette is taking everything down -- and I'll try

23  to keep reminding the jurors to use the microphones.  You

24  need to speak up so that Colette can hear what you're saying.

25  I mean, if I'm sitting on the bench it's easier for her to

1    hear me than when you're roaming.

2            So just be aware she needs to hear everything you

3    say.

4            MR. LONGO:  In fact, may I ask a question about

5    that?  Will there be a use of microphones by everybody

6    speaking?

7            THE COURT:  Well, they've just totally refurbished

8    our courtroom.  That's why we were evicted from it this week.

9    And when I go in at 1:30 today they will tell me what kind of

10   a sound system I have.

11           I think actually everybody is going to be miked.

12   That's what we're hoping.  It was very bad before.

13           Off the record.

14      (Off-record discussion.)

15           THE COURT:  Okay.  So basically we've talked about

16   how I pick a jury, we've talked about how many jurors we're

17   going to select.

18           What other questions do you have?

19           MR. LONGO:  If I may, would it be okay with your

20   Honor if we treated the defendant's employees as adverse

21   witnesses?

22           THE COURT:  I would expect that would be the usual

23   rule.  If there is some particular situation where I

24   shouldn't do that, I'm sure the defendants will tell me about

25   it.

1    MR. BOTANA:  We'll point those out specifically.

2    THE COURT:  That would be the Police Department

3    witnesses.  It doesn't mean that everybody is adverse, but I

4    would assume that employees of the City would be adverse.

5    MR. LONGO:  We'll be calling some in our part of

6    the case.

7    THE COURT:  Right.

8    MR. BOTANA:  And we'll make the objections at that

9    time.

10   THE COURT:  Also, if you decide that you want to

11   do -- if you were going to call the same person, if you want

12   to do both direct, cross, whatever -- it's all going to be

13   cross, I suppose -- if you want to do that all at one time, I

14   will just tell the jury that we're doing that so that they

15   understand that.

16   MR. BOTANA:  One other thing we would ask is that

17   we issued a number of subpoenas to witnesses for next week

18   that we will obviously -- no harm done, we will withdraw --

19   THE COURT:  All subpoenas are continued, but you're

20   obviously going to need to tell the people about that.  Why

21   don't we enter an order that all subpoenas are continued to

22   the new trial date.

23   MR. BOTANA:  We also would ask Mr. Longo -- we sent

24   Mr. Logo notices of our subpoena witnesses at the trial.

25   Subpoena witnesses.  We ask that he send us notice of trial

1  subpoenas as well.

2          MR. LONGO:  I didn't get any notice of your

3  subpoenas.

4          MR. BOTANA:  We sent them yesterday.

5          MR. SELVEY:  There was also an e-mail that went

6  out.

7          MR. LONGO:  What time did you send it?

8          MR. SELVEY:  At the end of the day yesterday, 4:30,

9  5:00 o'clock.

10         MR. LONGO:  I didn't get it.

11         MR. BOTANA:  Not quite the end of the day for me.

12         THE COURT:  I would expect on the first day of

13  trial -- I usually start Monday, and I usually start at 9:00

14  a.m., a typical eight-person civil jury we usually have by

15  noon, but with the 12-person jury it may take a little

16  longer.

17         I would assume, however, that you will do your

18  opening statements on the first day of trial, and we may get

19  into the first witness.  I don't think we'll get a lot

20  farther than that.

21         MR. BOTANA:  What is your normal trial day?

22         THE COURT:  On Tuesdays and Wednesdays I have a

23  call in the morning, and we'll start at either 10:00, 10:15,

24  or 10:30.  Rhonda will usually tell me the day before.  On

25  Mondays, Thursdays, and Fridays I can usually start at 9:00

1    or 9:30, depending what we decide to do.

2             On Wednesdays I don't try cases normally.

3    Wednesday is the day, however, if there are any issues that

4    you need to take up with me, or instruction conference, all

5    of that stuff we'll do on Wednesday.

6             The only -- so we start on Monday, Thursday, and

7    Friday at 9:00 or 9:30.  I like to send the jury home by

8    about 4:30 in the afternoon.  If we start at 9:00 or 9:30 in

9    the morning, it's been a full day.

10            The only thing that you need to know is on the

11   first and third Thursdays of the month my morning is

12   completely occupied with another judicial activity I'm

13   involved in, and those days, if you -- what day are we

14   starting?

15            MR. SELVEY:  The 30th.

16            THE COURT:  So the first Thursday we won't be in

17   session in the morning.  We'll probably start at 12:30 or

18   1:00 o'clock.

19            MR. LONGO:  12:30 or 1:00 o'clock?

20            THE COURT:  On that Thursday, yes.

21            Anything else?  So I'll be seeing you, I'm sure.  I

22   think we should probably set a status at some point.

23            MR. LONGO:  Maybe we can all go to the beach.

24            THE COURT:  You can go to the beach, and we'll set

25   a status in October.

1    THE LAW CLERK:  I'll ask Rhonda to set one when we

2    continue the subpoenas.  We'll have her set a date, and if

3    there is a problem with that date, contact Rhonda.  Does that

4    work?

5    MR. BOTANA:  Absolutely.

6    THE COURT:  Okay.  Maybe we'll have a sound system,

7    but I wouldn't hold out hope.

8    (End of proceedings.)

9    C E R T I F I C A T E

10

11    I certify that the foregoing is a correct transcript

12    from the record of proceedings in the above-entitled case on

13    July 8, 2011.

14

15

16

17    /s/Colette M. Kuemmeth
      Court Reporter

18

19

20

21

22

23

24

25