**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DETLEF SOMMERFIELD,** | ) | |
| | ) | **No. 06 C 3132** |
| **Plaintiff,** | ) | |
| | ) | **Judge Leinenweber** |
| **v.** | ) | |
| | ) | **Magistrate Judge Cole** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

### I.
### INTRODUCTION

The internecine battle that *Sommerfield v. Chicago* has been is mercifully drawing to its

conclusion. After six years of vitriol, mostly spent on protracted and often unnecessary discovery

disputes – as evidenced by more than 700 docket entries and 11 published opinions by Judge

Gottschall and this court [1] – a jury awarded $30,000 to Mr. Sommerfield for having been subjected

to a hostile work environment due to his religion – Jewish – and his national origin – German. All

that remains is the question of reasonable attorneys' fees – a matter over which district courts have

substantial discretion. *Hensley, v. Eckerhart*, 461 U.S. 424, 437 (1983); *Moriarty ex rel. Local*

*Union No. 727, I.B.T. Pension Trust, and the Teamsters Local Union No. 727 Health and Welfare*

---

[1] Judge Filip, who had the case before his retirement from the bench, did not publish any of his decisions on Westlaw. Judge Gottschall's opinions are found at: 2011 WL 4553021 (N.D.Ill. 2011); 2010 WL 3786968 (N.D.Ill. 2010); 2010 WL 780390 (N.D.Ill. 2010); 2009 WL 500643 (N.D.Ill. 2009); 252 F.R.D. 407 (N.D.Ill. 2008); 2008 WL 4542954 (N.D.Ill. 2008). This, of course, does not include the numerous orders that she did not submit to Westlaw. My five opinions can be found at 613 F.Supp.2d 1004 (N.D.Ill. 2009); 254 F.R.D. 317 (N.D.Ill. 2008); 251 F.R.D. 353 (N.D.Ill. 2008); 252 F.R.D. 407 (N.D.Ill. 2008). My final opinion came recently in connection with the plaintiff's lawyer's attempts to sandbag the City of Chicago by asking in a reply brief for an additional $65,000 in legal fees that had not been sought in the opening brief or in a separate brief that would have allowed the City to respond. *See Sommerfield v. City of Chicago*, 2012 WL 3779104 (N.D.Ill. 2012).

*Trust v. Svec,* 429 F.3d 710, 717 (7th Cir.2005). *Cf., Perdue v. Kenny A. ex rel. Winn,* _ U.S. _, 130 S.Ct. 1662, 1676 (2010).

Judge Leinenweber has referred the matter here for a report and recommendation since much of the time for which Mr. Longo is seeking recovery was spent in proceedings before me and involves matters that stemmed from my decisions. Mr. Longo has set the price for procuring the $30,000 victory in this uncomplicated case at just under $1.5 million. That is a 5000% markup. At trial, he effectively asked the jury for a verdict of $1.5 million by arguing that the damages should be "in the middle" of a $10,000 award and a $3 million dollar award. (*A city's brief* at 23; Exhibit K, at 4). The initial reaction to so disproportionate a fee petition would be that a substantial downward adjustment is in order. But disproportionality alone does not result in or even allow an automatic fee reduction. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (recognizing that "[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded," but "rejecting the proposition that fee awards . . . should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."); *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009)("reject[ing] the notion that the fees must be calculated proportionally to damages.").[2]

Mr. Longo, it must be noted, is no stranger to arguments over what are claimed to be

---

[2] The plaintiff in a civil rights case is a private attorney general, enforcing the law on behalf of not only itself, but everyone. *Rivera*, 477 U.S. at 575; *Anderson*, 578 F.3d at 545. If the policy a plaintiff seeks to enforce goes unvindicated, "the entire Nation, not just the individual citizen, suffers." *Rivera*, 477 U.S. at 575. However, if a plaintiff recovers nothing but succeeds in changing a discriminatory employment policy that adversely affects dozens or even hundreds of people, that plaintiff may not necessarily recover attorney's fees. *Johnson v. ITT Aerospace/Communications Div. of ITT Industries, Inc.*, 272 F.3d 498, 500 (7th Cir. 2001); *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001).

substantially exaggerated and inflated fee petitions resulting from conduct that needlessly proliferated work and dilated the proceedings. In one motion in this case, the City blamed Mr. Longo for what they contended to be excesses in and needless prolonging of discovery. In the City's words, Mr. Sommerfield "bombard[ed] the City with discovery requests, most of them cumulative and unnecessary." This, the City contended, is his "standard practice." (*Defendant's Response to Plaintiff's October 26, 2007 Memorandum of Law* )(Dkt. # 126 at 10).

To support this thesis, the City pointed to the Seventh Circuit's extraordinary castigation of Mr. Longo in *Greisz v. Household Bank (Illinois), N.A.,* 176 F.3d 1012 (7th Cir.1999)(Posner, J.), which concluded that Mr. Longo's "wholly unsuccessful efforts to conduct class actions have drawn unusually pointed criticisms from Illinois state judges." The court found that his various failings included making exorbitant settlement demands and filing frivolous motions, which displayed a lack of familiarity with procedural rules – and which, in the end, Judge Posner said, "he always lost." Judge Posner harkened back to earlier opinions, state and federal, that had criticized Longo on multiple grounds. *Id*. at 1014. Judge Posner found that Longo "sacrificed the interests of the named plaintiff in this case to his desire to keep the case going in the forlorn hope that it might somehow, someday fly as a class action. Given Longo's track record, the district judge was clearly right to refuse to let the suit proceed as a class action." *Id.* Criticism of Mr. Longo's conduct in discovery has not been limited to the courts of this state and Circuit. *See, e.g., Longo v. Glime,* 1991 WL 32356, at *3 (6th Cir. 1991).

More recently, Mr. Longo drew the court's fire in *Atkins v. City of Chicago,* 547 F.3d 869 (7th Cir.2008) ("Attorney Longo confused matters terribly"), and on remand Judge Shadur, after

"review[ing] the voluminous docket in this action,"[3] expressed dismay at Mr. Longo's "failure to keep the Court of Appeals apprised of the actual situation...." *Atkins v. City of Chicago,* 2009 WL 922368, *1 (N.D.Ill. 2009). A year later, Judge Shadur had this to say about his conduct:

> Regrettably true to form, after having stated "that this Court does not desire a brief with full arguments, but rather, a list of citations," Longo proceeded to disregard (indeed, to flout) that directive-instead he tendered a seven-page filing, the first half page of which needlessly repeated the claims in the TAC as to the assertedly unconstitutional deprivations suffered by [Atkins], and the next six pages of which (1) cited not only cases responsive to this Court's directive but also cases that addressed issues previously disposed of by this Court in the process of whittling the case down to the few matters remaining for decision, (2) explained Longo's view of the holdings in all of the cases that he cited and (3) quoted at length from one of those cases. Apparently Longo must have chosen his earlier-quoted words carefully-he impermissibly converted this Court's direction for no argument into one for *no* "full arguments," which he somehow viewed as granting him a license to offer substantial argument as long as it was not "full" (whatever that might mean).

*Atkins v. City of Chicago*, 632 F.Supp.2d 851, 852, n.1 (N.D.Ill. 2009)(parentheses in original). *See also id.* at n.3.

Other examples of what the City contended both during the case and now are Mr. Longo's "standard practice" may be found in cases cited by Judge Posner in *Greisz,* in *Perez v. Z Frank Oldsmobile, Inc.,* 223 F.3d 617, 625 (7th Cir.2000) and *in Mader v. Motorola Inc.* 1999 WL 519020, *1 (N.D.Ill.1999).

In *Perez,* Mr. Longo claimed he worked 1,241 hours and was entitled to a fee award of $236,911.00. The Seventh Circuit disagreed finding that the hours claimed were "hard to swallow." 223 F.3d at 625. The court questioned the amount, observing, "[h]ow can a case this simple, which required only three trial days and led to a compensatory award of only $11,500.00 have commanded

---

[3]Mr. Longo's apparent forte is running up massive dockets.

that investment of resources."*Id.* On remand, Judge Leinenweber concluded, "after careful examination of the hours billed by Mr. Longo," that they were unreasonable "for a case of this magnitude." *Perez v. Z Frank Oldsmobile, Inc.*, 2001 WL 849476, *2 (N.D.Ill. 2001).[4]

For example, Judge Leinenweber pointed out that Mr. Longo's claim that he spent more than 97 hours in drafting correspondence, and more than 200 hours for telephone calls "is clearly excessive." The court concluded that 50 hours for telephone calls and correspondence is appropriate. Further, the court concluded that Mr. Longo's claimed 320 hours for legal research, more than 145 hours for preparing documents, and 195 hours for reviewing his written work was excessive and that "allotting 100 hours of research is appropriate." Of the 145 hours claimed for preparing documents, only a third were allowed. Finally, of the more than 130 hours Longo claimed were spent in preparing for trial and other court appearances, depositions, meetings, etc., the court noted that depositions in the case were limited, and the trial was short. Thus, only 50 hours were deemed reasonable. *Perez,* 2001 WL 849476 at *2. In *Mader,* the district court said that despite being given four opportunities, Mr. Longo was unable to file a proper Local Rule 12 statement of facts, with the all too familiar adverse result to Mr. Longo's client. "Hoping to snatch a reprieve, Longo filed a motion for reconsideration arguing everything from, the court abused its discretion under the local rules to, most startlingly, that the court lacked proper subject matter jurisdiction." 1999 WL 519020 at *1.

Not surprisingly, Mr. Longo contends in the instant case that nothing he has done in the past can count in any way in assessing the current fee petition. But that is plainly wrong. While consistent excesses in case after case do not compel the conclusion that the current fee petition is

---

[4] In *Perez*, Longo won $11,000 and asked for $237,000. Here he won $30,000 and seeks $1.5 million.

unreasonable, it is equally untrue that Mr. Longo's systematic excesses – past or present – are to be totally ignored in assessing the reasonableness of the time he claims he expended in various tasks, in assessing the reasonableness of and necessity for those tasks, and in determining the fee to be awarded. Common human experience and common sense, which always have a role to play in judging, *cf., United States v Montoya De Hernandez*, 473 U.S. 531, 542 (1985); *Greenstone v. Cambex Corp.*, 975 F.2d 22, 26 (1st Cir.1992) (Breyer, C.J.);*Cooney v. Rossiter* 583 F.3d 967, 971 (7th Cir.2009); Posner, How Judges Think at 116 (Harv. Univ. Press 2008), recoil at such a notion.

Moreover, as we shall see, the reputation and ability of the attorney seeking a fee award and his performance in the case are among the several factors the Supreme Court has said may be considered by the district court in determining what is a reasonable fee award. *Hensley*, 461 U.S. 430 n.3. *See* page 7, n.6, *infra*.

Within the last two months, Mr. Longo's penchant for needlessly dilating the proceedings and refusing to abide by the Federal Rules of Civil Procedure and well established case law – thus unreasonably multiplying his fees and his opponents' costs – manifested itself in his attempt to up his fee petition by $65,000 through a request in his reply brief to the City of Chicago's objections to the fee petition. Mr. Longo knew that matters first raised in a reply are waived. *See Sommerfield v. City of Chicago*, 2012 WL 3779104 (N.D.Ill. 2012). Yet he filed the brief nonetheless.[5]

The point of all this is not to show that Mr. Longo should be punished for past misconduct by having his current fee petition reduced. That would plainly be improper, and my recommendations are not designed or intended to do that. (**In fact, the result would be the same**

---

[5] This was not the first time in this case that Mr. Longo has misused a reply brief as a vehicle to advance new positions. *See Sommerfield v. City of Chicago,* 613 F.Supp.2d 1004, 1012 (N.D.Ill.2009).

**even if all that had occurred in other cases were totally ignored**). It is rather to show that his willful misconduct time and time again results in needless and unreasonable expenditures of time for which he invariably seeks compensation through inflated fee awards and that courts have repeatedly condemned his behavior in published opinions that could not be more critical of a lawyer. All this bears on the question of Longo's reputation and ability, which is one of the 12 *Hensley* factors to be considered. Where they are high, an otherwise large fee may be justified. Where, as here, they are low, the court need not turn a blind eye, as *Hensley* teaches. As we discuss below, Mr. Longo's conduct in this case far exceeded the legitimate boundaries of our adversary system and resulted in the needless and unreasonable expenditure of time for which he should not be compensated or rewarded.

## II.
## THE FACTORS IN THE DETERMINATION OF A REASONABLE ATTORNEY'S FEE

### A.
### The Lodestar Calculation

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The amount yielded from this calculation must be considered in relation to several other relevant factors, which may result in an increased or decreased award. *Id; Johnson v. GDF, Inc*., 668 F.3d 927, 929 (7th Cir. 2012). The court should eliminate as unreasonable hours that are "excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434; *Johnson*, 668 F.3d at 931. This approach is known as the lodestar approach and requires a two-step analysis. *Ohio–Sealy Mattress Mfg. Co. v. Sealy Inc*., 776 F.2d 646, 651 (7th Cir.1985).

First, the court considers the number of hours worked, subtracting the hours spent on "unrelated [and] unsuccessful claims and hours which the attorneys would not bill to their clients," as well as any hours for which the plaintiff failed to provided adequate documentation. Second, the court considers whether special circumstances exist that would require the court to increase or decrease the lodestar amount. In *Hensley*, the Court identified twelve factors that aid in that analysis. They are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) *the amount involved and the results obtained*; (9) the experience, *reputation, and ability of the attorneys*; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 461 U.S. at 430 n.3. "Many of the factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n. 9 (Emphasis supplied). These factors were derived from those enumerated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir.1974), which *Hensley* cited approvingly. 461 U.S. 434, n.9.

As to the third factor, "The skill requisite to perform the legal service properly," the Fifth Circuit in *Johnson* said: "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration." 488 F.2d at 718. This one of the considerations the Supreme Court said in *Hensley* should be considered by the district court in determining what is a reasonable fee.

461 U.S. at 434, n.9.

If the court concludes that a reduction in the rate or hours is required to make them reasonable, the court must provide an explanation for the reduction to ensure the result was not arbitrary. Reductions based on a purely visceral reaction to the total amount requested will not suffice. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708–09 (7th Cir.2001).

The reasonable hourly rate for an attorney is determined by looking at the rates charged to paying clients by other attorneys in the community with similar experience and skill. *Small,* 264 F.3d at 707. The court may presume that an attorney's actual billing rate for similar work is the market rate. *Id.* Where the attorney does not traditionally charge a billing rate, the attorney may submit affidavits of similarly situated attorneys to prove the market rate for his services. *Id.* The party requesting an award of attorneys' fee bears the burden of proving the reasonableness of the hourly rate. *Id.* The burden will shift to the opposing party once the party seeking fees sustains that burden. *Id.*

### B.
### In Determining The Reasonableness Of A Fee Request, A Court May Consider The "Proportionality" of The Fee Request And The Degree Of Success Achieved

### 1.
### The Plaintiff's Request For Attorneys' Fees Is Approximately 5,000 Times Greater Than The Amount Awarded By The Jury

Proportionality is the comparison between a plaintiff's damages and attorneys' fees. *Anderson,* 578 F.3d at 546. There is no strict rule of proportionality, and the Seventh Circuit has "'repeatedly rejected the notion that the fees must be calculated proportionally to damages.'" *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir.2009); *Anderson*, 578 F.3d at, 544–45. The Seventh Circuit has, however, cautioned district judges not to forget that the amount requested

in fee petitions may be disproportionate to the damages awarded and that disproportionality may be taken into account. *See Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.* 574 F.3d 852, 857 (7th Cir.2009); *A. Bauer Mechanical, Inc. v. Joint Arbitration Bd. of Plumbing Contractors' Ass'n and Chicago Journeymen Plumbers' Local Union 130, U.A.*, 562 F.3d 784, 793 (7th Cir.2009). A request for fees that is a large multiple of the amount awarded "raises a red flag" and should cause the court to pause and reflect on the fee requested. *Anderson*, 578 F.3d at 546. And, a district court's fee order should evidence increased reflection before awarding attorneys' fees that are large multiples of the damages recovered. *Catalan v. RBC Mortg. Co.*, 2009 WL 2986122, 6, 8–10 (N.D.Ill.2009) (Dow, J.) (reducing the attorneys' fees requested after considering, *inter alia,* the proportionality of the fee requested). *See Moriarty ex rel. Local Union No. 727, I.B.T. Pension Trust, and the Teamsters Local Union No. 727 Health and Welfare Trust v. Svec,* 429 F.3d 710, 717-718 (7th Cir.2005).

Here, the fees requested are enormously disproportionate to the recovery obtained – especially given the uncomplicated nature of the case. Still, Congress has affirmed its desire to have even small violations of laws prohibiting discrimination vindicated, and many of those violations by their very nature are small. Litigation is expensive, and "it is no surprise that the cost to pursue the contested claim will often exceed the amount in controversy." *Anderson*, 578 F.3d at 545. The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered. *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir.2000).

Some cases have hinted that a party who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated as if he had not

prevailed. Thus in *Perlman v. Zell*, 185 F.3d 850, 859 (7th Cir.1999), the court said: "We have held in a series of recent cases that a litigant who wins less than 10% of his initial demand either is not a prevailing party for purposes of fee-shifting statutes or should be treated as if he had not prevailed." And in *Cole v. Wodziak*, Judge Easterbrook said that: "recovering less than 10% of the demand is a good reason to curtail the fee award substantially." 169 F.3d at 489. Later cases have however abjured an automatic 10% or any other mechanical rule requiring that a reasonable attorney's fee be no greater than some prescribed multiple of the damages claimed or recovered. *Moriarty*, 233 F.3d at 967–968. *See also, SKF USA Inc*., 2011 WL 4501395, at *3; *Catalan*, 2009 WL 2986122, at *2. But that does not mean that the size of an award is to be ignored altogether in assessing the reasonableness of a fee award.

The focus is on what the party had reasonably expected to recover in the litigation. Thus, if the prevailing party "had incurred attorney's fees that were disproportionate to a reasonable estimate of the value of its claim, it could not recover all those fees, but only the reasonable proportion, which is to say "the amount that would have been reasonable to incur had the value of the claim been estimated reasonably rather than extravagantly." *Tuf Racing Prods., Inc*., 223 F.3d at 592. And that is so even when civil rights litigation is involved. *Cole,* 169 F.3d at 489.

In sum, in light of Congress' intent to have these cases privately litigated, the lodestar should not be reduced merely because the request for attorneys' fees is disproportionate to the jury's damage award. But that does not mean that the massive disproportionality should be ignored altogether. Quite the contrary.

## 2.
## The Degree of Success

"[T]he most critical factor" in determining the proper amount of any fee award is the degree of success obtained by the prevailing party, which may result in the initial lodestar calculation being increased or decreased. *Farrar v. Hobby,* 506 U.S. 103 (1992); *Hensley*, 461 U.S. at 434; *Marek v. Chesny,* 473 U.S. 1, 29 (1985); *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir.2007); *Cole,* 169 F.3d at 488–489. It must not be forgotten that merely because a case involves the vindication of rights deemed vital to the public welfare, "[t]he amount of damages a plaintiff recovers" does not cease to be "relevant to the amount of attorney's fees to be awarded under § 1988 [or any other statute]." *City of Riverside*, 477 U.S. at 574–76. *See also Cole, supra*. Here is how the Court explained it in *Hensley:*

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*   *   *

> *There is no precise rule or formula for making these determinations.*
> *The district court may attempt to identify specific hours that should*
> *be eliminated, or it may simply reduce the award to account for the*
> *limited success. The court necessarily has discretion in making this*
> *equitable judgment. This discretion, however, must be exercised in*
> *light of the considerations we have identified.*

*Hensley*, 461 U.S. at 434, 436-437 (emphasis supplied). In sum, that the plaintiff is a prevailing

party therefore may say little about whether the expenditure of counsel's time was reasonable in

relation to the success achieved. *Id.* at 435–436. *Accord, Spegon v. Catholic Bishop of Chicago*, 175

F.3d 544, 557–558 (7th Cir.1999).

The court has substantial discretion in making this equitable judgment." *Hensley,* 461 U.S.

at 437. *See also Cooke v. Stefani Management Services, Inc.* 250 F.3d 564, 570 (7th Cir.2001)

(sustaining the district court's 50% limited-success reduction to $49,000 in fees as "entirely

justified"); *Catalan,* 2009 WL 2986122 at *8 (reducing by 40% the lodestar and collecting cases

where fee request reductions of 50% and 67% based upon the limited success achieved were

sustained by the Seventh Circuit); *Sughayyer v. City of Chicago*, 2012 WL 2359065, 14

(N.D.Ill.2012) (reducing the lodestar by 45%).

Failure to prevail on every claim does not automatically result in a reduced fee award. *City*

*of Riverside v. Rivera ,* 477 U.S. 561, 568–569 (1986); *Catalan,* 2009 WL 2986122 at * 3. "Claim

counting" is forbidden. And, so long as the time spent on an unsuccessful claim was a factor in the

success of other claims, the hours expended would not be unreasonable. The court should consider

the litigation as a whole when it is difficult to divide the hours on a claim by claim basis because

there is a common core of facts and legal theory. *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th

Cir.1988).

However, the court must bear in mind an unreasonable or excessive fee may result if a party

only achieves partial or limited success and the traditional lodestar calculation is used. *Rivera*; *Spegon*, 175 F.3d at 557. If a party does not prevail on a claim that is distinct from the claim on which he did prevail, the calculation of reasonable hours should only take into consideration those hours which would have been expended if the prevailing party only brought the claim on which he prevailed. *Id.* Additionally, if a plaintiff did not prevail on a claim that formed the "primary aim in the litigation," the court is justified in reducing the award of attorneys' fees by a percent reduction instead of simply eliminating the hours expended on unsuccessful claims. *Barfield v. N.Y.C. Health and Hosp. Corp*., 537 F.3d 132, 152–53 (2d Cir.2008). *See also Hensley*, 461 U.S. at 437.

In *Barfield,* the damages were only $88.25. The court found the primary aim of the litigation was the collective action certification as evidenced by the complaint. 537 F.3d at 152–53. The court found that the plaintiff's potential recovery for unpaid overtime wages could have easily been determined had the attorney not sought a collective action. *Id.*, at 153. However, if the court were to only take out the hours spent working on securing a collective action, the result would not "adequately reflect the limited success" of the plaintiff and would only incentivize plaintiffs' lawyers to "file collective action-based claims even where there is little basis for doing it." *Id*. The court thus reduced the award of attorneys' fees by fifty percent to $49,889 when the initial lodestar calculation was $99,778.75. *Cf., Perlman*, 185 F.3d at 859 (Plaintiff lost on the central issue in the case, RICO, and only prevailed on state law claims).

The court took a similar approach in *Catalan*. There the plaintiff brought three claims against the defendant: breach of contract, negligence, and a violation of the Real Estate Settlement Practices Act ("RESPA"). 2009 WL 2986122 at *1. Following a jury trial, judgment was entered in favor of the plaintiff on the negligence and RESPA claims and awarded the plaintiffs $11,100.  The jury

awarded judgment to the defendant on the breach of contract claim. The plaintiffs originally assessed their case as being worth more than $234,000 and their recovery was significantly less. The court concluded the results were not excellent results, 2009 WL 2986122,*7, and reduced the attorneys' fees by 40%. *Id.*, at *10. In *Cooke v. Stefani Management Services, Inc.*, *supra*, a 50% limited-success reduction to $49,000 in fees where the award was $7,500 was deemed "entirely justified:"

> "Cooke requested nearly $300,000 from the jury but, after our decision today, will go home with $7,500, hardly an overwhelming success. In addition, contrary to Cooke's "information and belief," this was not a groundbreaking, first-time-ever-in-this-district, same-sex sexual harassment case, ... but rather a run-of-the-mill employment case in which Cooke himself was the only substantive witness for his side of the case. In a simple case with no broad social impact, Cooke's attorneys should be happy to receive fees of nearly seven times the amount of their client's recovery."

250 F.3d at 570.

### III.
### The Fee Petition

Mr. Longo is claiming he and his associate, Ms. Herman, spent 3,812 hours working toward the $30,000 recovery for a total fee award of $1,496,575. Of that amount, Mr. Longo claims 3,742. hours (*Plaintiff's Petition for Attorneys' Fees* at 15). The defendant objects to the time spent on 24 unsuccessful discovery and reconsideration motions, 67 hours spent on an expert witness who was not used, the time spent on five baseless dispositive motions, 29 motions *in limine*, and a post-trial motion.[6] We shall consider each objection separately.

Dkt. # 152 – Motion to Compel: The defendant argues that the 8.6 hours spent on this motion

---

[6] Objections not submitted under Local Rule 54.3 are deemed waived. Also, the defendant objects to expenses sought for the expert witness who was not used, but that is part of a separate motion.

should be disallowed because Mr. Longo presented it to the wrong judge. The motion was denied without prejudice because the issues were outside the scope of the referral from Judge Filip to me. (Dkt. # 154). But that does not mean that the time spent on the motion was unnecessary or unreasonable. It simply had to be renoticed before another judge.

Dkt. # 163, 164 – Motions to Compel. The defendant argues that the 8.6 hours spent on this motion should be disallowed because the issues presented had previously been decided. (Dkt. # 184). It is unclear, however, whether the motion was unreasonable or unnecessary because there is no indication in the minute order as to whether the defendant had complied with the order that resulted when the issues were initially presented. But it is Mr. Longo's burden to prove reasonableness and he has not done so. The time should be disallowed.

Dkt. # 181 – Motion to Compel. The 3.6 hours spent on this motion will be disallowed as unreasonable and unnecessary because the motion was summarily denied due to Mr. Longo's failure to provide a transcript as previously ordered. (Dkt. #249).

Dkt. # 287 –Motion to Compel. The 11.6 hours spent on this motion will be disallowed as unreasonable and unnecessary because the motion was based on a premise that was "glaringly false" and came "[d]espite repeated rebuffs by three judicial officers." (Dkt. # 321, at 14, 16).

Dkt. # 106 – Motion to Strike. The defendant argues that the 7.6 hours spent on this motion should be disallowed because the motion was denied without discussion in a minute order. There is no indication, however, that the motion was unreasonable. (Dkt. # 121). It was simply denied without comment, as many motions are every day. There is no authority to suggest that attorneys only deserve fees for successful motions, and they certainly do not bill their clients on that basis.

Dkt. # 256 – Motion to Strike. The defendant argues that the 5.4 hours spent on this motion should

be disallowed because the motion was summarily denied apparently due to Longo's failure to meet and confer under Fed.R.Civ.P. 37 and LR 37.2. Had there been compliance with the Rule, the motion may well not have been necessary. Mr. Longo's noncompliance with Local Rule 37.2 frustrated the purpose of the Rules and resulted in an expenditure of time and effort that could have easily been avoided. *Stingley v. City of Chicago*, 2009 WL 3681984, at *2 (N.D.Ill. 2009). Mr. Longo should not be compensated for violating the Rules.

<u>Dkt. # 401 – Motion to Strike</u>. The defendant argues that the 2.4 hours spent on this motion should be disallowed because the motion was summarily denied in a footnote. This motion was not reasonable and was unnecessary. The motion was directed at the defendant's reply brief in support of one of the defendant's motions and, because the court eventually granted the defendant's motion, the reply was unnecessary to the decision and the motion to strike was moot. (Dkt. #494 at 18 n. 5).

<u>Dkt. # 475 – Motion to Strike</u>. The defendant argues that the 2.6 hours spent on this motion should be disallowed because the motion was summarily denied in this footnote.

> Sommerfield has moved to strike the City's reply brief concerning its motion for summary judgment.(Doc. 475.) Sommerfield argued in response that some of the defendant's exhibits were unauthenticated hearsay. The City, in reply, provided affidavits to authenticate its exhibits. Sommerfield argues that the City should not be permitted to include new evidence in reply and that Sommerfield has been prejudiced. However, Sommerfield does not even attempt to argue that the affidavits are insufficient to authenticate the City's evidence. Thus the court cannot find any prejudice. Sommerfield's motion is denied.

(Dkt. # 494, at 11, n.2). It is true, however, that it is improper for a party to do in a reply what should have been done in its opening motion. *Sommerfield v. City of Chicago*, 2012 WL 3779104, at *1 (N.D.Ill. 2012)("As the Seventh Circuit has admonished over and over, reply briefs are for

replying, not for raising new matters or arguments that could and ought to have been advanced in the opening brief.")(collecting cases). Accordingly, while Mr. Longo failed to establish prejudice, his central point was valid.

Dkt. # 148 – Motion for Rule to Show Cause. *See* Dkt. # 152, *supra*.

Dkt. # 165 – Motion for Rule to Show Cause. The defendant argues that the 1hour spent on this motion should be disallowed because the motion was denied for not being properly supported. (Dkt. #187). I agree. Mr. Longo certainly knew that unsupported and skeletal arguments will not be considered, *Irish v. BNSF Ry. Co.,* 674 F.3d 710, 715 (7th Cir. 2012), and hence, the motion was stillborn.

Dkt. #147 – Motion for Discovery. *See* Dkt. # 152, *supra*.

Dkt. # 488, 492 – Motions for Sanctions. The defendant argues that the 82.8 hour spent on this motion and reply brief should be disallowed because the motion was denied because it was directed at events that occurred two years prior and Mr. Longo had not established bad faith or prejudice. (Dkt. # 494, at 4-5). The motion was unreasonable and inordinately stale. But beyond being not compensable, it represents the tip of an iceberg Mr. Longo constructed out of rehashed and repeated arguments, evincing an unwillingness to take no for an answer when his motions were denied. *See* Dkt. # 188, 275 – Motion to Reconsider (18.1 hours)(Mr. Longo "merely rehashes his original arguments on why the discovery he wants is warranted and necessary . . . [and] impermissibly asks the court to substitute its judgment for that of Judge Cole." (Dkt. # 224, at 4)).

Dkt. # 217, 244 – Motion to Reconsider (8.3 hours)(Mr. Longo "seriously misstates what occurred in this case" and his repeated assertion of inapposite case law . . . rapidly approaches sanctionable conduct." (Dkt. # 280, at 2 n.2)).

Dkt. # 289, 293, 298 – Motions to Reconsider (17.8 hours)("It is disingenuous of [Mr. Longo] to continue to assert that he cannot fathom the details of a log entry after it has been discussed *ad nauseam*"; " As Magistrate Judge Cole noted, any facial deficiencies in the log were more than cured during the very lengthy hearing." (Dkt. # 314, at 4)).  This motion is but a part of the broader pattern of Mr. Longo's insistence on filing unreasonable motions, which needlessly took the courts' time, thereby significantly affecting the due administration of justice by limiting the time the judges in this case could devote to other cases which needed their attention.  *See infra* at 26.

Dkt. # 97 – Motion to Clarify.  The 1.7 hours spent on this motion should be disallowed because the motion was frivolous.  (Dkt. # 101).

Dkt. # 329, 212, 313 – Motions to Revise or Enforce.  *See* Dkt. # 152, *supra*.

Dkt. #70 – Motion to Reconsider.  The 11.5 hours spent on this motion should be disallowed.  The motion was not merely unsuccessful, but it "verge[d] on frivolous", was "written without regard to the applicable standard of review," was "extraordinarily poorly presented," and essentially ignored the substance of a 3-hour hearing held on the matters it addressed and included no discussion of the thoughtful and extensive analysis that resolved those matters.  (Dkt. #102).

Dkt. # 229, 263 – Motion to Reconsider.  The 10.7 hours spent on this motion should be disallowed.  The motion was denied, but beyond that, it was manipulative and somewhat underhanded attempt to benefit from a court error.  (Dkt. # 282, at 4-5).  As Judge Gottschall put it:

> Obviously, it would not have been to Sommerfield's benefit to bring the error to the court's attention at that time because the grant of leave to amend depended upon a finding that Sommerfield already had sufficient discovery on the new claims. Although the timing of the assertion of mistake is now to Sommerfield's advantage, the court will not tolerate a party manipulating the timing of its motion for reconsideration so that it may reap the benefit of the error before bringing it to the court's attention.

(Dkt. # 282,  at 5, n.2).

Dkt. # 322 – Motion to Reconsider.   Of the 38.1 hours spent on this motion, 25.4 – or two-thirds – should be disallowed.   Only a portion of Mr. Longo's objections in the motion were properly raised or supported.  Beyond that, " the bulk of [Mr. Longo's] protestations that the Order is "unfair" or "erroneous" and failed even to provide a legal basis from which the court might conclude that the finding or representation Mr. Longo complained of was contrary to law."  (Dkt. # 467, at 4).

Dkt. # 498, 502 – Motion to Reconsider.  The 70 hours spent on this motion are disallowed.  This motion, directed at a summary judgment ruling,  was, sadly, a prime example of needless and baseless motions for reconsideration.   Among other things, it did not even pause to note or acknowledge the rigid standard governing such motions.  (Dkt. # 506, at 1).  Mr. Longo pointed to evidence which he had not brought forward during the summary judgment briefing.  (Dkt. # 506, at 2) and thus was utterly improper to rely on it as a basis for reconsideration.  *Echemendia v. Gene B. Glick Management Corp.,* 199 Fed.Appx. 544, 548, 2006 WL 2787171, 4 (7th Cir. 2006); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1269 -1270 (7th Cir. 1996).  Mr. Longo had apparently been far too lackadaisical in his responsive brief during that proceeding and had bollixed it.  Here is what Judge Gottschall had to say:

> [Mr. Longo's] response to the City's motion discusses the retaliation claim over eight pages. The argument is not organized in any logical fashion. The court has attempted to review all of the record evidence of retaliation cited by [Mr. Longo] in this portion of his brief. Several of  the citations point to portions of documents that were not provided to the court; others point to evidence which does not support Sommerfield's contentions. In many places, [Mr. Longo's] only citation is "Supra." or "Infra." The court cannot determine whether these generic references are meant to incorporate other citations. In any event, the court will not sift through the lengthy record for [Mr. Longo's] evidence. He alone bears the burden of adequately responding to the City's arguments and pointing the court toward the evidence establishing a genuine dispute of material fact.

(Dkt. # 506, at 2). Rather than a proper motion for reconsideration, the motion was nothing more than a request for a "do-over" "delug[ing] the court with citations to the record that ought to have appeared in Mr. Longo's summary judgement response brief. (Dkt. # 506, at 3). The motion was, in fact, a complete waste of the court's time.

Dkt. # 333 – Motion to Dismiss. Judge Gottschall found that this motion was "baseless and made without a reasonable and competent inquiry" and a waste of "valuable judicial resources." The motion was apparently also riddled with errors, and the judge instructed Mr. Longo to exercise more diligence. (Dkt. # 473). Clearly, the 30.3 hours spent on this motion were unreasonable and should be disallowed.

Dkt. # 335 – Motion to Dismiss. This was another motion that drew sanctions from Judge Gottschall. (Dkt. # 473). She found that it "twist[ed] the court's prior rulings." (Dkt. # 472, at 3). Judge Gottschall stated "[t]hat the request to amend comes very late in the course of this action is incontrovertible; that it was made in bad faith is, in the court's view, also quite plain." (Dkt. # 472, at 5). It also made clear that Mr. Longo was ignoring court order after court order. (Dkt. #472, at 5). The 18.3 hours sought for this motion should be disallowed.

Dkt. # 354 – Motion to Strike and Dismiss. Judge Gottschall denied this motion, noting that Mr. Longo, " himself, recognize[d] it as untimely," and describing its argument as "nonsensical." (Dkt. # 494, at 8, 9). The 16 hours sought for this motion should be disallowed.

Dkt. #355 – Motion for Summary Judgment. Judge Gottschall denied this motion as moot, but stated: "If this argument is not completely disingenuous, it is certainly meritless." (Dkt. # 494, at 10). Either way, the motion – for which Mr. Longo seeks 267 hours – was unreasonable and should be disallowed.

<u>Dkt. # 494 – Motion for Summary Judgment</u>. The Defendant objects to the 125.5 hours sought for this motion because it was denied in a single paragraph and cited no authority for this central proposition, which could well have resulted in a waiver. *See* cases cited *supra*. Mr. Longo was certainly not unaware of the differing versions of events which, in and of itself, would have precluded summary judgment. The objections are sustained.

<u>Dkt. # 452-54, 456 – Corrected Motions</u>. Judge Gottschall denied these motions in a single footnote because the "corrected" versions "[did] not appear to differ significantly from the originals"; Mr. Longo failed to seek leave to make these "corrections"; and "the court and the City should not have to compare dozens of documents to determine if [Longo was] trying to sneak something past the court's attention." (Dkt. # 494, at 8, n.1). Clearly, these filings were unnecessary and the 7 hours sought for them will be disallowed.

<u>29 Motions *in Limine*</u>. The defendant objects to the 118 hours sought for 29 motions *in limine*. Some of these were granted, some were denied. Judge Gottschall had this to say about the motions:

> [A] number of the plaintiff's twenty-eight motions are cursory and contain no legal argument or citation whatsoever–indeed, in a few it is difficult even to discern the nature of the ruling the plaintiff seeks. Others simply seem to restate the rules of evidence without any application to the matter at hand. These perfunctory filings will not be entertained.

She characterized the motions as "frivolous." (Dkt. # 593).[7] Seventy-five of the one hundred twenty five hours should be disallowed.

<u>6.3 hours sought for post-trial motion</u>. These hours should be disallowed as Mr. Longo filed his lone

---

[7] She was not particularly pleased with the defendants' responses which she found inexplicably voluminous, poorly organized and creating a further burden on the court. *Id.* But the defendants are not seeking fees; Mr. Longo is.

post-trial motion two weeks before this work was done.  (*Defendant Ex. C*; Dkt. # 626).  His citation to *O'Sullivan v. City of Chicago (Plaintiff's Reply*, at 17), as additional authority, does not support an award of fees for work performed on a non-existent post-trial motion. *See O'Sullivan v, City of Chicago*, 484 F.Supp.2d 829, 836 (N.D.Ill. 2007)(hours disallowed where attorney's "records d[id] not allow the court—or a client—to determine which of these motions she was working on, let alone what work she was doing.").

Expert witness.  The defendant next objects to  time sought in connection with the plaintiff's expert witness, Dr. Pastor.  Mr. Longo seeks recovery for 67 hours spent working with Dr. Pastor who was to testify on "the CPD's training/instructional protocols and curriculum on religious and national origin discrimination and ... the purpose and quality of the CPD' s investigations relating to harassment and discrimination."  (Dkt. # 285, at 1). Incredibly, the basis for his testimony was Mr. Longo's own summary of 11 deposition transcripts. Rather than having Dr. Pastor review the transcripts, he had him review only the summary as the basis for his opinions.  (*Id.*). This, of course, was nothing more than an expert report on Mr. Longo's partisan and inadmissible impressions of the evidence, prepared for the litigation and was manifestly inadmissible.  Consequently, the report was stricken. *Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D.Ill. 2008).  Moreover, as the opinion noted, this  was "not the first time [Mr. Longo] attempted to use himself as the exclusive evidentiary source for a position." *Id.*, at 337.  In addition, large portions of Dr. Pastor's report were inadmissable, serving "no purpose other than communicating [his] view of how the verdict should read" and amounting to nothing more than "an expression of [his] personal policy judgment." *Id.* Not surprisingly,  Dr. Pastor was never called as a witness.

Mr. Longo's defense of the 67 hours for time expended with Dr. Pastor consists of the

unenlightening conclusion that the matters upon which he could have testified were "important opinions involv[ing] the defendant's poor and deficient training on discrimination laws." (*Plaintiff's Reply*, at 16). This is simply not a response and is certainly not sufficient to sustain his burden of showing that the time spent with Pastor was reasonable. If Dr. Pastor were so important, he would have been called. In short, Mr. Longo has not demonstrated that the 67 hours were reasonably spent, and they should be disallowed.

In total, it is recommended that at least 864 hours be deducted from the 3,742 hours claimed by Mr. Longo, (*Plaintiff's Petition for Attorneys' Fees* at 15), for a total of 2,878 arguably compensatory hours. The next question in a lodestar calculation is to determine the reasonable rate for these hours.

### The Reasonable Hourly Rate For Mr. Longo's Time

Mr. Longo begins by attempting to prove what his actual rate is; what paying clients pay him. He does this by submitting a bill he sent to one of his clients. The bill does demonstrate that he charged that client $395 an hour, but it does not indicate whether he was doing similar work, *see Johnson v. GDF, Inc*., 668 F.3d 927, 933 (7th Cir. 2012)("The best evidence of an attorney's market rate is his or her actual billing rate for *similar* work."), or what he actually was *paid*. *See Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 647 (7th Cir. 2011)(discounting probative value of billing contract that don't prove clients paid the amount). So the bill is of little probative value, if any.

Next, Mr. Longo points to affidavits from four attorneys who purport to be familiar with the rates charged by civil rights or employment attorneys, and who say that the $395 sought by Mr. Longo is reasonable or even below market for an attorney of his experience. Again, the idea is to

determine what the reasonable fee is for similar services. *Johnson*, 668 F.3d at 933; *Pickett*, 664 F.3d at 647. Exhibit IV indicates only that an hourly rate of $395 is low "in the community for attorneys" (*Plaintiff's Petition,* Ex. IV, ¶ 25), and says nothing about the rate for attorneys providing the type of services Mr. Longo provided. Exhibit VIII is similar.

The affiant bases his claim as to a reasonable rate on his familiarity with the consumer protection bar. It is further undermined by reliance on the Laffey Matrix, which is of questionable value in ascertaining a reasonable fee here in the Chicago area. *See Pickett*, 664 F.3d at 649-50. Neither of these two affidavits is probative. Exhibit V – a little better – is based on a purported familiarity with Chicago area rates for labor and employment law attorneys and states that $395 is below that market. Exhibits VI and VII are similar. While neither specifically addresses itself to rates charged for services similar to those Mr. Longo provided here, they are at least based on a familiarity with rates charged by employment, civil rights, and discrimination attorneys. And, Exhibit VII is somewhat undermined by partial reliance on the Laffey Matrix.

The defendants' attorney – who certainly was performing a similar type of work to Mr. Longo – was paid $275 per hour in this case. (City's Ex. J). He, like Mr. Longo, has significant experience in this area of the law. While the Seventh Circuit has said that a district court is not "obliged to use the City's pricing structure as a proxy for what the market will bear," *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 660 (7th Cir. 2007), a court is not prohibited from considering that rate in determining what the plaintiff's counsel's rate should be in the same case.

Ms. Herman, Mr. Longo's colleague, is requesting a rate of $265. The defendant concedes that rate is reasonable. But Mr. Longo has more experience than Ms. Herman and was the lead attorney on this case. If she is entitled to $265, he is entitled to more. But how much more? Mr.

Longo also points to fee awards he has received in two recent cases, ranging from $375 to $395 per hour. He adds a third case from eleven years ago where he received $285 per hour, and correctly points out that rates have surely gone up. This is of little help because none of these cases were discrimination cases, and we do not know whether his performance in those cases was comparable to his performance here.

So the evidence is something of a mixed bag. The most salient would seem to be what defense counsel was paid for his work in this very case. Mr. Longo objects to using that as a benchmark, however, because "[t]he defendant's attorney presumably receives volume business from the city . . . ." and would gladly accept a lower rate in return. (*Plaintiff's Reply*, at 5). But that's just speculation on Mr. Longo's part, and unsupported statements in lawyers' briefs don't count as was pointed out to Mr. Longo during this very case. *Sommerfield v. City of Chicago*, 613 F.Supp.2d 1004, 1017 (N.D.Ill. 2009) – a point he stubbornly ignores. He also mentions that he was working on a contingent fee basis; he was taking a risk that he'd get paid at all. (*Plaintiff's Petition*, at 6). Although a fee cannot be enhanced for contingency, *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 642 n.2 (7th Cir. 2011), it is reasonable that the market rate, itself, takes the inherent risk of contingency into account. In other words, Mr. Longo's rate could properly be set at $395. However, there are factors that counsel against approving that rate in this case. The third *Hensley* factor a district court is to consider is "the skill requisite to perform the legal service properly." 461 U.S. 434, n.9. Of this factor the Fifth Circuit said in *Johnson* on which *Hensley* relied: "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court. The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at

work become highly important in this consideration." 488 F.2d at 718. As has been seen, Longo repeatedly dilated the proceedings needlessly either to enhance his fee or because he lacked the skill to appreciate his own conduct. Either way, his insistence on filing unreasonable, unfounded, repetitive, and dishonest motions improperly took the courts' time, thereby significantly affecting the due administration of justice by limiting the time the judges in this case could devote to other cases waiting in the queue for judicial attention. *See Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991); *Otto v. Variable Annuity Life Insurance. Co.,* 134 F.3d 841, 854 (7th Cir.1998); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987); *Channell v. Citicorp Nat. Services, Inc.,* 89 F.3d 379, 386 (7th Cir.1996). Of course, all this was known to Longo, who nonetheless persisted in his behavior. *See, e.g.*, *Sommerfield v. City of Chicago,* 613 F.Supp.2d 1004, 1005 (N.D.Ill. 2009).

Mr. Longo's contention that he should be paid $395 per hour is unacceptable. If he were to be paid what competent, rule-abiding lawyers in comparable cases are paid, we would create a perverse dis incentive for lawyers to conduct themselves professionally. Against so pernicious a result this court should resolutely set its face.

I recommend that Mr. Longo's hourly rate not exceed $300 per hour.

### Success and Proportionality

Finally, we come full circle to the staggering amount of fees Mr. Longo seeks for a $30,000 recovery in an uncomplicated case. The Seventh Circuit has held that the proportionality between fees sought and damages recovered – as opposed to damages sought and damages recovered – may be considered in calculating a fee award. *See supra* at 8; *Schlacher*, 574 F.3d at 857 ("And, in any

event, we have explained that, although there is no rule *requiring* proportionality between damages and attorney's fees, a district court may consider proportionality as one factor in determining a reasonable fee"); *A. Bauer Mechanical, Inc*, 562 F.3d at, 793 ("We have also considered the proportionality of attorneys' fees to the total damage award as a factor in determining the overall reasonableness of the fee request."). Here, Mr. Longo seeks an award 5,000 times greater than the recovery.

Now to the matter of Mr. Longo's limited success. Mr. Longo lost on three of the five counts. (Dkt. # 650). His last settlement demand was $475,000 (*City's brief* at 23); he recovered just 6% of that, and only .02% of the $1.5 million he insinuated to the jury was the appropriate measure of damages. *See supra* at 2. Yet, the degree of success is the critical consideration in determining a fee award. *Hensley*, 461 U.S. at, 436; *Anderson*, 578 F.3d at 545. Thus, not only is Mr. Longo's requested fee grossly disproportionate to the recovery, but it is excessive when compared to the limited success he achieved.

In short, Mr. Longo's fee petition is unreasonable and unsustainable. The only question is what the amount of the reduction should be. That question simply cannot be answered by tallying up the specific hours to which the defendant has objected, because it does not fully take into account and sufficiently monetize the effect of Mr. Longo's pattern of filing frivolous and unsupported motions, arguing the same point over and over, refusing to take no for an answer, filing motions that pretended as though adverse rulings had not been made against him, seeking to avoid the consequences of rulings that did not favor him, ignoring prior rulings, and making captious and

unreasonable arguments for which he now seeks full compensation.[8] The impossibility of calculating exactly how much of the $1.5 million that is being sought in fees is made up of the unreasonable expenditure of time that pervades the record is due to Mr. Longo's own conduct as an earlier opinion in this case noted. *See Sommerfield,* 613 F.Supp.2d at 1012 ("Because Sommerfield's discovery requests were so intertwined and tortured, folding back and forth on each other like a Mobius strip...."). Mr. Longo should not be the beneficiary of the tangle he has created. What Learned Hand said in *United States v. Cohen,* 145 F.2d 82, 88 (2nd Cir. 1944) applies here, *mutatis mutandis*:

> It is particularly unreasonable for the accused to object that all their misdeeds should be brought to light when they so inextricably confused them themselves: i.e. to complain of that confusion of which they were the authors.

*Cf., J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-567 (1981) ("[I]t does not come with very good grace for the wrongdoer to insist upon specific and certain proof of the injury ... it has itself inflicted").

In sum, given the disproportionately large fee request, the limited success achieved by Mr. Longo, the pervasive, needless proliferation of legal fees through the pattern of unreasonable and unnecessary expenditures of time discussed above, the uncomplicated nature of the case, the time and labor that reasonably should have been expended had Longo not needlessly dilated the proceedings, the absence of any novel or difficult questions, the absence of any evidence that

---

[8] One particularly egregious example of Mr. Longo's willingness to do and say whatever was expedient and to unreasonably expand his fees is found in *Sommerfield v. City of Chicago,* 613 F.Supp.2d 1004, 1012 (N.D.Ill.2009).

Longo's acceptance of this case precluded employment in other cases,[9] the experience, reputation, and ability of Mr. Longo – matters on which the court has an abundance of evidence, all negative –, and Mr. Longo's less than stellar performance in this case – to put it charitably – and awards in similar cases, *Hensley*, 461 U.S. at 430 n.3 and n.9; *see also supra* at 7, the amount requested by Mr. Longo is manifestly unreasonable and should be significantly reduced. This is an equitable judgment in which the court has substantial discretion. *See* discussion *supra* at 10-12.

Alternatively, the court can subtract the duplicative, unnecessary and excessive fees and then reduce that amount by a percentage the court in its discretion and informed by the 12 *Hensley* factors concludes will yield a reasonable fee. *See, e.g., Cooke v. Stefani Management Services, Inc*. 250 F.3d 564, 570 (7th Cir.2001) (sustaining the district court's deduction of specified amounts as duplicative and excessive, followed by a 50% limited-success reduction of the balance – a reduction which the Court of Appeals said was "entirely justified.");[10] *Catalan,* 2009 WL 2986122 at *7-8 (reducing the lodestar by 40% and collecting cases where reductions of 50% and 67% based upon the limited success achieved were sustained by the Seventh Circuit); *Sughayyer v. City of Chicago*, 2012 WL 2359065, *12, *14 (N.D.Ill.2012) (reducing the lodestar of $323,000 by 45% for a total fee $178,000 where the plaintiff recovered $13,000). The same *Hensley* factors discussed above inform this analysis.

---

[9] The only reference to this factor is found in Mr. Longo's declaration in support of his fee petition at ¶31 in which he conclusorily alleges that he has had to forego other employment which he "would otherwise have had." That self-serving, conclusory, unsupported statement is plainly insufficient, just as conclusory, self-serving affidavits in summary judgment cases do not suffice. *See, e.g., Broaddus v. Shields*, 665 F.3d 846, 856 (7th Cir. 2011).

[10] The plaintiff sought $116,000 in fees. The court deducted $16,000 as duplicative and excessive. The court then awarded 50% of the balance, or approximately $50,000. It does not appear that the option expressly approved in *Hensley* was proposed by the parties or considered by the Seventh Circuit.

If the court wishes to follow the method used in *Cooke v. Stefani Management Services* and other cases and calculate the loadstar and then deduct an amount that results in a reasonable fee under the circumstances of the case, the following is recommended: of the 3,742 hours claimed by Mr. Longo for his time, at least 864 hours should be deducted as unreasonable and unnecessary and excessive. That leaves a total of 2,878 in compensable hours. The rate should not exceed $300 per hour. That yields a lodestar of $863,000.

It may be noted that the City has recommended that Mr. Longo be compensated for his time at $275 per hour and that after its computation of the reasonable hours with which Mr. Longo should be credited, the lodestar is $754,160 ($275 times 2,742 hours) (plus $18,682 for his associates time). (*City's Brief* at 18) Of course, the court is not bound by the City's concessions or contentions. The City then argues for a further reduction of 85% for a resulting fee award of $116,560.81. (*City's Brief* at 25).

It is recommended that this amount not be adopted and the court conclude that it is not a reasonable fee given the duration of the case and the City's rather strenuous resistence at all states of the litigation. Rather, it is recommended that there be a further reduction of my recommended lodestar of $863,000 by approximately 50% based upon the *Hensley* factors. That would yield a fee of not to exceed $430,000.[11]

If the court wishes to utilize the option approved by *Hensley*, *see supra* at 12, and reduce the $1.5 million claimed in fees by Mr. Longo for his efforts to a number that represents a

---

[11] Reductions in the lodestar of 35-67% have been approved based solely on lack of success. *See Catalan,* 2009 WL 2986122 at *8. In the instant case, it is not merely the limited success that warrants the recommended reduction, but rather the uncomplicated nature of the case, Mr. Longo's reputation, and his conduct in this case, as discussed at length above and in the various decisions of this court, Judge Filip, and Judge Gottschall and the other *Hensley* factors discussed earlier in this Report and Recommendation.

reasonable fee under the circumstances of this case, it is respectfully recommended that the total fee award not exceed $430,000, which includes within it the $18,682.50 requested for Mr. Longo's associate's work on the case, which is a reasonable number and is not questioned by the City. A fee not to exceed $430,000 more than adequately compensates Mr. Longo for the time that reasonably should have been expended in this uncomplicated case in which he had rather limited success.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 10/29/12

Specific, written objections to the Report and Recommendation must be filed with the Clerk of the District Court for the Northern District of Illinois, 219 S. Dearborn, 20th Floor, Chicago, IL 60604, within fourteen (14) days of being served with a copy of the Report and Recommendation. Failure to file specific, written objections within the specified time waives the right to appeal this Report and Recommendation. *See* Fed.R.Civ.P. 72(b)(2); 28 U.S.C. 636(b)(1)(C); *United States v. Brown*, 79 F.3d 1499, 1504, n. 4 (7th Cir. 1996); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 329 (7th Cir.1995); *Video View, Inc. v. Studio 21 Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).