IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DETLEF SOMMERFIELD,

                Plaintiff,        Case No. 06 C 3132

      v.

                             Hon. Harry D. Leinenweber

CITY OF CHICAGO,

               Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court are the Parties' Objections to the Report and Recommendation of Magistrate Judge Jeffery Cole regarding Plaintiff's fee petition. For the reasons stated herein, the Court overrules the parties' objections and adopts Magistrate Judge Cole's Report and Recommendation.

## I.  FACTUAL BACKGROUND

The Court presumes familiarity with its October 31, 2012 Opinion and with Magistrate Judge Cole's excellent recitation of the relevant facts in this matter. ECF Nos. 712, 709. Accordingly, an abbreviated version of the facts follows.

In 2006, Plaintiff Detlef Sommerfield ("Plaintiff" or "Sommerfield") filed the instant suit against the City of Chicago ("the City") and Sergeant Knasiak alleging various counts of religious and national origin discrimination, retaliation, and intentional infliction of emotional distress. Eventually, the case

proceeded to trial on three counts which claimed the City violated Title VII. Count I alleged religious harassment, Count II alleged national origin harassment, and Count III alleged retaliatory harassment. The jury returned a verdict for the Plaintiff on Counts I and II, awarding Plaintiff $30,000 and found in favor of the City on Count III.

On June 8, 2012, Plaintiff filed a Motion for Attorneys Fees. Due to the fact that this case was transferred to this Court only a few months prior to trial, and because Judge Cole patiently presided over the case during many of the proceedings for which Plaintiff seeks fees, the Court referred Plaintiff's Petition to Judge Cole pursuant to Local Rule 72.1.

On October 29, 2012, Judge Cole issued his Report and Recommendation ("the Report") for this Court's consideration. ECF No. 709. In it, he recommended that the Court reduce Plaintiff's fees from $1.5 million to an amount not to exceed $430,000. Both parties timely filed objections and responses to the Report for the Court's consideration.

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil procedure 72(b) governs dispositive motions referred to a magistrate judge. FED. R. CIV. P. 72(b). A district court reviews *de novo* any portion of a magistrate judge's report and recommendation to which written objections have been filed. *Id.* "The district judge may accept, reject, or modify the

- 2 -

recommended disposition; receive further evidence; or return the matter to the magistrate judge with further instructions." FED. R. CIV. P. 72(b)(3).

### III.  **ANALYSIS**

#### A.  **Report and Recommendation Summary**

The Report begins by noting the exorbitant amount of time that has lapsed since this case began in 2006.  Judge Cole found this was largely due to the time spent "on protracted and often unnecessary discovery disputes."  Report at 1.  The Report then points out the disproportionality that exists between Plaintiff's $1.5 million requested fees and the $30,000 jury award.  *Id.*  In determining what the proper fee award should be, Judge Cole examined the reasonableness of Plaintiff's claimed hours and the reasonableness of Plaintiff's claimed hourly rate to calculate the appropriate lodestar figure.  He then reviewed the *Hensley* factors and found a 50% reduction was warranted.  *See Hensley v. Eckhert*, 461 U.S. 424 (1983).  The Court agrees with this method.  *See Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012) (stating that when a party is entitled to attorneys' fees, the courts begin by calculating the Plaintiff's lodestar rate – the hours reasonably expended times the reasonable hourly rate and then in some circumstances, adjusts the lodestar rate.).

In analyzing Plaintiff's 3,812 claimed hours and reviewing each of the Defendant's objections with respect to those hours,

Judge Cole suggested that this Court deduct 864 hours. Next, the Report analyzed the reasonableness of Plaintiff's requested hourly rate of $395 per hour. In finding Plaintiff's supporting evidence for such a rate to be "a mixed bag" and finding Plaintiff's attorney's ("Mr. Longo" or "Longo") litigation tactics to at times be "unreasonable, unfounded, repetitive, and dishonest," Judge Cole recommended that the hourly rate be reduced to an amount not greater than $300. Report at 26-27.

After calculating the lodestar, the Report considered Plaintiff's partial success at trial and the proportionality of Plaintiff's claimed fees with the damages recovered. Judge Cole also considered Mr. Longo's "pattern of filing frivolous and unsupported motions," as well as other distasteful litigation tactics. *Id.* at 28. In light of these considerations, Judge Cole suggested that the lodestar be reduced by 50% to yield a fee not to exceed $430,000.

## B. Plaintiff's Objections

Not surprisingly, Plaintiff objected to the entire reduction in the Report. Specifically, Plaintiff objects that the Report (1) ignored the City's claimed hours; (2) ignored the affidavits Plaintiff submitted in support of his hourly rate; (3) referenced irrelevant factors in reducing the fee; (4) failed to take into account only those objections raised by the City in their response to Plaintiff's petition; and (5) erred by taking into account the

proportionality of Plaintiff's requested fees with Plaintiff's success at trial.

### 1. *City's Claimed Hours*

Plaintiff argues that the reduction in the Report is inappropriate because it fails to consider that the City spent 5,890 hours on this case. Plaintiff claims that courts routinely take into account the hours claimed from the opposing party when determining whether the prevailing party's hours are reasonable. Other than this bare assertion, Plaintiff offers no authority for support.

When determining the number of hours reasonably expended on the litigation, the court first considers the number of hours worked and subtracts hours spent on "unrelated [and] unsuccessful claims and hours" and subtracts all hours which the attorney failed to provide adequate documentation. *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651 (7th Cir. 1985). Additionally, when determining what hours are reasonable, the Court excludes those hours which are "excessive, redundant, or otherwise unnecessary . . ." *Hensley*, 461 U.S. at 434.

With respect to Plaintiff's contention that his claimed hours are reasonable because of the number of hours the City spent on this litigation, the Court disagrees. The Court recognizes that Local Rule 54.3(d)(5)(A) requires an opposing party to provide "the time and work records . . . pertaining to the litigation . . ." if

the opposing party questions the number of hours spent by the prevailing party to prevent "hypocritical objections." *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006); L.R. 54.3(d)(5)(A). Here, it is clear that the City complied with the Local Rule. While it is undeniable that the City's claimed hours exceed Plaintiff's, those hours include the time spent defending Plaintiff's unsuccessful (and at times frivolous and unnecessary) motions. Moreover, the Report thoroughly explains why each of the 864 hours was excluded.

As an example, the Report excluded 82.8 hours Mr. Longo claimed was spent on a motion for sanctions. Judge Cole reasoned that such hours should be excluded because the motion addressed "events that occurred two years prior and Mr. Longo had not established bad faith or prejudice[,] [and] [t]he motion was unreasonable and inordinately stale." Report at 18. As another example, the Report excluded 70 hours Longo claimed was spent on one of his many motions for reconsideration. In finding these hours unreasonable, the Court noted that this motion was "a prime example of needless and baseless motions for reconsideration[,]" and "did not even pause to note or acknowledge the rigid standard governing such motions." *Id.* at 20.

Indeed, the docket indicates that Mr. Longo filed motions of this nature repeatedly. In light of this, the Court is not surprised that the City was forced to spend as much time as it did

- 6 -

in responding to such motions. Mr. Longo argues that because the City spent substantial time in responding to his motions this "demonstrate[s] that the [P]laintiff's prosecution was skillful[.]" Pl.'s Objection to Report Regarding Fee Pet. at 1. The Court finds this argument lacks merit. The mere fact that the City had to spend time responding to baseless or unnecessary motions does not automatically transform the hours Longo spent on drafting such motions to be reasonable. Accordingly, the Court overrules Plaintiff's first objection.

### 2. *Affidavits*

Next, Plaintiff argues that the Report failed to consider the affidavits Longo provided to support his claimed rate of $395 per hour and support his claimed hours. Plaintiff states that the Report "ignored established case law that undisputed affidavits must be accepted as true when deciding fee petitions." Pl.'s Objection to Report Regarding Fee Pet. at 1. Here again, the Court finds Plaintiff's interpretation of the relevant case law skewed. First, for the reasons stated above, the Court does not find that the affiants who stated Plaintiff's claimed hours were reasonable somehow trump Judge Cole's findings that Plaintiff's unnecessary and baseless motions are not to be compensated. A prevailing party who merely tells an attorney in a related area of law the number of hours he spent on a case would only provide the attorney attesting that such hours were reasonable a skeletal framework of a case. It

is the court and the judge who understands the finite details and intricacies of a case.

As an example, while Plaintiff claims that the Court *must* accept as true attorney John P. DeRose's affidavit which states that Plaintiff's time spent was reasonable, the Court wonders if Mr. Longo informed Mr. DeRose that 70 of his claimed hours were spent on a motion to reconsider that failed to recognize the legal standard governing motions for reconsideration and instead inappropriately presented evidence which Plaintiff failed to present during the initial briefing. The Court also wonders if Mr. Longo informed Mr. DeRose and the other affiants that his claimed hours include 267 hours for a summary judgment motion which Judge Joan Gottschall found to be if "not completely disingenuous . . . then certainly meritless." ECF No. 494 at 10. Regardless of whether these affiants were informed of such details, the idea of substituting the judgment of a detached affiant for the judgment of a district court judge or a magistrate judge who regulated the proceedings, read the parties' briefs, and heard the parties' arguments is ludicrous. Accordingly, the Court rejects Plaintiff's contention that the Court must accept the affidavits which state that Plaintiff's hours are reasonable.

The Court next turns to Plaintiff's assertion that the Court must accept as true those affidavits which state that Plaintiff's hourly rate of $395 per hour is reasonable. Plaintiff cites *People*

*Who Care v. Rockford Board of Education*, 90 F.3d 1307 (7th Cir. 1996) as support. However, the Court finds Plaintiff's reliance misplaced. In *People Who Care*, the Seventh Circuit reversed a district court's reduction of a prevailing party's hourly rate because the opposing party failed to present evidence to contradict the prevailing party's claimed rate. *Id.* at 1313. It found that the district court was required to award the prevailing attorney his claimed billing rate since the opposing party failed to submit evidence to the contrary. *Id.* at 1313-1314.

The same cannot be said in this case. Here, it is clear that the City not only disputed Plaintiff's claimed rate, but also provided the Court support why Plaintiff's hourly rate was unreasonable. *See* Def.'s Resp. to Pl.'s Pet. for Attorney's Fees; Ex. J, ECF No. 693. First, the City disputed that Plaintiff's rate was justified because of his 29 years of experience. The City claimed that while Mr. Longo may have been practicing law for 29 years, "that experience was not reflected in the manner in which he handled this case" in part because of Longo's unnecessary and frivolous litigation tactics in this case. Def.'s Resp. to Pl.'s Pet. for Attorney's Fees at 12. The City also disputed Plaintiff's hourly rate by providing the Court an affidavit from its lead attorney, James F. Bontana, who averred that $275 per hour was a reasonable rate in this case.

Plaintiff claims he presented "6 <u>undisputed</u> affidavits from other attorneys testifying $395/hour is low." Pl.'s Objection to Report at 2 (emphasis in original). The Court finds this is a blatant misrepresentation. *Black's Law Dictionary* defines "undisputed" to mean "not questioned or challenged; uncontested." *Black's Law Dictionary* 1528 (7th ed. 1999). Here, the City contested Plaintiff's hourly rate and contested the affidavits Plaintiff provided.

As added support, the Court finds *Pickett v. Sheridan Health Care Center*, 664 F.3d 632 (7th Cir. 2011) particularly persuasive. In *Pickett*, the Seventh Circuit reversed a district court's fee award because it found the district court inappropriately reduced the award based on the fact that the prevailing party was also receiving a percentage of the damages pursuant to a contingency fee agreement. *Id.* at 643. In doing so, the Seventh Circuit noted that its holding was not intended "to minimize the district court's duty to prevent windfall recovery to attorneys in fee-shifting cases" and that it was within the court's discretion to reduce the attorney's "claimed hourly rate if it found that the evidence did not support the claimed rate -- *e.g.*, because the third party affidavits [were] actually from attorneys with dissimilar experience . . . " *Id.*

In this case, the Report determined that Plaintiff's supporting evidence was a "mixed bag" because some of the

affidavits Mr. Longo alleged supported his rate were from attorneys with dissimilar experience. Report at 26. Specifically, one of Plaintiff's affiants merely avers that $395 is a low rate for attorneys, but fails to mention anything about an attorney who provides the type of services that Mr. Longo provided in this case. As such, the Court does not find this affidavit persuasive. Moreover, while the Court acknowledges a few of Plaintiff's affidavits appear to be from attorneys who provide services similar to Mr. Longo, the Court also must take into account whether those affiants possess "similar skill." *See Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (stating that an attorney's reasonable hourly rate should reflect the market rate defined by the rate of lawyers with "similar ability and experience."). As the Report points out, while some of the affidavits appear to be from attorneys with similar experience to Mr. Longo, those affidavits do not reflect that the attorneys have skills similar to Mr. Longo. Indeed, the Report states "Longo repeatedly dilated the proceedings needlessly either to enhance his fee or because he lacked the skill to appreciate his own conduct." Report at 27.

The Court finds this fact, combined with the affidavit from the City which claims that $275 per hour is reasonable, persuasive. Thus, the Court adopts the Report's $300 per hour rate for Mr. Longo. *See, e.g., Connolly v. National School Bus Service, Inc.*,

177 F.3d 593 (7th Cir. 1999) (affirming a district court's reduction of an attorney's rate because the district court found the defendant's affidavit more persuasive than the evidence the plaintiff presented). The Court therefore rejects Plaintiff's objection that it is obligated to accept Plaintiff's affidavits.

### 3. *Irrelevant Factors*

Plaintiff next argues that the Report erred in relying on irrelevant factors. Specifically, Plaintiff claims that the Report's reference to Mr. Longo's reputation for filing frivolous motions in other cases is irrelevant to the present case. The Court disagrees. First, the Court reminds Plaintiff that the Report explicitly stated, **"the result would be the same even if all that had occurred in other cases were totally ignored."** Report at 6-7 (emphasis in original). Moreover, it is undeniable that one of the factors a court may consider when determining whether the lodestar figure is appropriate is an attorney's reputation and ability. *Hensley*, 461 U.S. at 430 n.3. Next, the Court finds the authority Plaintiff cites as support is inapposite. In *Johnson v. GDF*, 668 F.3d 927, 933 (7th Cir. 2012), the Seventh Circuit reversed a district court's fee award in part because the court relied on a distinguishable case where an offer of judgment was made. The court noted that "given the fundamental differences between this case and *Spegon*, it was unreasonable and therefore an abuse of discretion" to support a reduction. *Id.* While Plaintiff

contends *Johnson* stands for the proposition that a court cannot examine an attorney's conduct in prior cases to evaluate that attorney's reputation, this is simply inaccurate. Plaintiff's reliance on the other cases cited in his brief is similarly misplaced.

Notwithstanding these facts, the Court finds Plaintiff's objection largely irrelevant due to the fact that the Report was clear that its conclusion would remain unchanged even if it did not consider Mr. Longo's reputation. As such, the Court rejects Plaintiff's third objection.

### 4. Plaintiff's Response to the City's Objections

In his fourth objection, Plaintiff argues that the Report erred in not rejecting the City's objections because Plaintiff's fees are "presumptively reasonable." Pl.'s Objections to Report at 5. As support, Plaintiff directs this Court to a handful of United States Supreme Court cases. However, Plaintiff's interpretation of Supreme Court precedent is flawed. In *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673 (2010) (one of the cases Plaintiff references), the Supreme Court noted "[t]he lodestar method was never intended to be conclusive in all circumstances." Instead, there is a "strong presumption" that the lodestar figure [not plaintiff's initial fee request] is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that

- 13 -

may properly be considered in determining a reasonable fee." *Id.* Additionally, in *City of Riverside v. Rivera*, (another case Plaintiff claims supports the proposition that his fee request is "presumptively reasonable") the Supreme Court explained that the lodestar figure is a useful starting point for determining the amount of a fee and while the lodestar is presumed to be reasonable "[the] district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended' on the litigation." *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) citing *Hensley*, 461 U.S. at 433-34. Thus, the Court rejects Plaintiff's contention that because his fee request is presumptively reasonable, the Court should reject the City's objections.

Next, Plaintiff argues that the Report erred because the City failed to meet its burden in establishing that Plaintiff's fee request was unreasonable. The Court disagrees. An objecting party to a petition for attorney's fees must state their objections with particularity. *Ohio-Sealy Mattress Mfg. Co.*, 776 F.2d at 664. If a party fails to object with specificity, then the objection may be considered waived. *See Nilssen v. Gen. Electric*, No. 06-C-4145, 2011 WL 633414 at *7 (N.D. Ill. Feb. 11, 2011).

In its response to Plaintiff's fee petition, the City provided a table that listed all of the hours the City contested as unreasonable. The table included the title of the motions, their

- 14 -

corresponding docket numbers, Plaintiff's claimed hours, and the reasons why the City believed such hours were not reasonable. The Report addressed each of those objections, agreeing with some and disagreeing with others. The Court finds such objections were adequately specific and rejects Plaintiff's contention that the City failed to meet its burden.

Plaintiff also seems to argue that the Report reduced hours improperly merely because Plaintiff's motions were denied. However, the Report expressly stated that the City's objection to the Plaintiff's motion to strike was denied because "[t]here is no authority to suggest that attorneys only deserve fees for successful motions. . . ." Report at 16. Thus, Plaintiff's objections on this basis are also overruled.

Plaintiff also objects to the Report's reduction of 67 hours Plaintiff spent retaining an expert witness who was never called as a witness. The Report stated that because the basis for the expert's testimony was Mr. Longo's personal summary of deposition transcripts, (which was inadmissible evidence that caused the expert's report to be stricken), and because the expert was never called as a witness, the Plaintiff could not be compensated for such fees because they were not reasonably necessary for trial. The Court agrees and excludes any hours spent on retaining this expert or his inadmissible report. *See Hensley*, 461 U.S. at 434.

- 15 -

### 5. *Proportionality and Success*

Finally, Plaintiff objects that the Report erred in considering the proportionality between Plaintiff's fee award and the jury award. Plaintiff claims that the Report fails to take into the most recent Supreme Court case *Perdue v. Kenny A.*, 130 S.Ct. 1662 (2010) which "focuses on the lodestar and nothing else." Pl.'s Objection to Report at 12. However, this is yet another misinterpretation of relevant case law by Plaintiff. In *Perdue*, the Supreme Court addressed the issue of whether a lodestar figure could be increased because of the superior performance of an attorney. *Id.* at 1669. In reversing a district court's enhancement of the lodestar figure, the Supreme Court reasoned that since the lower court failed to provide "a reasonably specific explanation" for the enhancement, it could not affirm the award. *Id.* at 1676.

Despite Plaintiff's claims that *Perdue* stands for the proposition that consideration of the *Hensley* factors is no longer appropriate, the Court finds this assertion lacks merit. In *Perdue*, the Supreme Court examined a number of factors that could warrant an upward enhancement (or a downward reduction) of the lodestar figure. *Id.* at 1674-75. In that case, the Court reversed the award because the lower court failed to provide reasoning for its decision. *Id.* at 1676. Here, the Report provides an extremely

thorough analysis of the fee award and provides justifications for the reduction of the lodestar figure.

Moreover, as the City points out, since *Perdue*, the Seventh Circuit, in *Sottoriva v. Claps*, 441 Fed.Appx. 384, 386 (7th Cir. 2011), affirmed a 67 percent lodestar reduction in part because the Plaintiff was only partially successful with his claims. In *Sottoriva*, the Seventh Circuit pointed out the Supreme Court's disapproval of mere "claim counting" to justify fee awards, but noted "[w]here a plaintiff is only partially successful in his case, the most important factor in determining a reasonable attorney fee is the degree of success achieved." *Id.* citing *Hensley*, 461 U.S. at 434. In this case, it is clear that the Report did not merely count the number of claims where Plaintiff prevailed and award attorneys' fees; instead it calculated a reasonable lodestar and rigorously analyzed the *Hensley* factors to find a 50% reduction appropriate. The Court therefore overrules Plaintiff's final objection.

## C. The City's Objections

The City agrees with the Report's reasoning, but argues that an additional 50 percent reduction to the lodestar is necessary. The City claims a further reduction is warranted because (1) the case law in the Report supports a further reduction; and (2) Plaintiff's lack of success.

### 1. Case Law Cited in Report

The City argues that the authority referenced in the Report suggests that a further reduction to the lodestar is necessary. The City contends that while the cases cited in the Report had prevailing party's who received as much as a 67 percent lodestar reduction, the Court should further reduce Plaintiff's fees here because he has initially "made such a bloated request." Def.'s Objections to the Report at 5.

The City references *Cooke v. Stenfani Management Services, Inc.*, 250 F.3d 564, 570 (7th Cir. 2001), as support for the fact that a further reduction in fees is warranted. In *Cooke*, the Seventh Circuit reversed a jury's punitive damages award, but affirmed the award of attorneys' fees. *Id.* In *Cooke*, the Plaintiff initially sought $300,000 in damages, but after appeal only received $7,500. *Id.* at 569. After reducing duplicative and excessive fees and reducing the lodestar figure by 50 percent, the Seventh Circuit affirmed an award of $49,835.38 in fees.

The Court here finds the proportionality and limited success in this case similar to that in *Cooke*. Here, Plaintiff initially sought $1.5 million dollars and was awarded approximately $30,000, approximately 1/50 of his initial request. In *Cooke*, the plaintiff received 1/40 of its initial request. *Id.* at 570. Based on these numbers, the Court finds *Cooke* supports a 50 percent reduction.

The City next argues that *Spegon v. The Catholic Bishop of Chicago,* 175 F.3d 544 (7th Cir. 1999)*,* supports a reduction of more than 50 percent.  The Court disagrees.

In *Spegon*, the Seventh Circuit affirmed a 50 percent reduction in the lodestar due to a plaintiff's partial success at trial.  *Id.* at 559.  In finding the district court's reduction reasonable, the Seventh Circuit noted, when "determining the proper amount to reduce a plaintiff's fee award to reflect the degree of success obtained, the district court has considerable discretion."  *Id.*

Like the court in *Spegon*, here the Court takes into account Plaintiff's limited success at trial along with the other factors in *Hensley* to find that a 50 percent reduction is appropriate.  As such, the Court does not find *Spegon* supports a further reduction as the City contends.

Finally, the City argues that *Sottoriva v. Claps,* No. 06-3118, 2010 U.S. Dist. LEXIS 124560 (C.D. Ill. Nov. 24, 2010)*,* supports a greater reduction than the Report provided.  In *Sottoriva*, however, a Plaintiff only succeeded on one of his three claims and had only limited success on that claim.  *Id.* at *7.  In finding more than a 50 percent reduction warranted, the court noted that plaintiff "lost most of his primary claim."  *Id.*

The same cannot be said in this case.  It is undeniable that the jury in this case found the City liable under Title VII for religious harassment and national origin harassment.  While

- 19 -

Plaintiff sought a much greater award than he received, he still prevailed on two of his three claims at trial. Moreover, the Court does not find the claim that he did not prevail on – retaliation harassment – was Plaintiff's "primary" claim that warrants a greater lodestar reduction. *Id.* The Court therefore rejects the City's first objection.

### 2. *Plaintiff's Lack of Success*

The City's second objection is that the Court should apply a second 50 percent lodestar reduction to the already reduced amount in the Report because Plaintiff was unsuccessful on "distinctly different claims and interrelated claims." Def.'s Objections to the Report and Recommendation Regarding Pl.'s Pet. for Attorney's Fees at 6. The City cites *Nanetti v. University of Illinois*, 944 F.2d 1416 (7th Cir. 1991), as support. The Court, however, finds *Nanetti* inapposite. In *Nanetti*, the Seventh Circuit reversed a district court's double reduction of a lodestar in part because the reduction was "apparently invoked for essentially the same failure." *Id.* at 1421. In finding that the district court should only have reduced the party's lodestar by 35 percent as opposed to 50 percent, the Seventh Circuit noted that two reductions to a lodestar are appropriate only when they arise as "the result of separate and distinct shortfalls of the litigation." *Id.*

Here, the City claims that Plaintiff was unsuccessful on distinct claims, and also asserts that Plaintiff was unsuccessful

on 85 percent of this case.  With respect to this argument, the City seems to suggest that the Court should look not only to those claims that were presented to the jury, but to the entire number of claims which were disposed of prior to trial.  What the City fails to take into account, however, is that the Seventh Circuit and *Hensley* have "expressly rejected this mechanical "claim-chopping" approach."  *O'Sullivan v. City of Chicago*, 484 F.Supp.2d 829, 843 (N.D. Ill. 2007) citing *Hensley*, 461 U.S. at 435 n.11.  Instead, the Seventh Circuit instructs that the Court should evaluate the fee award in light of the "overall level of success" attained by Plaintiff.

Notwithstanding this, the Court briefly addresses the merits of the City's objection.  In its brief opposing Plaintiff's fees, the City argued that Plaintiff lost 85 percent of his case because 13 claims were disposed of at summary judgment.  However, the City grossly overstates the number of "claims" which were disposed of prior to trial.  In his second amended complaint, Plaintiff lodged five claims against the City.  Count I alleged religious discrimination, Count II alleged national origin discrimination, Count III alleged retaliation, Count IV alleged the City violated Sections 1981 and 1983 as a result of the City's failure to train its officers regarding discrimination, and Count V alleged the City violated Sections 1981 and 1983 because Sergeant Knasiak discriminated and harassed Plaintiff and the City allowed such

- 21 -

harassment to continue or acted with a deliberate indifference to it. ECF No. 190. After summary judgment, only Counts I-III remained. [See Dkt. 494]. Thus, the Court rejects the City's argument that a double reduction is warranted because Plaintiff was unsuccessful on distinct claims and because Plaintiff lost 85 percent of his case.

Accordingly, the Court adopts the Report's 50 percent reduction to the lodestar.

## IV. CONCLUSION

For the reasons stated herein, the Court overrules the parties' objections, and adopts Magistrate Judge Cole's Report and Recommendation and awards Plaintiff the sum of $430,000 in fees.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:**1/10/2013