THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DETLEF SOMMERFIELD, | ) | |
| | ) | Case No. 06-cv-03132 |
| Plaintiff, | ) | |
| | ) | Judge Harry D. Leinenweber |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
PETITION FOR SUPPLEMENTAL ATTORNEY'S FEES AND COSTS

I.  **INTRODUCTION**

After obtaining a jury verdict awarding $30,000 on only one of Plaintiff Detlef Sommerfield's claims against the City, Sommerfield's counsel, Joseph A. Longo, filed his first Petition for Attorney's Fees ("First Petition" – Dkt. 676), in which he sought an award of nearly $1,500,000, and a Bill of Costs in which he sought nearly $16,000 ("Bill of Costs" – Dkt. 638). In his Report and Recommendation on the First Petition, Magistrate Judge Cole largely agreed with the City's positions[1] and extensively criticized Plaintiff's counsel's bloated request for fees, improper tactics in the litigation, and failure to comply with the governing rules. ("Report" – Dkt. 709.) Ultimately, the Report recommended that Plaintiff's counsel receive a fraction of what he requested – no more than $430,000, or less than 30 percent of his request and approximately 23 percent of the disputed amount. (*Id.* at 32.) The Court concurred and adopted the Report. ("Fees Order" – Dkt. No. 731.) The Court partially agreed with the City's position on costs,[2] awarding only $9,586.40 or 60 percent of the amount sought. ("Costs Order" – Dkt. 712.) On those relatively paltry results, Plaintiff's counsel filed this Petition for Supplemental Attorney's Fees and Costs ("Second Petition" – Dkt. 746, 746-1 and 747), in which he seeks an additional $122,292 for over 300 hours of post-trial work and $246.15 in expenses. The Second Petition lacks both a factual and legal basis, and, even if it did not, it is vastly overstated.

Just as in the underlying litigation, Plaintiff's counsel's strategy during the fee and costs litigation was to assert largely unreasonable claims before battling the City and burdening the Court at every turn in the hopes that he would obtain *something*. By way of example, in addition to seeking an untenable hourly rate and an astonishing overall sum in his First Petition, Plaintiff's counsel needlessly protracted the litigation by stubbornly seeking to recover for

---

[1] See Defendant's Response to Plaintiff's Petition for Attorney's Fees ("Fee Response" – Dkt. 693).
[2] See Motion for the Parties to Bear Their Own Costs, or in the Alternative, to Disallow Costs for Plaintiff's Expert Witness Fees (Dkt. 663.)

1

several categories of time over a thousand hours of which the City was forced to dispute and which the Court largely, or entirely, excluded while castigating Plaintiff's counsel every step of the way. (Fee Response at 3-11; Fee Order; Dkt. 699 ("Motion to Strike"), 703 ("Motion to Strike Order"); Report at 15-26.)[3] To award Plaintiff's counsel $122,292 – or even a single dollar – for his small successes obtained while bringing about this fight would be to condone his pursuing what Magistrate Judge Cole rightfully called an "unreasonable and unsustainable" strategy. (Report at 28.) The City thus urges the Court to deny the Second Petition entirely.

In the alternative, even if it were appropriate for Plaintiff's counsel to receive an award, it would nevertheless require substantial reductions for at least five separate reasons: (a) some entries are time-barred or were inappropriately submitted; (b) some time is non-compensable under any circumstances; (c) some hours were not reasonably expended; (d) the claimed hourly rate is unreasonable; and (e) any resulting lodestar should be reduced by at least 70 percent to account for the limited success Plaintiff's counsel achieved compared to his overblown requests.

## II. LEGAL STANDARDS

While the Court may award fees for hours spent proving a petition for attorney's fees, the Court has full discretion to deny such requests in full. *Muscare v. Quinn*, 680 F.2d 42, 44-45 (7th Cir. 1982); *Alcazar-Anselmo v. City of Chicago*, No. 07 C 5246, 2011 U.S. Dist. LEXIS 82291, at *17-18 (N.D. Ill. July 27, 2011) ("[t]he Court has discretion, and uses it, to deny this fee request for proving fees," citing *Muscare*) (Leinenweber, J.). Indeed, the Seventh Circuit has long recognized that: "[t]he exercise of discretion … gives the district judge great leeway. If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation …." *Muscare*, 680 F.2d at 45 (quotation and citation omitted).

---

[3] These tactics continue even now. As discussed below, over $9,500 of the fees Plaintiff's counsel seeks are based on records that he submitted to the City more than two months after the Court's deadline.

If Plaintiff's counsel is able to demonstrate a potential entitlement to fees, he must prove his hours and hourly rate are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court would then follow the same, well-established Supreme Court precedent it used in ruling on the First Petition. (*See* Report at 7-15; Fees Order at 3-4); *see also In re Burlington N., Inc., Employment Practices Lit.*, 832 F.2d 430, 434 (7th Cir. 1987). The first step is to determine the lodestar by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley,* 461 U.S. at 433. The Court could then adjust the lodestar with "the most critical factor" being "the degree of success obtained." *Id.* at 430, 436.

### III. THE SECOND PETITION SHOULD BE DENIED IN FULL

The Court need not calculate a lodestar at all. Every hour Plaintiff's counsel claims fails right out of the gate because of either the timing of Plaintiff's counsel's submission, the non-compensable category of time at issue or the defective nature of Plaintiff's counsel's records.

    A.    *Plaintiff's Counsel Cannot Recover for the 24.1 Hours He First Claimed at the End of the Meet-and-Confer Process.*

Plaintiff's counsel submitted the bulk of the time records underlying the Second Petition on January 31, 2013. (Ex. A (1/31/2013 Longo e-mail to Selvey).) Assuming that those were the only hours at issue, the City stipulated to a scheduling order. (Dkt. 743.) Pursuant to that schedule and LR 54.3, Plaintiff's counsel was required to submit all "the information and documentation set forth in LR 54.3(d)(1-3)," including the "time and work records on which the motion will be based," by February 14, 2013. Despite these clear instructions and with Plaintiff's counsel's Second Petition due to be filed in less than two weeks, he submitted 24.1 hours of additional records. (Ex. B (4/15/2013 Longo letter to Selvey, including records).) Plaintiff's counsel's request to include these hours was improper and prevented the parties from complying with the scheduling order and LR 54.3. The City requested that Plaintiff's counsel

3

withdraw his request, to no avail. (Ex. C (4/24/2013 letter from Selvey to Longo).)[4] As Magistrate Judge Cole did the last time Plaintiff's counsel wrongly attempted to add hours midstream, the Court should strike the request and deem the 24.1 hours non-compensable.[5]

      B.    *Plaintiff's Counsel Cannot Be Compensated for Any Hours Based on the Type of Work Documented and the Types of Time Records Submitted.*

Even if the 24.1 hours Plaintiff's counsel improperly added may be included, the Second Petition nevertheless fails in its entirety because each entry relates to a category of time that is non-compensable on its face or is based on defective records.

      1.    <u>The 268.7 Hours Plaintiff's Counsel Spent Litigating the First Petition Protracted a Fee Proceeding with Arguments that Were Largely Meritless.</u>

Plaintiff's counsel improperly and, based on the results he obtained, needlessly, expanded the proceedings by requesting an astonishing $1,500,000 in fees on a $30,000 recovery and seeking compensation for several categories of time which the Court largely, or entirely, excluded, such as: (a) many motions that were denied outright and, in some cases, deemed "frivolous;" (b) five lengthy dispositive motions the Court found meritless on their face; (c) 29 motions *in limine*, nearly all of which were flatly denied; (d) wasted hours with an unused expert; (e) hours relating to appeals; and (f) $65,000 in fees Plaintiff's counsel attempted to add by way of a reply brief, which led to a motion to strike that was granted. (Fee Response at 3-11; Motion to Strike; Motion to Strike Order; Report at 15-24; Fee Order at 14-15, 22.) Plaintiff's counsel also: (i) failed to engage in a good faith effort to exclude excessive, redundant or otherwise unnecessary hours; (ii) pursued an unreasonable hourly rate based on the same evidence and arguments the Court and Magistrate Judge Cole rejected; and (iii) pursued an

---

[4]     In order to complete the parties' LR 54.3(e) statement, the City included these improperly asserted hours under protest. (Second Petition at Ex. I (LR 54.3(e) statement); Exs. D (April 25, 2013 e-mail from Longo to Selvey); E (April 26, 2013 e-mail from Selvey to Longo).)

[5]     Plaintiff's counsel initially set out these hours separately in the document attached to Ex. B. He has now folded them into the time records found at Ex. XVII to the Second Petition.

unwarranted lodestar *increase* despite the poor results he obtained in the fee litigation. (Fee Response at 12-17, 25; Fee Order at 7-12, 16-17; Report at 24-32.) After trying everything to see what stuck, and unfairly burdening the Court and City in the process, the Court largely accepted the City's arguments and awarded Plaintiff's counsel just a fraction of what he requested – 30 percent of his total request, or 23 percent of the disputed portion of the request.

Consistent with Seventh Circuit and district court precedent in cases like this where the moving party received much less than requested, sought an "extravagant" sum and unreasonably protracted the litigation, the Court should refuse to award fees.[6,7] *See, e.g., Muscare*, 680 F.2d at 45 (court had discretion to deny award for time on fee petition where plaintiff had prevailed on only one claim and petition sought an "extravagant" sum which was cut by 80 percent); *Alcazar-Anselmo*, 2011 U.S. Dist. LEXIS 82291, at *17-18 (hours spent on initial fee petition and reply were not recoverable because allowing them would "encourage protracted battles for attorneys' fees" and possibly motivate attorneys "to pile on the hours for a petition") (Leinenweber, J.); *see also, e.g., Woods v. Von Maur, Inc.*, Case No. 09 C 7800, 2012 U.S. Dist. LEXIS 125899, at *17 (N.D. Ill. Sept. 5, 2012) (each party bore its own attorney's fees for litigating a fee petition where each party prevailed on some points and the lodestar was reduced 40 percent); *Eli Lilly & Co. v. Zenith Goldline Pharma., Inc.*, 264 F. Supp. 2d 753, 784 (S.D. Ind. 2003) (denied fees on a fee

---

[6] Exhibit H lists all of the time entries the City identified as associated with the First Petition, including those in the original and supplemental records Plaintiff's counsel submitted. In Exhibit H, as well as Exhibits I, J and L-T hereto, the City references Plaintiff's counsel's time entries by the page of Plaintiff's counsel's time records and the entry number on that page (*e.g.*, P : E).
While Plaintiff's counsel has now combined all of his time records into one exhibit (XVII), that exhibit is not what the parties used previously, and, as it is not the City's responsibility to cull through Plaintiff's counsel's new ordering and Plaintiff's counsel loses nothing if the Court uses the attached original versions of Plaintiff's counsel's records (Exhibits F (1/31/2013 submission) and G (4/15/2013 submission)), the City's Exhibits refer to page and line numbers from Exhibits F and G, noting whether the entries come from the January 31, 2013 submission or the April 15, 2013 submission.
[7] The City generally objects to Plaintiff's counsel's time records as vague as to the activity performed and what it related to. The City has nevertheless endeavored to categorize entries as set forth in Exhibits H-J and L-T.
Time entries may appear in more than one of Exhibits H-J and L-T because entries are objectionable on multiple grounds, as described herein.

5

petition where "[m]uch of the time was spent on attempts to justify excessive and unreasonable fees and expenses," which "multipl[ied] work for [the defendant] and for the court, dealing with matters that never should have been submitted to the court at all").

To award Plaintiff's counsel any fees would be to encourage what this Court has guarded against: the "encourage[ment] of protracted fees disputes" which can encourage piling up more and more hours. *Alcazar-Anselmo*, 2011 U.S. Dist. LEXIS 82291, at *17-18. That is precisely the danger here. Plaintiff's counsel seeks $122,292 for work done *after the jury trial in this matter*. Moreover, there is no indication that this will be the last bite at the apple – Plaintiff's counsel could be on his way to pursuing the absurdity the Seventh Circuit has called fee litigation "without necessary end." *Muscare*, 680 F.2d at 44. The Court should stop Plaintiff's counsel before he further burdens the Court and City – and before the docket here proceeds well past 800 entries. It should use the discretion it has already recognized it has "to deny [a] fee request for proving fees" here. *Alcazar-Anselmo*, 2011 U.S. Dist. LEXIS 82291, at *18.

        2.        Plaintiff's Counsel Cannot Recover for the 23.3 Hours Spent on the Bill of Costs Because His Request Is Time-Barred.

Even if the much smaller amount of time spent litigating the Bill of Costs is not rendered non-compensable for the reasons set forth above, it is nevertheless time-barred.[8] Pursuant to LR 54.3(d), Plaintiff's counsel was required to begin the process and provide the materials required "within 21 days of the judgment . . . unless the court set[] a different schedule." The Court ruled on October 31, 2012. The earliest date Plaintiff submitted time records was January 31, 2013. (Ex. A.) The Court did not set a different schedule. The subject hours are time-barred.

---

[8] Exhibit I hereto lists all of the time entries the City has identified as associated with the Bill of Costs.

6

3. <u>Plaintiff's Counsel Cannot Recover for Any of the 21.3 Remaining Hours Because they Fall into One of Four Non-Compensable Categories.</u>

a. 3.4 Hours Spent on the Parties' Appeals.

Plaintiff's counsel acknowledged that this type of time[9] must be excluded when he agreed to withdraw hours relating to appeals after the City objected earlier in these proceedings. (Exs. B at 1; K at 3 (2/27/2013 letter from Dishman to Longo, voluminous exhibits excluded).) Accordingly, the Court should exclude these 3.4 hours. (*See* also Fee Response at 10-11.)

b. Fully Redacted Time Entries Representing 1.7 Hours.

After the City stated the problematic nature of these fully-redacted entries, Plaintiff's counsel cited only attorney-client privilege without recognizing the possibility of something akin to a privilege log. (Exs. B, C and K). It goes without saying that Plaintiff's counsel has not met his burden of demonstrating that these time entries listed in Exhibit L are compensable.

c. 15.6 Hours Associated with the Second Petition.

As stated in the Motion to Strike, including time relating to a petition in that very petition deprives the City and Court of potentially the most critical information to gauge reasonableness – the degree of success – and unjustifiably bypasses the Local Rules. Just as Magistrate Judge Cole did under similar circumstances, the Court should strike the entries in Exhibit M.

d. 0.6 Hours of Duplicative Entries.

Two entries in Plaintiff's counsel's supplemental records match entries for which he sought compensation in his First Petition. (*Compare* Exs. F at 2:4-5 with G at 2:4-5.) These entries, which are listed in Exhibit N hereto, are certainly not compensable now.

IV. **EVEN IF THE SECOND PETITION IS NOT DENIED IN FULL, SUBSTANTIAL DEDUCTIONS MUST BE MADE**

Should the Court determine that the Second Petition will not be denied in full, then the

---

[9] Exhibit J hereto lists the time entries the City has identified as associated with the parties' appeals.

7

Court should significantly reduce the award due to: (i) hours that were not reasonably expended or are inadequately explained; (ii) the unreasonably high hourly rate claimed; and (iii) the need to reduce any lodestar in light of Plaintiff's counsel's limited success in the fee litigation.

      A.     *Necessary Reductions for Hours Not Reasonably Expended or Explained.*

"In calculating the lodestar amount, a court must first eliminate all hours claimed that are either not reasonably expended or inadequately explained." *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 834 (N.D. Ill. 2007) (Cole, M.J.) (internal quotes omitted).[10] The Second Petition reveals at least five major categories of excessive, redundant, or otherwise unnecessary time, totaling 85 hours.[11] The Court should exclude this time from any lodestar calculation.

      1.     <u>14.3 Hours Spent Performing Clerical or Other Non-Attorney Work.</u>

The many entries in Exhibit O relate to non-attorney tasks, like docketing and e-filing. This is not time reasonably expended and it should be excluded. *See, e.g., Montanez v. Chicago Police Officers*, No. 10 C 4708, 2013 U.S. Dist. LEXIS 37102, at *26-28 (N.D. Ill. Mar. 18, 2013) (excluding attorney time spent performing clerical tasks) (Finnegan, M.J.).

      2.     <u>At Least 50.8 of the 102.7 Hours Plaintiff's Counsel Spent on His Reply in Support of the First Petition Were Not Reasonably Expended.</u>

Plaintiff's counsel spent an exorbitant 102.7 hours on a reply in support of the First Petition.[12] Moreover, the reply inexplicably took nearly double the time spent on the petition and events leading up to it.[13] This is all the more curious because the City had already disclosed its

---

[10] Plaintiff makes several unsupported and irrelevant arguments in support of the premise that he should receive all fees he has requested. (*See* Second Petition at 5-6.) Whether the City refused to discuss settlement, has a reputation of refusing to settle, or Judge Gottschall made a comment about settlement is of no consequence here.

[11] While difficult to quantify, Plaintiff's counsel's hours were almost certainly increased by his failure to engage in the process under LR 54.3. The parties should have been able to eliminate time entries for which fees could certainly not be recovered, but, by way of example, Plaintiff's counsel still refused to abandon his request for 18.3 hours in fees on a motion (Dkt. 335) *for which he was sanctioned.* (Dkt. 473.) Unsurprisingly, Magistrate Judge Cole agreed with the City and excluded the time after the parties needlessly litigated the issue. (Report at 21.)

[12] Exhibit P lists the time entries the City identified as associated with the reply brief.

[13] Exhibit Q lists the hours the City identified as associated with the First Petition and events leading up to it.

8

response arguments pursuant to LR 54.3(e). (Dkt. 676-2.) The majority of this time was not reasonably expended under any rubric. Plaintiff's counsel should not be credited with more time on the reply than the 51.9 hours incurred through the filing of the First Petition. (Ex. Q).

        3.    <u>1.0 Hour Relating to the City's Motion to Strike.</u>

The time Plaintiff's counsel spent on tasks relating to the Motion to Strike should not be compensated because it represents work relating to a motion he forced the City to file due to his improper conduct. As Magistrate Judge Cole stated in deciding the motion, "Longo's penchant for needlessly dilating the proceedings and refusing to abide by the Federal Rules of Civil Procedure and well established case law – thus unreasonably multiplying his fees and his opponents' costs – manifested itself in his attempt to up his fee petition by $65,000." (Report at 6; Motion to Strike Order at 4.) These entries, which are listed in Exhibit R, should be excluded.

        4.    <u>2.4 Hours Spent on a Pointless Motion to Supplement the First Petition.</u>

Plaintiff's counsel spent nearly two hours on what was essentially a one-page motion to supplement briefing relating to the First Petition with an irrelevant Louisiana state court case. (Dkt. No. 704.) These 2.4 hours, which are listed in Exhibit S, should not be compensated.

        5.    <u>At Least 16.5 of the 68.4 Hours Spent on an Objection to the Report Were Not Reasonably Expended.</u>

Plaintiff's counsel spent 16.5 more hours on an objection that was summarily denied (Dkt. 716)[14] than he did on the First Petition itself. At the very least, these excess hours cannot be considered time reasonably expended and should be excluded from any lodestar calculation.

        6.    <u>The City's Hours Do Not Render Plaintiff's Counsel's Hours Reasonable.</u>

The argument that Plaintiff's counsel's hours in the fee litigation should be compared with the City's attorneys' hours to determine reasonableness should be rejected for a second

---

[14]    Exhibit T hereto lists the time entries the City has identified as associated with Plaintiff's objection.

9

time.[15] (*See* Second Petition at 10.) First, as the Court previously noted, Plaintiff's counsel's argument is supported by only his bare assertion. (Fee Order at 5-7.) Second, Plaintiff's counsel has protracted the fee litigation and, as the City discussed previously, it had little choice but to expend many hours responding to Plaintiff's counsel's untenable claims. (*See* Fee Response at 11-12.) Third, the case law Plaintiff's counsel cited in his First (p. 8) and Second Petition (p. 10) does not support him. None of it featured a non-movant who had to spend many hours responding to unreasonable filings like the City did. The Court should reject Plaintiff's counsel's argument as it did before under similar circumstances. (Fee Order at 5-7.)

    B.    *Plaintiff's Counsel's Unreasonable Hourly Rate Should Be Reduced.*

Plaintiff's counsel still seeks an hourly rate of $395 despite the Court and Magistrate Judge having rejected it in favor of a significantly lower $300 rate.[16] Unsurprisingly, Plaintiff's counsel again fails to meet his burden "to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). He makes only the same losing arguments and cites almost entirely the same evidence that was already rejected and that led to Magistrate Judge Cole making a rather stark assessment of Plaintiff's counsel's claimed rate:

> Mr. Longo's contention that he should be paid $395 per hour is unacceptable. If he were to be paid what competent, rule-abiding lawyers in comparable cases are paid, we would create a perverse disincentive for lawyers to conduct themselves professionally. Against so pernicious a result this court should resolutely set its face. (Report at 27.)

---

[15]     In making his argument, Plaintiff's counsel makes one misstatement and one omission. First, attorneys for the City from Jackson Lewis LLP billed fewer hours and costs during the timeframe in question. (Second Petition at Ex. XVIII.) Second, the City's refusal to send time records for February and March 2013 was proper because they are associated only with Plaintiff's counsel's improper attempt to add hours at the last moment.

[16]     The City asserts that a rate of no more than $275 would be appropriate. (Fee Response at 13-18.)

For the same three reasons set forth in the City's prior briefing, Plaintiff's counsel should not be given a rate of higher than $275 per hour, or, at the very most, the $300 per hour rate the Court found appropriate previously. (Fee Response at 12-17; Report at 27; Fee Order at 11.)

First, Plaintiff's counsel's conduct of the fee litigation was far from stellar. He unreasonably dilated the proceedings by requesting an astonishing sum and taking unreasonable positions which the Court partially or entirely rejected. (*See* Section III.B.1.; Fee Response at 3-17, 25; Fee Order at 7-17, 22; Motion to Strike and Order; Report at 15-32.) The City's low opinion of Plaintiff's counsel's skill is shared by judicial officers in this case and other courts.[17] (Fee Response at 12-14.) As Magistrate Judge Cole put it after a several page castigation:

> [Longo's] willful misconduct time and time again results in needless and unreasonable expenditures of time for which he invariably seeks compensation through inflated fee awards and that courts have repeatedly condemned his behavior in published opinions that could not be more critical of a lawyer. (Report at 7.)

Magistrate Judge Cole further noted that:

> Longo's penchant for needlessly dilating the proceedings and refusing to abide by the Federal Rules of Civil Procedure and well established case law – thus unreasonably multiplying his fees and his opponents' costs – manifested itself in his attempt to up his fee petition by $65,000 through a request in his reply brief to the City of Chicago's objections to the fee petition. (Report at 6.)

Second, the same evidence that did not support a rate of $395 last time cannot support that rate now.[18] (*See* Fee Response at 12-17; Report at 24-27; Fee Order at 7-12.)

Third, the Court acknowledged that the rate of the City's lead attorney is a useful factor to take into account.[19] (Report at 25-26 (the "most salient" evidence "would seem to be what defense counsel was paid for his work in this very case"); Fees Order at 11.) In fact, it is again

---

[17] As noted in the Report (p. 7), Plaintiff's counsel's general reputation and ability are relevant under *Hensley*.
[18] The only newly-submitted evidence, an attorney affidavit, changes nothing. It is similar to two affidavits Magistrate Judge Cole took into account in significantly reducing Plaintiff's counsel's rate. (Report at 25.)
[19] *See, e.g., Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n. 18 (7th Cir. 1982) ("[t]he rates charged by the defendant's attorneys [can] provide a useful guide to rates customarily charged" in the type of case at issue).

11

the only competent proof[20] and demonstrates that the City paid only $275 per hour for a lawyer of significantly greater skill and reputation. (Exhibit U (Affidavit of James F. Botana) at ¶ 4.)[21]

For all of these reasons, Plaintiff's counsel cannot justify a rate any greater than $275 per hour, or, at the very most, the $300 per hour rate the Court set previously.[22]

### C. Any Resulting Lodestar Must Be Reduced Significantly to Account for Plaintiff's Counsel's Limited Success.

Plaintiff's counsel should recover nothing. There is no lodestar to calculate. However, even if the Court were to disallow one or more of the appropriate reductions set forth above, any lodestar calculation[23] would necessarily require a substantial downward adjustment.

Adjustments in this context are governed by the same *Hensley* factors used in other fee litigation. *Nanetti v. University of Ill. at Chicago*, 944 F.2d 1416, 1420 (7th Cir. 1991); *In re Burlington*, 832 F.2d at 436. The "the most critical factor" remains "the degree of success obtained." *Hensley*, 461 U.S. at 436. Plaintiff's counsel agrees. (Second Petition at 11.) *Hensley* and its progeny contemplate two categories of partial-success cases. An award "might be reduced 'where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims.'" *Nanetti*, 944 F.2d at 1420 (7th Cir. 1991) (quoting *Hensley*, 461 U.S. at 440). Alternatively, the lodestar may be reduced "where 'a plaintiff has achieved only partial or limited success.'" *Nanetti*, 944 F.2d at 1420 (quoting *Hensley*, 461 U.S. at 436).

---

[20] Plaintiff's counsel also cites a few cases regarding rates paid in this district. (Second Petition at 8.) These cases show only what Plaintiff's counsel says they do – "[c]ourts have approved various hourly rates as the market rate." (*Id.*) They are of no help to him here where he must demonstrate the proper rate for him *in this case*.

[21] Not only does Botana do similar work in this matter, he has 20 years of litigation experience, including extensive experience in employment law. (Ex. U at ¶¶ 7, 10-11.) Moreover, unlike Plaintiff's counsel, Botana has never been sanctioned. (*Id.* at ¶¶ 8-9.)

[22] Plaintiff's counsel also appears to argue that he should receive a higher hourly rate than he requested because he took the case on a contingent fee basis. (Second Petition at 8-9.) The Court has already rejected this argument. (Report at 26.) It should do so again.

[23] The City does not provide a lodestar calculation here because it would be difficult to calculate without knowing which of the above-referenced deductions would apply.

12

"There is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. A court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."[24] *Id.* at 436-437. Given the voluminous billing records in this matter and the Court's use of an across the board, non-claim specific 50 percent lodestar reduction regarding the First Petition (Fee Order at 22; Report at 27-32), the second approach – broad-based reduction to the award – is far more efficient.

In a case of partial success like this one:

> [T]he lodestar amount – the product of the number of attorney's hours reasonably expended on the litigation as a whole times a reasonable hourly rate – is likely to be excessive. [Thus, a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.

*Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000) (internal quotation omitted).[25]

It is Plaintiff's counsel's burden to "prov[e] the reasonableness of the hours worked and the hourly rates claimed." *Spegon Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999); *see also Hensley*, 461 U.S. 424, 433 (1983). Although Plaintiff's counsel is correct that the district court has an independent duty in calculating fees, it is to "'exclude from th[e] initial fee calculation hours that were not reasonably expended' on the litigation" regardless of a defendant's objections. *Spegon*, 175 F.3d at 550 (quoting *Hensley*, 461 U.S. at 434).

The steep lodestar reduction that is appropriate here stems from Plaintiff's counsel's quite limited success with the First Petition. Off the top, Magistrate Judge Cole and the Court lopped off a staggering 864 hours because they were not reasonably expended. (Report at 24.) At the end of the day, Plaintiff's counsel received far less than half of what he requested – just 28

---

[24] Courts may use a "best estimate" based on the record. *E.g., Am. Fam. Mut. Ins., Co. v. Roth*, No. 05 C 3839, 2008 U.S. Dist. LEXIS 79813, at *8 (N.D. Ill. Aug. 6, 2008) (Cole, M.J.).
[25] Plaintiff's counsel infers that the lodestar cannot be adjusted downward for public policy reasons and because it is presumptively reasonable. (*E.g.*, Second Petition at 5-7, 12.) The City's Fee Response (p. 18-25) demonstrated that these arguments are meritless.

percent of the approximately $1,500,000 in fees and expenses he pursued. Further, he received a mere $9,586.40 more as a result of his Bill of Costs. Plaintiff's counsel cannot, and does not attempt to, refute these facts. In fact, he barely attempts to demonstrate his success *on the First Petition*. His primary arguments (p. 11-12), that Sommerfield was successful *in the underlying litigation* and that litigating this case, and against the City in general, is difficult are irrelevant at this stage. (*See* Second Petition at 11.); *In re Burlington.*, 832 F.2d at 434-436 (in analyzing a request for fees-on-fees request, the court conducted a *Hensley* analysis using only success in the fees litigation). None of the string of cases Plaintiff's counsel cites (Second Petition at 11-12) even involve fees generated in conducting litigation on an earlier fee petition.

The few sentences Plaintiff's counsel provides regarding the fee litigation only vaguely assert that he prevailed, citing Magistrate Judge Cole's rejection of the hourly rate the City suggested and the Court's rejection of the City's objections to the Report. (Second Petition at 12.) First, one of the victories cited was quite minor – the Report granted more than three-quarters of the rate cut the City suggested. (Report at 24-27.) Second, the Seventh Circuit holds that lodestar adjustments for fees incurred in litigating fee awards take into account the party's success in obtaining what was sought and the outcome of important issues, not merely obtaining minor victories. *See In re Burlington.*, 832 F.2d at 435-436.

Under these circumstances, a very significant reduction to the lodestar is warranted. *See In re Burlington.*, 832 F.2d at 435-436 (lead counsel obtained 42% of fees sought; in subsequent fees-on-fees proceedings the district court did not abuse its discretion by reducing the lodestar by 35%); *Nanetti*, 944 F.2d at 1420-1422 (counsel obtained approximately 76% of fees originally sought; applying a 35% reduction to the fees-on-fees award was not an abuse of discretion).[26]

---

[26] Plaintiff's counsel's claim that the lodestar should be adjusted *upward* fails for the same reasons the City has previously articulated. (Fee Response at 25.)

For all of these reasons, even if the Court were to allow recovery on some of the hours in the Second Petition, a reduction of 70 percent to the lodestar would be appropriate due to Plaintiff's counsel's limited success on the First Petition.

## V. CONCLUSION

It certainly was a "staggering amount of fees Mr. Longo [sought] for a $30,000 recovery in an uncomplicated case." (Report at 27.) And with the First Petition came a heated satellite dispute in which more than 50 pages of judicial ink were spilled to conclude that Plaintiff's counsel was entitled to less than 30 percent of his request. In a largely unsuccessful quest, Plaintiff's counsel extended this litigation yet further and pushed well past 700 entries in a docket Judge Gottschall long ago called "mind-splitting." (Dkt. 467 at 8.) The Court should not reward Plaintiff's counsel for bringing about this state of affairs. The Court should deny the Second Petition in full. In the alternative, the Court should only award Plaintiff's counsel compensation for a fraction of the hours he seeks, determine Plaintiff's counsel's appropriate hourly rate is no more than $275, or, at least, no more than $300, and reduce the resulting lodestar by at least 70 percent to account for Plaintiff's counsel's limited success.

Dated: May 24, 2013

James F. Botana
Neil H. Dishman
Jason A. Selvey
Jackson Lewis LLP
150 N. Michigan Ave., Suite 2500
Chicago, Illinois 60601
(312) 787-4949

Respectfully submitted,

**CITY OF CHICAGO**

By: /s/ James F. Botana
     One of Its Attorneys

## CERTIFICATE OF SERVICE

I, James F. Botana, an attorney, certify that on this 24th day of May, 2013, this Defendant's Response to Plaintiff's Supplemental Petition for Attorney's Fees and Costs was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney of record for Plaintiff:

Joseph A. Longo
Attorney at Law
2100 West Haven
Mt. Prospect, IL  60056

/s/ James F. Botana