# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DETLEF SOMMERFIELD,

                    Plaintiff,

          v.

CITY OF CHICAGO, *et al.,*

                    Defendants.

Case No. 06 C 3132

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Additional Attorney's Fees [ECF No. 746] filed by Joseph Longo, counsel for Plaintiff Detlef Somerfield. Because the Court sees no reason to increase Longo's fees beyond what it has awarded him, the Motion is denied.

## I.  BACKGROUND

"Fee litigation has become a heavy burden on the federal courts. It can turn a simple civil case into two or even more cases – the case on the merits, the case for fees, the case for fees on appeal, the case for fees for proving fees, and so on *ad infinitum*, or at least *ad nauseam*." *Ustrak v. Fairman,* 851 F.2d 983, 987 (7th Cir. 1988). The Court is here faced with such an *ad nauseam* fee dispute.

After years of protracted litigation, Attorney Longo managed to win for his client $30,000 in his Title VII

discrimination suit. For his efforts, Longo requested $1.5 million in attorney's fees, representing 3,742 hours worked at an hourly rate of $395. (Technically, it was Plaintiff who requested the fees. However, Longo has made clear that any fees recouped from Defendant City of Chicago are to go to him directly, as Plaintiff had not paid Longo for his services beyond an hour-long consultation. The Court thus refers to Longo as the movant in these fee petitions.)

Magistrate Judge Jeffrey Cole thought the requested $1.5 million "unreasonable and unsustainable" and recommended against awarding it. *Sommerfield v. City of Chi.,* No. 06 C 3132, 2012 U.S. Dist. LEXIS 155064, at *45-46 (N.D. Ill. Oct. 29, 2012) (Cole, M.J.). In his careful analysis, Judge Cole examined one by one the objections lodged by the City of Chicago to Longo's claimed hours and found many of them meritorious. As a result, the judge disallowed time spent on motions that were "frivolous," "manipulative," "riddled with errors," in violation of the local rules, or overall representative of "Longo's insistence on filing unreasonable motions, which needlessly took the courts' time, thereby significantly affecting the due administration of justice by limiting the time the judges in this case could devote to other cases which needed their attention." *Id.* at *30-32, 35. The judge further rejected

Longo's contention that he should be paid at an hourly rate of $395. Judge Cole reasoned that if Longo "were to be paid what competent, rule-abiding lawyers in comparable cases are paid," the result would be to "create a perverse disincentive for lawyers to conduct themselves professionally." *Id.* at *45. Finally, Judge Cole recommended that Longo's total fees be halved due to his limited success on the case.

Longo fought unsuccessfully against the adoption of Judge Cole's recommendations. This Court adopted in full the magistrate's report, thus cutting Longo's hours to 2,878, reducing the hourly rate to $300, and applying a 50% discount to the total fees allowed to reflect the lack of success in the underlying case. *Sommerfield v. City of Chi.*, No. 06 C 3132, 2013 U.S. Dist. LEXIS 3715, at *26 (N.D. Ill. Jan. 10, 2013) (Leinenweber, J.). All told, the Court awarded Longo $430,000 in fees. He appealed – and lost.

The Seventh Circuit affirmed this Court's fee award in all respects. *Sommerfield v. City of Chi.*, Nos. 12-1506, 13-1265, 2017 U.S. App. LEXIS 12443, at *16 (7th Cir. July 12, 2017). Calling the fees sought a "princely" sum, the court affirmed that this amount of fees was unjustified given Longo's limited success in the case. *Id.* at *4. As the court stated, "Longo spent over a decade on a case in which he lost on most claims

and netted his client $30,000." *Id.* at *13. The court concluded that a reduction for limited success was "entirely appropriate" under such circumstances, as were the excision of "unnecessary" hours and a lower hourly rate due to Longo's "poor performance." *Id.* at *11-13.

Table 1 summarizes the outcome from this first round of the fee dispute. As can be seen, Longo ultimately recovered 29% of the fees that he requested ($430,000/$1,496,575). In addition, of the $430,000 recovered, a non-negligible amount was agreed to by the City of Chicago ($116,561). As such, of the amount that was actually in dispute, Longo proved that he was entitled to only 20% of the amount requested (($430,000-116,561)/$1,496,575).

**Table 1: Summary of First Round of Fee Disputes**

|  | As Requested by Plaintiff | As Agreed to by Defendant | As Awarded by the Court |
|---|---|---|---|
| **Hourly Rate** | $395/hour | $275/hour | $300/hour |
| **Number of Hours** | 3,742 hours | 2,742 hours | 2,878 hours |
| **Lodestar (Hourly Rate x No. of Hours)** | $1,478,090 | $754,050 | $863,400 |
| **Adjustment** | No adjustment | Reduce by 85% | Reduce by 50% |
| **Final Amount** | $1,496,575 | $116,561 | $430,000 |

<u>Note</u>: Except for the Final Amount field, the above figures exclude the work done by Longo's associate. The associate performed only about 70 hours of work and her fees were not disputed.

Despite having thrown good money after bad by fighting the Magistrate Judge's recommendations and appealing the fee award,

Longo followed up on this first-round effort with yet another petition for fees and costs. In this Motion now before the Court, Longo asks to be compensated for proving the first round of fees. That is, Longo requests compensation for all the work he did after the Court entered the $30,000 judgment in favor of his client in March 2012. As Longo's records make clear, this work includes administrative tasks like "dictate new date for docket; calendar date; [and] ensure inclusion of new date in docket." *See, generally,* ECF No. 747, Ex. 17. Other, more substantive tasks include all the work Longo did in pursuit of the $1.5 million fee request, without regard to whether the work was successful in netting him any extra dollar. For example, Longo seeks compensation for the 45 hours he spent objecting to Magistrate Judge Cole's recommendations, recommendations which were adopted in full by this Court and affirmed on appeal. *Id.* at 14-15. In the same vein, Longo asks to be paid at the already-rejected rate of $395 per hour. Since he claims to have worked for more than 300 hours on the fee issue, the total amount he wishes the Court to bill to the City of Chicago comes to about $120,000.

Longo also seeks costs. Specifically, he asks for $246.15 to cover the cost of shipping, transcripts, and court reporter attendance associated with his work on the matter of fees. This

is to come on top of the $9,586.40 in costs the Court already taxed in recognition of the expenses incurred in the underlying litigation. *See, Sommerfield v. City of Chi.,* No. 06 C 3132, 2012 U.S. Dist. LEXIS 155720, at *13 (N.D. Ill. Oct. 31, 2012).

Table 2 summarizes the amount of money requested during the second round, juxtaposing it to the amount awarded for Longo's efforts during the decade-long merits stage of the case.

**Table 2:  Second Round Attorney's Fees and Costs Requested**

|  | First Round Awards by the Court | Second Round Requests by Plaintiff |
|---|---|---|
| Costs | $9,586.40 | $246.15 |
| Hourly Rate | $300/hour | $395/hour |
| Number of Hours | 2,878 hours | 309.6 hours |
| Lodestar (Hourly Rate x No. of Hours) | $863,400 | $122,292 |
| Adjustment | Reduce by 50% | No Reduction |
| Final Fees Amount | $430,000 | $122,292 |

For the reasons stated below, the Court denies the fees-for-fees petition in its entirety.

## II.  LEGAL STANDARD

In a Title VII case like the one at bar, the Court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k).  Moreover, "[t]he standards for determining reasonable attorneys' fees in a Title VII action are the same as those used to determine 42

U.S.C. § 1988 fees," or those awarded in civil rights cases. *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 639 n.1 (7th Cir. 2011). This means that the standards set by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424 (1983), govern the analysis in this case.

In *Hensley,* the Supreme Court cautioned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley,* 461 U.S. at 437. Accordingly, a fee applicant should exercise "billing judgment" and "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434 (internal quotation marks omitted). Should such an effort not stave off major disputes on the proper amount of fees to be awarded, then "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. The burden is on the fee applicant to prove this lodestar figure. *Id.*

Moreover, the lodestar should be adjusted downward where the applicant has achieved less than excellent results. *See, Hensley,* 461 U.S. at 434-36. Because "the most critical factor is the degree of success obtained," a court should always ask, "did the plaintiff achieve a level of success that makes the

hours reasonably expended a satisfactory basis for making a fee award?" *Id.* at 434. If the answer to this question is no, then the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award." *Id.* at 436-67.

Within this framework, the district court exercises wide discretion, and its decision to award or deny fees is reviewed with deference. *Hensley,* 461 U.S. at 437; *Pickett,* 664 F.3d at 639; *Ustrak,* 851 F.2d at 987. In particular, the court has the discretion to deny a fee petition in its entirety. *See, Budget Rent-A-Car Sys. v. Consol. Equity LLC,* 428 F.3d 717, 718 (7th Cir. 2005) (quoting with approval the holding from *Fair Housing Council of Greater Washington v. Landow,* 999 F.2d 92, 96-97 (4th Cir. 1993), that "a district court has the discretion to deny a request for attorneys' fees in its entirety when the amount of the request is grossly excessive") (internal quotation marks omitted); *In re Burlington N., Emp't Practices Litig.,* 832 F.2d 430, 434 (7th Cir. 1987) ("[A] fees award for fees litigation can be reduced, even to nothing, so that the award is reasonable when considered in light of all the circumstances of the case.") (internal quotation marks omitted); *Muscare v. Quinn,* 680 F.2d 42, 45 (7th Cir. 1982) (ruling that "the district judge had discretion to deny the plaintiff's second fee request in its entirety").

The Seventh Circuit has specifically applied this principle to fees-for-fees petitions like the one at bar. *See, Muscare,* 680 F.2d at 45 (affirming a complete denial of attorney's fees sought for proving fees); *Burlington,* 832 F.2d at 434 (holding that *Muscare* comports with the analysis in *Hensley*). In particular, the court has laid out a three-step approach which a district judge may use to determine whether a plaintiff is entitled to any additional fees for his work in proving fees:

> First, the district court should assess the results obtained by the litigation; second, the district court should next measure the extent of plaintiffs' success by comparing the results obtained from the lawsuit with the relief plaintiffs sought; and finally, the district court is to structure an award that is reasonable in light of the plaintiffs' success.

*Burlington,* 832 F.2d at 435. The Court follows this approach below.

As for costs, the Court retains the same discretion to grant or deny costs as it does with fees. *See, Baker v. Lindgren,* 856 F.3d 498, 502 (7th Cir. 2017). While FED. R. CIV. P. 54(d) creates a presumption in favor of awarding costs, this presumption comes with two caveats. First, it only applies to those costs that fall within the categories enumerated in 28 U.S.C. § 1920. *See, id.; Firestine v. Parkview Health Sys.,* 374 F.Supp.2d 658, 671 (N.D. Ind. 2005) ("Rule 54(d) works in tandem with 28 U.S.C. § 1920 and cannot be stretched beyond the

parameters defined in section 1920 to encompass charges unenumerated in section 1920.") (internal quotation and alteration marks omitted). Second, costs may be awarded only to a "prevailing party." *See,* Fed. R. Civ. P. 54(d)(1). "In a case with mixed results, the district court has the discretion to determine whether a party" prevailed. *Baker,* 856 F.3d at 502.

With these principles in mind, the Court turns to Longo's petition.

## III.  **ANALYSIS**

The Court approaches the relief sought in the petition seriatim. It begins with Longo's fee request and then moves to consider his plea to be reimbursed for costs.

### A.  **Attorney's Fees**

Because the Court concludes that Longo claimed an exorbitant amount of fees in the first fee petition, spent an unnecessary amount of time presenting the petition, and achieved little to no success for his efforts, it awards him no fees on his second-round petition.

As may be recalled, Longo asks for $122,292 for his work in proving fees, or more than a quarter of the amount he obtained for all the work unrelated to fees. *See, supra,* Table 2. Even were the Court to do a line-by-line analysis of all the time entries Longo has submitted – a time-consuming task given there

are over 20 pages of such entries – it would immediately deny payment for a substantial chunk of the work. *But see, Tomazzoli v. Sheedy,* 804 F.2d 93, 98 (7th Cir. 1986) ("[I]t is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application.").

For one, the Court would exclude any time expended on administrative or clerical work. Such work is easily delegated to non-professional staff and therefore should be disallowed under Seventh Circuit case law. *See, Spegon v. Catholic Bishop,* 175 F.3d 544, 553 (7th Cir. 1999); *Alcazar-Anselmo v. City of Chicago,* No. 07 C 5246, 2011 U.S. Dist. LEXIS 82291, at *21-22 (N.D. Ill. July 27, 2011) (Leinenweber, J.) ("All of the 39.5 hours that Botello worked, however, appear to be clerical, and are not recoverable."); *Eli Lilly & Co. v. Zenith Goldline Pharms, Inc.,* 264 F.Supp.2d 753, 763 (S.D. Ind. 2003) (refusing to award secretarial time because "[a] lawyer's rates are expected to include compensation for required administrative and secretarial help"). Longo argues that he is a solo practitioner, and on this basis, claims that he should be paid the same $395/hour rate for whatever work he performs. This proposition finds no support in precedent. *See, Montanez v. Simon,* 755 F.3d 547, 565-66 (7th Cir. 2014) (affirming the district court's decision to disallow "time billed for clerical

work that was nonetheless recorded at an attorney's rate");
*Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717 (5th
Cir. 1974) ("It is appropriate to distinguish between legal work
. . . and other work which can often be accomplished by non-
lawyers but which a lawyer may do because he has no other help
available. Such non-legal work . . . is not enhanced [in
compensable value] just because a lawyer does it.").

For another, the Court would strike all time entries spent
on tasks that Longo knew to be useless. This includes any time
Longo expended to argue, yet again, that he deserves a $395
hourly rate. Magistrate Judge Cole had minced no words in
explaining why Longo cannot be compensated at this rate, and the
Court adopted Judge Cole's recommendation. Yet in this Petition
(which he seeks to be compensated for), Longo again presses for
that rate. Worse yet, he relies on the same arguments, already
raised and rejected, to urge for this hourly rate. At bottom,
the arguments boil down to nothing more than that Longo has been
an attorney for 30 years and that his tenure alone, uncoupled
from any skillfulness or competence shown in prosecuting the
case, justifies payment of $395 for every hour worked.

The Court rejects this contention once more. *See, Perdue
v. Kenny A.,* 559 U.S. 542, 555 (2010) (stating that an hourly
rate may not accurately measure an attorney's market value if it

"takes into account only a single factor (such as years since admission to the bar)"); *Johnson,* 488 F.2d at 719 ("Longevity *per se*, however, should not dictate the higher fee."). As far as the Court can tell from the latest fee Petition, Longo's skills as an attorney have not much changed since Judge Cole assessed them. As such, neither should his hourly rate be increased, nor the time spent arguing otherwise be remunerated.

With all this said, the Court takes a different route in determining that Longo should be awarded no additional fees. It takes a look at the litigation in its two phases – merits and fees – and from this examination, structures an award that is reasonable in light of all the circumstances of the case. *See, Burlington,* 832 F.2d at 434-35 (endorsing such an approach). Here, the merits stage of the case is summarized not just by the $30,000 that Plaintiff recovered. Indeed, this is all that Plaintiff won, but the end result does not capture Longo's means in getting there. In the years in which he prosecuted the merits of the case, Longo engaged in a pattern of litigation tactics that, as Judge Cole recounted, included risking sanctions time and again, "ignoring court order after court order," filing motions that were "frivolous," "manipulative," "inordinately stale," "disingenuous," "baseless," "nonsensical," and generally making unnecessary work for all parties involved

by "evincing an unwillingness to take no for an answer when his motions were denied." *Sommerfield,* 2012 U.S. Dist. LEXIS 155064 at *25-40. All told, Longo "needlessly took the courts' time, thereby significantly affecting the due administration of justice." *Id.* at *31.

This conduct persisted to the fees stage of the litigation. In presenting the first fee petition, Longo continued to indulge his "penchant for needlessly dilating the proceedings . . . thus unreasonably multiplying his fees and his opponents' costs." *Id.* at *10. The petition itself demonstrates that Longo exercised no "billing judgment," contrary to what is required by precedent and ethical norms. *See, Hensley,* 461 U.S. at 434. In particular, he seems to have billed for every hour worked despite the fact that "the number of hours actually worked rarely equals the number of hours reasonably expended." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.,* 776 F.2d 646, 651 (7th Cir. 1985) (emphasis removed). Nowhere is this more evident than in the fact that Judge Cole had to strike more than 800 of the hours claimed.

Longo's inflated bill is a reason not only to cut down on the fees awarded for work on the merits but also to deny the fees-for-fees Motion. *See, Firestine,* 374 F.Supp.2d at 668 ("Generally, the court has discretion to deny all the hours

spent preparing a fee petition if the petition is 'exorbitant,' thus multiplying work for the opposing party and the court."). This is exactly what the court in *Eli Lilly* did. The plaintiff in that case had spent a number of hours on preparing an "extravagant" fee petition, much of which were devoted to "attempts to justify excessive and unreasonable fees and expenses." *Eli Lilly,* 264 F.Supp.2d at 784. Finding that the result of such a fee petition "was to multiply work for [the defendant] and for the court," forcing both to "deal[] with matters that never should have been submitted," the court denied altogether Eli Lilly's fee request for proving fees. *Id.* The case at bar is indistinguishable from *Eli Lilly,* and the Court is inclined to the same outcome.

Concomitantly, that Longo's request was for an excessive and unreasonable amount of fees explains his lack of success in getting those fees. Because the degree of success obtained is crucial to determining the proper amount of fees to be awarded, the fact that Longo obtained only 30% of the fees he sought, and only 20% of what was in dispute, further inclines the Court to refuse him any more fees. *Hensley,* 461 U.S. at 436-37, 440. Indeed, the Seventh Circuit leaned heavily on this factor in its previous examinations of fees-for-fees petitions. In *Burlington,* 832 F.2d at 435, the court affirmed the trial judge's decision

to reduce counsels' fees-for-fees request by a third when counsels had succeeded in obtaining only 42% of the amount sought in their first-round fee petition. The court also noted that much of the time spent on the first-round petition was devoted to an issue that counsels lost. This mirrors the circumstances of this case, in which Longo obtained but a fraction of what he had sought and expended much time on issues that he lost, *e.g.,* the adoption of Judge Cole's recommendations.

Of course, Longo did even worse than counsels in *Burlington*. His rate of recovery is closer to that of the plaintiff in *Muscare*. There, the plaintiff's lawyer had sought $41,000 in fees and received only $8,000 (20%); nonetheless, he returned for a second round, asking for an additional $10,000 for his success in obtaining the $8,000. *Muscare,* 680 F.2d at 43-44. The district court refused to award any fees, and the Seventh Circuit affirmed.

Writing for the court in *Muscare,* Judge Richard Posner explained that awarding fees for proving fees may provide too much of an incentive to litigate, as the successive awards overcompensate plaintiffs' lawyers. *See, Muscare,* 680 F.2d at 44-45. This Court has echoed Judge Posner's concern on a previous occasion, where it, too, denied a fees-for-fees

petition. *See, Alcazar-Anselmo,* 2011 U.S. Dist. LEXIS 82291 at *17-18 ("If a prevailing attorney could recover fees for all of the work on a fees petition, he would be motivated to pile on the hours for a petition. The Court has discretion, and uses it, to deny this fee request for proving fees."). Longo certainly "pile[d] on the hours" in this case, and as the hours led to little other than unnecessary work "affecting the due administration of justice," he should not be paid any more for them than he already has. *Sommerfield,* 2012 U.S. Dist. LEXIS 155064 at *31.

The Court makes this judgment in light of all the facts of this case. Under certain circumstances, fees-for-fees petitions have become "the tail that wags the dog," evidence of "our society's penchant for litigation," and reinforcement of the distasteful impression that "attorneys litigate fees with greater energy and enthusiasm than they litigate any other type of issue." *Ustrak,* 851 F.2d at 988; *Nanetti v. University of Illinois,* 944 F.2d 1416, 1417 (7th Cir. 1991). Such circumstances present themselves when the client has recovered nothing other than a modest sum of damages; the attorney has largely failed on the first-round motion for fees; and the cumulating fee petitions, by their exorbitant and unreasonable nature, create unnecessary work for the fee applicant's

counterparty and the court.  This trifecta of conditions infects this case and thus leads the Court to deny the petition in full.

Having decided to award Longo no additional fees, the Court now considers the costs portion of his Petition.

## B.  Costs

Given the mixed results Longo achieved in the fee disputes, the Court finds that he was not the prevailing party for the purposes of taxing costs under FED. R. CIV. P. 54(d).  As such, he is not entitled to any costs.

In a battle for costs, "the 'prevailing party' is the party who prevails as to the substantial part of the litigation." *Testa v. Vill. of Mundelein,* 89 F.3d 443, 447 (7th Cir. 1996). (This is a different and more stringent standard than that applicable to attorney's fees awards.  *See, Baker,* 856 F.3d at 502-03.)  The relevant litigation in this second-round fee petition is Longo's first-round petition, since this is the portion of the litigation for which Longo now seeks costs.  *See, Muscare,* 680 F.2d at 44.

There is no clearer evidence that Longo did not prevail in his first-round fee petition than that he appealed the Court's decision disposing of that Motion.  The logical equivalence of the statement "[y]ou cannot persist in suing after you've won" is that if one persisted, then one did not win.  *Greisz v.*

*Household Bank*, *N.A.,* 176 F.3d 1012, 1015 (7th Cir. 1999).  In short, Longo appealed the outcome of the first fee petition because he lost it.  (In contrast, the City made no cross appeal.)  The losing party cannot tax costs.

At the least, the result from the first petition was sufficiently mixed that the Court, in its discretion, may disallow costs to both parties.  As noted previously, of the $1.5 million that Longo sought, he won less than 30% – meaning that he lost the remaining 70%.  The City, on the other hand, got an hourly rate that was close to what it wanted and essentially just the hours it claimed were reasonable.  *See, supra,* Table 1.  Even if the City did not get its way in all respects, then still it succeeded much more substantially than Longo.  That the City did not win everything and Longo did not lose everything do not change the fact that Longo did not prevail.

Even if the Court were to overlook the fact that Longo was not the prevailing party in the first fee petition, still it would deny him costs.  Of the three categories of costs that he claims – shipping, transcripts, and court reporter attendance – shipping falls outside of the enumerated costs under 28 U.S.C. § 1920 and so is not compensable.  Indeed, this Court, along with others, have specifically found shipping costs to be

unrecoverable. *See, e.g., Blackwell v. Kalinowski,* No. 08 C 7257, 2011 U.S. Dist. LEXIS 89562, at *7 (N.D. Ill. Aug. 11, 2011); *Menasha Corp. v. News Am. Mktg. In-Store, Inc.,* No. 00 C 1895, 2003 U.S. Dist. LEXIS 13405, at *7 (N.D. Ill. July 31, 2003) (Leinenweber, J.); *Harkins v. Riverboat Servs.,* 286 F.Supp.2d 976, 981 (N.D. Ill. 2003).

Of the remaining categories, Longo has made no argument as to why the transcripts, all dated before the 2012 judgment was handed down, were a necessary expense for his fee petition when they were not needed for the underlying litigation (for which he already recovered costs). *See, e.g., Menasha,* 2003 U.S. Dist. LEXIS 13405 at *2 ("When evaluating a bill of costs, the Court must determine whether . . . the expenses are reasonable and necessary.") (quoting *Deimer v. Cincinnati Sub-Zero Prods., Inc.,* 58 F.3d 341, 345 (7th Cir. 1995)) (internal quotation marks omitted). In the same vein, the attendance of the court reporter is untied to any actual transcripts. As such, Longo has shown neither that the court reporter's attendance was necessary nor that the rate he seeks for the attendance is within the compensable range. *See, Blackwell,* 2011 U.S. Dist. LEXIS 89562, at *6 ("[T]he court reporter's attendance fee may be taxed as costs only to the extent that the fee, when added to the per page rate charged for the deposition transcript, does

not make the total charge per page exceed the applicable page rate established by the Judicial Conference.").

In sum, the Court cannot award costs on the record before it. It therefore orders the parties to bear their own costs.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's second-round Petition for Fees and Costs for time spent proving the attorney's fees in the underlying case [ECF No. 746] is denied.

**IT IS SO ORDERED.**

 

 

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: August 25, 2017